# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DEBORAH A. GAUDET AND RAY GAUDET,** Individually and on Behalf of a Class of All Other Similarly Situated Persons | Civil Case No. |
| Plaintiffs; | CLASS ACTION COMPLAINT<br>CLASS REPRESENTATION |
| v. | |
| **HOWARD L. NATIONS, APC; THE NICKS LAW FIRM, LLC; RUEB & MOTTA, APLC; JOSEPH A. MOTTA, ATTORNEY AT LAW, APLC; and, THE RUEB LAW FIRM, APLC;** | DEMAND FOR JURY TRIAL |
| Defendants. | |

---

## CLASS ACTION COMPLAINT

---

NOW INTO COURT, through undersigned counsel, come Plaintiffs, Deborah A. Gaudet and Ray Gaudet, individually and on behalf of all others similarly situated, whose Class Action Complaint respectfully avers as follows:

### INTRODUCTION

On April 10, 2010, a catastrophic oil spill occurred in the Gulf of Mexico resulting in damages and losses to individuals, businesses, and governmental entities in certain coastal states, namely, Louisiana, Mississippi, Alabama, Florida, and Texas. After the incident, BP Exploration & Petroleum, Inc. ("BP") established a facility for resolution of certain claims under the management and direction of Ken Feinberg. Subsequently, Judge Barbier, in the Eastern District of Louisiana, approved a settlement intended to provide recovery for a broad class of claimants to compensate for the losses sustained.

1

Deborah and Ray Gaudet ("Gaudets") were among many people who resided along the coast and sustained damages resulting from the spill. They did not file suit against BP nor did they engage attorneys until June 1, 2015, when they were advised that out-of-state lawyers were hosting meetings in various locations. The meetings were designed by the Defendant law firms to solicit clients in order for the Defendant law firms to submit claims in the BP settlement program. The efforts to sign up clients was highly successful in that the law firms handled more than 10,000 claimants in Louisiana, Mississippi, Alabama, and Florida.

The Gaudets attended one of the meetings at the Lil Caillou School in Chauvin, Louisiana. At that meeting, the Defendants' representatives advised the Gaudets to fill out forms to identify their losses, which were primarily subsistence claims. At the meeting, some of the forms presented to the claimants had been pre-completed by the Defendants representatives. Additionally, there were poster boards in the meeting rooms that explained the information required to be completed on the various forms they were handed.

At the meeting at the Lil Caillou School, the Gaudets engaged the Defendant law firms to file a claim for them as a result of damages they sustained. They signed a fee agreement with the Defendant law firms and fully expected their claim would be handled pursuant to the terms of the overall BP settlement that allowed for recovery for specified losses.

Subsequent, to the Defendants' legal representation of the Gaudets, numerous phone calls were initiated by the Gaudets to the Defendant law firms in order to determine the status of their claim. Each of those phone calls essentially involved the same messaging from the Defendant law firms – the claim by the Gaudets was still pending and BP had not acted on their particular claim.

It was not until May of 2019 when the Gaudets were advised by the Defendants that BP had denied their claim. In truth and in fact, the Defendants had never filed a claim for their losses.

Yet, this disclosure, fundamental to the fiduciary relationship between attorneys and their clients, had never been made known to them.

This class action litigation is intended to protect the rights of all clients, represented by the Defendants, who lost the opportunity to participate in the BP Settlement due to the Defendants' breach of contract, professional malpractice, and fraud.

1.

This is a class action lawsuit to recover damages for breach of contract, professional malpractice, and fraud arising from the Defendants' actions and inactions committed while representing the interests of the proposed class members in the Deepwater Horizon Economic and Property Damage Class Action Settlement in which claims were made against BP, its affiliates, subsidiaries, and other entities, for damages caused by the Deepwater Horizon catastrophe that occurred on April 20, 2010 and the resulting oil spill.

**<u>PARTIES</u>**

2.

*<u>Plaintiffs:</u>*

Deborah A. Gaudet and Ray Gaudet, natural persons of the full age of majority, domiciled in, and citizens of, the State of Louisiana, Parish of Terrebonne, individually, and on behalf of all other similarly situated persons constituting the class they seek to have certified pursuant to Rule 23 of the Federal Rules of Civil Procedure.

3.

*<u>Defendants:</u>*

a)   Howard L. Nations, APC, a Texas corporation doing business in the State of Louisiana and within this district;

b)   The Nicks Law Firm, LLC, a Mississippi limited liability company doing business

3

in the State of Louisiana and within this district;

c)   Rueb & Motta, APLC, a California corporation doing business in the State of Louisiana and within this district;

d)   Joseph A. Motta, Attorney at Law, APLC, a California corporation doing business in the State of Louisiana and within this district; and,

e)   The Rueb Law Firm, APLC, a California corporation doing business in the State of Louisiana and within this district; (collectively "Defendants" all of whom participated collectively in the solicitation and engagement of BP Claimants as a joint venture).

## JURISDICTION AND VENUE

4.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and (iii) at least one Plaintiff and Defendant are citizens of different states. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5.

