## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DEBORAH A. GAUDET, ET AL.** Individually and on Behalf of a Class of All Other Similarly Situated Persons | CIVIL ACTION NO. 19-cv-10356 JUDGE WENDY B. VITTER |
| VERSUS | MAGISTRATE JANIS VAN MEERVELD |
| **HOWARD L. NATIONS, APC, ET AL.** | DEMAND FOR JURY TRIAL |

---

### FIRST AMENDED CLASS ACTION COMPLAINT

---

**NOW INTO COURT**, through undersigned counsel, come Plaintiffs, **DEBORAH A. GAUDET**, **TIMOTHY BUTLER, DIAN B. CAMPBELL, KRISTINE COLLINS, REGINA FALGOUST, ABRAHAM GAMBERELLA, ADAM J. HEBERT, FRED LEDET, STANWOOD MOORE, JR., and JAMES SCALES, III,** individually and on behalf of all others similarly situated, who desire to amend the Class Action Complaint filed on May 13, 2019, by replacing the entirety of that Class Action Complaint to read as follows:

### INTRODUCTION

On April 20, 2010, a catastrophic oil spill ("BP Oil Spill") occurred in the Gulf of Mexico when the Deepwater Horizon sank, resulting in damages and losses to individuals, businesses, and governmental entities in certain coastal states, namely, Louisiana, Mississippi, Alabama, Florida, and Texas. Subsequently, multiple class action lawsuits were filed, and

eventually consolidated into multidistrict litigation, which was assigned to Judge Carl Barbier in the Eastern District of Louisiana. Ultimately the matter was resolved by settlement and the Court approved the Deepwater Horizon Economic and Property Damages Settlement Agreement ("BP Settlement Agreement"), which was intended and designed to provide recovery for a broad class of claimants by providing monetary compensation for the losses sustained as a result of the BP Oil Spill. See *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL 2179 (Document 6430).

The BP Settlement Agreement established the Economic and Property Damages Settlement Class ("BP Class"), which included persons and entities located in geographically defined areas in Florida, Alabama, Mississippi, Louisiana, and Texas. It also established the Deepwater Horizon Economic and Property Damages Settlement Program ("BP Settlement Program"), in which BP Class members could participate by filing for their losses caused by the BP Oil Spill ("BP Claims"). The BP Claims were processed by the Deepwater Horizon Economic Claims Center ("DHECC"). Specifically, the BP Settlement Agreement provided for affected persons to make claims for subsistence losses ("Subsistence Claims") caused by the closing of Gulf Coast fishing areas due to contamination from the BP Oil Spill.

Plaintiffs were among many people who resided along the Gulf Coast who harvested fish and seafood in the coastal area for their regular dietary consumption. Since coastal areas were closed due to the BP Oil Spill, Plaintiffs were unable to catch and harvest seafood.

After the settlement was approved and during the BP claims period, the Plaintiffs were advised that out-of-state lawyers were hosting meetings in various locations. The meetings were scheduled and designed by the Defendant law firms to solicit clients in order for the Defendant law firms to file Subsistence Claims in the BP Settlement Program on behalf of the clients they

had engaged. Upon information and belief, the efforts to recruit clients were highly successful in that the Defendant law firms handled at least 17,000 claimants in Louisiana, Mississippi, Alabama, and Florida. Each Plaintiff herein engaged the Defendants to provide legal representation in connection with his or her participation in the BP settlement by filing a Subsistence Claim on his or her behalf with DHECC.

Deborah A. Gaudet, along with her husband Ray, attended one of the Defendant-scheduled meetings at the Lil Caillou School in Chauvin, Louisiana. At that meeting, the Defendants' representatives advised the Gaudets to fill out forms to identify their subsistence losses, which formed the basis for their Subsistence Claim. At the meeting, forms were presented to claimants that had been partially completed in advance by the Defendants. Additionally, the Defendants created and placed poster boards in the meeting rooms that provided instruction to the clients on what information the client was to provide on the forms so that his or her claim could be properly filed and paid by BP.

At the meeting at the Lil Caillou School, Deborah A. Gaudet engaged the Defendant law firms to file a claim as a result of damages she and her husband sustained from being restricted from harvesting seafood in the closed coastal areas. Gaudet signed a fee agreement with the Defendant law firms and fully expected their claim would be handled pursuant to the terms of the client contract she executed with the Defendants and in accordance with the BP Settlement Agreement -- allowing recovery for specified subsistence losses.

Subsequently, Deborah A. Gaudet called the Defendants for updates on the status of her claim, and was told it was "still pending." In March of 2019, Gaudet received one of the many form denial letters believed to have been mailed en masse by the Defendants, stating that BP had "denied" her claim. The letter bore an October 31, 2018 date. In truth and in fact, the Defendants

had never filed a Subsistence Claim with DHECC on Gaudet's behalf. Yet, this disclosure, fundamental to the fiduciary relationship between attorneys and their clients, had never been made known to her.

Similar to Gaudet, Timothy Butler attended a community meeting hosted by the Defendants at the Chackbay Volunteer Fire Station on May 26, 2015. He provided the requisite information and completed the necessary documentation, including the "Attorney-Client Contract," for the Defendants to file his Subsistence Claim. After completion of the client contract and the necessary forms, Butler called the Defendants for updates on the status of his claim.  He was notified that his claim was "still pending."  However, in truth and in fact, the Defendants never filed a Subsistence Claim with DHECC on Butler's behalf. Butler received a "denial" letter in March of 2019, which was identical to Gaudet's letter -- likewise dated October 31, 2018.

Dian B. Campbell attended a meeting in Belle Chasse on May 29, 2015 at the Law Office of Terry Sercovich, an office used by the Defendants to host one of many community meetings. She provided the requisite information and completed the necessary documentation, including the "Attorney-Client Contract," for the Defendants to file her Subsistence Claim. Campbell subsequently made multiple calls to the Defendants for updates on the status of her Subsistence Claim, and was repeatedly told it was "still pending." In truth and in fact, the Defendants had never filed a Subsistence Claim for Campbell.  Dian Campbell received a "denial" letter from Defendants in February or March of 2019. The letter was identical to those received by Gaudet and Butler -- likewise dated October 31, 2018.

Kristine Collins attended a similar community meeting hosted by the Defendants at a facility in Golden Meadow on June 8, 2015. She provided the requisite information and completed the necessary documentation, including the "Attorney-Client Contract," for the Defendants to file their Subsistence Claims. Unfortunately, the Defendants failed to file a Subsistence Claim with DHECC on her behalf by the June 8, 2015 deadline. Like the other Plaintiffs, she received the same "denial" letter from Defendants in March of 2019 -- likewise dated October 31, 2018.

Regina Falgoust attended the community meeting hosted by the Defendants at the Lil Caillou School in Chauvin on May 7, 2015. Just as the others, she provided the requisite information and completed the necessary documentation, including the "Attorney-Client Contract," for the Defendants to file her Subsistence Claim. Falgoust also subsequently called multiple times for updates on the status of her Subsistence Claim. She was repeatedly told her claim was "still pending."  Ultimately, her Subsistence Claim was denied for being incomplete. While Defendants had filed her claim, they knowingly failed to include specific documents required by the BP Settlement Agreement. In February or March of 2019, she received a "denial" letter from the Defendants dated October 31, 2018 identical to those received by the other Plaintiffs, whose claims had been purportedly "denied."

Abraham Gamberella attended a community meeting hosted by the Defendants at the Lil Caillou School in Chauvin on May 12, 2015. He provided the requisite information and completed the necessary documentation, including the "Attorney-Client Contract," for the Defendants to file his Subsistence Claim. Gamberella's Subsistence Claim was denied by BP for being incomplete. Again, the Defendants filed his claim but knowingly failed to include specific documents required by the BP Settlement Agreement. Gamberella received the same "denial"

letter from Defendants in February or March of 2019 -- likewise dated October 31, 2018.

Adam J. Hebert attended a community meeting hosted by the Defendants at the Lil Caillou School in Chauvin on May 29, 2015. He provided the requisite information and completed the necessary documentation, including the "Attorney-Client Contract," for the Defendants to file his Subsistence Claim.  Hebert subsequently made multiple calls to Defendants for updates on the status of his Subsistence Claim. He was repeatedly told it was "still pending."  However, in truth and in fact, the Defendants never filed his Subsistence Claim with DHECC. Like the other Plaintiffs, he received the same "denial" letter from Defendants in February or March of 2019 - - likewise dated October 31, 2018.

Fred Ledet also attended the community meeting hosted by the Defendants at the Chackbay Volunteer Fire Station on June 8, 2015 (the BP Claim filing deadline). He provided the requisite information and completed the necessary documentation, including the "Attorney-Client Contract," for the Defendants to file his Subsistence Claim. Ledet subsequently made multiple calls to the Defendants for updates on the status of his Subsistence Claim. He was repeatedly told it was "still pending."  Unfortunately, the Defendants failed to file his Subsistence Claim with DHECC by the June 8, 2015 deadline. Like the other Plaintiffs, he received the same "denial" letter from Defendants in February or March of 2019 -- likewise dated October 31, 2018.

Stanwood Moore, Jr. attended a community meeting hosted by the Defendants at the Lil Caillou School in Chauvin on May 11, 2015. He provided the requisite information and completed the necessary documentation, including the "Attorney-Client Contract," for the Defendants to file his Subsistence Claim. The Subsistence Claim on behalf of Moore was denied for being incomplete because Defendants filed it, but knowingly failed to include specific

documents required by the BP Settlement Agreement.  Like the other Plaintiffs, he received the same "denial" letter from Defendants in February or March of 2019 -- likewise dated October 31, 2018.

James Scales, III attended a community meeting hosted by the Defendants at the Lil Caillou School in Chauvin on June 2, 2015. He provided the requisite information and completed the necessary documentation, including the "Attorney-Client Contract," for the Defendants to file his Subsistence Claim.  Scales subsequently made multiple calls to the Defendants for updates on the status of his Subsistence Claim. He was repeatedly told it was "still pending." However, in truth and in fact, the Defendants had never filed a Subsistence Claim for Scales. Like the other Plaintiffs, he received the same "denial" letter from Defendants in February or March of 2019 -- likewise dated October 31, 2018.

These Plaintiffs are just some of the many claimants along the Gulf Coast who contracted with the Defendants in order for the Defendants to properly file their Subsistence Claims. Unfortunately, the Defendants failed to do so. Defendants allowed their self-interest to take precedence and to become the primary motivating factor by handling as many Subsistence Claims as they possibly could. By doing so, their avaricious self-interest exceeded and overrode their individual client's interests. Defendants knew or should have known they were understaffed and incapable of processing all of their clients' Subsistence Claims. Allowing clients to enter into attorney-client contracts until the late hours of the June 8, 2015 deadline was reckless, thoughtless, and a recipe for disaster. Yet, Defendants did so knowingly at their peril. Upon information and belief, Defendants were advised by their own on-site field representatives that the facilities should close to allow Defendants' personnel an opportunity to process, complete, and file all Subsistence Claims by the June 8, 2015 deadline. Nevertheless, despite these

warnings, Defendants kept their facilities open until late in the evening on June 8, 2015 continuing to solicit and accept representation for new Subsistence Claimants.

Defendants continued to accept new claimants at their facilities until late into the night on June 8, 2015, which required the field agents to continue working into the early hours of the morning on June 9, 2015 (past the filing deadline) attempting to organize the claimants' paperwork and prepare it for filing. The Defendants' cavalier attitude toward their clients continued unabated over the next few years. When Defendants received incompleteness notices from DHECC, they either chose to ignore the notices or were simply overwhelmed with the number of claims they were handling. This neglect resulted in denied claims that simply lacked documentation that could have and should have been provided by Defendants.

The Defendants knew of the many non-filed or incomplete claims soon after the June 8, 2015 filing deadline. Yet, Defendants misled Plaintiffs as to the status of their Subsistence Claims and inexcusably delayed notification to the clients for more than three years about the "denial" of their claims. Adding insult to injury, Defendants notified Plaintiffs about the "denial" of their claims by blaming BP instead of acknowledging their own fault and neglect.

This class action litigation is intended to protect the rights of clients, previously represented by the Defendants, who lost the opportunity to participate in recovery of their Subsistence Claims through the BP Settlement Program. Their lost opportunities result solely from the Defendants' breach of contract, professional malpractice, and fraud. As a result of Defendants' misconduct, none of the Plaintiff class members received *any* compensation for their Subsistence Claim through the BP Settlement Program. This suit seeks to recover from the Defendants the compensation their former clients should have and would have received in connection with their Subsistence Claims had the Defendants timely filed those claims with all

documentation and information required by the BP Settlement Agreement.

1.

This is a class action lawsuit to recover damages for breach of contract, professional malpractice, and fraud arising from the Defendants' actions and inactions committed while representing the interests of the proposed Class members in the Deepwater Horizon Economic and Property Damage Settlement Program, in which BP Class members made claims to be compensated for their subsistence losses caused by the Deepwater Horizon catastrophe that occurred on April 20, 2010 and the resulting oil spill.

**<u>PARTIES</u>**

2.

***<u>Plaintiffs:</u>***

<u>Deborah A. Gaudet</u>, a natural person of the full age of majority, domiciled in and a citizen of the State of Louisiana, Parish of Terrebonne, individually, and on behalf of all other similarly situated persons constituting the Class sought to be certified pursuant to Rule 23 of the Federal Rules of Civil Procedure;

<u>Timothy Butler</u>, a natural person of the full age of majority, domiciled in and a citizen of the State of Louisiana, Parish of Terrebonne, individually, and on behalf of all other similarly situated persons constituting the Class sought to be certified pursuant to Rule 23 of the Federal Rules of Civil Procedure;

<u>Dian Campbell</u>, a natural person of the full age of majority, domiciled in and a citizen of the State of Louisiana, Parish of Plaquemines, individually, and on behalf of all other similarly situated persons constituting the Class sought to be certified pursuant to Rule 23 of the Federal Rules of Civil Procedure;

Kristine Collins, a natural person of the full age of majority, domiciled in and a citizen of the State of Louisiana, Parish of Lafourche, individually, and on behalf of all other similarly situated persons constituting the Class sought to be certified pursuant to Rule 23 of the Federal Rules of Civil Procedure;

Regina Falgoust, a natural person of the full age of majority, domiciled in and a citizen of the State of Louisiana, Parish of Terrebonne, individually, and on behalf of all other similarly situated persons constituting the Class sought to be certified pursuant to Rule 23 of the Federal Rules of Civil Procedure;

Abraham Gamberella, a natural person of the full age of majority, domiciled in and a citizen of the State of Louisiana, Parish of Terrebonne, individually, and on behalf of all other similarly situated persons constituting the Class sought to be certified pursuant to Rule 23 of the Federal Rules of Civil Procedure;

Adam J. Hebert, a natural person of the full age of majority, domiciled in and a citizen of the State of Louisiana, Parish of Terrebonne, individually, and on behalf of all other similarly situated persons constituting the Class sought to be certified pursuant to Rule 23 of the Federal Rules of Civil Procedure;

Fred Ledet, a natural person of the full age of majority, domiciled in and a citizen of the State of Louisiana, Parish of Lafourche, individually, and on behalf of all other similarly situated persons constituting the Class sought to be certified pursuant to Rule 23 of the Federal Rules of Civil Procedure;

Stanwood Moore, Jr., a natural person of the full age of majority, domiciled in and a citizen of the State of Louisiana, Parish of Terrebonne, individually, and on behalf of all other similarly situated persons constituting the Class sought to be certified pursuant to Rule 23 of the

Federal Rules of Civil Procedure; and

James Scales, III, a natural person of the full age of majority, domiciled in and a citizen of the State of Louisiana, Parish of Terrebonne, individually, and on behalf of all other similarly situated persons constituting the Class sought to be certified pursuant to Rule 23 of the Federal Rules of Civil Procedure.

