## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

**DEBORAH A. GAUDET**                    **CIVIL ACTION**

**VERSUS**                               **NO. 19-10356-WBV-JVM**

**HOWARD L. NATIONS, APC, ET AL.**        **SECTION: D (1)**

## ORDER AND REASONS

Before the Court is The Nicks Law Firm, LLC's and Shantrell Nicks' Motion to Dismiss and/or to Strike Class Allegations of Second Amended Class Action Complaint.[1] The Motion is opposed.[2] Defendants, Joseph A. Motta, Attorney at Law, APLC and Joseph A. Motta, have joined in the Motion,[3] as have defendants, Howard L. Nations, Cindy L. Nations, Gregory D. Rueb, Howard L. Nations, APC, Rueb & Motta, APLC, and the Rueb Law Firm, APLC.[4] After careful consideration of the parties' memoranda and the applicable law, the Motion is **DENIED.**

### I.    FACTUAL AND PROCEDURAL BACKGROUND

This is a class action lawsuit to recover damages for breach of contract and fraud arising from the alleged actions and inactions of certain attorneys and law firms committed while representing the interests of the proposed class members in the Deepwater Horizon Economic and Property Damage Settlement Program (the "BP Settlement Program"), in which members of the Economic and Property Damages

---

[1] R. Doc. 107.
[2] R. Doc. 61.
[3] R. Docs. 110 & 111.
[4] R. Docs. 187 & 188.

Settlement Class ("BP Class") made claims to be compensated for their subsistence losses caused by the Deepwater Horizon catastrophe that occurred on April 20, 2010 and the resulting oil spill.[5]  Deborah A. Gaudet and Ray Gaudet ("the Gaudets") claim that they were among the many people who resided along the Gulf Coast who harvested fish and seafood in the coastal area for their regular dietary consumption, but were unable to do so after the oil spill.  The Gaudets assert that in June 2015, they were advised that out-of-state lawyers were hosting meetings in various locations to solicit clients to submit claims in the BP Settlement Program.  The Gaudets allege that they attended one of those meetings on June 1, 2015, during which they engaged Howard L. Nations, APC, The Nicks Law Firm, LLC, Rueb & Motta, APLC, Joseph A. Motta, Attorney at Law, APLC and The Rueb Law Firm, APLC (collectively, the "Law Firm Defendants"), to file a subsistence claim for damages and signed a fee agreement.[6]  The Gaudets assert that they subsequently called the Law Firm Defendants several times to determine the status of their claim, and that they were repeatedly told that their claim was still pending.[7]  Although the Law Firm Defendants advised the Gaudets in May 2019 that their claim had been denied, the Gaudets allege that the Law Firm Defendants never filed a claim for their losses.[8]

---

[5] R. Doc. 1 at Introduction Paragraph & ¶ 1; R. Doc. 45 at Introduction Paragraph & ¶ 1.  The Court notes that the Introduction Paragraph of the original Class Action Complaint includes one reference to the oil spill having occurred on April 10, 2020 (R. Doc. 1 at p. 1), which appears to be an error that was corrected in the First Amended Class Action Complaint (R. Doc. 45 at p. 1).
[6] R. Doc. 1 at Introduction Paragraph and ¶ 22.
[7] *Id*. at Introduction Paragraph.
[8] *Id*.

As a result, the Gaudets filed a Class Action Complaint in this Court on May 13, 2019, individually and on behalf of all other similarly situated, asserting two claims – breach of contract and fraud – against the Law Firm Defendants.[9]  The Gaudets assert that the class action litigation is intended to protect the rights of all clients represented by the Law Firm Defendants who lost the opportunity to participate in the BP Settlement Program due to the Law Firm Defendants' breach of contract, professional malpractice and fraud.[10]  The Gaudets allege that the Court has jurisdiction pursuant to 28 U.S.C. § 1332(d) of the Class Action Fairness Act of 2005 ("CAFA") because: (1) there are 100 or more class members; (2) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs; and (3) at least one plaintiff and one defendant are citizens of different states.[11]  The Gaudets assert that the Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

In response to several motions to dismiss filed by the Law Firm Defendants,[12] the Gaudets filed a First Amended Class Action Complaint (the "First Amended Complaint") on September 4, 2019.[13]  The First Amended Complaint alleges additional facts in support of the breach of contract and fraud claims, removes Ray Gaudet as a plaintiff and names nine additional plaintiffs: Timothy Butler, Dian B. Campbell, Kristine Collins, Regina Falgoust, Abraham Gamberella, Adam J. Hebert,

---

[9] R. Doc. 1.
[10] *Id*. at Introduction Paragraph.
[11] *Id*. at ¶ 4.
[12] *See* R. Docs. 39 & 43.
[13] R. Doc. 45.

Fred Ledet, Stanwood Moore, Jr. and James Scales, III.[14]   The First Amended
Complaint alleges that the Law Firm Defendants failed to file a subsistence claim for
Deborah Gaudet, Timothy Butler, Campbell, Collins, Hebert, Ledet and Scales, and
filed incomplete claims for Falgoust, Gamberella and Moore that failed to include
specific documents required by the BP Settlement Agreement.[15]   The Law Firm
Defendants again filed motions to dismiss the First Amended Complaint,[16] which
resulted in a Second Amended Class Action Complaint (the "Second Amended
Complaint") being filed on November 20, 2019.[17]   The Second Amended Complaint
incorporates by reference all allegations contained in the First Amended Complaint,
and names five attorneys from the Law Firm Defendants as additional defendants –
Howard L. Nations, Cindy L. Nations, Shantrell Nicks, Gregory D. Rueb and Joseph
A. Motta.[18]

   The Nicks Law Firm LLC and Shantrell Nicks (collectively, the "Nicks
Defendants") filed the instant Motion to Dismiss and/or to Strike Class Allegations of
Second Amended Class Action Complaint on December 5, 2019, asserting that: (1) the
Second Amended Complaint should be dismissed under Fed. R. Civ. P. 12(b)(1) for
lack of subject matter jurisdiction under CAFA, 28 U.S.C. § 1332(d)(11); (2) the class
allegations should be stricken or dismissed pursuant to Fed. R. Civ. P. 23(d)(1)(D)
and/or 12(b)(6); and (3) the Second Amended Complaint fails to state a claim against

---

[14] *Id*.
[15] *Id*. at Introduction Paragraph.
[16] R. Docs. 47, 48, 49, 57, 58 & 59.
[17] R. Doc. 99.
[18] *Id*..