Venue is proper in the Eastern District of Louisiana pursuant to 28 U.S.C. § 1391(b)(2) and (3) because a substantial number of the events or omissions giving rise to the Plaintiffs' claims occurred in this district. It is uncontradicted that the Deepwater Horizon oil spill caused damage to the residents of this district, including the Plaintiffs. Litigation for recovery of economic damages caused by the Deepwater Horizon oil spill was held in this district. Thus, the Plaintiffs' claims for damages and losses from the Deepwater Horizon oil spill (i.e. BP Claim) originated in this district. Defendants solicited clients, such as the Plaintiffs, by advertising and holding "Fishing Claim Centers/Meeting Locations" in this district and received substantial revenues and profits from their representation of Plaintiffs and similarly situated persons residing in this district. Further, the attorney-client relationship that existed between the Plaintiffs and Defendants was

4

created in this district.

## **FACTUAL ALLEGATIONS**

6.

The Deepwater Horizon was a semi-submersible oil drilling rig owned by Transocean and leased, chartered, and operated by BP approximately fifty (50) miles southeast of Venice, Louisiana in the Gulf of Mexico. At approximately 10 p.m. on April 20, 2010, while the Deepwater Horizon was performing oil and gas operations off the coast of Louisiana, an explosion occurred on the vessel, causing its crewmembers to be thrown overboard and killing at least 11 crewmembers aboard the vessel. The explosion and subsequent fire caused such significant damage the Deepwater Horizon subsequently sank in approximately 5,000 feet of water.

7.

As a result of the explosion and the subsequent sinking of BP's Deepwater Horizon, it has been estimated that 4.9 million barrels of oil leaked into the Gulf of Mexico between April 20, 2010 and July 15, 2010 ("BP Oil Spill").  The 87-day oil spill caused significant ecological and economical damage to Louisiana, Mississippi, Alabama, Florida, and Texas.

8.

Due to the devastation caused to the coastal marine and wildlife habitats by the BP Oil Spill, on April 30, 2010, the Louisiana Department of Wildlife and Fisheries closed a significant number of coastal boundaries and waterways for recreational and commercial fishing.  The other Gulf states followed with similar recreational and commercial fishing closures.

9.

The Plaintiffs reside in lower Terrebonne Parish where they, at all times prior to the BP Oil Spill, caught and harvested natural resources from the Gulf of Mexico, such as fish, seafood, and

game in a traditional manner to sustain their basic personal and family dietary, economic, and security needs.  Plaintiffs intended to continue catching and harvesting fish, seafood, and game for the purpose of subsistence use. However, as a result of the closures of coastal boundaries, waterbodies, and waterways, the Plaintiffs were unable to harvest fish, seafood, or game in the closed areas. Typically, these geographically closed areas were used by the Plaintiffs because of their proximity to the Plaintiffs' residence. Consequently, the Plaintiffs sustained a significant loss of subsistence use of the coastal natural resources.

10.

At all times during which the Plaintiffs used or intended to use the coastal natural resources for subsistence, the Plaintiffs maintained and held valid government issued licenses to harvest fish, seafood, and game in their home state of Louisiana.

11.

At all relevant times, the Plaintiffs were not recreational fishermen or recreational hunters. Plaintiffs harvested natural resources from the Gulf of Mexico solely for subsistence purposes.

12.

Multiple class action lawsuits were filed against BP and other parties responsible for the BP Oil Spill to recover losses, including economic and property damage, sustained as a result of the BP Oil Spill. These lawsuits were consolidated in a Multidistrict Litigation proceeding (MDL No. 2179) in the United States District Court for the Eastern District of Louisiana.

13.

Ultimately, the matters pending in MDL No. 2179 resulted in the Deepwater Horizon Economic and Property Damages Settlement Agreement ("BP Settlement Agreement"), which was certified by the Court on December 21, 2012.

14.

The BP Settlement Agreement established a the Economic and Property Damages Settlement Class ("BP Class"), which included persons and entities who were located in geographically defined areas around the Gulf Coast and who sustained losses as a result of the BP Oil Spill.

15.

The BP Settlement Agreement provided for payment of economic loss and property damage claims to the BP Class members for certain damage categories: Business Economic Loss, Individual Economic Loss, Subsistence Loss, Coastal Real Property Damage, Wetlands Real Property Damage, and Vessel of Opportunity Charter Payments.

16.

BP Class members were able to assert their rights with respect the BP Settlement Agreement and receive compensation for their BP Oil Spill related losses by filing claims (i.e. BP Claims) with the Deepwater Horizon Economic Claims Center ("DHECC"), which administered claims established by the BP Settlement Agreement.

17.

The deadline to file all BP Claims with DHECC was June 8, 2015, except for those claims carved out previously in the Seafood Compensation Program (compensation for commercial fishermen). This deadline to file BP Claims was sufficiently promulgated by the DHECC. The following notice of the BP Claims filing deadline was posted on the DHECC website:

> **10.      *June 8, 2015 Filing Deadline (Posted May 18, 2015).* The final deadline for filing all Deepwater Horizon Economic and Property Damages Settlement Program claims is June 8, 2015. This deadline does not apply to or extend the deadline for filing claims under the Seafood Compensation Program, which deadline has already expired. Claim Forms for filing of all new**

claims (other than those under the Seafood Compensation Program) must be completed and signed in accordance with Section 4.4.5 of the Settlement Agreement, and submitted to the Settlement Program on or before June 8, 2015. Click here to view an Alert with additional information.