3.

_**Defendants:**_

a)   Howard L. Nations, APC, a Texas corporation doing business in the State of Louisiana and within this district;

b)   The Nicks Law Firm, LLC, a Mississippi limited liability company doing business in the State of Louisiana and within this district;

c)   Rueb & Motta, APLC, a California corporation doing business in the State of Louisiana and within this district;

d)   Joseph A. Motta, Attorney at Law, APLC, a California corporation doing business in the State of Louisiana and within this district; and,

e)   The Rueb Law Firm, APLC, a California corporation doing business in the State of Louisiana and within this district; (collectively "Defendants" all of whom participated collectively in the solicitation and engagement of BP Subsistence Claimants as a joint venture).

## JURISDICTION AND VENUE

4.

This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA") because: (i) there are 100 or more class members, (ii) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and (iii) at least one Plaintiff and Defendant are citizens of different states. _See_ 28 U.S.C. § 1332(d).

To date, undersigned counsel have been engaged by and represent approximately two hundred fifteen (215) individuals, all of whom contend and believe they have been harmed by the Defendants in the same manner as the named Plaintiffs herein, and thus, are putative Class

members. Plaintiffs anticipate the number of potential Class members will only continue to grow in the coming months. Therefore, CAFA's minimum requirement of 100 class members has been easily satisfied. CAFA's minimum amount in controversy requirement of $5,000,000.00 is also satisfied. The Plaintiffs' damages are easily calculated by using the "Subsistence Loss Formula" described in the BP Settlement Agreement and created by the BP Settlement Program. This formulaic calculation makes the computation of each Class member's subsistence loss a simple mathematical equation which involves inputting data and values based on charts created by the BP Settlement Program. The "Subsistence Loss Formula" used by DHECC to calculate total compensation is below:



**DEEPWATER HORIZON**
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

## Subsistence Loss Formula

Distribution is determined using the following methodology:

| Family Member | Age | Gender | Percent of Diet from Subsistence | | | Reasonable Caloric Consumption | Daily Allowable Subsistence Calories with 45 Percent Threshold |
|---|---|---|---|---|---|---|---|
| | | | Claimant Reported | | If Claimant Reported>45%=45% | | |
| A | B | C | D | → | If Claimant Reported D > 45% then D = 45% | E (From Table 6 Using A, B, and C) | F = D * E |
| | | | | → | | | |
| **Totals** | | | | | | | **DS** |

Harvest is determined using the following methodology:

| Species | Gross Harvest Loss (lbs.) | Consumable Portion of Harvest | Consumable Retail Product (lbs.) | Percent Bartered | Percent Consumed | Appropriate Pricing based on Loss Period | Retail Value Bartered | Retail Value Consumed | Kcal / lbs. | Total Caloric Value Distributed |
|---|---|---|---|---|---|---|---|---|---|---|
| G | H | I (From Table 8 using G | J = H * I | K | L | M (Consistent with Claimant Loss Period) | N = J*K*M | P = J*L*M | Q (From Table 9 Using G) | R = J*L*Q |
| **Totals** | | | | | | | **BV** | **CV** | | **TC** |

Legend

Information from Claim Forms and Claims Administrator conducted Interviews

Statistical information derived from the Report on Estimates of Caloric Intake and Caloric Value of Foods for Residents in the Gulf Coast Region of the United States

Information generated through calculation

Retail prices included in the Seafood and Game Retail Price Chart

The Client Calculator is defined as follows:

| | |
|---|---|
| Retail Value – Consumed | [CV] |
| Retail Value – Bartered | [BV] |
| Loss Period in Days | [LP] |
| Total Caloric Value Consumed | [TC] |
| Daily Caloric Value Consumed | [DC] = [TC] / [LP] |
| Daily Allowable Subsistence Calories | [DS] |
| Consumption to Distribution Ratio | [CR] = [DC] / [DS] |
| Value of Lost Harvest – Consumed if [CR]>1 | [VH] = [CV] / [CR] |
| Value of Lost Harvest – Consumed if [CR]<1 | [VH] = [CV] |
| Total Compensation Amount Pre RTP | [TA] = [BV]+[VH] |
| RTP (2.25) | [RP] = [TA] * 2.25 |
| Total Compensation Amount | [TA] + [RP] |

4

418961
1/11/13

If the "Subsistence Loss Formula" is applied to those Plaintiffs for whom documentation has been made available, an average Subsistence Claim of approximately $44,600.00 has been determined. Thus, the amount in controversy related to the presently represented two hundred fifteen (215) Plaintiffs will be approximately $9,589,000.00 – well above CAFA's $5,000,000.00 minimum requirement.

Further, CAFA's diversity requirement is also satisfied. In this case, each named Plaintiff is a citizen of Louisiana. The principal place of business of Howard L. Nations, APC is Texas. The Nicks Law Firm, LLC is solely owned by its member, Shantrell Nicks, a citizen of Mississippi. The principal place of business of Rueb & Motta, APLC is California. The principal place of business of Joseph A. Motta, Attorney at Law, APLC is California. The principal place of business of The Rueb Law Firm, APLC is California.

Additionally, this Court also has diversity jurisdiction under 28 U.S.C. § 1332(a) because all of the named Class representatives and the Defendants are completely diverse and the claim of Abraham Gamberella, a proposed Class Representative, against the Defendants exceeds $75,000. Gamberella possessed a Subsistence Claim individually and on behalf of his three (3) dependents. Gamberella regularly fished in Madison Bay, Wonder Lake, and Lake Barré in Terrebonne Parish and Elmer's Island in Jefferson Parish.  Unfortunately, due to the BP oil spill, he was unable to fish at his regular locations from April 20, 2010 to March 7, 2012.  Due to the closed areas, Gamberella lost the ability to harvest his normal amounts of croaker, sheepshead, drum, redfish, flounder, speckled trout, shrimp, and crabs. Applying the BP Settlement Program's "Subsistence Loss Formula" to the information Gamberella provided the Defendants to file his Subsistence Claim yields a loss amount for Gamberella in excess of $100,000. Because this Court has diversity jurisdiction of Gamberella's claim, and he is a proposed Class

Representative, this Court has supplemental jurisdiction over the other Class members' claims pursuant to 28 U.S.C. § 1367 regardless of whether the CAFA requirements are satisfied.[1]

5.

Venue is proper in the Eastern District of Louisiana pursuant to 28 U.S.C. § 1391(b)(2) and (3) because a substantial number of the events or omissions giving rise to the Plaintiffs' claims occurred in this district. It is uncontradicted that the BP Oil Spill caused damage to the residents of this district, including members of the proposed Plaintiff Class. Thus, the Plaintiffs' claims for damages and losses from the BP Oil Spill originated in this district. Litigation for recovery of economic damages caused by the BP Oil Spill was held and concluded in this district. Moreover, Defendants purposely availed themselves in this district by soliciting the Plaintiffs, who reside in this district, by advertising and holding "Fishing Claim Centers/Meeting Locations" in this district. Further, Defendants received substantial revenues from their representation of other claimants residing in this district. Additionally, Nations Law Firm, in defending a lawsuit against it in Florida, has made jurisdictional representations indicating that this Court is a proper jurisdictional forum for BP Subsistence Claims. Defendant wrote: "It cannot be disputed that the Plaintiffs' claims arise from litigation based in Louisiana Federal Court and that the Court of the Eastern District of Louisiana is the proper jurisdiction for this matter to be brought."[2]

---

[1] *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 549 (2005) ("We hold that, where the other elements of jurisdiction are present and at least one named plaintiff in the action satisfies the amount-in-controversy requirement, §1367 does authorize supplemental jurisdiction over the claims of other plaintiffs in the same Article III case or controversy, even if those claims are for less than the jurisdictional amount specified in the statute setting forth the requirements for diversity jurisdiction.")

[2] See Defendant's Supplemental Exhibit and Memorandum (Florida litigation). The Downs Law Group, A Florida Corporation v. no. 18-12590-CA The Nations Law Firm, Rueb & Motta, PLC, The Nicks Law Firm, LLC and Litigation Settlement Services, Inc.

## FACTUAL ALLEGATIONS

6.

The Deepwater Horizon was a semi-submersible oil drilling rig owned by Transocean and leased, chartered, and operated by BP approximately fifty (50) miles southeast of Venice, Louisiana in the Gulf of Mexico. At approximately 10 o'clock p.m. on April 20, 2010, while the Deepwater Horizon was performing oil and gas operations off the coast of Louisiana, an explosion occurred on the vessel, causing its crewmembers to be thrown overboard and killing at least 11 crewmembers aboard the vessel. The explosion and subsequent fire caused such significant damage that the Deepwater Horizon subsequently sank in approximately 5,000 feet of water.

7.

As a result of the explosion and the subsequent sinking of BP's Deepwater Horizon, it has been estimated that 4.9 million barrels of oil leaked into the Gulf of Mexico between April 20, 2010 and July 15, 2010.  The 87-day oil spill caused significant ecological and economical damage to Louisiana, Mississippi, Alabama, Florida, and Texas.

8.

Due to the devastation caused to the coastal marine and wildlife habitats by the BP Oil Spill, the Louisiana Department of Wildlife and Fisheries, on April 30, 2010, closed a significant number of coastal boundaries and waterways for recreational and commercial fishing. The other Gulf states followed with similar recreational and commercial fishing directives and closures.

9.

The members of the proposed Plaintiff Class reside in Louisiana, Mississippi, Alabama, and Florida, where they, at all times prior to the BP Oil Spill, caught and harvested natural

resources from the Gulf of Mexico, such as fish, seafood, and game in a traditional manner to sustain their basic personal and family dietary, economic, and security needs.  Plaintiffs intended to continue catching and harvesting fish, seafood, and game for the purpose of subsistence use. However, as a result of the closures of coastal boundaries, waterbodies, and waterways, the Plaintiffs were unable to harvest fish, seafood, or game in the closed areas. Typically, these geographically closed areas were used by the Plaintiffs because of their proximity to the Plaintiffs' residences. Consequently, the Plaintiffs sustained a significant loss of subsistence use of the traditionally abundant coastal natural resources.

10.

At all times during which the Plaintiffs used or intended to use the coastal natural resources for subsistence, the Plaintiffs maintained and held valid government-issued licenses to harvest fish, seafood, and game in their respective home states.

11.

At all relevant times, the Plaintiffs were not fishing or hunting for sport. Instead, Plaintiffs harvested natural resources from the Gulf of Mexico for subsistence purposes.

12.

Multiple class action lawsuits were filed against BP and other parties responsible for the BP Oil Spill to recover losses, including economic and property damage, sustained as a result of the BP Oil Spill. These lawsuits were consolidated in a Multidistrict Litigation proceeding (MDL No. 2179) in the United States District Court for the Eastern District of Louisiana.

13.

Ultimately, the matters pending in MDL No. 2179 resulted in the Deepwater Horizon Economic and Property Damages Settlement Agreement ("BP Settlement Agreement"), which was certified by the Court on December 21, 2012.

14.

The BP Settlement Agreement established the Economic and Property Damages Settlement Class ("BP Class"), which included persons and entities who were located in geographically defined areas around the Gulf Coast and who sustained losses as a result of the BP Oil Spill.

15.

For eligible claimants, the BP Settlement Agreement provided for payment of economic loss and property damage claims for certain damage categories: Business Economic Loss, Individual Economic Loss, Subsistence Loss, Coastal Real Property Damage, Wetlands Real Property Damage, and Vessel of Opportunity Charter Payments.

16.

BP Class members were able to assert their rights with respect the BP Settlement Agreement and to receive compensation for their BP Oil Spill related losses by filing claims (i.e. BP Claims) with the Deepwater Horizon Economic Claims Center ("DHECC"), which administered claims established by the BP Settlement Agreement. Failure by the claimant or his counsel (in this case Defendants) to include or submit the required documents rendered a claim ineligible for compensation. [See ¶¶ 31 and 37 for required information and documentation for a valid, eligible Subsistence Claim as per the DHECC requirements.]

17.

The deadline to file all BP Claims, including Subsistence Claims, with DHECC was June 8, 2015 (except for those claims carved out previously in the Seafood Compensation Program - compensation for commercial fishermen - which are not at issue in this litigation). The deadline to file BP Claims was promulgated by the DHECC so that all interested parties and their counsel were aware of the deadline. The following notice of the BP Claims filing deadline was posted on the DHECC website:

> **10.    *June 8, 2015 Filing Deadline (Posted May 18, 2015).*** The final deadline for filing all Deepwater Horizon Economic and Property Damages Settlement Program claims is June 8, 2015. This deadline does not apply to or extend the deadline for filing claims under the Seafood Compensation Program, which deadline has already expired. Claim Forms for filing of all new claims (other than those under the Seafood Compensation Program) must be completed and signed in accordance with Section 4.4.5 of the Settlement Agreement, and submitted to the Settlement Program on or before June 8, 2015. Click here to view an Alert with additional information.



*June 8, 2015 Filing Deadline*

1.   **Final Deadline.**  The final deadline for filing all Deepwater Horizon Economic and Property Damages Settlement Program claims is **June 8, 2015**. This deadline does **not** apply to or extend the deadline for filing claims under the Seafood Compensation Program, which deadline has already expired.  Claim Forms for filing of all new claims (other than those under the Seafood Compensation Program) must be completed and signed in accordance with Section 4.4.5 of the Settlement Agreement, and submitted to the Settlement Program on or before **June 8, 2015**.  If you have already completed a Claim Form but have not yet signed and submitted it to the Settlement Program, you must do so on or before **June 8, 2015**.  The following table outlines how to ensure that your completed and signed Claim Form is timely submitted, depending on which method of submission you choose:

| TIMELY SUBMISSION OF COMPLETED CLAIM FORM | | | |
|---|---|---|---|
| | **Method of Submission** | **How to Measure Timeliness** | **Address** |
| 1. | Portal | Submitted through the Portal on or before midnight, prevailing Central Time on June 8, 2015. | Your secure Settlement Program Portal. |
| 2. | Email | Email sent on or before midnight, prevailing Central Time on June 8, 2015. | ClaimForms@deepwaterhorizoneconomicsettlement.com |
| 3. | Regular US Mail | Item postmarked on or before June 8, 2015.<br><br>If item has a commercial metered date stamp (*e.g.* a Pitney Bowes postage machine) and does not have a USPS postmark, the metered date stamp must be on or before June 8, 2015. | Deepwater Horizon Economic Claims Center<br>PO Box 10272<br>Dublin, OH 43017-5772<br><br>or<br><br>Deepwater Horizon Economic Claims Center<br>c/o Claims Administrator<br>5151 Blazer Parkway Suite A<br>Dublin, OH 43017 |
| 4. | Registered or Certified Mail | Item postmarked on or before June 8, 2015. | Deepwater Horizon Economic Claims Center<br>c/o Claims Administrator<br>5151 Blazer Parkway Suite A<br>Dublin, OH 43017 |

480007
5/15/15

1 of 2


**DEEPWATER HORIZON**
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| TIMELY SUBMISSION OF COMPLETED CLAIM FORM | | | |
|---|---|---|---|
| | Method of Submission | How to Measure Timeliness | Address |
| 5. | Commercial Delivery Service, *e.g.* Fed Ex, UPS | Item placed in the hands of the commercial carrier on or before June 8, 2015. | Deepwater Horizon Economic Claims Center c/o Claims Administrator 5151 Blazer Parkway Suite A Dublin, OH 43017 |

2.    *Procedure in the Case of Delivery Irregularities*. If the postmark is missing or not legible, or if the submission is received by the Settlement Program from a commercial delivery carrier more than five calendar days after June 8, 2015, the Claims Administrator will require the Claimant or his/her authorized representative to submit to the Claims Administrator evidence determined by the Claims Administrator, in his sole discretion, to be sufficient to establish that the Claim Form was submitted on or before June 8, 2015.