Shantrell Nicks, individually, for breach of contract or fraud and should, therefore, be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).[19]  The Nicks Defendants assert that the Court lacks subject matter jurisdiction under CAFA because the Second Amended Complaint contains no factual allegations to support Plaintiffs' assertion that, under the "Subsistence Loss Formula," each of the alleged 215 persons that Plaintiffs' counsel purportedly represent sustained approximately $44,600.00 in subsistence damages, for a total of approximately $9,589,000.00.[20]  The Nicks Defendants argue that the Second Amended Complaint contains no specific factual allegations to show that any named plaintiff, or any putative class member, sustained $44,600.00 in subsistence losses.[21]

The Nicks Defendants further assert that the Second Amended Complaint does not contain sufficient facts to satisfy the requirements of Fed. R. Civ. P. 23(a), and that all class allegations should be stricken and dismissed under Fed. R. Civ. P. 23(d)(1)(D) and/or 12(b)(6).[22]  The Nicks Defendants assert that a court may strike class allegations under Fed. R. Civ. P. 23(d)(1)(D) where the complaint fails to plead the minimum facts necessary to establish the existence of a class satisfying the requirements of Fed. R. Civ. P. 23.[23]  The Nicks Defendants also claim that a district court may dismiss class allegations on a Fed. R. Civ. P. 12(b)(6) motion where it is

---

[19] R. Doc. 107.

[20] R. Doc. 107-1 at pp. 6-7 (*quoting* R. Doc. 45 at ¶ 4) (internal quotation marks omitted).

[21] R. Doc. 107-1 at p. 7 (*quoting* R. Doc. 45 at ¶ 4) (internal quotation marks omitted).

[22] R. Doc. 107-1 at pp. 7-20.

[23] R. Doc. 107-1 at p. 8 (quoting *Aguilar v. Allstate Fire & Cas. Ins. Co.*, Civ. A. No. 06-4660, 2007 WL 734809, at *2 (E.D. La. Mar. 6, 2007)) (internal quotation marks omitted).

facially apparent from the pleadings that there is no ascertainable class.[24]  The Nicks Defendants contend that a complaint which "does little more than state in conclusory terms that the requirements of Rule 23 have been met" is insufficient to survive dismissal on a motion to strike.[25]  The Nicks Defendants argue that the Second Amended Complaint contains only conclusory and vague allegations regarding the Rule 23(a) criteria for class actions, which is insufficient as a matter of law to proceed as a class action.[26]  Even if the Court finds that the Second Amended Complaint sufficiently alleges the Rule 23(a) criteria, the Nicks Defendants assert that Plaintiffs failed to allege sufficient facts to establish that any of the grounds for Rule 23(b) are met, specifically addressing Rule 23(b)(1) and 23(b)(3) with respect to Plaintiffs' legal malpractice claim.[27]

Finally, the Nicks Defendants assert that the Second Amended Complaint fails to state claims for breach of contract or fraud against Shantrell Nicks, individually, under Fed. R. Civ. P. 12(b)(6).[28]  The Nicks Defendants point out that Plaintiffs have not alleged that Nicks personally executed any of the attorney-client contracts entered into with Plaintiffs, or that she had any personal involvement in the events at issue.[29]  The Nicks Defendants argue that Plaintiffs' vague and conclusory allegations regarding Nicks' involvement are insufficient to survive a motion to

---

[24] R. Doc. 107-1 at p. 8 (quoting *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007)) (internal quotation marks omitted).
[25] R. Doc. 107-1 at p. 9 (quoting *Batsakis v. Fed. Deposit Ins. Corp.*, 670 F. Supp. 749, 757-58 (W.D. Mich. 1987)) (internal quotation marks omitted).
[26] R. Doc. 107-1 at pp. 10-14.
[27] *Id*. at pp. 14-20.
[28] *Id*. at pp. 21-24.
[29] *Id*. at pp. 22-23

dismiss the breach of contract claim.[30]  The Nicks Defendants further assert that the Second Amended Complaint also fails to allege fraud with particularity, as required under Fed. R. Civ. P. 9(b).[31]  The Nicks Defendants claim that the Second Amended Complaint does not contain any factual allegations to show that Nicks personally made any misrepresentations or fraudulently concealed any facts or information from Plaintiffs, as it contains no allegations regarding Nicks' conduct.[32]

Plaintiffs oppose the Motion, asserting that this Court undeniably has subject matter jurisdiction, that Plaintiffs have satisfied all applicable pleading standards, and that the Motion is premature.[33]  Plaintiffs assert that it is facially apparent from their First Amended Complaint that they have satisfied their burden of demonstrating each CAFA requirement.[34]  Plaintiffs claim that CAFA's 100 member requirement is easily satisfied because Plaintiffs' counsel represents approximately 215 individuals who have been harmed by Defendants in the same manner as the Plaintiffs.  Plaintiffs further assert that summary reports from the Deepwater Horizon Economic Claims Center ("DHECC"), recently produced by Defendants, indicate that there are at least 2,425 clients for whom Defendants either failed to timely file subsistence claims or failed to properly include all required documents.[35]  Plaintiffs assert that minimal diversity is also met because each putative class representative is a citizen of Louisiana, and the Defendants are citizens of Texas,

---

[30] *Id.* at p. 23.
[31] *Id.* at p. 24.
[32] *Id.*
[33] R. Doc. 125.
[34] *Id.* at p. 6 (citing *Thompson v. Louisiana Reg'l Landfill Co.*, 365 F. Supp. 3d 725, 730 (E.D. La. 2019)).
[35] R. Doc. 125 at p. 7 (*citing* R. Doc. 125-1).

Mississippi and California.[36]  Plaintiffs further assert that the aggregate amount in controversy exceeds $5,000,000.00 because the average damage claim for the 215 putative class members using the BP Settlement Agreement's "Subsistence Loss Formula" is $44,600.00, which totals approximately $9,589,000.00.[37]  Plaintiffs argue that because they allege damages in a specific dollar amount, the amount pled "controls in good faith."[38]  Plaintiffs further assert that the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 over the claim of Abraham Gamberella, a named plaintiff and class representative, who is completely diverse from each defendant and whose damages exceed $100,000.00.[39]  Because the Court has diversity jurisdiction over Gamberella's claim, Plaintiffs argue that the Court may exercise supplemental jurisdiction over all other putative class members' claims.[40]

Plaintiffs further claim that, while it is unclear whether the Nicks Defendants seek to strike the class allegations under Fed. R. Civ. P. 12(b)(6) or Rule 23(d)(1)(D), the Nicks Defendants are not challenging whether the class is ascertainable, so the Court should analyze the issue under Rule 23(d)(1)(D).[41]  Plaintiffs argue that motions to strike class action allegations are generally disfavored because issues related to class action allegations are more typically and appropriately resolved at

---

[36] R. Doc. 125 at p. 7 (*citing* R. Doc. 99 at ¶ 3).

[37] R. Doc. 125 at pp. 7-8.

[38] *Id.* at p. 8 (quoting *Valentine v. United Fire & Cas. Co.*, Civ. A. No. 18-6956, 2019 WL 3522246, at *2 (E.D. La. Aug. 1, 2019)) (internal quotation marks omitted).