**June 8, 2015 Filing Deadline**

1.  **Final Deadline.** The final deadline for filing all Deepwater Horizon Economic and Property Damages Settlement Program claims is **June 8, 2015**. This deadline does **not** apply to or extend the deadline for filing claims under the Seafood Compensation Program, which deadline has already expired. Claim Forms for filing of all new claims (other than those under the Seafood Compensation Program) must be completed and signed in accordance with Section 4.4.5 of the Settlement Agreement, and submitted to the Settlement Program on or before **June 8, 2015**. If you have already completed a Claim Form but have not yet signed and submitted it to the Settlement Program, you must do so on or before **June 8, 2015**. The following table outlines how to ensure that your completed and signed Claim Form is timely submitted, depending on which method of submission you choose:

| TIMELY SUBMISSION OF COMPLETED CLAIM FORM | | | |
|---|---|---|---|
| | **Method of Submission** | **How to Measure Timeliness** | **Address** |
| 1. | Portal | Submitted through the Portal on or before midnight, prevailing Central Time on June 8, 2015. | Your secure Settlement Program Portal. |
| 2. | Email | Email sent on or before midnight, prevailing Central Time on June 8, 2015. | ClaimForms@deepwaterhorizoneconomicsettlement.com |
| 3. | Regular US Mail | Item postmarked on or before June 8, 2015.<br><br>If item has a commercial metered date stamp (*e.g.* a Pitney Bowes postage machine) and does not have a USPS postmark, the metered date stamp must be on or before June 8, 2015. | Deepwater Horizon Economic Claims Center<br>PO Box 10272<br>Dublin, OH 43017-5772<br><br>or<br><br>Deepwater Horizon Economic Claims Center<br>c/o Claims Administrator<br>5151 Blazer Parkway Suite A<br>Dublin, OH 43017 |
| 4. | Registered or Certified Mail | Item postmarked on or before June 8, 2015. | Deepwater Horizon Economic Claims Center<br>c/o Claims Administrator<br>5151 Blazer Parkway Suite A<br>Dublin, OH 43017 |

480007
5/15/15

1 of 2



| TIMELY SUBMISSION OF COMPLETED CLAIM FORM | | | |
|---|---|---|---|
| | **Method of Submission** | **How to Measure Timeliness** | **Address** |
| **5.** | **Commercial Delivery Service,** *e.g.* **Fed Ex, UPS** | Item placed in the hands of the commercial carrier on or before June 8, 2015. | Deepwater Horizon Economic Claims Center c/o Claims Administrator 5151 Blazer Parkway Suite A Dublin, OH 43017 |

> 2. *Procedure in the Case of Delivery Irregularities.* If the postmark is missing or not legible, or if the submission is received by the Settlement Program from a commercial delivery carrier more than five calendar days after June 8, 2015, the Claims Administrator will require the Claimant or his/her authorized representative to submit to the Claims Administrator evidence determined by the Claims Administrator, in his sole discretion, to be sufficient to establish that the Claim Form was submitted on or before June 8, 2015.

480007
5/15/15

2 of 2

18.

To capitalize on the BP Settlement Agreement, Defendants solicited the Plaintiffs and thousands of other BP class members who were entitled to compensation for a subsistence loss related to the BP Oil Spill. Specifically, Defendants sought to represent the interests of the Plaintiffs and other BP class members by preparing and filing their BP Claims with DHECC in order for the Plaintiffs and other BP Class members to receive compensation for BP Oil Spill related subsistence losses. In consideration for the legal representation of their clients, including the Plaintiffs, the Defendants generally received an attorney fee of 25% of the amount of the

client's recovery.

19.

During May and June of 2015, one method of client solicitation used by the Defendants was to advertise meetings held by the Defendants at locations and times the Defendants commonly called "Fishing Claim Centers/Meeting Locations" in Louisiana, Mississippi, Alabama, and Florida. The Defendants advertised their "Fishing Claim Centers/Meeting Locations" as locations at which BP class members could file their BP Claim, but the Defendants actually used these advertised meetings as an opportunity to attract BP Class members to the locations in order to engage the clients for legal representation in the BP Settlement Agreement claims process. The Defendants' "Fishing Claim Centers/Meeting Locations" were advertised by the Defendants as provided below:

| LOUISIANA | | |
|---|---|---|
| **Chauvin** | **Belle Chasse** | **Fourchon** |
| 5756 Hwy. 56 | 8558 Hwy 23 | Moran's Marina |
| Project Learn (Old Lil Caillou School) | Law Office of Terry Sercovich | 27900 Highway 1 |
| Monday-Saturday 9AM-1PM | Monday-Friday 9AM-6PM | Conference Room |
| Open Memorial Day Weekend | | Memorial Day Weekend |
| (Sat.-Mon.) 9AM-5PM | | (Sat.-Mon.) 9AM-5PM |
| | | |
| **Golden Meadow** | **Jean Lafitte** | **Violet/St. Bernard's** |
| 2406 South Bayou Dr. | 2608 Jean Lafitte Blvd. | 2621 Colonial Blvd. |
| American Legion Post 259 | The Lafitte Art's Center | Our Lady of Lourdes Church |
| Monday-Saturday 9AM-1PM | Monday-Friday 10AM-7PM | Secondary Building |
| Open Memorial Day Weekend | Open Memorial Day Weekend | Monday-Friday 9AM-5PM |
| (Sat.-Mon.) 9AM-5PM | (Sat.-Mon.) 9AM-5PM | |
| | | |
| **Chackbay** | **Grand Isle** | |
| 100 Highway 304 | 3101 Highway 1 | |
| Volunteer Fire Station | Grand Isle Multiplex | |
| Monday-Saturday 9AM-1PM | Thurs. May 21 and Fri. May 22 | |
| Open Memorial Day Weekend | 8AM-3PM | |
| (Sat.-Mon.) 9AM-5PM | | |
| | | |