480007
5/15/15

2 of 2

### 18.

To capitalize on the BP Settlement Agreement, Defendants solicited the Plaintiffs and thousands of other individuals who were entitled to compensation for a subsistence loss related to the BP Oil Spill. Specifically, Defendants sought to represent the interests of the Plaintiffs and others by agreeing to prepare and file their BP Claims with DHECC in order for the Plaintiffs and others to receive compensation for BP Oil Spill related subsistence losses. In consideration for the legal representation of their clients, including the Plaintiffs, the Defendants received attorneys' fees of 25% of the amount of the client's recovery.

19.

During the months leading up to the June 8, 2015 deadline, one method of client solicitation used by the Defendants was to advertise meetings held by the Defendants at locations and times the Defendants commonly called "Fishing Claim Centers/Meeting Locations" in Louisiana, Mississippi, Alabama, and Florida. The Defendants advertised their "Fishing Claim Centers/Meeting Locations" as locations at which BP class members could file their BP Claim, but the Defendants actually used these advertised meetings as an opportunity to attract BP Class members to the locations in order to engage the clients for legal representation in the BP Settlement Agreement claims process. The Defendants' "Fishing Claim Centers/Meeting Locations" were advertised by the Defendants as provided below:

| LOUISIANA | | |
|---|---|---|
| **Chauvin** | **Belle Chasse** | **Fourchon** |
| 5756 Hwy. 56 | 8558 Hwy 23 | Moran's Marina |
| Project Learn (Old Lil Caillou School) | Law Office of Terry Sercovich | 27900 Highway 1 |
| Monday-Saturday 9AM-1PM | Monday-Friday 9AM-6PM | Conference Room |
| Open Memorial Day Weekend | | Memorial Day Weekend |
| (Sat.-Mon.) 9AM-5PM | | (Sat.-Mon.) 9AM-5PM |
| | | |
| **Golden Meadow** | **Jean Lafitte** | **Violet/St. Bernard's** |
| 2406 South Bayou Dr. | 2608 Jean Lafitte Blvd. | 2621 Colonial Blvd. |
| American Legion Post 259 | The Lafitte Art's Center | Our Lady of Lourdes Church |
| Monday-Saturday 9AM-1PM | Monday-Friday 10AM-7PM | Secondary Building |
| Open Memorial Day Weekend | Open Memorial Day Weekend | Monday-Friday 9AM-5PM |
| (Sat.-Mon.) 9AM-5PM | (Sat.-Mon.) 9AM-5PM | |
| | | |
| **Chackbay** | **Grand Isle** | |
| 100 Highway 304 | 3101 Highway 1 | |
| Volunteer Fire Station | Grand Isle Multiplex | |
| Monday-Saturday 9AM-1PM | Thurs. May 21 and Fri. May 22 | |
| Open Memorial Day Weekend | 8AM-3PM | |
| (Sat.-Mon.) 9AM-5PM | | |
| | | |
| **Chalmette** | **Cocodrie** | |

| 3400 Paris Rd | Houma Oilman's Rodeo |
|---|---|
| Best Western | 8239 Highway 56 |
| May 23, 24, 25 & 30, 31 9AM-5PM | Harbor Light Marina |
| Open Memorial Day Weekend | Thurs. May 21-Sat. May 23 |
| (Sat.-Mon.) 9AM-5PM | 3PM-7PM |

| MISSISSIPPI | | |
|---|---|---|
| **Gulfport** | **Gulfport** | **Pascagoula** |
| 1600 E. Beach Blvd. | 1806 25th Ave. | 4800 Amoco Rd. |
| Courtyard Marriott | Nicks Law Firm | Holiday Inn Express |
| Harbor & Bay Rooms | Monday-Saturday | Pascagoula-Moss Point |
| May 23, 24, 30, and 31 | 9AM-5PM | May 23, 24, 30 and 31 |
| 9AM-5PM | | 9AM-5PM |

| ALABAMA | | |
|---|---|---|
| **Mobile** | **Mobile** | **Gulf Shores** |
| 600 West I-65 Service Rd. South | 7220 First St. | 3947 Gulf Shores Pkwy. |
| Ashbury Hotel Conference Center | Nicks Law Firm | Gulf Shores Staybridge Suites |
| May 23, 24, 30 and 31 | Monday-Friday 10AM-9PM | Magnolia Meeting Room |
| 9AM-5PM | Saturday 10AM-2PM | May 23, 24, 30 and 31 |
| | | 9AM-5PM |

| FLORIDA | |
|---|---|
| **Pensacola** | **Pensacola** |
| 7813 N. Davis Hwy | 3298 Summit Blvd., Ste. 32 |
| Holiday Inn | Law Offices of Dan Sanders |
| Garden Room | Ameriprise Financial Bldg. |
| May 23, 24, 30 and 31 | Monday-Thursday 9AM-4PM |
| 9AM-5PM | Friday 9AM-12PM |

20.

Defendants' "Fishing Claim Centers/Meeting Locations" were successful in attracting clients, as Defendants executed thousands of attorney-client agreements with newly engaged clients leading up to and on the DHECC June 8, 2015 deadline.

21.

The Plaintiffs herein were members of the BP class by virtue of their status as residents of Gulf Coast states at all relevant times and who sustained a subsistence loss as a result of the coastal boundary and waterway closures necessitated by the BP Oil Spill. The BP Settlement Agreement expressly provided for a subsistence loss "Damage Category" and the BP Settlement Agreement provided for payment of settlement amounts to BP class members, such as the Plaintiffs, who sustained a subsistence loss.

22.

On June 1, 2015, Plaintiff Deborah A. Gaudet attended the Defendants' "Fishing Claim Centers/Meeting Locations" at Old Lil Caillou School in Chauvin, Louisiana where she executed the Defendants' contingency fee agreement, titled "Attorney-Client Contract," to engage the Defendants to prepare and file her individual BP Claim in order to be compensated for her BP Oil Spill-related subsistence losses. The "Attorney-Client Contract" was executed by Plaintiff Deborah A. Gaudet and was also executed by Howard L. Nations on behalf of the Defendants. The executed "Attorney-Client Contract" is provided below.

Likewise, Timothy Butler, Dian B. Campbell, Kristine Collins, Regina Falgoust, Abraham Gamberella, Adam J. Hebert, Fred Ledet, Stanwood Moore, Jr., and James Scales, III, executed an "Attorney-Client Contract" identical to the one signed by Gaudet.  All of the Attorney-Client contracts were provided to the Plaintiffs by Defendants' representatives or agents at the facilities. Some of the contracts had been signed previously by one of the Defendants and others were awaiting signature by one of the Defendants. The contracts are provided below.

## ATTORNEY-CLIENT CONTRACT

This Contract is made by and between Client and Rueb & Motta, The Nations Law Firm, and the Nicks Law Firm, ("Attorneys"). In consideration of the mutual promises herein, Client and Attorneys agree as follows:

I. **Purpose of Representation.** Client retains Attorneys to prosecute all claims against all necessary defendants arising out of Event: BP Deepwater Horizon Oil Spill Class Action Settlement for *Subsistence Claims*.

II. **Attorneys' Fees & Expenses.** Attorneys will advance reasonable and necessary expenses incurred for prosecution of the case and obtain full reimbursement out of Client's share of any amount collected herein. In consideration of Attorneys' services, Client agrees to pay to Attorneys:

> TOTAL ATTORNEYS' FEES OF 25% OF
> ANY AMOUNT COLLECTED HEREIN

These Attorneys' Fees shall be distributed among the following firms and does NOT change the amount of Client's share:

NLF/Rueb & Motta, PLC 12.5% and The Nicks Law Firm 12.5%

III. **Assignment of Interest.** In consideration of Attorneys' services, Client hereby sells, conveys, and assigns to Attorneys an interest, as indicated in section II above, in Client's claims and causes of action, and in any action, compromise, settlement, judgment, payment of services or recovery by whatever means.

IV. **Approval Necessary for Settlement.** Attorneys are authorized to determine settlement strategy and negotiate on Client's behalf. No settlement of any nature shall be made for claims of Client without Client's final approval, and Client shall not obtain any settlement without Attorneys' written approval. Attorneys are hereby granted a limited power of attorney with full authority to prepare, fully execute, sign and file all legal instruments, pleadings, drafts, authorizations and papers reasonably necessary to conclude this representation as fully as Client could do in person. Attorneys are expressly authorized to communicate with me by phone, email or text messaging as they deem necessary.

V. **Deferred Attorney Fees.** The client agrees that counsel may have the option to structure or defer all, or a portion, of its contingency fees ("Deferred Amount") in exchange for a certain nonqualified tax-deferred compensation obligation issued by an independent third party (the "Issuer"). Such payment of Deferred Amount to the Issuer, whether by the defendant,

defendant's agent, shall fully discharge the client's obligation with respect to the portion of the settlement proceeds that represent fees the counsel has elected to defer.

VI. **Representations.** It is understood that Attorneys cannot warrant or guarantee the outcome of the case, and Attorneys have made no representations that Client will recover any or all of the funds sought. Client also understands that obtaining a judgment does not guarantee that the defendant will satisfy the judgment.

VII. **Withdrawal.** Attorneys have the option to withdraw and cease to represent Client for any reason.

VIII. **Association of Other Attorneys.** Attorneys have the option to associate any attorney(s) to assist in the preparation and litigation of this case, in the sole discretion of Attorneys.

VII. **Mississippi Law.** This Contract shall be construed under and in accordance with the laws of the State of Mississippi, and all obligations of the parties created hereunder are performable in Mississippi.

IX. **Parties Bound.** This Contract shall be binding upon and inure to the benefit of the parties hereto and their heirs, executors, administrators, legal representatives, successors and assigns where permitted by this Contract.

X. **Legal Construction.** In case any provision in this Contract shall be held to be invalid, illegal or unenforceable, such holding shall not affect any other provisions herein, and this Contract shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

XI. **Prior Contracts Superseded.** This Contract constitutes the sole agreement of the parties and supersedes any prior written or oral agreements between the parties regarding Event.

XII. **Lien Resolution.** Client understands that federal law may require all parties to resolve Medicare's, Medicaid's, and other private and government health insurance plans' claims for reimbursement prior to distributing any verdict or settlement proceeds. Client agrees that Attorneys may take all steps relating to resolution of these federally mandated issues, and expenses incurred for such shall be treated as case expenses deducted from Client's net recovery.

XIII. **Client Certification.** Client is voluntarily signing this Contract, fully aware of its terms and conditions. All questions regarding the contract have been answered by Attorneys.

---

Signed & Accepted this ___ day of _____, 2015

Rueb & Motta, The Nations Law Firm, and the Nicks Law Firm.

*Howard L. Nations*

Howard L Nations, Esq. on behalf of Attorneys

Signed & Accepted this _1_ day of *June* 2015

*Deborah Gaudet*

Client's Signature

*Deborah A. Gaudet*

Client's Printed Name

SSN: [Redacted] 2836  DOB: 2/12/48

*911416-PA-GAUDET* POA

BOX 115-NEW - GAUDET, DEBORAH A

## ATTORNEY-CLIENT CONTRACT

This Contract is made by and between Client and Rueb & Motta, The Nations Law Firm, and the Nicks Law Firm, ("Attorneys"). In consideration of the mutual promises herein, Client and Attorneys agree as follows:

**I.  Purpose of Representation.** Client retains Attorneys to prosecute all claims against all necessary defendants arising out of Event: BP Deepwater Horizon Oil Spill Class Action Settlement for *Subsistence Claims*.

**II. Attorneys' Fees & Expenses.** Attorneys will advance reasonable and necessary expenses incurred for prosecution of the case and obtain full reimbursement out of Client's share of any amount collected herein. In consideration of Attorneys' services, Client agrees to pay to Attorneys:

> **TOTAL ATTORNEYS' FEES OF 25% OF ANY AMOUNT COLLECTED HEREIN**

These Attorneys' Fees shall be distributed among the following firms and does NOT change the amount of Client's share:

NLF/Rueb & Motta, PLC 12.5% and The Nicks Law Firm 12.5%

**III. Assignment of Interest.** In consideration of Attorneys' services, Client hereby sells, conveys, and assigns to Attorneys an interest, as indicated in section II above, in Client's claims and causes of action, and in any action, compromise, settlement, judgment, payment of services or recovery by whatever means.

**IV. Approval Necessary for Settlement.** Attorneys are authorized to determine settlement strategy and negotiate on Client's behalf. No settlement of any nature shall be made for claims of Client without Client's final approval, and Client shall not obtain any settlement without Attorneys' written approval. Attorneys are hereby granted a limited power of attorney with full authority to prepare, fully execute, sign and file all legal instruments, pleadings, drafts, authorizations and papers reasonably necessary to conclude this representation as fully as Client could do in person. Attorneys are expressly authorized to communicate with me by phone, email or text messaging as they deem necessary.

**V.  Deferred Attorney Fees.** The client agrees that counsel may have the option to structure or defer all, or a portion, of its contingency fees ("Deferred Amount") in exchange for a certain nonqualified tax-deferred compensation obligation issued by an independent third party (the "Issuer"). Such payment of Deferred Amount to the Issuer, whether by the defendant,

defendant's agent, shall fully discharge the client's obligation with respect to the portion of the settlement proceeds that represent fees the counsel has elected to defer.

**VI. Representations.** It is understood that Attorneys cannot warrant or guarantee the outcome of the case, and Attorneys have made no representations that Client will recover any or all of the funds sought. Client also understands that obtaining a judgment does not guarantee that the defendant will satisfy the judgment.

**VII. Withdrawal.** Attorneys have the option to withdraw and cease to represent Client for any reason.

**VIII.  Association of Other Attorneys.** Attorneys have the option to associate any attorney(s) to assist in the preparation and litigation of this case, in the sole discretion of Attorneys.

**VII.  Mississippi Law.** This Contract shall be construed under and in accordance with the laws of the State of Mississippi, and all obligations of the parties created hereunder are performable in Mississippi.

**IX. Parties Bound.** This Contract shall be binding upon and inure to the benefit of the parties hereto and their heirs, executors, administrators, legal representatives, successors and assigns where permitted by this Contract.

**X.  Legal Construction.** In case any provision in this Contract shall be held to be invalid, illegal or unenforceable, such holding shall not affect any other provisions herein, and this Contract shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

**XI. Prior Contracts Superseded.** This Contract constitutes the sole agreement of the parties and supersedes any prior written or oral agreements between the parties regarding Event.

**XII.  Lien Resolution.** Client understands that federal law may require all parties to resolve Medicare's, Medicaid's, and other private and government health insurance plans' claims for reimbursement prior to distributing any verdict or settlement proceeds. Client agrees that Attorneys may take all steps relating to resolution of these federally mandated issues, and expenses incurred for such shall be treated as case expenses deducted from Client's net recovery.