[39] R. Doc. 125 at pp. 8-9 (*citing* R. Doc. 45 at ¶¶ 2, 14; R. Doc. 99 at ¶ 3).

[40] R. Doc. 125 at pp. 8-9 (citing *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 549, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005)).

[41] R. Doc. 125 at pp. 9-10 (citing *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007)).

the class certification phase of the litigation.[42]  Plaintiffs assert that the instant Motion should be denied because the class allegations in the First Amended Complaint are sufficient to satisfy the Rule 23 requirements.[43]  Plaintiffs also argue that the Motion should be denied as premature, pointing out that judges on this Court have routinely denied motions to dismiss or to strike class allegations at this early stage of litigation, prior to the completion of discovery.[44]  Plaintiffs emphasize that, as of the date of their Opposition brief, Defendants had not yet answered the Complaint or First Amended Complaint, Defendants' responses to pre-certification discovery had been generally evasive with many objections, Defendants had not provided responses to Plaintiffs' interrogatories, Defendants had refused repeated requests for depositions, and Plaintiffs had not yet filed their motion to certify a class.[45]  As such, Plaintiffs argue the Motion should be denied as premature.

Plaintiffs also assert that their Second Amended Complaint, which incorporates by reference all allegations of the First Amended Complaint, states a claim against Shantrell Nicks because it alleges that all named attorneys and business entities were part of a joint venture.[46]  Relying upon Mississippi law, which Plaintiffs contend is the law applicable to this case pursuant to the attorney-client contracts signed by the putative class members, Plaintiffs assert that, "Where a joint

---

[42] R. Doc. 125 at p. 10 (citing *Casso's Wellness Store & Gym L.L.C. v. Spectrum Lab. Products, Inc.*, Civ. A. No. 17-2161, 2018 WL 1377608, at *6 (E.D. La. Mar. 19, 2018)).

[43] R. Doc. 125 at pp. 11-19.

[44] R. Doc. 125 at pp. 19-20 (citing *Casso's Wellness Store & Gym L.L.C.*, Civ. A. No. 17-2161, 2018 WL 1377608).

[45] R. Doc. 125 at p. 20 (*citing* R. Docs. 125-2 & 125-3).  The Court notes that Plaintiffs have since filed a Motion for Class Certification, which was filed on December 30, 2019.  (R. Doc. 129).

[46] R. Doc. 125 at p. 21.

venture exists, its members are bound by the acts of the other members acting in the course and scope of the joint venture."[47]  Plaintiffs argue that the Second Amended Complaint clearly alleges that all Defendants participated in a joint venture,[48] and that through the joint venture they engaged in a common course of conduct that caused damage to Plaintiffs.[49]  Plaintiffs point out that Shantrell Nicks is the only attorney at The Nicks Law Firm, LLC and that it is unclear who the Nicks Defendants purport was providing legal services on behalf of the single-member limited liability company.[50]  Plaintiffs note that The Nicks Law Firm, LLC is included on the attorney-client contracts, the claim denial letters and "other BP subsistence claim documents that were part of the joint venture."[51]  Plaintiffs claim that Mississippi law provides that attorney members of limited liability companies are personally liable for their misconduct.[52]  Accordingly, Plaintiffs argue that they have stated a claim for breach of contract and malpractice against Shantrell Nicks.

Finally, Plaintiffs assert that the Nicks Defendants are not permitted to hide behind the attorney-client privilege to shield themselves from malpractice.[53] Although the Nicks Defendants assert that they cannot identify their BP clients or disclose any details regarding the claims of their clients without breaching their duties of confidentiality,[54] Plaintiffs argue that the identity of a client is not protected

---

[47] *Id*. (quoting *Braddock Law Firm, PLLC v. Becnel*, 949 So.2d 38, 50 (Miss. Ct. App. 2006)) (internal quotation marks omitted).
[48] R. Doc. 125 at p. 22 (*citing* R. Doc. 45 at ¶¶ 3, 41 & 48).
[49] R. Doc. 125 at p. 22 (*citing* R. Doc. 99; R. Doc. 45 at ¶¶ 19, 22-24, 27, 29, 31, 32, 36-60).
[50] R. Doc. 125 at p. 22.
[51] *Id*. (*citing* R. Doc. 45 at ¶¶ 22 & 32).
[52] R. Doc. 125 at p. 23 (*citing* Miss. Code § 79-29-920(1)).
[53] R. Doc. 125 at p. 23.
[54] *Id*. at p. 24 (*quoting* R. Doc. 107-1 at p. 19) (internal quotation marks omitted).

by the attorney-client privilege.[55]  Plaintiffs assert that the Nicks Defendants have

not, and cannot, show that the identity of any of their clients is protected by the

attorney-client privilege because the privilege only protects communications between

attorneys and their clients.  Plaintiffs likewise assert that the fact that Defendants

did not file timely and complete subsistence claims on behalf of their clients is not

protected by the attorney-client privilege.  Thus, Plaintiffs argue that Defendants'

bold assertion that Plaintiffs are not permitted to conduct discovery or to represent

"non-clients" are illogical, unfounded and do not support their Motion.[56]

## II.     LEGAL STANDARD

### A.  The Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)

According to the Fifth Circuit, the Class Action Fairness Act of 2005, 32 U.S.C.

§ 1332(d) ("CAFA"), "greatly expands federal jurisdiction over interstate class action

lawsuits."[57]  CAFA defines a class action as "any civil action filed under rule 23 of the

Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure

authorizing an action to be brought by 1 or more representative persons as a class

action."[58]   CAFA requires that a class action involve an aggregate amount in

controversy of at least $5,000,000.00 and present at least minimal diversity of

parties.[59]  As explained by the Fifth Circuit, CAFA grants the federal courts original

---

[55] R. Doc. 125 at p. 24 (citing *Frank v. Tomlinson*, 351 F.2d 384, 384 (5th Cir. 1965)).

[56] R. Doc. 125 at p. 24.

[57] *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, (5th Cir. 2011) (citations omitted).

[58] *In re Katrina Canal Litigation Breaches*, 524 F.3d 700, 705 (5th Cir. 2008) (*quoting* 28 U.S.C. § 1332(d)(1)(B)) (internal quotation marks omitted).

[59] 28 U.S.C. § 1332(d)(2) ("The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which – (A) any member of a class of plaintiffs is a citizen of a State different from any defendant . . . .").

jurisdiction to hear interstate class actions where: (1) the proposed class contains more than 100 members; (2) minimal diversity exists between the parties (*i.e.*, at least one plaintiff and one defendant are from different states); (3) the amount in controversy exceeds $5,000,000.00; and (4) the primary defendants are not states, state officials or other governmental entities.[60]

## B. Motion to Dismiss for Lack of Subject Matter Jurisdiction under Fed. R. Civ. P. 12(b)(1)

The Nicks Defendants assert that the Second Amended Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) because the Court lacks subject matter jurisdiction under CAFA.  In deciding a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), "the district court is 'free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case.'"[61]  The party asserting jurisdiction bears the burden of proof for a Rule 12(b)(1) motion to dismiss.[62]  "A motion to dismiss under Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6)."[63]  Thus, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff.[64]  To survive a Rule 12(b)(6) motion to dismiss, "a complaint

---

[60] *Hollinger*, 654 F.3d at 569 (*citing* 28 U.S.C. § 1332(d)(2), (5)).