| Chalmette | Cocodrie |
|---|---|
| 3400 Paris Rd | Houma Oilman's Rodeo |
| Best Western | 8239 Highway 56 |
| May 23, 24, 25 & 30, 31 9AM-5PM | Harbor Light Marina |
| Open Memorial Day Weekend | Thurs. May 21-Sat. May 23 |
| (Sat.-Mon.) 9AM-5PM | 3PM-7PM |

| MISSISSIPPI | | |
|---|---|---|
| Gulfport | Gulfport | Pascagoula |
| 1600 E. Beach Blvd. | 1806 25th Ave. | 4800 Amoco Rd. |
| Courtyard Marriott | Nicks Law Firm | Holiday Inn Express |
| Harbor & Bay Rooms | Monday-Saturday | Pascagoula-Moss Point |
| May 23, 24, 30, and 31 | 9AM-5PM | May 23, 24, 30 and 31 |
| 9AM-5PM | | 9AM-5PM |

| ALABAMA | | |
|---|---|---|
| Mobile | Mobile | Gulf Shores |
| 600 West I-65 Service Rd. South | 7220 First St. | 3947 Gulf Shores Pkwy. |
| Ashbury Hotel Conference Center | Nicks Law Firm | Gulf Shores Staybridge Suites |
| May 23, 24, 30 and 31 | Monday-Friday 10AM-9PM | Magnolia Meeting Room |
| 9AM-5PM | Saturday 10AM-2PM | May 23, 24, 30 and 31 |
| | | 9AM-5PM |

| FLORIDA | |
|---|---|
| Pensacola | Pensacola |
| 7813 N. Davis Hwy | 3298 Summit Blvd., Ste. 32 |
| Holiday Inn | Law Offices of Dan Sanders |
| Garden Room | Ameriprise Financial Bldg. |
| May 23, 24, 30 and 31 | Monday-Thursday 9AM-4PM |
| 9AM-5PM | Friday 9AM-12PM |

20.

Defendants' "Fishing Claim Centers/Meeting Locations" were successful in attracting clients, as Defendants executed thousands of attorney service agreements with newly engaged clients shortly before the DHECC June 8, 2015 deadline.

21.

The Plaintiffs herein were members of the BP Class by virtue of their status as residents of the State of Louisiana at all relevant times and who sustained a subsistence loss as a result of the coastal boundary and waterway closures necessitated by the BP Oil Spill. The BP Settlement Agreement expressly provided for a subsistence loss "Damage Category," and the BP Settlement Agreement provided for payment of settlement amounts to BP class members, such as the Plaintiffs, who sustained a subsistence loss.

22.

On June 1, 2015, the Plaintiffs attended the Defendants' "Fishing Claim Centers/Meeting Locations" at Old Lil Caillou School in Chauvin, Louisiana where the Plaintiffs executed the Defendants' contingency fee agreement, titled "Attorney-Client Contract," to engage the Defendants to prepare and file their individual BP Claim in order to be compensated for their BP Oil Spill-related subsistence losses.  The "Attorney-Client Contract" executed by the Plaintiffs was also executed by Howard L. Nations on behalf of the Defendants. The executed "Attorney-Client Contract" is provided below:



## ATTORNEY-CLIENT CONTRACT

This Contract is made by and between Client and Rueb & Motta, The Nations Law Firm, and the Nicks Law Firm, ("Attorneys"). In consideration of the mutual promises herein, Client and Attorneys agree as follows:

**I. Purpose of Representation.** Client retains Attorneys to prosecute all claims against all necessary defendants arising out of Event: BP Deepwater Horizon Oil Spill Class Action Settlement for *Subsistence Claims.*

**II. Attorneys' Fees & Expenses.** Attorneys will advance reasonable and necessary expenses incurred for prosecution of the case and obtain full reimbursement out of Client's share of any amount collected herein. In consideration of Attorneys' services, Client agrees to pay to Attorneys:

> TOTAL ATTORNEYS' FEES OF 25% OF
> ANY AMOUNT COLLECTED HEREIN

These Attorneys' Fees shall be distributed among the following firms and does NOT change the amount of Client's share:

NLF/Rueb & Motta, PLC 12.5% and The Nicks Law Firm 12.5%

**III. Assignment of Interest.** In consideration of Attorneys' services, Client hereby sells, conveys, and assigns to Attorneys an interest, as indicated in section II above, in Client's claims and causes of action, and in any action, compromise, settlement, judgment, payment of services or recovery by whatever means.

**IV. Approval Necessary for Settlement.** Attorneys are authorized to determine settlement strategy and negotiate on Client's behalf. No settlement of any nature shall be made for claims of Client without Client's final approval, and Client shall not obtain any settlement without Attorneys' written approval. Attorneys are hereby granted a limited power of attorney with full authority to prepare, fully execute, sign and file all legal instruments, pleadings, drafts, authorizations and papers reasonably necessary to conclude this representation as fully as Client could do in person. Attorneys are expressly authorized to communicate with me by phone, email or text messaging as they deem necessary.