**XIII.  Client Certification.** Client is voluntarily signing this Contract, fully aware of its terms and conditions. All questions regarding the contract have been answered by Attorneys.

---

Signed & Accepted this ___ day of _____, 2015

Rueb & Motta, The Nations Law Firm, and the Nicks Law Firm.

*Howard L. Nations*

---
Howard L Nations, Esq. on behalf of Attorneys

Signed & Accepted this 26 day of May, 2015

*[signature]*

---
Client's Signature

Timothy Butler

---
Client's Printed Name

SSN: Redacted -7457   DOB: 11/20/65

# ATTORNEY-CLIENT CONTRACT

This Contract is made by and between Client and Rueb & Motta, The Nations Law Firm, and the Nicks Law Firm, ("Attorneys"). In consideration of the mutual promises herein, Client and Attorneys agree as follows:

**I. Purpose of Representation.** Client retains Attorneys to prosecute all claims against all necessary defendants arising out of Event: BP Deepwater Horizon Oil Spill Class Action Settlement for *Subsistence Claims*.

**II. Attorneys' Fees & Expenses.** Attorneys will advance reasonable and necessary expenses incurred for prosecution of the case and obtain full reimbursement out of Client's share of any amount collected herein. In consideration of Attorneys' services, Client agrees to pay to Attorneys:

> **TOTAL ATTORNEYS' FEES OF 25% OF**
> **ANY AMOUNT COLLECTED HEREIN**

These Attorneys' Fees shall be distributed among the following firms and does NOT change the amount of Client's share:

NLF/Rueb & Motta, PLC 12.5% and The Nicks Law Firm 12.5%

**III. Assignment of Interest.** In consideration of Attorneys' services, Client hereby sells, conveys, and assigns to Attorneys an interest, as indicated in section II above, in Client's claims and causes of action, and in any action, compromise, settlement, judgment, payment of services or recovery by whatever means.

**IV. Approval Necessary for Settlement.** Attorneys are authorized to determine settlement strategy and negotiate on Client's behalf. No settlement of any nature shall be made for claims of Client without Client's final approval, and Client shall not obtain any settlement without Attorneys' written approval. Attorneys are hereby granted a limited power of attorney with full authority to prepare, fully execute, sign and file all legal instruments, pleadings, drafts, authorizations and papers reasonably necessary to conclude this representation as fully as Client could do in person. Attorneys are expressly authorized to communicate with me by phone, email or text messaging as they deem necessary.

**V. Deferred Attorney Fees.** The client agrees that counsel may have the option to structure or defer all, or a portion, of its contingency fees ("Deferred Amount") in exchange for a certain nonqualified tax-deferred compensation obligation issued by an independent third party (the "Issuer"). Such payment of Deferred Amount to the Issuer, whether by the defendant,

defendant's agent, shall fully discharge the client's obligation with respect to the portion of the settlement proceeds that represent fees the counsel has elected to defer.

**VI. Representations.** It is understood that Attorneys cannot warrant or guarantee the outcome of the case, and Attorneys have made no representations that Client will recover any or all of the funds sought. Client also understands that obtaining a judgment does not guarantee that the defendant will satisfy the judgment.

**VII. Withdrawal.** Attorneys have the option to withdraw and cease to represent Client for any reason.

**VIII. Association of Other Attorneys.** Attorneys have the option to associate any attorney(s) to assist in the preparation and litigation of this case, in the sole discretion of Attorneys.

**VII. Mississippi Law.** This Contract shall be construed under and in accordance with the laws of the State of Mississippi, and all obligations of the parties created hereunder are performable in Mississippi.

**IX. Parties Bound.** This Contract shall be binding upon and inure to the benefit of the parties hereto and their heirs, executors, administrators, legal representatives, successors and assigns where permitted by this Contract.

**X. Legal Construction.** In case any provision in this Contract shall be held to be invalid, illegal or unenforceable, such holding shall not affect any other provisions herein, and this Contract shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

**XI. Prior Contracts Superseded.** This Contract constitutes the sole agreement of the parties and supersedes any prior written or oral agreements between the parties regarding Event.

**XII. Lien Resolution.** Client understands that federal law may require all parties to resolve Medicare's, Medicaid's, and other private and government health insurance plans' claims for reimbursement prior to distributing any verdict or settlement proceeds. Client agrees that Attorneys may take all steps relating to resolution of these federally mandated issues, and expenses incurred for such shall be treated as case expenses deducted from Client's net recovery.

**XIII. Client Certification.** Client is voluntarily signing this Contract, fully aware of its terms and conditions. All questions regarding the contract have been answered by Attorneys.

---

Signed & Accepted this 29 day of MAY , 2015

Rueb & Motta, The Nations Law Firm, and the Nicks Law Firm.

*Howard L. Nations*
_____
Howard L Nations, Esq. on behalf of Attorneys

Signed & Accepted this 29 day of MAY , 2015

*Dian B Campbell*
_____
Client's Signature

DIAN B CAMPBELL
_____
Client's Printed Name

SSN: Redacted 5667    DOB: 3/01/1960

## ATTORNEY-CLIENT CONTRACT

This Contract is made by and between Client and Rueb & Motta, The Nations Law Firm, and the Nicks Law Firm, ("Attorneys"). In consideration of the mutual promises herein, Client and Attorneys agree as follows:

**I. Purpose of Representation.** Client retains Attorneys to prosecute all claims against all necessary defendants arising out of Event: BP Deepwater Horizon Oil Spill Class Action Settlement for Subsistence Claims.

**II. Attorneys' Fees & Expenses.** Attorneys will advance reasonable and necessary expenses incurred for prosecution of the case and obtain full reimbursement out of Client's share of any amount collected herein. In consideration of Attorneys' services, Client agrees to pay to Attorneys:

> **TOTAL ATTORNEYS' FEES OF 25% OF**
> **ANY AMOUNT COLLECTED HEREIN**

These Attorneys' Fees shall be distributed among the following firms and does NOT change the amount of Client's share:

NLF/Rueb & Motta, PLC 12.5% and The Nicks Law Firm 12.5%

**III. Assignment of Interest.** In consideration of Attorneys' services, Client hereby sells, conveys, and assigns to Attorneys an interest, as indicated in section II above, in Client's claims and causes of action, and in any action, compromise, settlement, judgment, payment of services or recovery by whatever means.

**IV. Approval Necessary for Settlement.** Attorneys are authorized to determine settlement strategy and negotiate on Client's behalf. No settlement of any nature shall be made for claims of Client without Client's final approval, and Client shall not obtain any settlement without Attorneys' written approval. Attorneys are hereby granted a limited power of attorney with full authority to prepare, fully execute, sign and file all legal instruments, pleadings, drafts, authorizations and papers reasonably necessary to conclude this representation as fully as Client could do in person. Attorneys are expressly authorized to communicate with me by phone, email or text messaging as they deem necessary.

**V. Deferred Attorney Fees.** The client agrees that counsel may have the option to structure or defer all, or a portion, of its contingency fees ("Deferred Amount") in exchange for a certain nonqualified tax-deferred compensation obligation issued by an independent third party (the "Issuer"). Such payment of Deferred Amount to the Issuer, whether by the defendant,

defendant's agent, shall fully discharge the client's obligation with respect to the portion of the settlement proceeds that represent fees the counsel has elected to defer.

**VI. Representations.** It is understood that Attorneys cannot warrant or guarantee the outcome of the case, and Attorneys have made no representations that Client will recover any or all of the funds sought. Client also understands that obtaining a judgment does not guarantee that the defendant will satisfy the judgment.

**VII. Withdrawal.** Attorneys have the option to withdraw and cease to represent Client for any reason.

**VIII. Association of Other Attorneys.** Attorneys have the option to associate any attorney(s) to assist in the preparation and litigation of this case, in the sole discretion of Attorneys.

**VII. Mississippi Law.** This Contract shall be construed under and in accordance with the laws of the State of Mississippi, and all obligations of the parties created hereunder are performable in Mississippi.

**IX. Parties Bound.** This Contract shall be binding upon and inure to the benefit of the parties hereto and their heirs, executors, administrators, legal representatives, successors and assigns where permitted by this Contract.

**X. Legal Construction.** In case any provision in this Contract shall be held to be invalid, illegal or unenforceable, such holding shall not affect any other provisions herein, and this Contract shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

**XI. Prior Contracts Superseded.** This Contract constitutes the sole agreement of the parties and supersedes any prior written or oral agreements between the parties regarding Event.

**XII. Lien Resolution.** Client understands that federal law may require all parties to resolve Medicare's, Medicaid's, and other private and government health insurance plans' claims for reimbursement prior to distributing any verdict or settlement proceeds. Client agrees that Attorneys may take all steps relating to resolution of these federally mandated issues, and expenses incurred for such shall be treated as case expenses deducted from Client's net recovery.

**XIII. Client Certification.** Client is voluntarily signing this Contract, fully aware of its terms and conditions. All questions regarding the contract have been answered by Attorneys.

---

Signed & Accepted this ___ day of _____, 2015

Rueb & Motta, The Nations Law Firm, and the Nicks Law Firm.

_Howard L. Nations_

Howard L Nations, Esq. on behalf of Attorneys

Signed & Accepted this 8 day of June, 2015

_Kristen E Collins_
Client's Signature

_Kristine E Collins_
Client's Printed Name

SSN: [Redacted] 8683  DOB: 2-5-71

## ATTORNEY-CLIENT CONTRACT

This Contract is made by and between Client and Rueb & Motta, The Nations Law Firm, and the Nicks Law Firm, ("Attorneys"). In consideration of the mutual promises herein, Client and Attorneys agree as follows:

**I. Purpose of Representation.** Client retains Attorneys to prosecute all claims against all necessary defendants arising out of Event: <u>BP Deepwater Horizon Oil Spill Class Action Settlement for **Subsistence Claims**</u>.

**II. Attorneys' Fees & Expenses.** Attorneys will advance reasonable and necessary expenses incurred for prosecution of the case and obtain full reimbursement out of Client's share of any amount collected herein. In consideration of Attorneys' services, Client agrees to pay to Attorneys:

> **TOTAL ATTORNEYS' FEES OF 25% OF**
> **ANY AMOUNT COLLECTED HEREIN**

These Attorneys' Fees shall be distributed among the following firms and does NOT change the amount of Client's share:

NLF/Rueb & Motta, PLC 12.5% and The Nicks Law Firm 12.5%

**III. Assignment of Interest.** In consideration of Attorneys' services, Client hereby sells, conveys, and assigns to Attorneys an interest, as indicated in section II above, in Client's claims and causes of action, and in any action, compromise, settlement, judgment, payment of services or recovery by whatever means.

**IV. Approval Necessary for Settlement.** Attorneys are authorized to determine settlement strategy and negotiate on Client's behalf. <u>No settlement of any nature shall be made for claims of Client without Client's final approval</u>, and Client shall not obtain any settlement without Attorneys' written approval. Attorneys are hereby granted a limited power of attorney with full authority to prepare, fully execute, sign and file all legal instruments, pleadings, drafts, authorizations and papers reasonably necessary to conclude this representation as fully as Client could do in person. Attorneys are expressly authorized to communicate with me by phone, email or text messaging as they deem necessary.

**V. Deferred Attorney Fees.** The client agrees that counsel may have the option to structure or defer all, or a portion, of its contingency fees ("Deferred Amount") in exchange for a certain nonqualified tax-deferred compensation obligation issued by an independent third party (the "Issuer"). Such payment of Deferred Amount to the Issuer, whether by the defendant,

defendant's agent, shall fully discharge the client's obligation with respect to the portion of the settlement proceeds that represent fees the counsel has elected to defer.

**VI. Representations.** It is understood that Attorneys cannot warrant or guarantee the outcome of the case, and Attorneys have made no representations that Client will recover any or all of the funds sought. Client also understands that obtaining a judgment does not guarantee that the defendant will satisfy the judgment.

**VII. Withdrawal.** Attorneys have the option to withdraw and cease to represent Client for any reason.

**VIII. Association of Other Attorneys.** Attorneys have the option to associate any attorney(s) to assist in the preparation and litigation of this case, in the sole discretion of Attorneys.

**VII. Mississippi Law.** This Contract shall be construed under and in accordance with the laws of the State of Mississippi, and all obligations of the parties created hereunder are performable in Mississippi.

**IX. Parties Bound.** This Contract shall be binding upon and inure to the benefit of the parties hereto and their heirs, executors, administrators, legal representatives, successors and assigns where permitted by this Contract.

**X. Legal Construction.** In case any provision in this Contract shall be held to be invalid, illegal or unenforceable, such holding shall not affect any other provisions herein, and this Contract shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

**XI. Prior Contracts Superseded.** This Contract constitutes the sole agreement of the parties and supersedes any prior written or oral agreements between the parties regarding Event.

**XII. Lien Resolution.** Client understands that federal law may require all parties to resolve Medicare's, Medicaid's, and other private and government health insurance plans' claims for reimbursement prior to distributing any verdict or settlement proceeds. Client agrees that Attorneys may take all steps relating to resolution of these federally mandated issues, and expenses incurred for such shall be treated as case expenses deducted from Client's net recovery.

**XIII. Client Certification.** Client is voluntarily signing this Contract, fully aware of its terms and conditions. All questions regarding the contract have been answered by Attorneys.

| | |
|---|---|
| *Signed & Accepted this___ day of_____, 2015* | *Signed & Accepted this ⑤ day of _____, 2015* |
| **RUEB & MOTTA** | _Regina M. Falgoust_ <br> Client's Signature |
| | _Regina M. Falgoust_ <br> Client's Printed Name |
| Gregory D. Rueb, Esq. on behalf of Attorneys | SSN: Redacted -2229  DOB: 05-31-61 |

# ATTORNEY-CLIENT CONTRACT

This Contract is made by and between Client and Rueb & Motta, The Nations Law Firm, and the Nicks Law Firm, ("Attorneys"). In consideration of the mutual promises herein, Client and Attorneys agree as follows:

**I.  Purpose of Representation.** Client retains Attorneys to prosecute all claims against all necessary defendants arising out of Event: <u>BP Deepwater Horizon Oil Spill Class Action Settlement for **Subsistence Claims**</u>.

**II. Attorneys' Fees & Expenses.** Attorneys will advance reasonable and necessary expenses incurred for prosecution of the case and obtain full reimbursement out of Client's share of any amount collected herein. In consideration of Attorneys' services, Client agrees to pay to Attorneys:

> **TOTAL ATTORNEYS' FEES OF 25% OF**
> **ANY AMOUNT COLLECTED HEREIN**

These Attorneys' Fees shall be distributed among the following firms and does NOT change the amount of Client's share:

NLF/Rueb & Motta, PLC 12.5% and The Nicks Law Firm 12.5%

**III. Assignment of Interest.** In consideration of Attorneys' services, Client hereby sells, conveys, and assigns to Attorneys an interest, as indicated in section II above, in Client's claims and causes of action, and in any action, compromise, settlement, judgment, payment of services or recovery by whatever means.

**IV. Approval Necessary for Settlement.** Attorneys are authorized to determine settlement strategy and negotiate on Client's behalf. <u>No settlement of any nature shall be made for claims of Client without Client's final approval</u>, and Client shall not obtain any settlement without Attorneys' written approval. Attorneys are hereby granted a limited power of attorney with full authority to prepare, fully execute, sign and file all legal instruments, pleadings, drafts, authorizations and papers reasonably necessary to conclude this representation as fully as Client could do in person. Attorneys are expressly authorized to communicate with me by phone, email or text messaging as they deem necessary.