[61] *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005) (quoting *Montez v. Department of Navy*, 392 F.3d, 147 149 (5th Cir. 2004)).

[62] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011) (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

[63] *Lefebure v. Boeker*, 390 F. Supp. 3d 729 741 (M.D. La. 2019) (quoting *Wagster v. Gautreaux*, Civ. A. No. 12-00011-SDD-SCR, 2014 WL 3546997, at *1 (M.D. La. July 16, 2014)) (internal quotation marks omitted); *See United States v. City of New Orleans*, Civ. A. No. 02-3618, 2003 WL 22208578, at *1 (E.D. La. Sept. 19, 2003) (same).

[64] *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[65]

### C. Motion to Strike Class Action Allegations under Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 23(d)(1)(D)

Federal Rule of Civil Procedure 23(a) sets forth the following four prerequisites to certifying a class: (1) the class must be "so numerous that joinder of all parties is impracticable;" (2) there must be "questions of law or fact common to the class;" (3) "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class;" and (4) "the representative parties [must] fairly and adequately protect the interests of the class."[66]  This Court has previously explained that, "At the pleadings stage, a court has two avenues to eliminate class allegations."[67]  Those two avenues are Fed. R. Civ. P. 23(d)(1)(D) and Fed. R. Civ. P. 12(b)(6).  Under Rule 23(d)(1)(D), a court may strike class allegations if the pleadings fail to set forth the "minimum facts necessary to establish the existence of a class satisfying Rule 23's mandate."[68]  Pursuant to Rule 12(b)(6), however, if "it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings."[69]

---

[65] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

[66] *Itech-Bendeck v. Progressive Waste Solutions of LA, Inc.*, Civ. A. No. 18-7889 c/w 18-8071, 18-8218, 18-9312, 2019 WL 4111681, at *5 (E.D. La. Aug. 29, 2019) (*quoting* Fed. R. Civ. P. 23(a)).

[67] *Itech-Bendeck*, Civ. A. No. 18-7889 c/w 18-8071, 18-8218, 18-9312, 2019 WL 4111681 at *5.

[68] *Id.* (quoting *Aguilar v. Allstate Fire & Cas. Ins. Co.*, Civ. A. No. 06-4660, 2007 WL 734809, at *2 (E.D. La. Mar. 6, 2007) (construing Rule 23(d)(4), which is now codified at Rule 23(d)(1)(D)).

[69] *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) (citing cases).

### D. Fed. R. Civ. P. 12(b) Motion to Dismiss

The Nicks Defendants argue that the Second Amended Complaint fails to state a claim for breach of contract or fraud against Shantrell Nicks, individually, and that such claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). Under Rule 12(b)(6), a defendant can seek dismissal of a complaint, or any part of it, for failure to state a claim upon which relief may be granted.[70]  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[71]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[72]  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."[73]

A court must accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.[74]  The Court, however, is not bound to accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.[75] "Dismissal is appropriate when the complaint on its face shows a bar to relief."[76]  In deciding a Rule 12(b)(6) motion to dismiss, a court is generally prohibited from

---

[70] Fed. R. Civ. P. 12(b)(6).

[71] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

[72] *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Ashcroft*, 556 U.S. at 678, 129 S.Ct. at 1949) (quotation marks omitted).

[73] *Iqbal*, 556 U.S. at 679, 129 S.Ct. at 1949 (quotation omitted).

[74] *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).

[75] *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

[76] *Cutrer v. McMillan*, 308 Fed.Appx. 819, 820 (5th Cir. 2009) (quotation and internal quotation marks omitted).

considering information outside the pleadings, but may consider documents outside
of the complaint when they are: (1) attached to the motion; (2) referenced in the
complaint; and (3) central to the plaintiff's claims.[77]  The Court can also take judicial
notice of matters that are of public record, including pleadings that have been filed
in a federal or state court.[78]

### III.   ANALYSIS

### A. Plaintiffs have met their burden of proving the Court has subject matter jurisdiction under CAFA.

The Nicks Defendants assert that the Second Amended Complaint should be
dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction
because Plaintiffs have failed to allege sufficient facts to show that CAFA's aggregate
amount in controversy is satisfied.[79]  Plaintiffs allege in the First Amended
Complaint that CAFA's amount in controversy requirement of $5,000,000.00 is met
based upon a damage calculation performed using the "Subsistence Loss Formula"
described in the BP Settlement Agreement and created by the BP Settlement
Program.[80]  Plaintiffs assert that this formulaic calculation makes the computation
of each class member's subsistence loss a simple mathematical equation, which
involves inputting data and values based on charts created by the BP Settlement
Program.[81]  Plaintiffs claim that, as of the date of their First Amended Complaint,

---

[77] *Maloney Gaming Mgmt., LLC v. St. Tammany Parish*, 456 Fed.Appx. 336, 340-41 (5th Cir. 2011).
[78] *In re American Intern. Refinery*, 402 B.R. 728, 749 (W.D. La. 2008) (citing *Cisco Systems, Inc. v. Alcatel USA, Inc.*, 301 F. Supp. 2d 599, 602 n.3 (E.D. Tex. 2004)).
[79] R. Doc. 107-1 at pp. 6-7.
[80] R. Doc. 45 at Introduction Paragraph & ¶ 4.
[81] *Id.* at ¶ 4.

their counsel had been engaged to represent approximately 215 individuals and that "applying the Subsistence Loss Formula using information and documentation available from the 215 putative Class members . . . yields an average damage amount of $44,600 per putative Class member."[82]   Based upon this figure, Plaintiffs assert that the amount in controversy for the 215 plaintiffs currently represented will be approximately $9,589,000.00, which is well above CAFA's $5,000,000.00 requirement.[83]   The Nicks Defendants argue that the Second Amended Complaint, which adopts by reference the First Amended Complaint, contains no factual allegations to support Plaintiffs' conclusion that any named plaintiff, or any other putative class member, sustained $44,600.00 in subsistence losses.[84]   The Court finds the Nicks Defendants' arguments unpersuasive.