**V. Deferred Attorney Fees.** The client agrees that counsel may have the option to structure or defer all, or a portion, of its contingency fees ("Deferred Amount") in exchange for a certain nonqualified tax-deferred compensation obligation issued by an independent third party (the "Issuer"). Such payment of Deferred Amount to the Issuer, whether by the defendant,

defendant's agent, shall fully discharge the client's obligation with respect to the portion of the settlement proceeds that represent fees the counsel has elected to defer.

**VI. Representations.** It is understood that Attorneys cannot warrant or guarantee the outcome of the case, and Attorneys have made no representations that Client will recover any or all of the funds sought. Client also understands that obtaining a judgment does not guarantee that the defendant will satisfy the judgment.

**VII. Withdrawal.** Attorneys have the option to withdraw and cease to represent Client for any reason.

**VIII. Association of Other Attorneys.** Attorneys have the option to associate any attorney(s) to assist in the preparation and litigation of this case, in the sole discretion of Attorneys.

**VII. Mississippi Law.** This Contract shall be construed under and in accordance with the laws of the State of Mississippi, and all obligations of the parties created hereunder are performable in Mississippi.

**IX. Parties Bound.** This Contract shall be binding upon and inure to the benefit of the parties hereto and their heirs, executors, administrators, legal representatives, successors and assigns where permitted by this Contract.

**X. Legal Construction.** In case any provision in this Contract shall be held to be invalid, illegal or unenforceable, such holding shall not affect any other provisions herein, and this Contract shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

**XI. Prior Contracts Superseded.** This Contract constitutes the sole agreement of the parties and supersedes any prior written or oral agreements between the parties regarding Event.

**XII. Lien Resolution.** Client understands that federal law may require all parties to resolve Medicare's, Medicaid's, and other private and government health insurance plans' claims for reimbursement prior to distributing any verdict or settlement proceeds. Client agrees that Attorneys may take all steps relating to resolution of these federally mandated issues, and expenses incurred for such shall be treated as case expenses deducted from Client's net recovery.

**XIII. Client Certification.** Client is voluntarily signing this Contract, fully aware of its terms and conditions. All questions regarding the contract have been answered by Attorneys.

Signed & Accepted this ___ day of _____, 2015

Rueb & Motta, The Nations Law Firm, and the Nicks Law Firm.

*Howard L. Nations*

Howard L Nations, Esq. on behalf of Attorneys

Signed & Accepted this _1_ day of June 2015

*Deborah Gaudet*
Client's Signature

*Deborah A. Gaudet*
Client's Printed Name

SSN: 434 76 2836   DOB: 2/12/48

23.

Per the express terms of their "Attorney-Client Contract," the Defendants obligated themselves to "prosecute all claims against all necessary defendants arising out of Event: BP Deepwater Horizon Oil Spill Class Action Settlement," including preparing and filing the Plaintiffs' BP Claim with the DHECC as outlined in the BP Settlement Agreement. Thus,

the Defendants were obligated contractually to competently and diligently represent the Plaintiffs' legal rights in the BP Claims process.

24.

Once the Plaintiffs engaged the Defendant law firms, their access to the DHECC online portal, which maintained all documents and notices for each claimant, was restricted solely to their lawyers, without any personal access.

25.

The Plaintiffs relied upon the representations of the Defendants, specifically, that the Defendant law firms would prosecute their BP Claim competently and zealously to maximize the Plaintiffs' recovery for their BP Oil Spill-related subsistence loss.

26.

Plaintiffs provided all information requested by the Defendants related to preparing and filing their BP Claim in order to receive compensation for their losses.

27.

Tragically for the Plaintiffs, the Defendants failed to timely file the Plaintiffs' BP Claim prior to the June 8, 2015 deadline. Consequently, the Plaintiffs lost the opportunity to receive an award for their BP Claim with the DHECC because the Defendants failed to comply with the claim-filing deadline.

28.

At all material times after June 1, 2015, the Defendant law firms misrepresented this outcome determinative fact, namely that the Defendants had never filed their claim.

29.

Since the Plaintiffs were prohibited from communicating with DHECC or otherwise

14

authorized to receive status updates on their BP Claim through the DHECC portal, the Plaintiffs contacted the Defendant law firms on several occasions via telephone to inquire about updates on their BP Claim.  On each of those occasions, Defendants advised Plaintiffs that their BP Claim was still pending in the DHECC Settlement Program.

30.

But for the Defendants' failure to timely file the Plaintiffs' BP Claim, the Plaintiffs would have received an award from DHECC compensating them for their BP Oil Spill related-subsistence loss.

31.