**V. Deferred Attorney Fees.** The client agrees that counsel may have the option to structure or defer all, or a portion, of its contingency fees ("Deferred Amount") in exchange for a certain nonqualified tax-deferred compensation obligation issued by an independent third party (the "Issuer"). Such payment of Deferred Amount to the Issuer, whether by the defendant,

defendant's agent, shall fully discharge the client's obligation with respect to the portion of the settlement proceeds that represent fees the counsel has elected to defer.

**VI. Representations.** It is understood that Attorneys cannot warrant or guarantee the outcome of the case, and Attorneys have made no representations that Client will recover any or all of the funds sought. Client also understands that obtaining a judgment does not guarantee that the defendant will satisfy the judgment.

**VII. Withdrawal.** Attorneys have the option to withdraw and cease to represent Client for any reason.

**VIII.   Association of Other Attorneys.** Attorneys have the option to associate any attorney(s) to assist in the preparation and litigation of this case, in the sole discretion of Attorneys.

**VII.   Mississippi Law.** This Contract shall be construed under and in accordance with the laws of the State of Mississippi, and all obligations of the parties created hereunder are performable in Mississippi.

**IX. Parties Bound.** This Contract shall be binding upon and inure to the benefit of the parties hereto and their heirs, executors, administrators, legal representatives, successors and assigns where permitted by this Contract.

**X. Legal Construction.** In case any provision in this Contract shall be held to be invalid, illegal or unenforceable, such holding shall not affect any other provisions herein, and this Contract shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

**XI. Prior Contracts Superseded.** This Contract constitutes the sole agreement of the parties and supersedes any prior written or oral agreements between the parties regarding Event.

**XII.   Lien Resolution.** Client understands that federal law may require all parties to resolve Medicare's, Medicaid's, and other private and government health insurance plans' claims for reimbursement prior to distributing any verdict or settlement proceeds. Client agrees that Attorneys may take all steps relating to resolution of these federally mandated issues, and expenses incurred for such shall be treated as case expenses deducted from Client's net recovery.

**XIII.   Client Certification.** Client is voluntarily signing this Contract, fully aware of its terms and conditions. All questions regarding the contract have been answered by Attorneys.

| | |
|---|---|
| Signed & Accepted this___day of_____, 2015 | Signed & Accepted this _12_ day of _may_ , 2015 |
| Rueb & Motta, The Nations Law Firm, and the Nicks Law Firm. | _Ahaha X Gamberella_ |
| | Client's Signature |
| _Howard L. Nations_ | _Abraham X. Gamberella_ |
| | Client's Printed Name |
| Howard L Nations, Esq. on behalf of Attorneys | SSN: Redacted 8862   DOB: _11-17-1977_ |

*901871-PA-Gamberell*  POA

BOX 07A - Gamberella , Abraham Xavier

## ATTORNEY-CLIENT CONTRACT

This Contract is made by and between Client and Rueb & Motta, The Nations Law Firm, and the Nicks Law Firm, ("Attorneys"). In consideration of the mutual promises herein, Client and Attorneys agree as follows:

**I. Purpose of Representation.** Client retains Attorneys to prosecute all claims against all necessary defendants arising out of Event: BP Deepwater Horizon Oil Spill Class Action Settlement for *Subsistence Claims*.

**II. Attorneys' Fees & Expenses.** Attorneys will advance reasonable and necessary expenses incurred for prosecution of the case and obtain full reimbursement out of Client's share of any amount collected herein. In consideration of Attorneys' services, Client agrees to pay to Attorneys:

> ### TOTAL ATTORNEYS' FEES OF 25% OF ANY AMOUNT COLLECTED HEREIN

These Attorneys' Fees shall be distributed among the following firms and does NOT change the amount of Client's share:

NLF/Rueb & Motta, PLC 12.5% and The Nicks Law Firm 12.5%

**III. Assignment of Interest.** In consideration of Attorneys' services, Client hereby sells, conveys, and assigns to Attorneys an interest, as indicated in section II above, in Client's claims and causes of action, and in any action, compromise, settlement, judgment, payment of services or recovery by whatever means.

**IV. Approval Necessary for Settlement.** Attorneys are authorized to determine settlement strategy and negotiate on Client's behalf. No settlement of any nature shall be made for claims of Client without Client's final approval, and Client shall not obtain any settlement without Attorneys' written approval. Attorneys are hereby granted a limited power of attorney with full authority to prepare, fully execute, sign and file all legal instruments, pleadings, drafts, authorizations and papers reasonably necessary to conclude this representation as fully as Client could do in person. Attorneys are expressly authorized to communicate with me by phone, email or text messaging as they deem necessary.

**V. Deferred Attorney Fees.** The client agrees that counsel may have the option to structure or defer all, or a portion, of its contingency fees ("Deferred Amount") in exchange for a certain nonqualified tax-deferred compensation obligation issued by an independent third party (the "Issuer"). Such payment of Deferred Amount to the Issuer, whether by the defendant,

defendant's agent, shall fully discharge the client's obligation with respect to the portion of the settlement proceeds that represent fees the counsel has elected to defer.

**VI. Representations.** It is understood that Attorneys cannot warrant or guarantee the outcome of the case, and Attorneys have made no representations that Client will recover any or all of the funds sought. Client also understands that obtaining a judgment does not guarantee that the defendant will satisfy the judgment.

**VII. Withdrawal.** Attorneys have the option to withdraw and cease to represent Client for any reason.

**VIII.   Association of Other Attorneys.** Attorneys have the option to associate any attorney(s) to assist in the preparation and litigation of this case, in the sole discretion of Attorneys.

**VII.   Mississippi Law.** This Contract shall be construed under and in accordance with the laws of the State of Mississippi, and all obligations of the parties created hereunder are performable in Mississippi.

**IX. Parties Bound.** This Contract shall be binding upon and inure to the benefit of the parties hereto and their heirs, executors, administrators, legal representatives, successors and assigns where permitted by this Contract.

**X. Legal Construction.** In case any provision in this Contract shall be held to be invalid, illegal or unenforceable, such holding shall not affect any other provisions herein, and this Contract shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

**XI. Prior Contracts Superseded.** This Contract constitutes the sole agreement of the parties and supersedes any prior written or oral agreements between the parties regarding Event.

**XII.   Lien Resolution.** Client understands that federal law may require all parties to resolve Medicare's, Medicaid's, and other private and government health insurance plans' claims for reimbursement prior to distributing any verdict or settlement proceeds. Client agrees that Attorneys may take all steps relating to resolution of these federally mandated issues, and expenses incurred for such shall be treated as case expenses deducted from Client's net recovery.

**XIII.   Client Certification.** Client is voluntarily signing this Contract, fully aware of its terms and conditions. All questions regarding the contract have been answered by Attorneys.

---

Signed & Accepted this___ day of_____, 2015

Rueb & Motta, The Nations Law Firm, and the Nicks Law Firm.

*Howard L. Nations*
_____
Howard L Nations, Esq. on behalf of Attorneys

---

Signed & Accepted this 29 day of *May*, 2015

*Adam J. Hebert*
_____
Client's Signature

*Adam J. Hebert*
_____
Client's Printed Name

SSN: Redacted -5516   DOB: 3-6-63

## ATTORNEY-CLIENT CONTRACT

This Contract is made by and between Client and Rueb & Motta, The Nations Law Firm, and the Nicks Law Firm, ("Attorneys"). In consideration of the mutual promises herein, Client and Attorneys agree as follows:

**I. Purpose of Representation.** Client retains Attorneys to prosecute all claims against all necessary defendants arising out of Event: BP Deepwater Horizon Oil Spill Class Action Settlement for Subsistence Claims.

**II. Attorneys' Fees & Expenses.** Attorneys will advance reasonable and necessary expenses for prosecution of the case and obtain full reimbursement out of Client's share of any amount collected herein. In consideration of Attorneys' services, Client agrees to pay to Attorneys:

> TOTAL ATTORNEYS' FEES OF 25% OF
> ANY AMOUNT COLLECTED HEREIN

These Attorneys' Fees shall be distributed among the following firms and does NOT change the amount of Client's share:

NLF/Rueb & Motta, PLC 12.5% and The Nicks Law Firm 12.5%

**III. Assignment of Interest.** In consideration of Attorneys' services, Client hereby sells, conveys, and assigns to Attorneys an interest, as indicated in section II above, in Client's claims and causes of action, and in any action, compromise, settlement, judgment, payment of services or recovery by whatever means.

**IV. Approval Necessary for Settlement.** Attorneys are authorized to determine settlement strategy and negotiate on Client's behalf. No settlement of any nature shall be made for claims of Client without Client's final approval, and Client shall not obtain any settlement without Attorneys' written approval. Attorneys are hereby granted a limited power of attorney with full authority to prepare, fully execute, sign and file all legal instruments, pleadings, drafts, authorizations and papers reasonably necessary to conclude this representation as fully as Client could do in person. Attorneys are expressly authorized to communicate with me by phone, email or text messaging as they deem necessary.

**V. Deferred Attorney Fees.** The client agrees that counsel may have the option to structure or defer all, or a portion, of its contingency fees ("Deferred Amount") in exchange for a certain nonqualified tax-deferred compensation obligation issued by an independent third party (the "Issuer"). Such payment of Deferred Amount to the Issuer, whether by the defendant,

defendant's agent, shall fully discharge the client's obligation with respect to the portion of the settlement proceeds that represent fees the counsel has elected to defer.

**VI. Representations.** It is understood that Attorneys cannot warrant or guarantee the outcome of the case, and Attorneys have made no representations that Client will recover any or all of the funds sought. Client also understands that obtaining a judgment does not guarantee that the defendant will satisfy the judgment.

**VII. Withdrawal.** Attorneys have the option to withdraw and cease to represent Client for any reason.

**VIII. Association of Other Attorneys.** Attorneys have the option to associate any attorney(s) to assist in the preparation and litigation of this case, in the sole discretion of Attorneys.

**VII. Mississippi Law.** This Contract shall be construed under and in accordance with the laws of the State of Mississippi, and all obligations of the parties created hereunder are performable in Mississippi.

**IX. Parties Bound.** This Contract shall be binding upon and inure to the benefit of the parties hereto and their heirs, executors, administrators, legal representatives, successors and assigns where permitted by this Contract.

**X. Legal Construction.** In case any provision in this Contract shall be held to be invalid, illegal or unenforceable, such holding shall not affect any other provisions herein, and this Contract shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

**XI. Prior Contracts Superseded.** This Contract constitutes the sole agreement of the parties and supersedes any prior written or oral agreements between the parties regarding Event.

**XII. Lien Resolution.** Client understands that federal law may require all parties to resolve Medicare's, Medicaid's, and other private and government health insurance plans' claims for reimbursement prior to distributing any verdict or settlement proceeds. Client agrees that Attorneys may take all steps relating to resolution of these federally mandated issues, and expenses incurred for such shall be treated as case expenses deducted from Client's net recovery.

**XIII. Client Certification.** Client is voluntarily signing this Contract, fully aware of its terms and conditions. All questions regarding the contract have been answered by Attorneys.

| | |
|---|---|
| Signed & Accepted this___day of_____, 2015 | Signed & Accepted this 8 day of June 2015 |
| | *Fred M Ledet* |
| Rueb & Motta, The Nations Law Firm, and the Nicks Law Firm. | Client's Signature |
| *Howard L. Nations* | *Fred Ledet* |
| | Client's Printed Name |
| Howard L Nations, Esq. on behalf of Attorneys | SSN: Redacted -9116 DOB: 7-24-1965 |

## ATTORNEY-CLIENT CONTRACT

This Contract is made by and between Client and Rueb & Motta, The Nations Law Firm, and the Nicks Law Firm, ("Attorneys"). *In consideration of the mutual promises herein, Client and Attorneys agree as follows:*

**I.   Purpose of Representation.** Client retains Attorneys to prosecute all claims against all necessary defendants arising out of Event: BP Deepwater Horizon Oil Spill Class Action Settlement *for Subsistence Claims.*

**II. Attorneys' Fees & Expenses.** Attorneys will advance reasonable and necessary expenses incurred for prosecution of the case and obtain full reimbursement out of Client's share of any amount collected herein. In consideration of Attorneys' services, Client agrees to pay to Attorneys:

> **TOTAL ATTORNEYS' FEES OF 25% OF**
> **ANY AMOUNT COLLECTED HEREIN**

These Attorneys' Fees shall be distributed among the following firms and does NOT change the amount of Client's share:

NLF/Rueb & Motta, PLC 12.5% and The Nicks Law Firm 12.5%

**III. Assignment of Interest.** In consideration of Attorneys' services, Client hereby sells, conveys, and assigns to Attorneys an interest, as indicated in section II above, in Client's claims and causes of action, and in any action, compromise, settlement, judgment, payment of services or recovery by whatever means.

**IV. Approval Necessary for Settlement.** Attorneys are authorized to determine settlement strategy and negotiate on Client's behalf. No settlement of any nature shall be made for claims of Client without Client's final approval, and Client shall not obtain any settlement without Attorneys' written approval. Attorneys are hereby granted a limited power of attorney with full authority to prepare, fully execute, sign and file all legal instruments, pleadings, drafts, authorizations and papers reasonably necessary to conclude this representation as fully as Client could do in person. Attorneys are expressly authorized to communicate with me by phone, email or text messaging as they deem necessary.

**V. Deferred Attorney Fees.** The client agrees that counsel may have the option to structure or defer all, or a portion, of its contingency fees ("Deferred Amount") in exchange for a certain nonqualified tax-deferred compensation obligation issued by an independent third party (the "Issuer"). Such payment of Deferred Amount to the Issuer, whether by the defendant,

defendant's agent, shall fully discharge the client's obligation with respect to the portion of the settlement proceeds that represent fees the counsel has elected to defer.

**VI. Representations.** It is understood that Attorneys cannot warrant or guarantee the outcome of the case, and Attorneys have made no representations that Client will recover any or all of the funds sought. Client also understands that obtaining a judgment does not guarantee that the defendant will satisfy the judgment.

**VII. Withdrawal.** Attorneys have the option to withdraw and cease to represent Client for any reason.

**VIII.   Association of Other Attorneys.** Attorneys have the option to associate any attorney(s) to assist in the preparation and litigation of this case, in the sole discretion of Attorneys.

**VII.   Mississippi Law.** This Contract shall be construed under and in accordance with the laws of the State of Mississippi, and all obligations of the parties created hereunder are performable in Mississippi.

**IX. Parties Bound.** This Contract shall be binding upon and inure to the benefit of the parties hereto and their heirs, executors, administrators, legal representatives, successors and assigns where permitted by this Contract.

**X. Legal Construction.** In case any provision in this Contract shall be held to be invalid, illegal or unenforceable, such holding shall not affect any other provisions herein, and this Contract shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

**XI. Prior Contracts Superseded.** This Contract constitutes the sole agreement of the parties and supersedes any prior written or oral agreements between the parties regarding Event.

**XII. Lien Resolution.** Client understands that federal law may require all parties to resolve Medicare's, Medicaid's, and other private and government health insurance plans' claims for reimbursement prior to distributing any verdict or settlement proceeds. Client agrees that Attorneys may take all steps relating to resolution of these federally mandated issues, and expenses incurred for such shall be treated as case expenses deducted from Client's net recovery.

**XIII. Client Certification.** Client is voluntarily signing this Contract, fully aware of its terms and conditions. All questions regarding the contract have been answered by Attorneys.