As Plaintiffs point out, because they alleged damages in a specific dollar amount in the First Amended Complaint, the amount pled controls if made in good faith.[85]   The Fifth Circuit has explained that, "While it is well settled that the removing party bears the burden of establishing the facts necessary to show that federal jurisdiction exists, we have applied different standards of proof depending upon whether the complaint alleges a dollar amount of damages."[86]   According to the Fifth Circuit, "Where the plaintiff has alleged a sum certain that exceeds the requisite

---

[82] R. Doc. 125 at pp. 7-8 (*citing* R. Doc. 45 at ¶ 4).
[83] *Id.*
[84] *Id.* at p. 7.
[85] R. Doc. 107-1 at p. 8 (quoting *Valentine v. United Fire & Cas. Co.*, Civ. A. No. 18-6956, 2019 WL 3522246, at *2 (E.D. La. Aug. 1, 2019)) (internal quotation marks omitted).
[86] *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995) (citing *Gaitor v. Peninsular & Occidental S.S. Co.*, 287 F.2d 252, 253-54 (5th Cir. 1961)).

amount in controversy, that amount controls if made in good faith."[87]  The Nicks Defendants have not alleged, or shown, that Plaintiffs' allegations regarding the amount in controversy were not made in good faith.  Accordingly, the Court finds that Plaintiffs have met their burden of proving that it is facially apparent from the First Amended Complaint, which the Second Amended Complaint adopted by reference, that CAFA's $5,000,000.00 amount in controversy requirement is met in this case.[88]

The Nicks Defendants do not dispute that Plaintiffs have satisfied the remaining CAFA requirements of 100 class members and minimal diversity. Nonetheless, the Court finds that it is facially apparent from the First Amended Complaint and, by extension since it was adopted, the Second Amended Complaint that both requirements are met in this case.[89]  In the First Amended Complaint, Plaintiffs assert that their counsel represents 215 individuals who claim that they have been harmed by Defendants in the same manner as the named Plaintiffs and, therefore, are putative class members.[90]  Plaintiffs also allege in the First Amended Complaint that CAFA's minimal diversity requirement is met because each named plaintiff is a citizen of Louisiana, and the Defendants are citizens of Mississippi,

---

[87] *Allen*, 63 F.3d at 1335 (citing *St. Paul Mercury Indemn. Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938)); *See Loftin v. Hughes*, Civ. A. No. 14-1608, 2014 WL 3893313, at *2 (E.D. La. Aug. 7, 2014) (quoting *Allen*, 63 F.3d at 1335).

[88] *See Gaudet v. American Home Shield Corp.*, Civ. A. No. 11-1857, 2012 WL 601884, at *2 (E.D. La. Feb. 23, 2012) ("Based on these assertions in Plaintiff's complaint alone, it would be reasonable [to] infer that CAFA's $5,000,000.00 amount in controversy requirement is satisfied in this case."); *Cannon v. Dow Chemical Co.*, Civ. A. No. 08-1397, 2008 WL 2308897, at *2 (E.D. La. June 2, 2008) ("Here, neither party claims that the jurisdictional minimum is apparent from the face of the complaint. Therefore, the Defendant must prove by a preponderance of the evidence that the amount in controversy is over $5,000,000.00.").

[89] *See* R. Doc. 125 at p. 7.

[90] R. Doc. 45 at ¶ 4.

Texas and California.[91]  The Court finds that the citizenship of the parties has been adequately alleged.  Thus, Plaintiffs have alleged that at least one plaintiff is diverse from at least one defendant, thereby satisfying CAFA's minimal diversity requirement.[92]  Again, the Nicks Defendants do not contest these allegations.

Based upon the face of the First Amended Complaint, which the Second Amended Complaint incorporated by reference, and in light of the Court's duty to assume that the allegations in the First Amended Complaint are true and to resolve any doubt regarding the sufficiency of Plaintiffs' claims in their favor in conducting a Fed. R. Civ. P. 12(b)(1) analysis, the Court finds that Plaintiffs have met their burden of proving that the Court has subject matter jurisdiction under CAFA.  Reading CAFA "broadly, with a strong preference that interstate class actions should be heard in federal court,"[93] the Court finds that Plaintiffs have met their burden of proving that the putative class includes more than 100 members, there is minimal diversity of citizenship between the parties and the amount in controversy exceeds $5,000,000.00.

### B. The Nicks Defendants have not met their burden of proving the class allegations should be stricken or dismissed under Fed. R. Civ. P. 23(d)(1)(D) or Fed. R. Civ. P. 12(b)(6).

The Court further finds that the Nicks Defendants have failed to show that the class allegations in Plaintiffs' Second Amended Complaint should be stricken or dismissed under Fed. R. Civ. P. 23(d)(1)(D) or Fed. R. Civ. P. 12(b)(6).  The Court

---

[91] *Id.*

[92] *See* 28 U.S.C. § 1332(d)(2)(A).

[93] *In re Whole Foods Market, Inc., Greek Yogurt Marketing and Sales Practices Litigation*, Civ. A. No. 14-mc-2588-SS, MDL No. 2588, 2015 WL 5737692, at *10 (W.D. Tex. Sept. 30, 2015) (quoting S.Rep. No. 109-14 at 43 (2005)) (internal quotation marks omitted).

agrees with Plaintiffs that it is somewhat unclear under which rule the Nicks Defendants bring their Motion to Strike, as they cite both Rule 23(d)(1)(D) and Rule 12(b)(6) and argue that the factual allegations in the Second Amended Complaint fail to satisfy the Rule 23 requirements for a class action.   A court can strike class allegations under Rule 23(d)(1)(D) if the pleadings fail to set forth the minimum facts necessary to establish the existence of a class satisfying Rule 23's mandate.[94]   In contrast, a court may dismiss class allegations under Rule 12(b)(6) only if it is facially apparent from the pleadings that there is no ascertainable class.[95]   Because the Nicks Defendants are not challenging whether the class is ascertainable, but whether the requirements of Rule 23 have been met, the Court will analyze their Motion under Rule 23(d)(1)(D).

Plaintiffs allege in their First Amended Complaint that Rule 23's numerosity requirement is met because their counsel has been engaged by more than 215 putative class members who share a common injury with Plaintiffs, and that the joint venture client claim status reports produced by Defendants identify the size of the potential class as at least 2,425 members.[96]   Plaintiffs assert that these potential class members reside in Louisiana, Mississippi, Alabama and Florida, and that joinder is impractical because they are geographically dispersed.[97]   Plaintiffs assert

---

[94] *Ictech-Bendeck v. Progressive Waste Solutions of LA, Inc.*, Civ. A. No. 18-7889 c/w 18-8071, 18-8218, 18-9312, 2019 WL 4111681, at *5 (E.D. La. Aug. 29, 2019) (quoting *Aguilar v. Allstate Fire & Cas. Ins. Co.*, Civ. A. No. 06-4660, 2007 WL 734809, at *2 (E.D. La. Mar. 6, 2007)) (internal quotation marks omitted).
[95] *Ictech-Bendeck*, Civ. A. No. 18-7889 c/w 18-8071, 18-8218, 18-9312, 2019 WL 4111681, at *5 (quoting *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007)) (internal quotation marks omitted).
[96] R. Doc. 125 at p. 12 (*citing* R. Doc. 45 at ¶ 4; R. Doc. 125-1); *See* R. Doc. 45 at ¶4.
[97] R. Doc. 45 at ¶ 36.