At all material times, the Plaintiffs satisfied the required prongs of the BP Settlement program in order to receive a compensation award from DHECC for their subsistence loss.  First, a) the Plaintiffs satisfied the "Subsistence Claimant" definition in that the Plaintiffs fished and hunted to harvest, catch, and consume Gulf of Mexico natural resources, such as fish, seafood, and game, in a traditional and customary manner to sustain their basic personal and family dietary and economic security needs, and b) Plaintiffs relied upon the subsistence resources diminished or restricted in the geographic regions resulting from the BP Oil Spill.  Secondly, the Plaintiffs were able to provide sufficient documentation to establish the quantity of Gulf of Mexico natural resources from within the state of Louisiana that they lost during the specified time period, namely April 20, 2010 to December 31, 2011. Thirdly, the Plaintiffs were able to provide copies of their Louisiana issued hunting and fishing licenses for years 2010 and 2011.  Thus, the Plaintiffs would have received a compensation award from DHECC for their subsistence losses if their BP Claim had been properly filed by the Defendant law firms.

32.

On March 14, 2019, Plaintiffs received a form letter from the Defendant law firms. Curiously, the letter was dated October 31, 2018, but not postmarked until March 12, 2019.  For the first time, this letter communication from the Defendant law firms informed Plaintiffs their "claim was one of many which were **denied** by BP."  The Defendants' denial letter further specified that the Plaintiffs, and the Defendants through their legal representation of the Plaintiffs, were "left with no possibility of an effective appeal."  The letter listed nine (9) examples as reasons for denial of numerous claims; however, the Defendants' failure to file or to timely file a claim was noticeably absent from the list. A copy of the Defendants' denial letter is provided below:

# THE NATIONS LAW FIRM 

A NATIONAL LITIGATION FIRM

**Rueb & Motta**                                                                                    **The Nicks Law Firm**

---

HOWARD L. NATIONS
BOARD CERTIFIED - PERSONAL INJURY TRIAL LAW
BOARD CERTIFIED - CIVIL TRIAL LAW
TEXAS BOARD OF LEGAL SPECIALIZATION
DIPLOMATE - CIVIL TRIAL ADVOCACY
NATIONAL BOARD OF TRIAL ADVOCACY
DIPLOMATE - NATIONAL COLLEGE OF ADVOCACY
ADMITTED IN TEXAS AND NEW YORK

HOUSTON OFFICE
3131 Briarpark Drive, Suite 208
Houston, Texas 77042
Phone 800-581-2100
Fax 866-352-1152
bpfish@howardnations.com

100352346                                                                          October 31, 2018

Deborah Gaudet
4138 Highway 665
Montegut LA 70377

Dear Deborah Gaudet,

    The Deepwater Claims Administrator has advised us that the review of all BP Subsistence claims has been concluded and all claims have now either been awarded or denied. As you recall, we entered this litigation shortly before the filing deadline on June 8, 2015, because we learned that thousands of potentially qualified fishermen had not filed for their potential benefits. We realized at the time that BP would deny as many of these claims as possible, by every means possible, because more than 15,000 new claims were filed immediately before the filing deadline. We also advised all claimants that we would do our best but that we had to rely on very complete and accurate information from every claimant since there was no time to verify it before filing.

    You are receiving this letter because your BP Subsistence (Fishing) Claim was one of many which were denied by BP, mostly based on very severe and narrow technicalities, some of which are listed below. Unfortunately, the settlement agreement allowed broad discretion in denying claims and we were left with no possibility of an effective appeal. While we exhausted appeals when they were available, most of the denials were based on administrative discretion which permitted no appeal. The following are several samples of the reasons for denial of numerous claims:

    1)   Prior GCCF or other economic claim payment.
    2)   Not having a valid fishing license during the relevant time period.
    3)   Failed field visit - completely discretionary.
    4)   Alleged fraud - completely discretionary.
    5)   Fishing in an area BP claims was not affected by the oil spill.
    6)   Listed species required a special gear license.
    7)   Not listing all gear used.
    8)   Not listing gear in a particular, specific manner.
    9)   Not having a proper species license.

    We continue to prosecute any appeals that we feel may be subject to reconsideration and will advise you if the status of your claim changes.

Your BP Subsistence Claims Team

HOUSTON  ·  WASHINGTON DC  ·  NEW YORK

17

33.

The Plaintiffs' suspicions were raised by the substance of the Defendants' letter. On April 29, 2019, Plaintiffs executed a "Request for Change in Representation Status" in order to gain access to their claim-related information with DHECC.

34.

On May 3, 2019, Plaintiffs learned that Defendants had failed to timely file the Plaintiffs' BP Claim.

## **CLASS REPRESENTATION ALLEGATIONS**

35.

This action is appropriate for determination pursuant to the Federal Class Action Procedure (Federal Rules of Civil Procedure Rule 23, et seq.) because there is a well-defined community of interest in the litigation and the proposed class is ascertainable, accordingly, the Plaintiffs bring this action on their own behalf and on behalf of a class of Plaintiffs ("Plaintiff class") that constitutes the following proposed class:

> All BP class members, represented by Defendant law firms in the BP Deepwater Horizon Oil Spill Class Action Settlement Program, who lost the opportunity to participate in the BP Settlement because the Defendants failed to timely file the claimant's BP Claim(s).

Plaintiffs reserve the right to propose subclasses or to modify the above class definition, based on the evidence adduced in discovery, or as necessary and appropriate.

36.

Numerosity:   Plaintiffs do not know the exact size of the class but it is composed of more than 500 persons. The persons in the class are so numerous that joinder of all such persons is impractical. The disposition of the claims asserted herein through this class action is the most efficient means of handling these claims and the best way to ensure that the interests of the Plaintiff

class members are preserved and in the interest of judicial efficiency.