---

Signed & Accepted this____ day of_____, 2015

Rueb & Motta, The Nations Law Firm, and the Nicks Law Firm.

*Howard L. Nations*
_____
Howard L Nations, Esq. on behalf of Attorneys

---

Signed & Accepted this *11* day of M A Y, 2015

*Stanwood J Moore Jr.*
_____
Client's Signature

STANWOOD J  MOORE JR
Client's Printed Name

SSN: [Redacted] -1721 DOB: 4 - 29 - 46

## ATTORNEY-CLIENT CONTRACT

This Contract is made by and between Client and Rueb & Motta, The Nations Law Firm, and the Nicks Law Firm, ("Attorneys"). In consideration of the mutual promises herein, Client and Attorneys agree as follows:

**I. Purpose of Representation.** Client retains Attorneys to prosecute all claims against all necessary defendants arising out of Event: BP Deepwater Horizon Oil Spill Class Action Settlement for *Subsistence Claims*.

**II. Attorneys' Fees & Expenses.** Attorneys will advance reasonable and necessary expenses incurred for prosecution of the case and obtain full reimbursement out of Client's share of any amount collected herein. In consideration of Attorneys' services, Client agrees to pay to Attorneys:

> **TOTAL ATTORNEYS' FEES OF 25% OF**
> **ANY AMOUNT COLLECTED HEREIN**

These Attorneys' Fees shall be distributed among the following firms and does NOT change the amount of Client's share:

NLF/Rueb & Motta, PLC 12.5% and The Nicks Law Firm 12.5%

**III. Assignment of Interest.** In consideration of Attorneys' services, Client hereby sells, conveys, and assigns to Attorneys an interest, as indicated in section II above, in Client's claims and causes of action, and in any action, compromise, settlement, judgment, payment of services or recovery by whatever means.

**IV. Approval Necessary for Settlement.** Attorneys are authorized to determine settlement strategy and negotiate on Client's behalf. No settlement of any nature shall be made for claims of Client without Client's final approval, and Client shall not obtain any settlement without Attorneys' written approval. Attorneys are hereby granted a limited power of attorney with full authority to prepare, fully execute, sign and file all legal instruments, pleadings, drafts, authorizations and papers reasonably necessary to conclude this representation as fully as Client could do in person. Attorneys are expressly authorized to communicate with me by phone, email or text messaging as they deem necessary.

**V. Deferred Attorney Fees.** The client agrees that counsel may have the option to structure or defer all, or a portion, of its contingency fees ("Deferred Amount") in exchange for a certain nonqualified tax-deferred compensation obligation issued by an independent third party (the "Issuer"). Such payment of Deferred Amount to the Issuer, whether by the defendant,

defendant's agent, shall fully discharge the client's obligation with respect to the portion of the settlement proceeds that represent fees the counsel has elected to defer.

**VI. Representations.** It is understood that Attorneys cannot warrant or guarantee the outcome of the case, and Attorneys have made no representations that Client will recover any or all of the funds sought. Client also understands that obtaining a judgment does not guarantee that the defendant will satisfy the judgment.

**VII. Withdrawal.** Attorneys have the option to withdraw and cease to represent Client for any reason.

**VIII. Association of Other Attorneys.** Attorneys have the option to associate any attorney(s) to assist in the preparation and litigation of this case, in the sole discretion of Attorneys.

**VII. Mississippi Law.** This Contract shall be construed under and in accordance with the laws of the State of Mississippi, and all obligations of the parties created hereunder are performable in Mississippi.

**IX. Parties Bound.** This Contract shall be binding upon and inure to the benefit of the parties hereto and their heirs, executors, administrators, legal representatives, successors and assigns where permitted by this Contract.

**X. Legal Construction.** In case any provision in this Contract shall be held to be invalid, illegal or unenforceable, such holding shall not affect any other provisions herein, and this Contract shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

**XI. Prior Contracts Superseded.** This Contract constitutes the sole agreement of the parties and supersedes any prior written or oral agreements between the parties regarding Event.

**XII. Lien Resolution.** Client understands that federal law may require all parties to resolve Medicare's, Medicaid's, and other private and government health insurance plans' claims for reimbursement prior to distributing any verdict or settlement proceeds. Client agrees that Attorneys may take all steps relating to resolution of these federally mandated issues, and expenses incurred for such shall be treated as case expenses deducted from Client's net recovery.

**XIII. Client Certification.** Client is voluntarily signing this Contract, fully aware of its terms and conditions. All questions regarding the contract have been answered by Attorneys.

Signed & Accepted this ___ day of _____, 2015

Rueb & Motta, The Nations Law Firm, and the Nicks Law Firm.

*Howard L. Nations*

Howard L Nations, Esq. on behalf of Attorneys

Signed & Accepted this **9** day of **JUNE**, 2015

Client's Signature

JAMES v SCALES III

Client's Printed Name

SSN: Redacted 6722   DOB: 8-12-74

23.

Based on the express terms of the "Attorney-Client Contract," the Defendants obligated themselves to "prosecute all claims against all necessary defendants arising out of Event: BP Deepwater Horizon Oil Spill Class Action Settlement," including preparing and filing the Plaintiffs' BP Subsistence Claim with the DHECC as outlined in the BP Settlement Agreement. Thus, the Defendants were obligated contractually to competently and diligently represent the Plaintiffs' legal rights in the BP Claims process.

24.

Once the Plaintiffs engaged the Defendant law firms, their access to the DHECC online portal, which maintained all documents and notices for each claimant, was restricted solely to their lawyers, without any personal access.

25.

The Plaintiffs relied upon the representations of the Defendants, specifically, that the Defendant law firms would prosecute their respective BP Claim competently and zealously to maximize the Plaintiffs' recovery for their BP Oil Spill-related subsistence loss.

26.

The Plaintiffs who visited the Defendants' intake facilities signed a "sign-in" sheet at the entrance of the facility and received an intake packet provided by the Defendants. Each Plaintiff executed the intake packet documents, including a pre-signed "Attorney-Client Contract," Authorization Form providing Defendants the authority to obtain the claimant's pertinent state hunting and fishing license, IRS-Form W-9, and initial intake forms for the claimant to provide personal information and loss of species information. Plaintiffs were told the intake packets included all of the required documentation for the Defendants to prepare and file Plaintiffs' BP

Subsistence Claim in order to receive compensation for their losses.

27.

Tragically for the Plaintiff Class, the Defendants failed to timely file complete BP Claims prior to the June 8, 2015 deadline. Consequently, the Plaintiff Class lost the opportunity to receive an award for their BP Subsistence Claim with the DHECC because the Defendants failed to comply with the claim-filing deadline and the mandatory filing requirements.

28.

At all material times after June 8, 2015, the Defendant law firms misrepresented this outcome determinative fact, namely that the Defendants had never filed a timely and complete claim on behalf of the Plaintiff Class members.

29.

Since the Plaintiff Class was prohibited from communicating with DHECC or otherwise authorized to receive status updates on their BP Claim through the DHECC portal, the Plaintiff Class contacted the Defendant law firms usually by telephone to inquire about updates on the status of their BP Claim. On all of those occasions, Defendants advised Plaintiff Class members that their BP Claim was "still pending" before the DHECC in the BP Settlement Program.

30.

But for the Defendants' failure to timely file a complete BP claim on behalf of each Plaintiff Class member, the Plaintiff Class would have received awards from DHECC compensating them for their BP Oil Spill related-subsistence loss.

31.

At all material times, the Plaintiff Class members satisfied the required prongs of the BP Settlement Agreement in order to receive a compensation award from DHECC for their

subsistence loss.  First, a) the Plaintiff Class members satisfied the "Subsistence Claimant" definition in that they fished and hunted to harvest, catch, and consume Gulf of Mexico natural resources, such as fish, seafood, and game, in a traditional and customary manner to sustain their basic personal and family dietary and economic security needs, and b) Plaintiff Class members relied upon the subsistence resources that had been diminished or restricted in the geographic regions resulting from the BP Oil Spill.  Second, the Plaintiff Class members provided to the Defendants sufficient documentation to establish the quantity of Gulf of Mexico natural resources they lost during the specified time period. Third, the Plaintiff Class members provided to the Defendants copies of their state-issued hunting and fishing licenses for the fiscal year 2009-2010 and/or provided Defendants authorization forms to obtain the required hunting and fishing licenses for the pertinent year.

Thus, each Plaintiff Class member gave the Defendants all documentation necessary for the Defendants to file a valid and eligible Subsistence Claim on the Plaintiff's behalf, and the Plaintiff Class members would have received a compensation award from DHECC for their subsistence losses if Defendants had properly filed and completed their BP Subsistence Claim.

32.

On March 14, 2019, Deborah A. Gaudet received a form letter from the Defendant law firms. Curiously, the letter was dated October 31, 2018, but not postmarked until March 12, 2019.  For the first time, this letter communication from the Defendant law firms informed Mrs. Gaudet her "claim was one of many which were **denied** by BP."  However, no Subsistence Claim had ever been filed on behalf of Gaudet. The Defendants' "denial" letter further specified that Gaudet and the Defendant law firms were "left with no possibility of an effective appeal." The letter listed nine (9) examples of reasons that properly filed claims had been denied.

However, the Defendants' failure to timely file a complete claim on the claimant's behalf was noticeably absent from the list. A copy of this denial letter is provided below.

In February or March of 2019, Plaintiff Butler also received an identical form letter from the Defendant law firms stating that his Subsistence Claim had been denied.  In truth and in fact, the Defendants never filed a Subsistence Claim on his behalf. A copy of this denial letter is provided below.

In February or March of 2019, Plaintiff Campbell also received an identical form letter from the Defendant law firms stating that her Subsistence Claim had been denied.  In truth and in fact, the Defendants never filed a Subsistence Claim on her behalf. A copy of this denial letter is provided below.

In February or March of 2019, Plaintiff Falgoust received an identical form letter from the Defendant law firms stating that her Subsistence Claim had been denied.  In truth and in fact, Falgoust's Subsistence Claim had been denied because the Defendants knowingly failed to include and submit all of the required documentation to DHECC. Simply put, Defendants failed to timely and properly file a colorable Subsistence Claim for Falgoust. A copy of this denial letter is provided below.

In February or March of 2019, Plaintiff Hebert received an identical form letter from the Defendant law firms stating that his Subsistence Claim had been denied. In truth and in fact, the Defendants never filed a Subsistence Claim on his behalf. A copy of this denial letter is provided below.

In February or March of 2019, Plaintiff Moore received an identical form letter from the Defendant law firms stating that his Subsistence Claim had been denied. In truth and in fact, Moore's Subsistence Claim had been denied because the Defendants knowingly failed to include

and submit all of the required documentation to DHECC. Simply put, Defendants failed to timely and properly file a colorable Subsistence Claim for Moore. A copy of this denial letter is provided below.

In February or March of 2019, Plaintiff Scales received an identical form letter from the Defendant law firms stating that his Subsistence Claim had been denied. In truth and in fact, the Defendants never filed a Subsistence Claim on his behalf. A copy of this denial letter is provided below.[3]

---

[3] The remaining proposed Class Representatives also reported receiving the same letter, around the same time, but they no longer possess copies of the correspondence.

# THE NATIONS LAW FIRM  *attorney*

A NATIONAL LITIGATION FIRM

## Rueb & Motta

## The Nicks Law Firm

**HOWARD L. NATIONS**
BOARD CERTIFIED - PERSONAL INJURY TRIAL LAW
BOARD CERTIFIED - CIVIL TRIAL LAW
TEXAS BOARD OF LEGAL SPECIALIZATION
DIPLOMATE - CIVIL TRIAL ADVOCACY
NATIONAL BOARD OF TRIAL ADVOCACY
DIPLOMATE - NATIONAL COLLEGE OF ADVOCACY
ADMITTED IN TEXAS AND NEW YORK

HOUSTON OFFICE
3131 Smartpark Drive, Suite 205
Houston, Texas 77042
Phone 800-388-2600
Fax 866-357-1153
hpdlah@howardnations.com

100352346                                                   October 31, 2018

Deborah Gaudet
4138 Highway 665
Montegut LA 70377

Dear Deborah Gaudet,

The Deepwater Claims Administrator has advised us that the review of all BP Subsistence claims has been concluded and all claims have now either been awarded or denied. As you recall, we entered this litigation shortly before the filing deadline on June 8, 2015, because we learned that thousands of potentially qualified fishermen had not filed for their potential benefits. We realized at the time that BP would deny as many of these claims as possible, by every means possible, because more than 15,000 new claims were filed immediately before the filing deadline. We also advised all claimants that we would do our best but that we had to rely on very complete and accurate information from every claimant since there was no time to verify it before filing.

You are receiving this letter because your BP Subsistence (Fishing) Claim was one of many which were denied by BP, mostly based on very severe and narrow technicalities, some of which are listed below. Unfortunately, the settlement agreement allowed broad discretion in denying claims and we were left with no possibility of an effective appeal. While we exhausted appeals when they were available, most of the denials were based on administrative discretion which permitted no appeal. The following are several samples of the reasons for denial of numerous claims:

1) Prior GCCF or other economic claim payment.
2) Not having a valid fishing license during the relevant time period.
3) Failed field visit - completely discretionary.
4) Alleged fraud - completely discretionary.
5) Fishing in an area BP claims was not affected by the oil spill.
6) Listed species required a special gear license.
7) Not listing all gear used.
8) Not listing gear in a particular, specific manner.
9) Not having a proper species license.

We continue to prosecute any appeals that we feel may be subject to reconsideration and will advise you if the status of your claim changes.

Your BP Subsistence Claims Team

HOUSTON · WASHINGTON DC · NEW YORK

# THE NATIONS LAW FIRM

A NATIONAL LITIGATION FIRM

Rueb & Motta                                                    The Nicks Law Firm

HOWARD L. NATIONS                                                          HOUSTON OFFICE
AD HD CERTIFIED  PERSONAL INJURY TRIAL LAW                            3101 Briarpark Drive, Suite 208
BOARD CERTIFIED  CIVIL TRIAL LAW                                        Houston, Texas 77042
TEXAS BOARD OF LEGAL SPECIALIZATION                                      Phone 800-588-2600
DIPLOMATE  CIVIL TRIAL ADVOCACY                                          Fax 866-357-1153
NATIONAL BOARD OF TRIAL ADVOCACY                                       hnfish@howardnations.com
DIPLOMATE  NATIONAL COLLEGE OF ADVOCACY
ADMITTED IN TEXAS AND NEW YORK

                                          100353528                    October 31, 2018

Timothy Butler
205 Lake Penchant Ct
Houma LA 70360

Dear Timothy Butler,

The Deepwater Claims Administrator has advised us that the review of all BP Subsistence claims has been concluded and all claims have now either been awarded or denied. As you recall, we entered this litigation shortly before the filing deadline on June 8, 2015, because we learned that thousands of potentially qualified fishermen had not filed for their potential benefits. We realized at the time that BP would deny as many of these claims as possible, by every means possible, because more than 15,000 new claims were filed immediately before the filing deadline. We also advised all claimants that we would do our best but that we had to rely on very complete and accurate information from every claimant since there was no time to verify it before filing.