that the commonality requirement is met because there are eight common questions of law and fact among the class representatives and potential class members.[98] Plaintiffs claim that all of the putative class members suffered the same injury – lost opportunity to be compensated for subsistence losses through the BP Settlement Program – because of Defendants' common course of conduct – failing to file timely and complete subsistence claims that included all of the documents and information required by the BP Settlement Agreement.[99]  Plaintiffs claim that the BP Settlement Agreement required a BP class member or his counsel to submit only two documents: (1) a complete subsistence claim form or sworn written statement; and (2) a copy of claimant's fishing license (valid before and at the start of the loss period), and that Defendants' failure to timely provide the required documentation is a course of conduct common to all of the putative class members.[100]

Plaintiffs further assert that their claims are typical and representative of the claims of the putative class because all putative class members were injured by Defendants' failure to timely file complete and colorable subsistence claims, and that "proof as to one constitutes proof as to all."[101]  Plaintiffs allege that they will fairly and adequately protect the interests of the putative class because each named plaintiff suffered the same harm as each putative class member, as each of them lost his or her opportunity to participate in the BP Settlement Agreement and to be

---

[98] *Id*. at ¶ 37.
[99] *Id*.
[100] *Id*. (footnotes omitted).
[101] *Id*. at ¶ 38.

compensated for his or her subsistence claim.[102]   Plaintiffs assert that no named plaintiff has any claim that is antagonistic to, incompatible with, or conflicts with any claim of a putative class member, as all class members assert the same causes of action.   Plaintiffs also assert that they have retained counsel who are experienced in complex class action litigation who will pursue this class action vigorously and competently.[103]

Plaintiffs allege that Rule 23(b) is satisfied based on the predominance of common questions of law or fact, including those mentioned above regarding Rule 23(a)'s commonality requirement, as Defendants' common course of conduct victimized the entire putative class.[104]   Plaintiffs assert that Defendants' duties arose from their contractual agreements with Plaintiffs, that all of the contracts are identical and that the questions of breach and causation are identical for each putative class member.[105]   Plaintiffs claim that the issue of individual damages does not predominate "because formulaic calculation has been provided by the DHECC Subsistence Loss Formula."[106]   Plaintiffs assert that class action adjudication of Plaintiffs' claims is superior to other available methods for the fair and efficient adjudication of the controversy because the putative class is composed of thousands of members and the common questions of law and fact previously identified will be established through generalized proof.[107]

---

[102] *Id*. at ¶ 39.
[103] *Id*.
[104] *Id*. at ¶ 41.
[105] *Id*.
[106] *Id*.
[107] *Id*. at ¶ 40.

While the Nicks Defendants dispute the class allegations contained in the First Amended Complaint, the Court finds that Plaintiffs have set forth the "minimum facts necessary to establish the existence of a class satisfying Rule 23's mandate,"[108] and, therefore, to withstand a Rule 23(d)(1)(D) challenge.  Accordingly, striking the class allegations under Rule 23(d)(1)(D) would be improper.  The instant Motion is, therefore, denied to the extent that it seeks to dismiss and/or strike the class allegations.

### C. Plaintiffs have failed to state a claim against Shantrell Nicks, individually, for breach of contract.

Finally, the Nicks Defendants assert that the Second Amended Complaint does not contain sufficient factual allegations to state claims for breach of contract or fraud against Shantrell Nicks, individually, and that such claims should be dismissed under Fed. R. Civ. P. 12(b)(6).  The Nicks Defendants argue that Shantrell Nicks did not execute any of the attorney-client contracts and that she is not alleged to have personally entered any contracts with any of the Plaintiffs.[109]  The Nicks Defendants reject Plaintiffs' assertion that individual attorneys are automatically liable for the actions of their law firm under Miss. Code. Ann. § 79-29-920, since that statute only applies to negligent or wrongful acts or omissions, not a breach of contract.[110]  Even if that statute governs, the Nicks Defendants claim that the Second Amended

---

[108] *Ictech-Bendeck v. Progressive Waste Solutions of LA, Inc.*, Civ. A. No. 18-7889 c/w 18-8071, 18-8218, 18-9312, 2019 WL 4111681, at *5 (E.D. La. Aug. 29, 2019) (quoting *Aguilar v. Allstate Fire & Cas. Ins. Co.*, Civ. A. No. 06-4660, 2007 WL 734809, at *2 (E.D. La. Mar. 6, 2007) (construing Rule 23(d)(4), which is now codified at Rule 23(d)(1)(D)).
[109] R. Doc. 107-1 at p. 22.
[110] *Id*.

Complaint contains no particular allegations as to the personal involvement of Shantrell Nicks in the events at issue, or of any other individual attorney for whom she could be held responsible.[111]   The Nicks Defendants assert that the Second Amended Complaint contains only conclusions that Nicks "personally participated in a negligent or wrongful act" or that Nicks "directly supervised someone who committed wrongful conduct," and that such vague and conclusory allegations are insufficient to survive a motion to dismiss.[112]

In response, Plaintiffs argue that the Second Amended Complaint, which incorporates the allegations of the First Amended Complaint, makes clear that all named attorneys and business entities were part of a joint venture, and that each time the word "Defendant" is used, it refers collectively to all named Defendants as per their joint venture.[113]   Plaintiffs argue that under Mississippi law, which applies based upon the choice of law provision contained in the attorney-client contracts entered into with Defendants, members of a joint venture are bound by the acts of the other members acting in the course and scope of the joint venture.[114]   Plaintiffs assert that the Second Amended Complaint clearly alleges that all Defendants participated in a joint venture, through which Defendants engaged in a common course of conduct that caused damage to Plaintiffs.[115]   Plaintiffs further assert that Shantrell Nicks is the only attorney at The Nicks Law Firm, LLC and that "Nicks

---

[111] R. Doc. 107-1 at p. 23 (citing *Keszenheimer v. Boyd*, 897 So.2d 190, 193 (Miss. Ct. App. 2004)).
[112] *Id*. (citing *Keszenheimer*, 897 So.2d at 193).
[113] R. Doc. 125 at p. 21.
[114] *Id*. at pp. 21-22 (citing *Braddock Law Firm PLLC v. Becnel*, 949 So.2d 38, 50 (Miss. Ct. App. 2006)).
[115] R. Doc. 125 at p. 22 (*citing* R. Doc. 45 at ¶¶ 3, 41, 48 & ¶¶ 19, 22-24, 27, 29, 31, 32, 36-60; R. Doc. 99).