37.

Commonality: Common questions of fact and law exist as to all members of the Plaintiff Class. These questions predominate over the questions affecting individual Plaintiff Class members.  These common factual and legal questions include, but are not limited to:

a) Whether Defendants willfully, recklessly, and/or negligently failed to timely file claims with the DHECC on behalf of Plaintiff class members;

b) Whether Defendants willfully, recklessly, and/or negligently failed to properly evaluate, handle, and pursue BP Claims with the DHECC on behalf of Plaintiff class members;

c) Whether Defendants willfully, recklessly, and/or negligently failed to adequately communicate or assist Plaintiff class members in connection with preparing and filing BP Claims;

d) Whether Defendants fraudulently concealed the fact that the Plaintiff class members' BP Claims were not timely filed with the DHECC;

e) Whether Defendants intentionally and knowingly made false and misleading representations to the Plaintiff class members regarding the status of BP Claims with the DHECC;

f) Whether Defendants collectively and/or individually owed a duty to the Plaintiff class members;

g) Whether Defendants breached their respective duties owed to the Plaintiff class members; and

h) Whether Plaintiff class members are entitled to monetary damages, attorney's fees, punitive damages, and/or other legal or equitable remedies and, if so, the nature of any such relief.

38.

Typicality:  Plaintiffs' claims are typical of the claims of the class. Plaintiffs and class members were injured and damaged through Defendants' substantially uniform misconduct and breach of their fiduciary duty to Plaintiffs and the class members. Defendants engaged in a common course of conduct that did not vary from Plaintiff to Plaintiff, ensuring that common

questions of law and fact predominate over questions regarding individual damages and causation, as proof as to one constitutes proof as to all. All Plaintiff Class members have suffered similar harm, including ascertainable monetary and economic losses arising from the Defendants' wrongful actions and/or inaction, namely the Defendants' failure to timely file BP Claims on behalf of the BP Class members represented by the Defendants.

39.

Adequacy: Plaintiffs will fairly and adequately protect the interests of the class. Plaintiffs' interests do not conflict with the interests of any Plaintiff class member, and Plaintiffs know and are prepared to undertake representation of the interests of the entire proposed Plaintiff class. The Plaintiffs have no claims that are antagonistic or incompatible to those of the proposed Plaintiff class. The Plaintiffs have retained the undersigned counsel who are experienced in complex class action litigation, and they intend to prosecute this class action vigorously and competently, and class counsel has adequate financial resources to assure the interests of the Plaintiff class will not be harmed.

40.

Superiority:     A class action is superior to other available methods for the fair and efficient adjudication of the controversy because individual litigation of the claims of all Plaintiff class members is impracticable as there are believed to be thousands of members of the proposed Plaintiff class who sustained damages caused by the breach of contractual obligations, negligence, fault, willful misconduct, fraud, concealment, breach of fiduciary duties, other actions, or inaction by the Defendants. Even if each class member could afford the cost of individual litigation, the judicial system could not. It would be a waste of judicial resources to proceed with individual litigation of thousands of essentially identical cases. Additionally, individual litigation would

present a potential for inconsistent, varying, or contradictory adjudications with respect to individual Plaintiff class members, which would establish incompatible standards of conduct for the Defendants. Adjudication of each individual Plaintiff class member's claims would cause increased expenses and delays to all parties and the judicial system in determining the legal and factual issues common to all claims related to the Defendants' conduct as alleged herein. By contrast, this class action presents far fewer management difficulties and provides the benefit of a single adjudication on common issues of fact and law, economies of scale, and comprehensive supervision by a single court. Plainly put, a class action is superior to other methods of adjudicating the Plaintiff class's claims because it is more efficient and economical and will enable this Court to manage the litigation more effectively.

## CAUSES OF ACTION

### *CLAIM NO. 1 – BREACH OF CONTRACT*

41.

Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

42.

The "Attorney-Client Contract" executed by members of the Plaintiff class and any representative of the Defendants, created an attorney-client relationship between the Plaintiff class member(s) and the Defendants whereby the Defendants agreed to represent the interests of the Plaintiff class member(s) in the BP Settlement Agreement claim process.

43.

The Defendants agreed to protect and advance the interests of the Plaintiff Class members. Particularly, without limitation, the Defendants agreed to properly prepare and timely file BP

Claims with DHECC on behalf of the Plaintiff class members in order to recover losses sustained by the Plaintiff class members as a result of the BP Oil Spill. Accordingly, the Defendants also agreed, and were obligated, to inform the Plaintiff Class members information and documentation necessary to properly prepare and file the respective BP Claims. Moreover, Defendants were obligated to receive and process the claimant provided information and documentation in furtherance of the prosecution of the Plaintiff class members' BP Claims.

44.

The Defendants agreed, and were obligated, to communicate with the Plaintiff Class members and advise whether additional information or documentation was required to properly prepare and timely file their BP Claim.

45.

Defendants were aware of the DHECC Settlement Program's deadlines to file BP Claims, as they explicitly referenced the June 8, 2015 deadline in numerous advertisements and public announcements published by the Defendants during May and June of 2015.

46.