You are receiving this letter because your BP Subsistence (Fishing) Claim was one of many which were denied by BP, mostly based on very severe and narrow technicalities, some of which are listed below. Unfortunately, the settlement agreement allowed broad discretion in denying claims and we were left with no possibility of an effective appeal. While we exhausted appeals when they were available, most of the denials were based on administrative discretion which permitted no appeal. The following are several samples of the reasons for denial of numerous claims:

1)    Prior GCCF or other economic claim payment.
2)    Not having a valid fishing license during the relevant time period.
3)    Failed field visit - completely discretionary.
4)    Alleged fraud - completely discretionary.
5)    Fishing in an area BP claims was not affected by the oil spill.
6)    Listed species required a special gear license.
7)    Not listing all gear used.
8)    Not listing gear in a particular, specific manner.
9)    Not having a proper species license.

We continue to prosecute any appeals that we feel may be subject to reconsideration and will advise you if the status of your claim changes.

Your BP Subsistence Claims Team

# THE NATIONS LAW FIRM

A NATIONAL LITIGATION FIRM

**Rueb & Motta**                                                    **The Nicks Law Firm**

HOWARD L. NATIONS
BOARD CERTIFIED - PERSONAL INJURY TRIAL LAW
BOARD CERTIFIED - CIVIL TRIAL LAW
TEXAS BOARD OF LEGAL SPECIALIZATION
DIPLOMATE - CIVIL TRIAL ADVOCACY
NATIONAL BOARD OF TRIAL ADVOCACY
DIPLOMATE - NATIONAL COLLEGE OF ADVOCACY
ADMITTED IN TEXAS AND NEW YORK

HOUSTON OFFICE
3131 Briarpark Drive, Suite 208
Houston, Texas 77042
Phone 800-988-2600
Fax 866-357-1153
bpfish@howardnations.com

100344560                                                          October 31, 2018

Dian Campbell
217 Good News
Belle Chasse LA 70037

Dear Dian Campbell,

The Deepwater Claims Administrator has advised us that the review of all BP Subsistence claims has been concluded and all claims have now either been awarded or denied. As you recall, we entered this litigation shortly before the filing deadline on June 8, 2015, because we learned that thousands of potentially qualified fishermen had not filed for their potential benefits. We realized at the time that BP would deny as many of these claims as possible, by every means possible, because more than 15,000 new claims were filed immediately before the filing deadline. We also advised all claimants that we would do our best but that we had to rely on very complete and accurate information from every claimant since there was no time to verify it before filing.

You are receiving this letter because your BP Subsistence (Fishing) Claim was one of many which were denied by BP, mostly based on very severe and narrow technicalities, some of which are listed below. Unfortunately, the settlement agreement allowed broad discretion in denying claims and we were left with no possibility of an effective appeal. While we exhausted appeals when they were available, most of the denials were based on administrative discretion which permitted no appeal. The following are several samples of the reasons for denial of numerous claims:

1)    Prior GCCF or other economic claim payment.
2)    Not having a valid fishing license during the relevant time period.
3)    Failed field visit - completely discretionary.
4)    Alleged fraud - completely discretionary.
5)    Fishing in an area BP claims was not affected by the oil spill.
6)    Listed species required a special gear license.
7)    Not listing all gear used.
8)    Not listing gear in a particular, specific manner.
9)    Not having a proper species license.

We continue to prosecute any appeals that we feel may be subject to reconsideration and will advise you if the status of your claim changes.

Your BP Subsistence Claims Team

HOUSTON  •  WASHINGTON DC  •  NEW YORK

# THE NATIONS LAW FIRM

A NATIONAL LITIGATION FIRM

**Rueb & Motta**                                                      **The Nicks Law Firm**

HOWARD L. NATIONS                                                    HOUSTON OFFICE
BOARD CERTIFIED - PERSONAL INJURY TRIAL LAW                          3131 Briarpark Drive, Suite 208
BOARD CERTIFIED - CIVIL TRIAL LAW                                    Houston, Texas 77042
TEXAS BOARD OF LEGAL SPECIALIZATION                                  Phone 800-588-2600
DIPLOMATE - CIVIL TRIAL ADVOCACY                                     Fax 866-357-1953
NATIONAL BOARD OF TRIAL ADVOCACY                                     bpfish@howardnations.com
DIPLOMATE - NATIONAL COLLEGE OF ADVOCACY
ADMITTED IN TEXAS AND NEW YORK

                              100351972                              October 31, 2018

Regina Falgoust
1211 Lacroix Dr
Houma LA 70364

Dear Regina Falgoust,

        The Deepwater Claims Administrator has advised us that the review of all BP Subsistence claims has been concluded and all claims have now either been awarded or denied. As you recall, we entered this litigation shortly before the filing deadline on June 8, 2015, because we learned that thousands of potentially qualified fishermen had not filed for their potential benefits. We realized at the time that BP would deny as many of these claims as possible, by every means possible, because more than 15,000 new claims were filed immediately before the filing deadline. We also advised all claimants that we would do our best but that we had to rely on very complete and accurate information from every claimant since there was no time to verify it before filing.

        You are receiving this letter because your BP Subsistence (Fishing) Claim was one of many which were denied by BP, mostly based on very severe and narrow technicalities, some of which are listed below. Unfortunately, the settlement agreement allowed broad discretion in denying claims and we were left with no possibility of an effective appeal. While we exhausted appeals when they were available, most of the denials were based on administrative discretion which permitted no appeal. The following are several samples of the reasons for denial of numerous claims:

        1)      Prior GCCF or other economic claim payment.
        2)      Not having a valid fishing license during the relevant time period.
        3)      Failed field visit - completely discretionary.
        4)      Alleged fraud - completely discretionary.
        5)      Fishing in an area BP claims was not affected by the oil spill.
        6)      Listed species required a special gear license.
        7)      Not listing all gear used.
        8)      Not listing gear in a particular, specific manner.
        9)      Not having a proper species license.

        We continue to prosecute any appeals that we feel may be subject to reconsideration and will advise you if the status of your claim changes.

                                        Your BP Subsistence Claims Team


                    HOUSTON  ·  WASHINGTON DC  ·  NEW YORK

# THE NATIONS LAW FIRM

A NATIONAL LITIGATION FIRM

**Rueb & Motta**                                                    **The Nicks Law Firm**

HOWARD L. NATIONS                                              HOUSTON OFFICE
BOARD CERTIFIED - PERSONAL INJURY TRIAL LAW                    3131 Briarpark Drive, Suite 208
BOARD CERTIFIED - CIVIL TRIAL LAW                              Houston, Texas 77042
TEXAS BOARD OF LEGAL SPECIALIZATION                           Phone 800-385-2600
DIPLOMATE - CIVIL TRIAL ADVOCACY                              Fax 866-357-1153
NATIONAL BOARD OF TRIAL ADVOCACY                             byfish@howardnations.com
DIPLOMATE - NATIONAL COLLEGE OF ADVOCACY
ADMITTED IN TEXAS AND NEW YORK

                                   100341369                        October 31, 2018

Adam Hebert
1904 Coteau Rd
Houma LA 70364

Dear Adam Hebert,

   The Deepwater Claims Administrator has advised us that the review of all BP Subsistence claims has been concluded and all claims have now either been awarded or denied. As you recall, we entered this litigation shortly before the filing deadline on June 8, 2015, because we learned that thousands of potentially qualified fishermen had not filed for their potential benefits. We realized at the time that BP would deny as many of these claims as possible, by every means possible, because more than 15,000 new claims were filed immediately before the filing deadline. We also advised all claimants that we would do our best but that we had to rely on very complete and accurate information from every claimant since there was no time to verify it before filing.

   You are receiving this letter because your BP Subsistence (Fishing) Claim was one of many which were denied by BP, mostly based on very severe and narrow technicalities, some of which are listed below. Unfortunately, the settlement agreement allowed broad discretion in denying claims and we were left with no possibility of an effective appeal. While we exhausted appeals when they were available, most of the denials were based on administrative discretion which permitted no appeal. The following are several samples of the reasons for denial of numerous claims:

   1)   Prior GCCF or other economic claim payment.
   2)   Not having a valid fishing license during the relevant time period.
   3)   Failed field visit - completely discretionary.
   4)   Alleged fraud - completely discretionary.
   5)   Fishing in an area BP claims was not affected by the oil spill.
   6)   Listed species required a special gear license.
   7)   Not listing all gear used.
   8)   Not listing gear in a particular, specific manner.
   9)   Not having a proper species license.

   We continue to prosecute any appeals that we feel may be subject to reconsideration and will advise you if the status of your claim changes.

                                   Your BP Subsistence Claims Team

HOUSTON    WASHINGTON DC    NEW YORK

# THE NATIONS LAW FIRM

A NATIONAL LITIGATION FIRM

**Rueb & Motta**                                          **The Nicks Law Firm**

HOWARD L. NATIONS
BOARD CERTIFIED - PERSONAL INJURY TRIAL LAW
BOARD CERTIFIED - CIVIL TRIAL LAW
TEXAS BOARD OF LEGAL SPECIALIZATION
DIPLOMATE - CIVIL TRIAL ADVOCACY
NATIONAL BOARD OF TRIAL ADVOCACY
DIPLOMATE - NATIONAL COLLEGE OF ADVOCACY
ADMITTED IN TEXAS AND NEW YORK

HOUSTON OFFICE
3131 Briarpark Drive, Suite 208
Houston, Texas 77042
Phone 800-388-2600
Fax 866-357-1153
hpfield@howardnations.com

*(985) 6883272*
*216 BAYATAVIA AVE*
*HOUMA, LA 70360 APT 222*

100342051                                                October 31, 2018

Stanwood Moore              *BONNE TERRE II*
204 St Francis St
Houma LA 70364

Dear Stanwood Moore,

The Deepwater Claims Administrator has advised us that the review of all BP Subsistence claims has been concluded and all claims have now either been awarded or denied. As you recall, we entered this litigation shortly before the filing deadline on June 8, 2015, because we learned that thousands of potentially qualified fishermen had not filed for their potential benefits. We realized at the time that BP would deny as many of these claims as possible, by every means possible, because more than 15,000 new claims were filed immediately before the filing deadline. We also advised all claimants that we would do our best but that we had to rely on very complete and accurate information from every claimant since there was no time to verify it before filing.

You are receiving this letter because your BP Subsistence (Fishing) Claim was one of many which were denied by BP, mostly based on very severe and narrow technicalities, some of which are listed below. Unfortunately, the settlement agreement allowed broad discretion in denying claims and we were left with no possibility of an effective appeal. While we exhausted appeals when they were available, most of the denials were based on administrative discretion which permitted no appeal. The following are several samples of the reasons for denial of numerous claims:

1) Prior GCCF or other economic claim payment.
2) Not having a valid fishing license during the relevant time period.
3) Failed field visit - completely discretionary.
4) Alleged fraud - completely discretionary.
5) Fishing in an area BP claims was not affected by the oil spill.
6) Listed species required a special gear license.
7) Not listing all gear used.
8) Not listing gear in a particular, specific manner.
9) Not having a proper species license.

We continue to prosecute any appeals that we feel may be subject to reconsideration and will advise you if the status of your claim changes.

Your BP Subsistence Claims Team

HOUSTON  ·  WASHINGTON DC  ·  NEW YORK

# THE NATIONS LAW FIRM

### A NATIONAL LITIGATION FIRM

**Rueb & Motta**                                                    **The Nicks Law Firm**

HOWARD L. NATIONS                                                            HOUSTON OFFICE
BOARD CERTIFIED - PERSONAL INJURY TRIAL LAW                                  101 Riverpark Drive, Suite 260
BOARD CERTIFIED - CIVIL TRIAL LAW                                           Houston, Texas 77043
TEXAS BOARD OF LEGAL SPECIALIZATION                                         Phone 800-388-3600
DIPLOMATE - CIVIL TRIAL ADVOCACY                                            Fax 866-301-1102
NATIONAL BOARD OF TRIAL ADVOCACY                                           hplaw@howardnations.com
DIPLOMATE - NATIONAL COLLEGE OF ADVOCACY
ADMITTED IN TEXAS AND NEW YORK

                                  100349964                         October 31, 2018

James Scales Iii
715 Natalie Dr
Houma LA 70364

Dear James Scales Iii,

The BP Subsistence Claims Administration has advised us that the review of all BP Subsistence claims has been concluded and all claims have now either been awarded or denied. As you recall, we entered this litigation shortly before the filing deadline on June 8, 2015, because we learned that thousands of potentially qualified fishermen had not filed for their potential benefits. We realized at the time that BP would deny as many of these claims as possible, by every means possible, because more than 15,000 new claims were filed immediately before the filing deadline. We also advised all claimants that we would do our best but that we had to rely on very complete and accurate information from every claimant since there was no time to verify it before filing.

You are receiving this letter because your BP Subsistence (Fishing) Claim was one of many which were denied by BP, mostly based on very severe and narrow technicalities, some of which are listed below. Unfortunately, the settlement agreement allowed broad discretion in denying claims and we were left with no possibility of an effective appeal. While we exhausted appeals when they were available, most of the denials were based on administrative discretion which permitted no appeal. The following are several samples of the reasons for denial of numerous claims:

1) Prior GCCF or other economic claim payment.
2) Not having a valid fishing license during the relevant time period.
3) Failed field visit - completely discretionary.
4) Alleged fraud - completely discretionary.
5) Fishing in an area BP claims was not affected by the oil spill.
6) Listed species required a special gear license.
7) Not listing all gear used.
8) Not listing gear in a particular, specific manner.
9) Not having a proper species license.

We continue to prosecute any appeals that we feel may be subject to reconsideration and will advise you if the status of your claim changes.

                                        Your BP Subsistence Claims Team

                         ... DC •  NEW YORK

33.

After receiving their denial letters from the Defendant law firms, many of the Plaintiff Class members executed "Request for Change in Representation Status," which, for the first time, allowed them to gain access to their claim-related information with DHECC.

34.

After gaining access to their information, Plaintiff Class members learned that Defendants had failed to timely and properly file complete and colorable BP Subsistence Claims along with all documentation and information the BP Settlement Agreement required to be included with a Subsistence Claim form.

## CLASS REPRESENTATION ALLEGATIONS

35.

This action is appropriate for determination pursuant to federal class action procedure because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable. Accordingly, the Plaintiffs bring this action on their own behalf and on behalf of a class of Plaintiffs ("Plaintiff Class") that constitutes the following proposed class:

> All BP Class members, represented by Defendant law firms in the BP Deepwater Horizon Oil Spill Class Action Settlement Program, who lost the opportunity to participate in the BP Settlement Program because the Defendants failed to timely file the claimant's BP Subsistence Claim or failed to timely provide all required documentation for the claimant's BP Subsistence Claim.

> Plaintiffs reserve the right to propose subclasses or to modify the above class definition, based on the evidence adduced in discovery, or as necessary and appropriate. Specifically, this class is appropriate for certification because the prerequisites of Rule 23(a) and 23(b)(3) are satisfied.

36.

Numerosity:    Upon information and belief, the Defendants failed to properly and timely file hundreds of their clients' Subsistence Claims. Defendants' former field representatives have indicated that the Defendant law firms signed fee agreements to file Subsistence Claims on behalf of at least 17,000 claimants across the Gulf Coast. Defendants' representatives have further indicated that an inexact number of these claims were incomplete (i.e. lack all required documentation) when filed or were not timely filed. Nevertheless, undersigned counsel presently represent Plaintiffs and other putative Class members who claim they lost the opportunity to recover subsistence losses as a result of the Defendants' negligent conduct.

Since the members of the putative Class are residents of Louisiana, Mississippi, Alabama, and Florida, they are geographically dispersed throughout the Gulf Coast, and joinder of all such persons is impractical. Because of the large number of putative Class members and their being dispersed across four Gulf Coast states, this action is the most efficient means of handling these claims and the best way to ensure that the interests of the Plaintiff Class members are preserved.