Law Firm, LLC" is included on the attorney-client contracts and the claim denial letters, as well as "other BP Subsistence claim documents that were part of the joint venture." [116]   As such, Plaintiffs argue that "this Court should easily find the malpractice and breach of contract by the joint venture is sufficiently pled in the Plaintiffs' Amended Complaints and Ms. Nicks is **personally** responsible for this misconduct."[117]

Although not addressed by the parties, the Court finds that, because Plaintiffs have invoked the Court's diversity jurisdiction under 28 U.S.C. § 1332, this Court must apply the substantive law of the forum state, Louisiana.[118]   Under Louisiana law, contractual choice-of-law provisions are presumed valid unless the chosen law contravenes the public policy of the state whose law would otherwise apply. [119] Further, the party seeking to prove such a provision invalid bears the burden of proof.[120]   Here, the First Amended Complaint incorporates copies of the "Attorney-Client Contract" that Plaintiffs entered into with Rueb & Motta, The Nations Law Firm and the Nicks Law Firm. [121]   The Attorney-Client Contracts specify that Mississippi law will govern the construction of the contract and that "all obligations of the parties created hereunder are performable in Mississippi." [122]   Applying Louisiana law, the Court finds that the choice of law provision in the Attorney-Client

---

[116] R. Doc. 125 at p. 22 (*citing* R. Doc. 45 at ¶¶ 22 & 32).
[117] R. Doc. 125 at p. 23 (emphasis in original).
[118] *Wiley v. State Farm Fire & Cas. Co.* 585 F.3d 206, 210 (5th Cir. 2009).
[119] *Axis Oilfield Rentals, LLC v. Mining, Rock, Excavation and Construction, LLC*, 166 F. Supp. 3d 684, 690 (E.D. La. 2016) (*citing* La. Civ. Code art. 3540).
[120] *Axis Oilfield*, 166 F. Supp. 3d at 690 (citing *Barnett v. Am. Const. Hoist, Inc.*, 2011-1261 (La. App. 1 Cir. 2/10/12), 91 So.3d 345, 349).
[121] R. Doc. 45 at pp. 25-34.
[122] *Id*.

Contracts is presumptively valid. Accordingly, because neither party has alleged the choice of law provision is invalid, the Court's interpretation and application of the Attorney-Client Contracts is governed by Mississippi law.

According to the Fifth Circuit, "Under Mississippi law, '[a] breach-of-contract case has two elements: (1) the existence of a valid and binding contract, and (2) a showing that the defendant has broken or breached it.'"[123] The Fifth Circuit has further held that a plaintiff has the burden to prove his breach of contract claim by a preponderance of the evidence.[124] Neither party addressed these breach of contract requirements in their briefs. The Court, however, finds that Plaintiffs have alleged the existence of a contract, namely the Attorney-Client Contracts that Plaintiffs entered into with Rueb & Motta, APLC, The Nations Law Firm and The Nicks Law Firm, LLC. Plaintiffs also alleged in the First Amended Complaint that the contracts were breached by the Law Firm Defendants' failure to timely file complete subsistence claims with the DHECC. Plaintiffs alleged that they suffered economic losses as a result of the Law Firm Defendants' alleged breaches because Plaintiffs lost the opportunity to participate in the BP Settlement Program and the ability to be compensated for their subsistence losses.

As the Nicks Defendants correctly point out, the First Amended Complaint contains no allegations regarding Shantrell Nicks, as she was not yet named as a defendant in this case. Nicks was named as a defendant in the Second Amended

---

[123] *MultiPlan, Incorporated v. Holland*, 937 F.3d 487, 497 (5th Cir. 2019) (quoting *Maness v. K&A Enters. Of Miss.*, 250 So.3d 402, 414 (Miss. 2018)).

[124] *MultiPlan, Incorporated*, 937 F.3d at 497 (citing *Norman v. Anderson Reg'l Med. Ctr.*, 262 So.3d 520, 527 (Miss. 2019)).

Complaint, in which Plaintiffs allege the following:

> Shantrell Nicks, a person of the full age of majority, a resident of and domiciled in the State of Mississippi, who personally rendered professional services as an employee of The Nicks Law Firm, LLC and/or personally participated in directly supervising other employees and members of her professional limited liability company who rendered professional services on behalf of The Nicks Law Firm, LLC to the BP Subsistence Claimants in connection with the wrongful acts and/or omissions alleged and detailed herein; . . . .[125]

Plaintiffs further assert in the Second Amended Complaint that the 10 named defendants – five law firms and five individuals associated with those law firms – shall be collectively referred to as "Defendants," and Plaintiffs allege that Defendants:

> all of whom either a) personally participated in the solicitation, engagement, and performance or non-performance of legal services for BP Subsistence Claimants, and/or b) personally and directly supervised and controlled other members or employees of their corporations or professional limited liability companies who rendered or failed to render professional services for an on to the BP Subsistence Claimants on behalf of their respective corporations and/or professional limited liability companies.[126]

The Court finds that these vague allegations regarding Shantrell Nicks' alleged involvement in this case fail to assert a breach of contract claim against Nicks. Specifically, Plaintiffs have not alleged that Nicks is a party to the Attorney-Client Contracts, or that Nicks breached the terms of that contract.

The Court further rejects Plaintiffs' assertion that they have stated a claim against Nicks, individually, based upon her participation in a joint venture with the remaining defendants. The Court recognizes that Plaintiffs allege in Paragraph 3 of

---

[125] R. Doc. 99 at p. 2.
[126] *Id*. at p. 3.

the First Amended Complaint that, as to the Law Firm Defendants, that they all "participated collectively in the solicitation and engagement of BP Subsistence Claimants as a joint venture."[127]   However, that allegation was specifically omitted from the Second Amended Complaint, which "amend[ed] Paragraph 3 of [the First Amended Class Action Complaint] in order to add additional Defendants."[128]   The only other reference to a joint venture in the First Amended Complaint is Plaintiffs' assertion that, "Though Defendants' misconduct stretched across the states of Louisiana, Mississippi, Alabama, and Florida, all of the Plaintiff Class members' claims arise out of a common course of conduct by the Defendants through their joint venture."[129]

The Court finds that this one sentence, which was incorporated by the Second Amended Complaint, is insufficient to support Plaintiffs' arguments regarding the existence of a joint venture.   Under Mississippi law, a joint venture "exists when two or more persons combine in a joint business enterprise for their mutual benefit with an understanding that they are to share in profits or losses and each to have a voice in its management."[130]   Additionally, "The three main questions that are considered in [joint venture] determination are (1) intent of the parties, (2) the control question, and (3) profit sharing."[131]   While the Attorney-Client Contracts appear to show a profit-sharing arrangement between the Nicks Law Firm, The Nations Law Firm,