The losses sustained by the Plaintiff class members in the form of a loss of opportunity to receive compensation for their BP Oil Spill related losses by the timely filing of their BP Claim were the direct and proximate result of the Defendants' breaches of obligations created by the attorney-client contract that existed between the Defendants and the Plaintiff class members. The Defendants specific contractual breaches include, but were not limited to:

    a)    Failing to timely file claims with the DHECC Settlement Program on behalf of the Plaintiff class members;

    b)    Failing to properly evaluate, handle and pursue claims with the DHECC

Settlement Program on behalf of Plaintiff class members;

d)  Failing to adequately communicate or assist Plaintiff class members in connection with their BP Claims; and

e)  Other acts of fault and breaches of obligation which will be shown more fully at trial.

47.

As a direct and proximate result of the Defendants' acts and/or omissions set forth above, Plaintiff class members have suffered economic loss and emotional distress.  The Defendants are jointly and solidarily liable to the Plaintiff class members for damages resulting from Defendants' contractual breaches and malpractice.

48.

The express terms of the "Attorney-Client Contract" executed by the Plaintiff class members and the Defendants provide that the "Contract shall be construed under and in accordance with the laws of the State of Mississippi, and all obligations of the parties created hereunder are performable in Mississippi." Accordingly, Mississippi substantive law may apply, and the Plaintiff class would be entitled to punitive damages because the Defendants' failed to properly prepare and timely file BP Claims on behalf of the Plaintiff class members. This failure by Defendants constitutes gross negligence.  Further, Defendants were well-aware of the BP Claim filing deadline, and their inactions constitute a wanton and reckless disregard of the economic safety of the Plaintiff class members. Waiting to solicit and engage new clients within days of the filing deadline and then failing to file the Plaintiff class members' claims on a timely basis was and is the essence of callous and reckless disregard to the detriment of the Plaintiff class members.

49.

As a result of Defendants' breaches of contract and failure to conform to the applicable professional standards of care and conduct, Plaintiff class members are entitled to compensatory damages in an amount to be determined at trial but at least in an amount in excess of $5,000,000.00, plus punitive damages, and attorney fees.

### CLAIM NO. 2 – FRAUD

50.

Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

51.

Defendants intentionally misrepresented and fraudulently concealed the fact that the BP Claims that the Defendants agreed, and were obligated, to file on behalf of the Plaintiff class members were not properly prepared and timely filed with DHECC.

52.

Numerous times during the attorney-client relationship with the Plaintiff class members, Defendants made material misrepresentations of fact to the Plaintiff class members regarding the pending status of their BP Claims.

53.

These misstatements made by Defendants were made with knowledge of their falsity, and with the intent that Plaintiff class members would rely on the false and misleading statements. In particular, the Defendants represented to the Plaintiff class members that the Defendants were fully capable of properly preparing and timely filing their BP Claims. Defendants knew those representations to be false and that they did not have the staffing, resources or means to file all of

the claims that they had intentionally solicited. Further, the Defendants knew that the Plaintiff class members would rely on the Defendants' material misrepresentations, and would not seek other counsel to file their respective BP Claim.

54.

At the time that Defendants made these intentional misrepresentations and material concealments, the Plaintiff class members were unaware of the falsity of the Defendants' misrepresentations and reasonably believed them to be true.

55.

The Plaintiff class members did in fact rely upon Defendants' misrepresentations concerning the status and disposition of their BP Claims.

56.

Defendants intentionally and harmfully concealed their gross misconduct for nearly four (4) years.

57.

As a direct and proximate result of Defendants' deceptive tactics, actual fraud, intentional misrepresentations, and concealment of material information, the Plaintiff class members suffered economic loss and emotional distress.  Thus, Defendants are solidarily liable to the Plaintiff class members for damages resulting from Defendants' intentional misrepresentation of material facts and for actual fraud related to the unfiled or untimely filed BP Claims.

58.

As a result of Defendants' commissions of actual fraud, intentional misrepresentations of material fact to the Plaintiff class members, and their failure to conform to the applicable professional standards of conduct, the Plaintiff class members are entitled to compensatory

damages in an amount to be determined at trial but at least in an amount in excess of $5,000,000.00, plus punitive damages, and attorney's fees.

59.

Plaintiffs, on behalf of themselves and all other similarly situated persons, demand judgment against Defendants for monetary damages and/or other remedies.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

a)  An order certifying the proposed class, designating Plaintiffs as the named representatives of the class, and designating the undersigned class counsel;

b)  Awarding actual, compensatory, consequential, and punitive damages;

c)  Awarding restitution;

d)  Awarding punitive damages;

e)  Awarding reasonable attorneys' fees, and costs of this case;

f)  Awarding prejudgment and post-judgment interest;

g)  Granting such further relief that this Court deems appropriate under the circumstances.

## **DEMAND FOR JURY TRIAL**

Plaintiffs request and are entitled to a trial by jury on all issues so triable.

**Dated**: May 13, 2019

RESPECTFULLY SUBMITTED:

/s/ Jerald P. Block
**BLOCK LAW FIRM, APLC**
JERALD P. BLOCK, Bar Roll No. 3151
RICHARD C. BREAUX, Bar Roll No. 33740
KENDALL J. KRIELOW, Bar Roll No. 34625
422 East First Street
Post Office Box 108
Thibodaux, Louisiana 70302
(985) 446-0418 Telephone
(985) 446-0422 Facsimile

Counsel for Plaintiffs and Plaintiffs' Class Members