37.

Commonality: Common questions of fact and law exist as to all members of the Plaintiff Class. The Plaintiffs suffered the same injury (i.e. lost opportunity to be compensated for their subsistence losses through the BP Settlement Program) because of the Defendants' common course of conduct – failing to file timely and complete Subsistence Claims that included all documents and information, required per the BP Settlement Agreement. In order for a Subsistence Claim to be valid and eligible for recovery, the BP Settlement Agreement required a BP Class member or his counsel (in this case Defendants) to submit only the two following

documents: (1) a complete Subsistence Claim form or sworn written statement;[4] and, (2) a copy of claimant's fishing license (valid before and at the start of loss period).[5] The Defendants' failure to submit any of the required documents in connection with a Plaintiff's Subsistence Claim, regardless of whether it was timely filed, rendered it categorically ineligible, just as the Defendants' failure to file a Plaintiff's Subsistence Claim by the June 8, 2015 deadline rendered it categorically ineligible.

The Defendants failure to timely provide required documentation in connection with the Plaintiffs' Subsistence Claims is a course of conduct common to all members of the proposed Class. As a result, all members of the proposed Class suffered a common injury – the lost opportunity be compensated for their Subsistence Claim because their Subsistence Claims were categorically ineligible.

These questions predominate over any questions affecting individual Plaintiff Class members. These common factual and legal questions include, but are not limited to:

a) Whether Defendants failed to timely file and provide to DHECC, in connection with the Plaintiff Class members' Subsistence Claims, all documentation the BP Settlement Agreement requires to be submitted in connection with a valid and eligible Subsistence Claim;

b) Whether Defendants failed to properly pursue BP Claims with the DHECC on behalf of Plaintiff Class members;

c) Whether Defendants concealed from their clients the fact that timely and complete BP claims had not been filed with DHECC on behalf of the Plaintiff Class members;

d) Whether Defendants intentionally and knowingly made false and misleading

---

[4] The Complete Subsistence Claim Form or Sworn Written Statement was required to be signed by the claimant verifying the location of their fishing and/or hunting grounds (map and narrative identification); the equipment they used to fish and/or hunt; the number of people in their family unit who relied on natural resources they caught; the specific species and amounts of natural resources they relied upon; and the percentage of subsistence resources they relied on pre-Spill that came from areas that were closed or impaired due to or resulting from the Spill.

[5] See Exhibit 9(C) of the BP Settlement Agreement.

representations to the Plaintiff Class members regarding the status of BP Subsistence Claims with the DHECC by sending Class members the form "denial" letter indicating their Subsistence Claims had been "denied";

e) Whether Defendants collectively and/or individually owed a duty to the Plaintiff Class members;

f) Whether Defendants breached their respective duties owed to the Plaintiff Class members;

g) Whether the Defendants' actions were the cause of Plaintiff Class members' inability to participate in the BP Settlement Program regarding their Subsistence Claims; and

h) Whether Plaintiff Class members are entitled to monetary damages, attorney's fees, punitive damages, and/or other legal or equitable remedies and, if so, the nature of any such relief.

38.

Typicality:  Plaintiffs' claims are typical and representative of the claims of the entire Class. All Plaintiff Class members were injured and damaged through Defendants' substantially uniform misconduct and breach of their fiduciary duty to all Plaintiff Class members. Defendants failed to timely file complete and colorable Subsistence Claims with DHECC. Defendants engaged in a common course of conduct that did not vary from Plaintiff to Plaintiff, ensuring that common questions of law and fact will predominate over any individualized issues, as proof as to one constitutes proof as to all. All Plaintiff Class members have suffered the same ascertainable monetary and economic harm, namely the lost opportunity to participate in the BP Settlement and to receive compensation for their Subsistence Claims.

39.

Adequacy: The named Plaintiffs will fairly and adequately protect and the interests of the Class. The named Plaintiffs are prepared to undertake the representation of the entire proposed Class. No named Plaintiff has any interest that conflicts with an interest of any putative Class member. No named Plaintiff has any claim that is antagonistic to, incompatible with, or conflicts

with, any claim of a putative absent Class member. Each named Plaintiff is a putative Class member. Each named Plaintiff suffered the same harm as each putative Class member in that each of them lost his or her opportunity to participate in the BP settlement and to be compensated for his or her Subsistence Claim. All Class members assert the same causes of action.

Additionally, the Plaintiffs have retained undersigned counsel who are experienced in complex class action litigation and who intend to pursue this class action vigorously and competently. Class counsel has adequate financial resources to assure the interests of the Plaintiff Class will be adequately protected.

40.

Superiority:   Class action adjudication of the Plaintiffs' disputes is superior to other available methods for the fair and efficient adjudication of the controversy. Considering the putative Class is composed of thousands of members, adjudication of each individual Plaintiff Class member's claims would cause increased expenses and delays to all parties and to the judicial system in determining the legal and factual issues common to all claims related to all parties herein.  In the identification of claims for each putative Class, the claims of the putative Class will be established by class-wide proof.  Damages for each Plaintiff will be determined by formulaic calculation based on the previously recognized and widely accepted BP Settlement Agreement. In other words, the common questions of law and fact identified in ¶ 37 will be established through generalized proof. The questions of law and fact related to the class are far more substantial than any individualized issue. The named Plaintiffs seeking to be Class Representative have no interest in individually controlling their separate actions because they allege class adjudication will be more effective and efficient.

Moreover, there are no existing legal malpractice or breach of contract claims regarding Defendants' mishandling of BP Subsistence Claims outside of this lawsuit. Certification would act to centralize these proceedings against the Defendants. Attempting to adjudicate each Class member's claim individually would mean adjudication of thousands of nearly identical cases which could potentially yield inconsistent, varying, or contradictory results. Handling the litigation as a class action presents far fewer management difficulties and provides the benefit of a single adjudication on common issues of fact and law, economies of scale, and comprehensive supervision by a single court.

There are common issues related to the identical Attorney-Client contract executed by all Plaintiff Class members (duty), the same failure to file a timely and complete Subsistence Claim on the claimants' behalf (breach), the same reason for the claimants' lost opportunities to participate in the BP settlement for their Subsistence Claims (causation), the same loss of compensation based on a formulaic calculation (damages), and the same denials by Defendants to the Plaintiff Class members (fraud).  What occurred herein by the Defendants was a common course of conduct and adjudicating these matters separately could easily subject the Defendants to varying standards of care and the Plaintiff Class members to drastically different recoveries. To the contrary, class adjudication provides consistency, efficiency, and finality for all parties. This Court is the ideal adjudicator of this matter utilizing class action procedure.

There are no issues, problems, or concerns with the management of the litigation. Claims will be easily adjudicated on a class-wide basis due to the striking similarities among the claims of all members of the proposed Class. Any issues that may arise can be easily overcome by a proper and effective trial plan.  In sum, class action procedure will streamline this litigation and lead to a quick and consistent resolution for all parties herein. It will be more efficient and

economical and will enable this Court to manage the litigation more effectively.

41.

Predominance: The common conduct of the Defendants presents predominant issues of both law and fact. The Defendants' liability predominates over any potential individualized issues. Though Defendants' misconduct stretched across the states of Louisiana, Mississippi, Alabama, and Florida, all of the Plaintiff Class members' claims arise out of a common course of conduct by the Defendants through their joint venture. The Defendants engaged in a common course of conduct and victimized the entire Plaintiff Class. The duties all arose from the Defendants' contractual agreements with the Plaintiffs – all of the contracts are identical.  The breaches all arose from the Defendants' failure to timely file complete and colorable Subsistence Claims on behalf of the putative Class members – the question of breach is the same for all putative Class members.  The question of whether Defendants' failure to file a complete and colorable claim caused damage is identical for each and every member of the putative Class. Likewise, the Defendants' tortious conduct caused the same injury to each putative class member – the lost opportunity be compensated for his or her subsistence losses through the BP settlement.  Individual damages do not predominate because formulaic calculation has been provided by the DHECC Subsistence Loss Formula.  Moreover, proof of each putative Class members' claim will require duplicating the production of evidence, persons, discovery, documents, witnesses, and experts. No individual disputes predominate over these common questions.

**CAUSES OF ACTION**

***CLAIM NO. 1 – BREACH OF CONTRACT***

42.

Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this First Amended Class Action Complaint as though set forth fully herein.

43.

The "Attorney-Client Contract" executed by members of the Plaintiff Class and any representative of the Defendants, created an attorney-client relationship between the Plaintiff Class member(s) and the Defendants whereby the Defendants agreed to represent the interests of the Plaintiff Class member(s) in the BP Settlement Agreement claims process.

44.

The Defendants agreed to protect and advance the interests of the Plaintiff Class members. Particularly, without limitation, the Defendants agreed to properly prepare and timely file BP Subsistence Claims with DHECC on behalf of the Plaintiff Class members in order to recover losses sustained by the Plaintiff Class members as a result of the BP Oil Spill. Accordingly, the Defendants also agreed, and were obligated, to inform the Plaintiff Class members of information and documentation necessary to properly prepare and file the respective BP Claims. Moreover, Defendants were obligated to receive and process the claimant provided information and documentation in furtherance of the Plaintiff Class members' BP Subsistence Claims.

45.

The Defendants agreed, and were obligated, to communicate honestly and promptly with the Plaintiff Class members and to advise whether additional information or documentation was required to properly prepare and timely file their BP Subsistence Claim.

46.

Defendants were aware of the BP Settlement Program's deadlines to file BP Claims, as DHECC promulgated and explicitly referenced the June 8, 2015 deadline in numerous advertisements and public announcements promulgated by the Defendants during May and June of 2015.

47.

The losses sustained by the Plaintiff Class members were the direct and proximate result of the Defendants' breaches of obligations created by the attorney-client contract that existed between the Defendants and the Plaintiff Class members. The Defendants' specific contractual breaches include, but are not limited to:

a)   Failing to timely file complete claims with the DHECC on behalf of the Plaintiff Class members;

b)   Failing to properly handle and pursue claims with the DHECC on behalf of Plaintiff Class members;

c)   Failing to adequately communicate or assist Plaintiff Class members in connection with their BP Subsistence Claims; and

d)   Other acts of fault and breaches of obligation which will be shown more fully at trial.

48.

As a direct and proximate result of the Defendants' acts and/or omissions set forth above, Plaintiff Class members have suffered economic losses. The Defendants are jointly and solidarily liable to the Plaintiff Class members for damages resulting from Defendants' contractual breaches and malpractice.

49.

The express terms of the "Attorney-Client Contract" executed by the Plaintiff Class members and the Defendants provide that the "Contract shall be construed under and in accordance with the laws of the State of Mississippi, and all obligations of the parties created hereunder are performable in Mississippi." Accordingly, Mississippi substantive law may apply, and the Plaintiff Class would be entitled to punitive damages because the Defendants' failed to properly and timely file complete BP Subsistence Claims on behalf of the Plaintiff Class members. Defendants' failure constitutes gross negligence. Further, Defendants were well-aware of the BP Claim filing deadline, and their inactions constituted a wanton and reckless disregard of the economic well-being of the Plaintiff Class members. Soliciting and engaging new clients up until just hours before the filing deadline, when even their own field-worker advised against it, and then failing to file timely and complete claims on behalf of the Plaintiff Class members was and is the essence of callous and reckless disregard to the detriment of the Plaintiff Class members.

50.

As a result of Defendants' breaches of contract and failure to conform to the applicable professional standards of care and conduct, Plaintiff Class members are entitled to compensatory damages in an amount to be determined at trial but at least in an amount in excess of $5,000,000.00, plus punitive damages, and attorney fees.

## *CLAIM NO. 2 – FRAUD*

51.

Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this First Amended Class Action Complaint as though set forth fully herein.

52.

Defendants intentionally misrepresented and fraudulently concealed the fact that Plaintiff Class members' Subsistence Claims had either not been filed by the deadline established by the BP Settlement Program or lacked documentation required per the BP Settlement Agreement to recover on a valid Subsistence Claim.

53.

Defendants mailed Plaintiff Class members form letters that falsely represented that their Subsistence Claims had either been timely filed or had been completed by filing all required documents with DHECC by their law firms.

54.

These written misrepresentations made by Defendants were made with knowledge of their falsity, and with the intent that Plaintiff Class members would rely on these false and misleading statements.

55.

Through their letters, Defendants misrepresented that they had timely filed complete Subsistence Claims on behalf of the Plaintiff Class members. Defendants knew these representations were false and misleading.

56.

Through the letters, Defendants further misrepresented that after Defendants had timely filed complete Subsistence Claims on behalf of the Plaintiff Class members, the Class members' claims had been denied by BP.  Defendants knew these representations were false and misleading.

57.

At the time Defendants made these intentional misrepresentations and material concealments, the Plaintiff Class members were unaware of the falsity of the Defendants' misrepresentations and reasonably believed them to be true.  For years, the Plaintiff Class members relied upon Defendants' misrepresentations concerning the status and disposition of their BP Subsistence Claims.

58.

Defendants intentionally and harmfully concealed their gross misconduct for nearly four (4) years.  Any time a Plaintiff Class member called to check on the status of their claim prior to receiving their form "denial" letter, they were told the same thing with little to no variation – their claim was "still pending."

59.

As a direct and proximate result of Defendants' deceptive tactics, actual fraud, intentional misrepresentations, and concealment of material information, the Plaintiff Class members

suffered economic loss.  Thus, Defendants are solidarily liable to the Plaintiff Class members for damages resulting from Defendants' intentional misrepresentation of material facts and for actual fraud.

60.

As a result of Defendants' commissions of actual fraud, intentional misrepresentations of material fact to the Plaintiff Class members, and their failure to conform to the applicable professional standards of conduct, the Plaintiff Class members are entitled to compensatory damages in an amount to be determined at trial but at least in an amount in excess of $5,000,000.00, plus punitive damages, and attorney's fees.

61.

Plaintiffs, on behalf of themselves and all other similarly situated persons, demand judgment against Defendants for monetary damages and/or other remedies.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment as follows:

a)      An order certifying the proposed Class, designating Plaintiffs as the named representatives of the Class, and designating the undersigned class counsel;

b)      Awarding actual, compensatory, consequential, and punitive damages;

c)      Awarding restitution;

d)      Awarding damages for fraudulent conduct;

e)      Awarding reasonable attorneys' fees, and costs of this case;

f)      Awarding prejudgment and post-judgment interest;

g)      Granting such further relief that this Court deems appropriate under the circumstances.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs request and are entitled to a trial by jury on all issues so triable.

**Dated**: September 4, 2019

RESPECTFULLY SUBMITTED:

/s/ Jerald P. Block

**BLOCK LAW FIRM, APLC**
JERALD P. BLOCK, Bar Roll No. 3151
RICHARD C. BREAUX, Bar Roll No. 33740
KENDALL J. KRIELOW, Bar Roll No. 34625
SARAH M. LAMBERT, Bar Roll No. 38312
MATTHEW P. HYMEL, Bar Roll No. 38283
422 East First Street
Post Office Box 108
Thibodaux, Louisiana 70302
(985) 446-0418 Telephone
(985) 446-0422 Facsimile

Counsel for Plaintiffs and Plaintiff Class Members

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 4, 2019 a copy of the foregoing has been electronically filed by using the CM/ECF system, which will send a copy of the foregoing pleading to all counsel of record by notice of electronic filing.

/s/ Jerald P. Block
JERALD P. BLOCK