---

[127] R. Doc. 45 at ¶ 3(e).
[128] R. Doc. 99 at p. 1.
[129] R. Doc. 45 at ¶ 41.
[130] *Walker v. Williamson*, 131 F. Supp. 3d 580, 591 (S.D. Miss. 2015) (quoting *Hults v. Tillman*, 480 So.2d 1134, 1142 (Miss. 1985)) (internal quotation marks omitted).
[131] *Walker*, 131 F. Supp. 3d at 591 (quoting *Smith v. Redd*, 593 So.2d 989, 994 (Miss. 1991)) (internal quotation marks omitted).

and Rueb & Motta,[132] the First and Second Amended Complaints contain no allegations regarding these three requirements.  The Court acknowledges that the Attorney-Client Contracts and the claim denial letters offer some support for Plaintiffs' joint venture theory, as the contracts state that they are "made by and between Client and Rueb & Motta, The Nations Law Firm, and the Nicks Law Firm ("Attorneys"),"[133] and the signature blocks in the contracts and the letterhead of the claim denial letters reference "Rueb & Motta, The Nations Law Firm, and the Nicks Law Firm."[134]  However, the Court finds that these documents, alone, fail to show the existence of a joint venture under Mississippi law.  As such, the Court finds that Plaintiffs have not pled sufficient facts to support the existence of a joint venture in a manner that is sufficient to state a claim against Shantrell Nicks, individually, for breach of contract.

Based on the foregoing, the Court finds that Plaintiffs have failed to state a claim against Shantrell Nicks, individually, for breach of contract.

### D. Plaintiffs have failed to state a claim against Shantrell Nicks, individually, for fraud.

The Court further finds that Plaintiffs have failed to state a claim against Shantrell Nicks, individually, for fraud.  As the Nicks Defendants point out, Fed. R. Civ. P. 9(b) requires that a plaintiff alleging fraud must state the circumstances

---

[132] *See* R. Doc. 45 at pp. 25-34.

[133] *Id.*

[134] *Id.* at pp. 25-34 & 40-46.  The Court notes that one of the eight Attorney-Client Contracts incorporated into the First Amended Complaint, which is signed by plaintiff Regina Falgoust, contains a slightly different signature block that lists only "Rueb & Motta" and contains a signature line for "Gregory D. Rueb, Esq. on behalf of Attorneys."  *Id.* at p. 29.  The Court further notes that it is the only Attorney-Client Contract in the First Amended Complaint that is not signed by an attorney.  *Id.* at pp. 25-34.

constituting fraud with particularity.[135]  The Fifth Circuit has instructed that, "We treat a dismissal for failure to plead fraud with particularity under Rule 9(b) as a dismissal for failure to state a claim upon which relief can be granted." [136] Additionally, "Fifth Circuit precedent interprets Rule 9(b) strictly, requiring the plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."[137]  However, fraud may be pleaded on information and belief when the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge.[138]

Here, the First and Second Amended Complaints do not satisfy this standard. Plaintiffs allege in the First Amended Complaint that, "Defendants intentionally misrepresented and fraudulently concealed the fact that Plaintiff Class members' Subsistence Claims had either not been filed by the deadline established by the BP Settlement Program or lacked documentation required per the BP Settlement Agreement to recover on a valid Subsistence Claim."[139]  Plaintiffs further allege that, "Defendants mailed Plaintiff Class members form letters that falsely represented that their Subsistence Claims had either been timely filed or had been completed by filing all required documents,"[140] and that, "Defendants intentionally and harmfully

---

[135] *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996) (*citing* Fed. R. Civ. P. 9(b)).
[136] *Lovelace*, 78 F.3d at 1017 (citing *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 520 (5th Cir. 1993)).
[137] *In re JCC Environmental Inc.*, 575 B.R. 692, 699 (E.D. La. 2017) (quoting *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009)) (internal quotation marks omitted).
[138] *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 385 (5th Cir. 2003) (citing *ABC Arbitrage v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)).
[139] R. Doc. 45 at ¶ 52.
[140] *Id*. at ¶ 53.

concealed their gross conduct for nearly four (4) years.  Any time a Plaintiff Class member called to check on the status of their claim prior to receiving their form 'denial' letter, they were told the same thing with little to no variation – their claim was 'still pending.'"[141]  Plaintiffs, however, provide no specific details regarding the "who, what, when, where, and how" of the alleged fraud that was perpetrated through these written or oral communications by Defendants, and make no allegations regarding Shantrell Nicks' personal involvement therein.[142]  The Court further notes that Plaintiffs do not address the sufficiency of their fraud claim against Nicks in their Opposition brief, choosing instead to focus on the breach of contract claim. Based on the foregoing, the Court finds that Plaintiffs have failed to state a claim for fraud against Shantrell Nicks, individually.

Although Plaintiffs have not sufficiently stated a claim against Shantrell Nicks, individually, for breach of contract or fraud in their Second Amended Complaint, it is well settled in this Circuit that a Rule 12(b)(6) motion to dismiss is generally disfavored and is rarely granted.[143]  Further, the Fifth Circuit has recognized that:

> In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they

---

[141] *Id.* at ¶ 58.

[142] *United States ex rel. Gilbert v. Dizney*, Civ. A. No. 03-437, 2007 WL 9752048, at *1 (E.D. La. Aug. 3, 2007) (quoting *United States ex. rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)) (internal quotation marks omitted).

[143] *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986) (citing *Sosa v. Coleman,* 646 F.2d 991, 993 (5th Cir. 1981)).

are unwilling or unable to amend in a manner that will avoid dismissal.[144]

As explained by our sister court, "A court generally should provide a plaintiff an opportunity to amend her complaint before granting a motion to dismiss with prejudice."[145]  As such, the Court affords Plaintiffs the opportunity to cure the deficiencies identified in the instant Motion.  Plaintiffs shall have 14 days from the date of this Order to file an amended, comprehensive complaint addressing the deficiencies.  The Nicks Defendants shall be afforded an opportunity to renew their Rule 12(b)(6) motion to dismiss the breach of contract and fraud claims asserted against Shantrell Nicks, individually, following the amendment of the complaint.

## IV.    CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that The Nicks Law Firm, LLC's and Shantrell Nicks' Motion to Dismiss and/or to Strike Class Allegations of Second Amended Class Action Complaint[146] is **DENIED.  IT IS FURTHER ORDERED** that Plaintiffs shall have 14 days from the date of this Order to file a comprehensive amended complaint to address the deficiencies raised by the Nicks Defendants regarding the fraud and breach of contract claims asserted against Shantrell Nicks, individually.  The amended complaint shall include all of Plaintiffs' numbered allegations, as revised, supplemented, and/or amended, which will become the

---

[144] *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).
[145] *In re Winstead*, 605 B.R. 432, 443 (Bankr. S.D. Miss. 2019) (citing *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000)).
[146] R. Doc. 107.

operative complaint in this matter without reference to any other document in the record.

New Orleans, Louisiana, October 16, 2020.

WENDY B. VITTER
United States District Judge