# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DEBORAH A. GAUDET, ET AL.** Individually and on Behalf of a Class of All Other Similarly Situated Persons | CIVIL ACTION NO. 19-cv-10356 |
| VERSUS | JUDGE WENDY B. VITTER |
| | MAGISTRATE JANIS VAN MEERVELD |
| **HOWARD L. NATIONS, APC, ET AL.** | DEMAND FOR JURY TRIAL |

## THIRD AMENDED CLASS ACTION COMPLAINT

**NOW INTO COURT**, through undersigned counsel, come Plaintiffs, **DEBORAH A. GAUDET**, **TIMOTHY BUTLER, DIAN B. CAMPBELL, KRISTINE COLLINS, REGINA FALGOUST, ABRAHAM GAMBERELLA, ADAM J. HEBERT, FRED LEDET, STANWOOD MOORE, JR.,** and **JAMES SCALES, III,** individually and on behalf of all others similarly situated, who, in compliance with this Court's October 16, 2020 Order and Reasons [Doc. 234], desire to amend the Second Amended Class Action Complaint [Doc. 99] filed into the record on November 20, 2019 by replacing the entirety of that Second Amended Class Action Complaint to read as follows:

## INTRODUCTION

On April 20, 2010, a catastrophic oil spill ("BP Oil Spill") occurred in the Gulf of Mexico when the Deepwater Horizon sank, resulting in damages and losses to individuals, businesses, and

governmental entities in certain coastal states, namely, Louisiana, Mississippi, Alabama, Florida, and Texas. Subsequently, multiple class action lawsuits were filed, and eventually consolidated into multidistrict litigation, which was assigned to Judge Carl Barbier in the Eastern District of Louisiana. Ultimately the matter was resolved by settlement and the Court approved the Deepwater Horizon Economic and Property Damages Settlement Agreement ("BP Settlement Agreement"), which was intended and designed to provide recovery for a broad class of claimants by providing monetary compensation for the losses sustained as a result of the BP Oil Spill. See *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL 2179 (Document 6430).

The BP Settlement Agreement established the Economic and Property Damages Settlement Class ("BP Class"), which included persons and entities located in geographically defined areas in Florida, Alabama, Mississippi, Louisiana, and Texas. It also established the Deepwater Horizon Economic and Property Damages Settlement Program ("BP Settlement Program"), in which BP Class members could participate by filing for their losses caused by the BP Oil Spill ("BP Claims"). The BP Claims were processed by the Deepwater Horizon Economic Claims Center ("DHECC"). Specifically, the BP Settlement Agreement provided for affected persons to make claims for subsistence losses ("Subsistence Claims") caused by the closing of Gulf Coast fishing areas due to contamination from the BP Oil Spill.

Plaintiffs were among many people who resided along the Gulf Coast who harvested fish and seafood in the coastal area for their regular dietary consumption. Since coastal areas were closed due to the BP Oil Spill, Plaintiffs were unable to catch and harvest seafood.

After the settlement was approved and during the BP claims period, Plaintiffs were advised that out-of-state lawyers were hosting meetings in various locations. The meetings were scheduled

and designed by Defendants, who had formed a joint venture "to jointly prosecute Deepwater Horizon Economic and Property Settlement Subsistence Claims." This joint venture was formed by Nations Law Firm, Rueb & Motta, PLC, the Nicks Law Firm and Shantrell Nicks individually. As part of their joint venture, Defendants used the meetings to solicit clients in order to file Subsistence Claims in the BP Settlement Program on behalf of the clients they had engaged.

Each named Defendant personally participated in the joint venture and each assisted in establishing and/or overseeing the meeting locations. Pertinent to the meeting locations, Greg Rueb, Howard L. Nations, and Shantrell Nicks traveled to these locations to make sure things were running "smoothly," confirm the correct and necessary documents were in the facilities, and to see the number of clients attending the meetings. Joseph A. Motta also traveled to South Louisiana to meet with the staff on occasion to discuss the BP Subsistence Claims processing and filing.

Because of her prior experience filing BP Subsistence Claims, Nicks and her internal legal team were also charged with taking the documents coming in from clients and entering the data into the joint venture's DHECC Portal, listed under Howard L. Nations, APC. The Nations firm compensated all field agents who were working in these meeting centers and Howard L. Nations, Cindy L. Nations, and their internal team were key decision makers regarding Subsistence Claims procedures as well as staffing decisions for handling and processing these claims.

Ultimately, the efforts to recruit subsistence clients were highly successful in that the Defendants handled at least 14,500 claimants in Louisiana, Mississippi, Alabama, and Florida. Each Plaintiff herein engaged Defendants to provide legal representation in connection with his or her participation in the BP settlement by filing a Subsistence Claim on his or her behalf with DHECC.

Deborah A. Gaudet, along with her husband Ray, attended one of the Defendant-scheduled

meetings at the Lil Caillou School in Chauvin, Louisiana. At that meeting, Defendants' representatives advised the Gaudets to fill out forms to identify their subsistence losses, which formed the basis for their BP Subsistence Claim. At the meeting, forms were presented to claimants that had been partially completed in advance by Defendants. Additionally, Defendants created and placed poster boards in the meeting rooms that provided instruction to clients on what information the client was to provide on the forms so that his or her claim could be properly filed and paid by BP.

At the meeting at the Lil Caillou School, Deborah A. Gaudet engaged Defendants to file a claim as a result of damages she and her husband sustained from being restricted from harvesting seafood in the closed coastal areas. Gaudet signed a fee agreement with Defendants and fully expected their claim would be handled pursuant to the terms of the client contract she executed with Defendants and in accordance with the BP Settlement Agreement -- allowing recovery for specified subsistence losses.

Subsequently, Deborah A. Gaudet called Defendants' call center for an update on the status of her claim. She was told there was nothing more that she needed to do and her claim was "still pending." Gaudet called again on several occasions between 2016 and March 14, 2019. Each response was equally and sadly misleading – "Your claim is still pending." Gaudet relied upon this representation and fully believed her claim had been properly submitted to DHECC by the Defendants. In March of 2019, Gaudet received a form denial letter which had been mailed en masse by Defendants, stating that BP had "denied" her claim. The letter bore an October 31, 2018 date. In truth and in fact, Defendants had never filed a Subsistence Claim with DHECC on Gaudet's behalf. Yet, this disclosure, fundamental to the fiduciary relationship between attorneys and their clients, had never been made known to her.

Similar to Gaudet, on May 26, 2015, Timothy Butler attended a community meeting hosted by Defendants held at the home of Defendants' representative in Thibodaux, Louisiana. Butler provided the requisite information and completed the necessary documentation, including the "Attorney-Client Contract," for Defendants to file his BP Subsistence Claim. Butler was told by Defendants' field representative that his claim would be timely submitted to the DHECC. After completion of the client contract and the necessary forms, Butler called Defendants' call center for an update on the status of his claim, and was told his claim was "still pending." Butler relied upon this representation and fully believed that his claim had been properly submitted to DHECC by Defendants. However, in truth and in fact, Defendants never filed a Subsistence Claim with DHECC on Butler's behalf. Butler received a "denial" letter in March of 2019, which was identical to Gaudet's letter -- likewise dated October 31, 2018.

Dian B. Campbell attended a meeting in Belle Chasse on May 29, 2015 at the Law Office of Terry Sercovich, an office used by Defendants to host one of many community meetings. She provided the requisite information and completed the necessary documentation, including the "Attorney-Client Contract," for Defendants to file her BP Subsistence Claim. Campbell subsequently called Defendants' call center several times for an update on the status of her claim, and each time was told her claim was "still pending." Campbell relied upon this representation and fully believed that her claim was properly submitted to DHECC by Defendants. In truth and in fact, Defendants had never filed a Subsistence Claim for Campbell. Campbell received a "denial" letter from Defendants in February or March of 2019. The letter was identical to those received by Gaudet and Butler -- likewise dated October 31, 2018.

Kristine Collins attended a similar community meeting hosted by Defendants at a facility in Golden Meadow on June 8, 2015. She provided the requisite information and completed the

necessary documentation, including the "Attorney-Client Contract," for Defendants to file her BP Subsistence Claim. Collins fully believed that her claim had been properly submitted to DHECC by Defendants. Unfortunately, Defendants failed to file a Subsistence Claim with DHECC on her behalf by the June 8, 2015 deadline. Parallel to the other Plaintiffs, she received the same "denial" form letter from Defendants in March of 2019 -- likewise dated October 31, 2018.

On May 7, 2015, Regina Falgoust attended a community meeting hosted by Defendants at the Lil Caillou School in Chauvin, Louisiana. Just as the others, she provided the requisite information and completed the necessary documentation, including the "Attorney-Client Contract," for Defendants to file her Subsistence Claim. Falgoust also subsequently called Defendants' call center on multiple occasions for an update on the status of her claim, and was told repeatedly her claim was "still pending." Falgoust relied upon this representation and fully believed her claim had been properly submitted to DHECC by Defendants. Ultimately, her Subsistence Claim was denied for being incomplete. Although, Defendants filed her claim, they knowingly failed to include specific documents required by the BP Settlement Agreement. In February or March of 2019, she received a "denial" letter from Defendants dated October 31, 2018 identical to those received by other Plaintiffs, whose claims had been purportedly "denied."

On May 12, 2015, Abraham Gamberella attended a community meeting hosted by Defendants at the Lil Caillou School in Chauvin. He provided the requisite information and completed the necessary documentation, including the "Attorney-Client Contract," for Defendants to file his Subsistence Claim. Gamberella subsequently called Defendants' call center for an update on the status of his claim, and was told his claim was "still pending." Gamberella relied upon this representation and fully believed his claim had been properly submitted to DHECC by Defendants. Gamberella's Subsistence Claim was denied by BP for being incomplete. Again, Defendants filed

his claim but knowingly failed to include specific documents required by the BP Settlement Agreement. Gamberella received the same "denial" letter from Defendants in February or March of 2019 -- likewise dated October 31, 2018.

On May 29, 2015, Adam J. Hebert attended a community meeting hosted by Defendants at the Lil Caillou School in Chauvin. He provided the requisite information and completed the necessary documentation, including the "Attorney-Client Contract," for Defendants to file his Subsistence Claim. Upon completion of the intake packet, Hebert was told by Defendants' field representative that his claim would be timely submitted to the DHECC. Hebert subsequently called Defendants' call center several times for an update on the status of his claim, and was told his claim was "still pending." Hebert relied upon this representation and fully believed his claim had been properly submitted to DHECC by Defendants. However, in truth and in fact, Defendants never filed his Subsistence Claim with DHECC. Similar to other Plaintiffs, he received the same "denial" form letter from Defendants in February or March of 2019 - - likewise dated October 31, 2018.

On June 8, 2015, Fred Ledet attended the community meeting hosted by Defendants at the Chackbay Volunteer Fire Station. June 8, 2015 was the BP Claim filing deadline for Subsistence Claims. He provided the requisite information and completed the necessary documentation, including the "Attorney-Client Contract," for Defendants to file his Subsistence Claim. Upon completion of the intake packet, Ledet was told by Defendants' field representative that his claim would be timely submitted to the DHECC. Ledet subsequently called Defendants' call center several times for an update on the status of his claim, and was told his claim was "still pending." Ledet relied upon this representation and fully believed his claim had been properly submitted to DHECC by Defendants. Unfortunately, Defendants failed to file Ledet's Subsistence Claim with

DHECC by the June 8, 2015 deadline. Parallel to other Plaintiffs, he received the same "denial" letter from Defendants in February or March of 2019 -- likewise dated October 31, 2018.

On May 11, 2015, Stanwood Moore, Jr. attended a community meeting hosted by Defendants at the Lil Caillou School in Chauvin. He provided the requisite information and completed the necessary documentation, including the "Attorney-Client Contract," for Defendants to file his Subsistence Claim. Moore called Defendants' call center for an update on the status of his claim, and was told his claim was "still pending." Moore relied upon this representation and fully believed his claim had been properly submitted to DHECC by Defendants. The Subsistence Claim on Moore's behalf was denied for being incomplete. Although Defendants filed Moore's claim, Defendants knowingly failed to include specific documents required by the BP Settlement Agreement.  Similar to other Plaintiffs, Moore received the same "denial" form letter from Defendants in February or March of 2019 -- likewise dated October 31, 2018.

On June 2, 2015, James Scales, III attended a community meeting hosted by Defendants at the Lil Caillou School in Chauvin, Louisiana. He provided the requisite information and completed the necessary documentation, including the "Attorney-Client Contract," for Defendants to file his Subsistence Claim.  Upon completion of the intake packet, Scales was told by Defendants' field representative that his claim would be timely submitted to the DHECC. Scales subsequently called Defendants' call center numerous times for an update on the status of his claim, and was told his claim was "still pending." Scales relied upon this representation and fully believed his claim had been properly submitted to DHECC by Defendants. However, in truth and in fact, Defendants had never filed a Subsistence Claim for Scales. Like other Plaintiffs, he received the same "denial" form letter from Defendants in February or March of 2019 -- likewise dated October 31, 2018.

These Plaintiffs are representative of the approximately two thousand six hundred ninety-

five (2,695) proposed Class members along the Gulf Coast for whom Defendants contractually agreed to properly file BP Subsistence Claims on their behalf, but failed to do so. Defendants allowed their self-interest to take precedence and to become the primary motivating factor by handling as many Subsistence Claims as they possibly could. By doing so, their avaricious self-interest exceeded and overrode their individual client's interests. Defendants knew or should have known they were understaffed and incapable of timely processing all of their clients' Subsistence Claims. Allowing clients to enter into attorney-client contracts until the late hours of the June 8, 2015 deadline was reckless, thoughtless, and a recipe for disaster. Yet, Defendants did so deliberately at their peril and to the irrefutable detriment of their clients, class members herein.

Defendants were advised by their own on-site field representatives that their intake facilities should close to allow Defendants' personnel an opportunity to process, complete, and file all Subsistence Claims by the June 8, 2015 deadline. Nevertheless, despite these warnings, Defendants kept their facilities open until late in the evening on June 8, 2015 continuing to solicit and accept representation for new Subsistence Claimants. In fact, Gregory Rueb – on behalf of the joint venture – instructed the field agents to keep the facilities open and to expect an additional 3,000 claimants to sign-up during the final three (3) days prior to the deadline. It is believed that the Defendants directed the joint venture field agents to inform clients that their claims would be submitted timely upon acceptance of the intake packet.

And in fact, Defendants continued to accept new claimants at their facilities until late into the night on June 8, 2015, which required their field agents to continue working into the early hours of the morning on June 9, 2015 (past the filing deadline) attempting to organize claimants' paperwork and prepare it for filing. Defendants' cavalier and careless attitude toward their clients continued unabated over the next few years. When Defendants received DHECC incompleteness

notices, they either chose to ignore the notices or were simply overwhelmed with the number of claims they were handling. This neglect resulted in denied claims that simply lacked documentation that could have and should have been provided by Defendants.

Defendants knew, or should have known, of the many non-filed, untimely, or incomplete claims soon after the June 8, 2015 filing deadline. Yet, Defendants misled Plaintiffs as to the status of their Subsistence Claims and inexcusably delayed notification to the clients for more than three years about the "denial" of their claims. Adding insult to injury, when Defendants notified Plaintiffs about the "denial" of their claims, Defendants blamed BP instead of acknowledging their own fault and neglect. Furthermore, Defendants sent "denial" letters en masse which falsely claimed that Plaintiffs' and proposed Class members' claims had been properly filed but denied by BP. But in fact, the claims had never been filed at all. Upon information and belief, this "denial" letter was drafted by Howard L. Nations and Cindy Nations with the input and approval of the other joint venture attorneys.

This class action litigation is intended to protect the rights of clients, previously represented by Defendants, who lost the opportunity to participate in recovery of their Subsistence Claims through the BP Settlement Program. Their lost opportunities result solely from Defendants' breach of contract, professional malpractice, and fraud. As a result of Defendants' misconduct, none of Plaintiff class members received *any* compensation for their Subsistence Claim through the BP Settlement Program. This suit seeks to recover from Defendants the compensation that their former clients should have and would have received had Defendants timely filed those claims with all documentation and information required by the BP Settlement Agreement.

1.

This is a class action lawsuit to recover damages for breach of contract, professional

malpractice, and fraud arising from Defendants' actions and inactions committed while representing the interests of the proposed Class members in the Deepwater Horizon Economic and Property Damage Settlement Program, in which BP Class members made claims to be compensated for their subsistence losses caused by the Deepwater Horizon catastrophe.

## PARTIES

2.

### *Plaintiffs:*

Deborah A. Gaudet, a natural person of the full age of majority, domiciled in and a citizen of the State of Louisiana, Parish of Terrebonne, individually, and on behalf of all other similarly situated persons constituting the Class sought to be certified pursuant to Rule 23 of the Federal Rules of Civil Procedure;

Timothy Butler, a natural person of the full age of majority, domiciled in and a citizen of the State of Louisiana, Parish of Terrebonne, individually, and on behalf of all other similarly situated persons constituting the Class sought to be certified pursuant to Rule 23 of the Federal Rules of Civil Procedure;

Dian Campbell, a natural person of the full age of majority, domiciled in and a citizen of the State of Louisiana, Parish of Plaquemines, individually, and on behalf of all other similarly situated persons constituting the Class sought to be certified pursuant to Rule 23 of the Federal Rules of Civil Procedure;

Kristine Collins, a natural person of the full age of majority, domiciled in and a citizen of the State of Louisiana, Parish of Lafourche, individually, and on behalf of all other similarly situated persons constituting the Class sought to be certified pursuant to Rule 23 of the Federal Rules of Civil Procedure;

Regina Falgoust, a natural person of the full age of majority, domiciled in and a citizen of the State of Louisiana, Parish of Terrebonne, individually, and on behalf of all other similarly situated persons constituting the Class sought to be certified pursuant to Rule 23 of the Federal Rules of Civil Procedure;

Abraham Gamberella, a natural person of the full age of majority, domiciled in and a citizen of the State of Louisiana, Parish of Terrebonne, individually, and on behalf of all other similarly situated persons constituting the Class sought to be certified pursuant to Rule 23 of the Federal Rules of Civil Procedure;

Adam J. Hebert, a natural person of the full age of majority, domiciled in and a citizen of the State of Louisiana, Parish of Terrebonne, individually, and on behalf of all other similarly situated persons constituting the Class sought to be certified pursuant to Rule 23 of the Federal Rules of Civil Procedure;

Fred Ledet, a natural person of the full age of majority, domiciled in and a citizen of the State of Louisiana, Parish of Lafourche, individually, and on behalf of all other similarly situated persons constituting the Class sought to be certified pursuant to Rule 23 of the Federal Rules of Civil Procedure;

Stanwood Moore, Jr., a natural person of the full age of majority, domiciled in and a citizen of the State of Louisiana, Parish of Terrebonne, individually, and on behalf of all other similarly situated persons constituting the Class sought to be certified pursuant to Rule 23 of the Federal Rules of Civil Procedure; and

James Scales, III, a natural person of the full age of majority, domiciled in and a citizen of the State of Louisiana, Parish of Terrebonne, individually, and on behalf of all other similarly situated persons constituting the Class sought to be certified pursuant to Rule 23 of the Federal

Rules of Civil Procedure.

3.

**_Defendants:_**

a)      Howard L. Nations, APC, a Texas corporation, doing business in the State of Louisiana and within this district;

b)      The Nicks Law Firm, LLC, a Mississippi limited liability company, doing business in the State of Louisiana and within this district;

c)      Rueb & Motta, APLC, a California corporation, doing business in the State of Louisiana and within this district;

d)      Joseph A. Motta, Attorney at Law, APLC, a California corporation, doing business in the State of Louisiana and within this district;

e)      The Rueb Law Firm, APLC, a California corporation, doing business in the State of Louisiana and within this district;

f)      Howard L. Nations, a person of the full age of majority, a resident of and domiciled in the State of Texas, who personally rendered professional services as an employee of Howard L. Nations, APC and/or personally participated in directly supervising other employees and members of his corporation or professional limited liability company who rendered professional services on behalf of Howard L. Nations, APC to the BP Subsistence Claimants in connection with the wrongful acts and/or omissions alleged and detailed herein;

g)      Cindy L. Nations, a person of the full age of majority, a resident of and domiciled in the State of Texas, who personally rendered professional services as an employee of Howard L. Nations, APC and/or personally participated in directly supervising other employees and members of her corporation or professional limited liability company who rendered professional services on behalf of Howard L. Nations, APC to the BP Subsistence Claimants in connection with the wrongful acts and/or omissions alleged and detailed herein;

h)      Shantrell Nicks, a person of the full age of majority, a resident of and domiciled in the State of Mississippi, who personally rendered professional services as an employee of The Nicks Law Firm, LLC and/or personally participated in directly supervising other employees and members of her professional limited liability company who rendered professional services on behalf of The Nicks Law Firm, LLC to the BP Subsistence Claimants in connection with the wrongful acts and/or omissions alleged and detailed herein;

i)      Gregory D. Rueb, a person of the full age of majority, a resident of and domiciled in the State of California, who personally rendered professional services as an

employee of Rueb & Motta, APLC and The Rueb Law Firm, APLC and/or personally participated in directly supervising other employees and members of his corporations and/or professional limited liability companies who rendered professional services on behalf of Rueb & Motta, APLC and/or The Rueb Law Firm, APLC to the BP Subsistence Claimants in connection with the wrongful acts and/or omissions alleged and detailed herein; and,

j)      Joseph A. Motta, a person of the full age of majority, a resident of and domiciled in the State of California, who personally rendered professional services as an employee of Rueb & Motta, APLC and Joseph A. Motta, Attorney at Law, APLC and/or personally participated in directly supervising other employees and members of his corporations and/or professional limited liability companies who rendered professional services on behalf of Rueb & Motta, APLC and/or Joseph A. Motta, Attorney at Law, APLC to the BP Subsistence Claimants in connection with the wrongful acts and/or omissions alleged and detailed herein.

(hereinafter "Defendants," all of whom participated individually and collectively in the solicitation and engagement of BP Subsistence Claimants as a joint venture by either a) personally participating in the solicitation, engagement, and performance or non-performance of legal services for BP Subsistence Claimants, and/or b) personally and directly supervising and controlling other members or employees of their corporations or professional limited liability companies who rendered or failed to render professional services for and on to the BP Subsistence Claimants on behalf of their respective corporations and/or professional limited liability companies).

## JURISDICTION AND VENUE

4.

This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA") because: (i) there are 100 or more class members, (ii) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and (iii) at least one Plaintiff and Defendant are citizens of different states. *See* 28 U.S.C. § 1332(d).

To date, undersigned counsel have been engaged by and represent approximately one hundred twenty-three (123) clients, including an additional one hundred seventy-five (175) dependents of these clients. All of these clients contend and believe they have been harmed by the Defendants in the same manner as the named Plaintiffs herein, and thus, are putative Class members. Furthermore, Plaintiffs discovered, through pre-certification discovery, that the

proposed Class consists of approximately 2,695 individuals across the Gulf Coast. Therefore, CAFA's minimum requirement of 100 class members has been easily satisfied. CAFA's minimum amount in controversy requirement of $5,000,000.00 is also satisfied. The Plaintiffs' damages may easily be calculated by using the "Subsistence Loss Formula," described in the BP Settlement Agreement and created by the BP Settlement Program. This formulaic calculation makes the computation of each Class member's subsistence loss a simple mathematical equation which involves the input of data and values based on charts created by the BP Settlement Program. The "Subsistence Loss Formula" used by DHECC to calculate total compensation is below:



**Subsistence Loss Formula**

Distribution is determined using the following methodology:

| Family Member | Age | Gender | Percent of Diet from Subsistence | | | Reasonable Caloric Consumption | Daily Allowable Subsistence Calories with 46 Percent Threshold |
|---|---|---|---|---|---|---|---|
| | | | Claimant Reported | If Claimant Reported D >46%=46% | | | |
| A | B | C | D | If Claimant Reported D > 45% then D = 45% | → → | E (From Table 6 Using A, B, and C) | F = D * E |
| **Totals** | | | | | | | **DS** |

Harvest is determined using the following methodology:

| Species | Gross Harvest Loss (lbs.) | Consumable Portion of Harvest | Consumable Retail Product (lbs.) | Percent Bartered | Percent Consumed | Appropriate Pricing based on Loss Period | Retail Value Bartered | Retail Value Consumed | Kcal / lbs. | Total Caloric Value Distributed |
|---|---|---|---|---|---|---|---|---|---|---|
| G | H | I (From Table 8 using G | J = H * I | K | L | M (Consistent with Claimant Loss Period) | N = J*K*M | P = J*L*M | Q (From Table 9 Using G) | R = J*L*Q |
| **Totals** | | | | | | | **BV** | **CV** | | **TC** |

**Legend**

| | Information from Claim Forms and Claims Administrator conducted Interviews |
|---|---|
| | Statistical information derived from the Report on Estimates of Caloric Intake and Caloric Value of Foods for Residents in the Gulf Coast Region of the United States |
| | Information generated through calculation |
| | Retail prices included in the Seafood and Game Retail Price Chart |

The Client Calculator is defined as follows:

| | |
|---|---|
| Retail Value – Consumed | [CV] |
| Retail Value – Bartered | [BV] |
| Loss Period in Days | [LP] |
| Total Caloric Value Consumed | [TC] |
| Daily Caloric Value Consumed | [DC] = [TC] / [LP] |
| Daily Allowable Subsistence Calories | [DS] |
| Consumption to Distribution Ratio | [CR] = [DC] / [DS] |
| Value of Lost Harvest – Consumed if [CR]>1 | [VH] = [CV] / [CR] |
| Value of Lost Harvest – Consumed if [CR]<1 | [VH] = [CV] |
| Total Compensation Amount Pre RTP | [TA] = [BV]+[VH] |
| RTP (2.25) | [RP] = [TA] * 2.25 |
| Total Compensation Amount | [TA] + [RP] |

418961
1/11/13

4

Based on this underlying "Subsistence Loss Formula" and the average payment determinations made for the 10,744 joint venture subsistence clients whose claims were filed and paid, it can be determined with a high (95%) probability that the average payment for *each* proposed Class member would be within the range of $14,238.05 to $14,500.03. By multiplying this damage amount by the number of individuals (2,695) in the proposed Class, it can be determined that the

total economic damages suffered by the proposed Class is between $38,371,544.75 to $39,077,580.85. Thus, the aggregate amount in controversy related to the proposed Class is nearly $40,000,000.00 – well above CAFA's $5,000,000.00 minimum requirement.

Further, CAFA's diversity requirement is also satisfied. In this case, each named Plaintiff is a citizen of Louisiana. The principal place of business of Howard L. Nations, APC is Texas. The Nicks Law Firm, LLC is solely owned by its member, Shantrell Nicks, a citizen of Mississippi. The principal place of business of Rueb & Motta, APLC is California. The principal place of business of Joseph A. Motta, Attorney at Law, APLC is California. The principal place of business of The Rueb Law Firm, APLC is also California.

Additionally, this Court also has diversity jurisdiction under 28 U.S.C. § 1332(a) because all of the named Class representatives and Defendants are completely diverse and the claim of Abraham Gamberella, a proposed Class representative, against Defendants exceeds $75,000. Gamberella possessed a Subsistence Claim individually and on behalf of his three (3) dependents. Gamberella regularly fished in Madison Bay, Wonder Lake, and Lake Barré in Terrebonne Parish and Elmer's Island in Jefferson Parish.  Unfortunately, due to the BP oil spill, he was unable to fish at his regular locations from April 20, 2010 to March 7, 2012.  Due to the closed areas, Gamberella lost the ability to harvest his normal amounts of croaker, sheepshead, drum, redfish, flounder, speckled trout, shrimp, and crabs. Applying the BP Settlement Program's "Subsistence Loss Formula" to the information Gamberella provided Defendants to file his Subsistence Claim yields a loss amount for Gamberella in excess of $100,000. Because this Court has diversity jurisdiction of Gamberella's claim, and as a proposed Class representative, this Court has supplemental jurisdiction over the other Class members' claims pursuant to 28 U.S.C. § 1367

regardless of whether the CAFA requirements have been satisfied.[1]

5.

Venue is proper in the Eastern District of Louisiana pursuant to 28 U.S.C. § 1391(b)(2) and (3) because a substantial number of the events or omissions giving rise to Plaintiffs' claims occurred in this district. It is uncontradicted that the BP Oil Spill caused damage to the residents of this district, including members of the proposed Plaintiff Class. Thus, Plaintiffs' claims for damages and losses from the BP Oil Spill originated in this district. Litigation for recovery of economic damages caused by the BP Oil Spill was held and concluded in this district. Moreover, Defendants purposely availed themselves in this district by soliciting Plaintiffs, who resided in this district, by advertising and holding "Fishing Claim Centers/Meeting Locations" in this district. Further, Defendants received substantial revenues from their representation of other claimants residing in this district. Additionally, Nations Law Firm, in defending a lawsuit against it in Florida, has made jurisdictional representations indicating that this Court is a proper jurisdictional forum for BP Subsistence Claims. Defendant-Nations wrote: "It cannot be disputed that the Plaintiffs' claims arise from litigation based in Louisiana Federal Court and that the Court of the Eastern District of Louisiana is the proper jurisdiction for this matter to be brought."[2]

## **FACTUAL ALLEGATIONS**

6.

The Deepwater Horizon was a semi-submersible oil drilling rig owned by Transocean and

---

[1] *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 549 (2005) ("We hold that, where the other elements of jurisdiction are present and at least one named plaintiff in the action satisfies the amount-in-controversy requirement, §1367 does authorize supplemental jurisdiction over the claims of other plaintiffs in the same Article III case or controversy, even if those claims are for less than the jurisdictional amount specified in the statute setting forth the requirements for diversity jurisdiction.")

[2] See Defendant's Supplemental Exhibit and Memorandum (Florida litigation). The Downs Law Group, A Florida Corporation v. no. 18-12590-CA The Nations Law Firm, Rueb & Motta, PLC, The Nicks Law Firm, LLC and Litigation Settlement Services, Inc.

leased, chartered, and operated by BP approximately fifty (50) miles southeast of Venice, Louisiana in the Gulf of Mexico. At approximately 10 o'clock p.m. on April 20, 2010, while the Deepwater Horizon was performing oil and gas operations off the coast of Louisiana, an explosion occurred on the vessel, causing its crewmembers to be thrown overboard and killing at least 11 crewmembers aboard the vessel. The explosion and subsequent fire caused such significant damage that the Deepwater Horizon subsequently sank in approximately 5,000 feet of water.

7.

As a result of the explosion and the subsequent sinking of BP's Deepwater Horizon, it has been estimated that 4.9 million barrels of oil leaked into the Gulf of Mexico between April 20, 2010 and July 15, 2010.  The 87-day oil spill caused significant ecological and economic damage to Louisiana, Mississippi, Alabama, Florida, and Texas.

8.

Due to the devastation caused to the coastal marine and wildlife habitats by the BP Oil Spill, on April 30, 2010, the Louisiana Department of Wildlife and Fisheries closed a significant number of coastal boundaries and waterways for recreational and commercial fishing. Other Gulf states followed with similar recreational and commercial fishing directives and closures.

9.

The members of the proposed Plaintiff Class reside in Louisiana, Mississippi, Alabama, and Florida, where they, at all times prior to the BP Oil Spill, caught and harvested natural resources from the Gulf of Mexico, such as fish, seafood, and game in a traditional manner to sustain their basic personal and family dietary, economic, and security needs.  Plaintiffs intended to continue catching and harvesting fish, seafood, and game for the purpose of subsistence use. However, as a result of the closures of coastal boundaries, waterbodies, and waterways, Plaintiffs

were unable to harvest fish, seafood, or game in the closed areas. Typically, these geographically closed areas were used by Plaintiffs because of their proximity to Plaintiffs' residences. Consequently, Plaintiffs sustained a significant loss of subsistence use of the traditionally abundant coastal natural resources.

10.

At all times during which Plaintiffs used or intended to use the coastal natural resources for subsistence, Plaintiffs maintained and held valid state government-issued licenses to harvest fish, seafood, and game in their respective home states.

11.

At all relevant times, Plaintiffs were not fishing or hunting for sport. Instead, Plaintiffs harvested natural resources from the Gulf of Mexico for subsistence purposes.

12.

Multiple class action lawsuits were filed against BP and other parties responsible for the BP Oil Spill to recover losses, including economic and property damage, sustained as a result of the BP Oil Spill. These lawsuits were consolidated in a Multidistrict Litigation proceeding (MDL No. 2179) in the United States District Court for the Eastern District of Louisiana.

13.

Ultimately, the matters pending in MDL No. 2179 resulted in the Deepwater Horizon Economic and Property Damages Settlement Agreement ("BP Settlement Agreement"), which was certified by the Court on December 21, 2012.

14.

The BP Settlement Agreement established the Economic and Property Damages Settlement Class ("BP Class"), which included persons and entities located in geographically defined areas

around the Gulf Coast and who sustained losses as a result of the BP Oil Spill.

15.

For eligible claimants, the BP Settlement Agreement provided for payment of economic loss and property damage claims for certain damage categories: Business Economic Loss, Individual Economic Loss, Subsistence Loss, Coastal Real Property Damage, Wetlands Real Property Damage, and Vessel of Opportunity Charter Payments.

16.

BP Class members were able to assert their rights with respect to the BP Settlement Agreement and to receive compensation for their BP Oil Spill related losses by filing claims (i.e. BP Claims) with the Deepwater Horizon Economic Claims Center ("DHECC"), which administered claims established by the BP Settlement Agreement. Failure by the claimant or his counsel (in this case Defendants) to include or submit the required documents rendered a claim ineligible for compensation. [See ¶¶ 32 and 38 for required information and documentation for a valid, eligible Subsistence Claim as per the DHECC requirements.]

17.

The deadline to file all BP Claims, including Subsistence Claims, with DHECC was June 8, 2015 (except for those claims carved out previously in the Seafood Compensation Program - compensation for commercial fishermen - which are not at issue in this litigation). The deadline to file BP Claims was widely promulgated by DHECC so that all interested parties and their counsel were notified of the deadline. The following notice of the BP Claims filing deadline was posted on the DHECC website:

**10.**    ***June 8, 2015 Filing Deadline (Posted May 18, 2015).*** The final deadline for filing all Deepwater Horizon Economic and Property Damages Settlement Program claims is June 8, 2015. This deadline does not apply to or extend the deadline for filing claims under the Seafood Compensation Program, which deadline has already expired. Claim Forms for filing of all new claims (other than those under the Seafood Compensation Program) must be completed and signed in accordance with Section 4.4.5 of the Settlement Agreement, and submitted to the Settlement Program on or before June 8, 2015.Click here to view an Alert with additional information.



**June 8, 2015 Filing Deadline**

1.    *Final Deadline.* The final deadline for filing all Deepwater Horizon Economic and Property Damages Settlement Program claims is **June 8, 2015**. This deadline does **not** apply to or extend the deadline for filing claims under the Seafood Compensation Program, which deadline has already expired. Claim Forms for filing of all new claims (other than those under the Seafood Compensation Program) must be completed and signed in accordance with Section 4.4.5 of the Settlement Agreement, and submitted to the Settlement Program on or before **June 8, 2015**. If you have already completed a Claim Form but have not yet signed and submitted it to the Settlement Program, you must do so on or before **June 8, 2015**. The following table outlines how to ensure that your completed and signed Claim Form is timely submitted, depending on which method of submission you choose:

| TIMELY SUBMISSION OF COMPLETED CLAIM FORM | | |
|---|---|---|
| **Method of Submission** | **How to Measure Timeliness** | **Address** |
| 1. **Portal** | Submitted through the Portal on or before midnight, prevailing Central Time on June 8, 2015. | Your secure Settlement Program Portal. |
| 2. **Email** | Email sent on or before midnight, prevailing Central Time on June 8, 2015. | ClaimForms@deepwaterhorizoneconomicsettlement.com |
| 3. **Regular US Mail** | Item postmarked on or before June 8, 2015.<br><br>If item has a commercial metered date stamp (e.g. a Pitney Bowes postage machine) and does not have a USPS postmark, the metered date stamp must be on or before June 8, 2015. | Deepwater Horizon Economic Claims Center<br>PO Box 10272<br>Dublin, OH 43017-5772<br><br>or<br><br>Deepwater Horizon Economic Claims Center<br>c/o Claims Administrator<br>5151 Blazer Parkway Suite A<br>Dublin, OH 43017 |
| 4. **Registered or Certified Mail** | Item postmarked on or before June 8, 2015. | Deepwater Horizon Economic Claims Center<br>c/o Claims Administrator<br>5151 Blazer Parkway Suite A<br>Dublin, OH 43017 |

480007
5/15/15

1 of 2



| TIMELY SUBMISSION OF COMPLETED CLAIM FORM | | |
|---|---|---|
| **Method of Submission** | **How to Measure Timeliness** | **Address** |
| 5. **Commercial Delivery Service, *e.g.* Fed Ex, UPS** | Item placed in the hands of the commercial carrier on or before June 8, 2015. | Deepwater Horizon Economic Claims Center c/o Claims Administrator 5151 Blazer Parkway Suite A Dublin, OH 43017 |

2.  ***Procedure in the Case of Delivery Irregularities.*** If the postmark is missing or not legible, or if the submission is received by the Settlement Program from a commercial delivery carrier more than five calendar days after June 8, 2015, the Claims Administrator will require the Claimant or his/her authorized representative to submit to the Claims Administrator evidence determined by the Claims Administrator, in his sole discretion, to be sufficient to establish that the Claim Form was submitted on or before June 8, 2015.

480007
5/15/15

2 of 2

## 18.

To monetize the BP Settlement Agreement for their benefit, Defendants entered into a joint venture agreement on April 16, 2015 "to jointly prosecute Deepwater Horizon Economic and Property Settlement Subsistence Claims" as detailed in the following amendments to the original agreement (The original Joint Venture Agreement either does not exist or cannot be located by Defendants):

**AGREEMENT – B P SUBSISTENCE CLAIMS**

WHEREAS, on April 16, 2015 The Nations Law Firm (NLF herein) and Rueb & Motta, PLC (RM herein) and The Nicks Law Firm and Shantrell Nicks (Nicks herein) agreed to jointly prosecute Deepwater Horizon Economic and Property Settlement Subsistence Claims; and

WHEREAS, on April 16, 2015, NLF, RM and Nicks agreed to the following split of attorneys' fees accruing from the joint prosecution of the BP Subsistence Claims: 50% to Nicks and 25% to NLF and 25% to RM with expenses and costs incurred from the prosecution of the Subsistence Claims to be incurred in the same percentages; and

WHEREAS, between April 16, 2015 and September 1, 2015, Nicks borrowed $379,000 from NLF and RM; and

WHEREAS, Nicks currently has additional indebtedness in the amount of approximately $1,696,000, including $968,000 owed to Dr. Alfred McNair, which she wishes to retire through a loan from NLF and RM; and

WHEREAS, Nicks wants to borrow $2,075,000 from NLF & R&M as an advance on attorneys' fees accruing from BP litigation in order to retire the aforementioned loans; and

WHEREAS, Nicks, in order to assist in the acquisition of the RM loan from Pravati Capital, LLC, (Pravati herein) which will fund her loan and advance on attorneys' fees, agrees to pledge her attorneys' fee income from the BP Subsistence litigation as collateral for the Pravati Loan to the full extent of her percent ownership of the litigation as set out in the Agreement below in paragraph 6; and

WHEREAS, the aforementioned Agreement of April 16, 2015 regarding the distribution of attorneys' fees and responsibility for costs and exhibits is hereby mutually terminated immediately upon execution of this Agreement; and

WHEREAS, for good and valuable consideration, the receipt of which is hereby acknowledged, all parties herein have mutually agreed to a new distribution of said attorneys' fees and responsibility for expenses arising out of the prosecution of the BP Subsistence claims as set out in Paragraph 6 below which shall become effective immediately upon the execution of this agreement.

THE PARTIES HEREBY AGREE TO THE FOLLOWING TERMS AND CONDITIONS:

1.  NLF and RM will loan $2,075,000 to Nicks upon receipt of such funding from Pravati.
2.  Funding by Pravati will be placed into the Nations BP Medical Settlement Fund (QSF herein) and shall be administered by James Griggs, the mutually agreed QSF Administrator (Administrator herein).
3.  Upon receipt of the funds from Pravati, it is agreed that the Administrator will immediately reimburse NLF and RM the sum of $379,000 to extinguish Nicks' debt to those parties. The balance of the $2,075,000 will be distributed to Nicks. Upon final accounting by the Administrator, Nicks shall be responsible for paying all fees, costs and interests associated with the loan of $2,075,000.
4.  The Nicks Law Firm shall repay its $2,075,000 loan obligation plus all interest and costs associated with it, out of its share of attorney fees from this joint prosecution of Subsistence Claims as follows: 50% of Nicks' attorney fees will be distributed by Administrator to

repayment of the loan and 50% of Nicks' attorney fees shall be distributed to The Nicks Law Firm. In the event that the BP Medical Benefit Claims or the BP BELO claims are paid prior to the satisfaction of the $2,075,000 note, half of the fees payable to Nicks Law Firm will be diverted to satisfaction of the current $2,075,000 note until paid in full.

5. In the event that The Nicks Law Firm's repayment of 50% of its attorney fees to the loan is insufficient to repay the loan, then The Nicks Law Firm and Shantrell Nicks agree to assume personal responsibility for paying the remaining balance including any and all accruing interest.

6. Pursuant to this new Agreement, which specifically replaces all prior BP Subsistence Litigation Agreements, NLF and RM's respective shares of attorney fees and costs shall increase from 25% to 33.3%, which results in a new split of all attorney fees received and responsibility for all costs incurred from prosecution of BP Subsistence Claims as follows: 33.3% to Nicks and 33.3% NLF and 33.3% to RM.

7. As part of the consideration for the receipt of the $2,075,000 loan, Nicks hereby pledges her attorneys' fees from the BP Subsistence Claims as collateral for the Pravati Loan to RM.

8. Accounting and funding for all Subsistence Claims will be administered through the QSF by James Griggs, the Administrator of The Nations BP Medical Settlement fund. All parties agree to provide all necessary information for Mr. Griggs to properly account for all clients' attorney fees and costs. Mr. Griggs will manage the distribution of client proceeds and attorney's fees and costs.

9. James Griggs, as Administrator of the Nations BP Qualified Settlement Fund is hereby authorized by all signatories to this Agreement to distribute funds received from the BP settlements in accordance with this Agreement, including but not limited to payment of fees, reimbursement of expenses and implementation of the terms of this Agreement.

10. The conveyance of Nicks interest in the fishing claims as set out herein in contingent upon payment of the loan in the amount of $2,075,000 and will become effective contemporaneously with receipt of such payment by Nicks.

Agreed and Accepted on this 2nd day of September, 2015

The Nicks Law Firm

Shantrell Nicks, Owner

The Nations Law Firm

Howard L. Nations, President and Owner

Rueb & Motta

Gregory Rueb, President

*Original attached*

SECOND AMENDED AGREEMENT– BP SUBSISTENCE CLAIMS

WHEREAS, on April 16, 2015 The Nations Law Firm (NLF herein) and Rueb & Motta, PLC (RM herein) and The Nicks Law Firm and Shantrell Nicks (Nicks herein) agreed to jointly prosecute Deepwater Horizon Economic and Property Settlement Subsistence Claims (BP Subsistence Claims herein); and

WHEREAS, on April 16, 2015, NLF, RM and Nicks agreed to an original split of attorneys' fees accruing from the joint prosecution of the BP Subsistence Claims: 50% to Nicks and 25% to NLF and 25% to RM with expenses and costs incurred from the prosecution of the Subsistence Claims to be incurred in the same percentages; and

WHEREAS, between April 16, 2015 and January 15, 2016, Nicks borrowed $579,000 from NLF and RM; and

WHEREAS, Nicks currently has additional indebtedness in the amount of approximately $1,496,000, including $968,000 owed to Dr. Alfred McNair; and

WHEREAS, Nicks wants to borrow $2,075,000 from NLF & RM as an advance on all of her attorneys' fees accruing from BP litigation in order to retire the aforementioned loans; and

WHEREAS, Nicks, in order to assist in the acquisition of the RM loan from a Third Party Lending Agency ("Lender" herein) which will fund her RM & NLF loan and advance on attorneys' fees, agrees to pledge her attorneys' fee income from the BP Subsistence litigation as collateral for the RM & NLF loan to the full extent of her percent ownership of the litigation as set out in the Agreement below in paragraph 6; and

WHEREAS, the aforementioned Agreement of April 16, 2015 regarding the original distribution of attorneys' fees and responsibility for costs and expenses is hereby mutually terminated immediately upon execution of this Agreement and modified as set forth below; and

WHEREAS, for good and valuable consideration, the receipt of which is hereby acknowledged, all parties herein have mutually agreed to a new distribution of said attorneys' fees and responsibility for expenses arising out of the prosecution of the BP Subsistence claims as set out in Paragraph 6 below which shall become effective immediately upon the execution of this Agreement.

THE PARTIES HEREBY AGREE TO THE FOLLOWING TERMS AND CONDITIONS:

1. NLF and RM will loan $2,075,000 to Nicks upon receipt of such funding from Lender.

2. Funding by Lender will be placed into the Nations BP Settlement Fund (QSF herein) and shall be administered by James Griggs, the mutually agreed QSF administrator (Administrator herein).

3. Upon receipt of the funds from Lender, it is agreed that the Administrator will immediately reimburse NLF and RM the sum of $579,000. The balance, $1,496,000 of the $2,075,000 will be distributed to Nicks. Upon final accounting by the Administrator, Nicks shall be responsible for paying all fees, costs and interests associated with the loan of $2,075,000 plus operating cost advances of $1,629,500.

4. Nicks shall repay its $2,075,000 loan obligation, plus operating cost advances of $1,629,500, plus all interest and costs associated with all funds loaned or advanced, out of its share of attorney fees from this joint prosecution of Subsistence Claims as follows: 50% of Nicks' attorney fees will be distributed by Administrator to repayment of the loan and 50% of Nicks' attorney fees shall be distributed to The Nicks Law Firm. In the event that the BP Medical Benefit Claims or the BP BELO claims are paid prior to the satisfaction of the $2,075,000 note, plus operating cost advances of $1,629,500, half of the fees payable to Nicks Law Firm will be diverted to satisfaction of the current $2,075,000 note, plus operating cost advances of $1,629,500 until paid in full.

5. In the event that The Nicks Law Firm's repayment of 50% of its attorney fees to the loan is insufficient to repay the loan, then The Nicks law Firm and Shantrell Nicks agree to assume personal responsibility for paying the remaining balance including any and all accruing interest.

6. Pursuant to this new Agreement, which specifically replaces all prior BP Subsistence litigation Agreements, NLF and RM's respective shares of attorney fees and costs shall increase from 25% to 33.3%, which results in a new split of all attorney fees received and responsibility for all costs incurred from prosecution of BP Subsistence Claims as follows: 33.3% to Nicks and 33.3% to NLF and 33.3% to RM.

7. As part of the consideration for the receipt of the $2,075,000 loan, Nicks hereby pledges her attorneys' fees from the BP Subsistence Claims as collateral for the Loan to Nicks from NLF and RM.

8. Accounting and funding for all Subsistence Claims will be administered through the QSF by James Griggs, the Administrator of The Nations BP Settlement fund. All parties agree to provide all necessary information for Mr. Griggs to properly account for all clients' attorney fees and costs. Mr. Griggs will manage the distribution of client proceeds and attorney's fees and costs.

9. James Griggs, as Administrator of the Nations BP Settlement Fund is hereby authorized by all signatories to this Agreement to distribute funds received from the BP settlements in accordance with this Agreement, including but not limited to payment of fees, reimbursement of expenses and implementation of the terms of this Agreement.

10. The conveyance of Nicks' interest in the Subsistence Claims as set out herein is contingent upon payment of the loan in the amount of $2,075,000 and will become effective contemporaneously with receipt of such payment by Nicks.

Agreed and Accepted on this 20TH day of January, 2016

THE NICKS LAW FIRM and SHANTRELL NICKS

Shantrell Nicks, Individually and as Owner of
The Nicks law Firm

THE NATIONS LAW FIRM

Howard L. Nations, President and Owner

RUEB & MOTTA

Gregory O. Rueb, President and Owner

Prior to finalizing their joint venture agreement in April of 2015, Defendants met with litigation consultant James "Jim" Griggs to discuss the "viability" of setting up Subsistence Claim meeting facilities. Discussing the viability of claims intake was critical since Defendants were aware of the abbreviated time interval remaining before the deadline. The joint venture members decided to move forward with the Subsistence Claim processing and filing with each individual Defendant playing an essential, prescribed, and agreed-upon role.

Shantrell Nicks originally took the lead in processing and filing the claims once the information and documentation had been obtained from the joint venture's Subsistence Claim facilities. Prior to the joint venture, Nicks and her law firm had been processing and filing BP Subsistence Claims for her own individual subsistence clients. Thus, she was the only person, among the joint venture partners, with prior subsistence claims handling experience. Information and documentation collected from the facilities was therefore delivered directly to Nicks' office for processing and filing. Nicks personally filed thousands of claims on behalf of the joint venture, including a volume of claims she personally delivered in a U-Haul truck to one of the DHECC claim facilities. Nicks also personally visited a number of joint venture meeting locations during both their initial organization and during the claims' intake process.

Gregory Rueb was intimately involved at the ground level and often visited the facilities with Jim Griggs to make sure everything was flowing smoothly and to provide the joint venture field agents with directions. Rueb's business partner at the time, Defendant Motta, also visited the facilities on occasion and met with the field agents to discuss the BP Subsistence Claims. The Defendants set up a call center for subsistence clients which Rueb & Motta initially managed on behalf of the joint venture at their offices in California. Motta was assigned the management of the call center while Rueb spent a significant amount of time traveling to Defendants' facilities and meeting with their field agents.

Howard L. Nations and Cindy L. Nations were key decision-makers when it came to the joint venture's procedures and staffing. In fact, both Nations Defendants personally participated in the drafting of the "denial" letters which falsely misrepresented to their clients that their claims were properly filed but denied by BP. Howard L. Nations also personally participated in the BP Subsistence Claims process including visiting the facilities, regularly speaking with joint venture

field agents who worked at the meeting locations, and even personally delivering claims to a FedEx facility on June 8, 2015 – the deadline. His personal signature was also affixed to the overwhelming majority of the joint venture's Attorney-Client contracts and submitted claim forms. Howard regularly discussed issues with the DHECC Claims Administrator, including his assertions that he personally disputed determinations of untimeliness. Shantrell Nicks and Gregory Rueb also communicated with the DHECC Claims' Administrator through various attempts to solve issues that arose in the joint venture's claims filing and processing. Howard Nations, along with Rueb, were also responsible for providing direction to Griggs, the joint venture's claims consultant. Howard Nations, Rueb, and Nicks reviewed and approved all material prepared by Griggs – including the initial intake packet(s) – before they were provided to their clients.

Plaintiffs contend that due to the high volume of subsistence clients the joint venture agreed to represent, Nicks was unable to process and file all of the claims on her own.  It was eventually necessary for all of the individual attorneys and/or staff, for whom they were directly responsible, to participate in the processing and/or filing of BP Subsistence Claims on behalf of the joint venture. All of the named attorney Defendants also personally participated in conference calls with each other and with their field agents.

Ultimately, the Defendants – through their joint venture - solicited the Plaintiffs and thousands of other individuals who were entitled to compensation for subsistence losses related to the BP Oil Spill. Specifically, Defendants sought to represent the interests of Plaintiffs by agreeing to prepare and file their BP Claims with DHECC in order for Plaintiffs, and their other clients, to receive compensation for BP Oil Spill related subsistence losses.  In consideration for the legal representation of their clients, including Plaintiffs, Defendants received attorneys' fees of 25% of the amount of the client's recovery.

19.

During the months leading up to the June 8, 2015 deadline, one method of client solicitation used by Defendants was to advertise meetings conducted by Defendants at locations and times that Defendants commonly called "Fishing Claim Centers/Meeting Locations" in Louisiana, Mississippi, Alabama, and Florida. Defendants advertised their "Fishing Claim Centers/Meeting Locations" as locations at which BP class members could file their BP Claim, but Defendants actually used these advertised meetings as an opportunity to attract BP Class members to the locations in order to engage clients for legal representation in the BP Settlement Agreement claims process. Defendants' "Fishing Claim Centers/Meeting Locations" were advertised as provided below:

| LOUISIANA | | |
|---|---|---|
| **Chauvin** | **Belle Chasse** | **Fourchon** |
| 5756 Hwy. 56 | 8558 Hwy 23 | Moran's Marina |
| Project Learn (Old Lil Caillou School) | Law Office of Terry Sercovich | 27900 Highway 1 |
| Monday-Saturday 9AM-1PM | Monday-Friday 9AM-6PM | Conference Room |
| Open Memorial Day Weekend | | Memorial Day Weekend |
| (Sat.-Mon.) 9AM-5PM | | (Sat.-Mon.) 9AM-5PM |
| | | |
| **Golden Meadow** | **Jean Lafitte** | **Violet/St. Bernard's** |
| 2406 South Bayou Dr. | 2608 Jean Lafitte Blvd. | 2621 Colonial Blvd. |
| American Legion Post 259 | The Lafitte Art's Center | Our Lady of Lourdes Church |
| Monday-Saturday 9AM-1PM | Monday-Friday 10AM-7PM | Secondary Building |
| Open Memorial Day Weekend | Open Memorial Day Weekend | Monday-Friday 9AM-5PM |
| (Sat.-Mon.) 9AM-5PM | (Sat.-Mon.) 9AM-5PM | |
| | | |
| **Chackbay** | **Grand Isle** | |
| 100 Highway 304 | 3101 Highway 1 | |
| Volunteer Fire Station | Grand Isle Multiplex | |
| Monday-Saturday 9AM-1PM | Thurs. May 21 and Fri. May 22 | |
| Open Memorial Day Weekend | 8AM-3PM | |

| | |
|---|---|
| (Sat.-Mon.) 9AM-5PM | |
| | |
| **Chalmette** | **Cocodrie** |
| 3400 Paris Rd | Houma Oilman's Rodeo |
| Best Western | 8239 Highway 56 |
| May 23, 24, 25 & 30, 31 9AM-5PM | Harbor Light Marina |
| Open Memorial Day Weekend | Thurs. May 21-Sat. May 23 |
| (Sat.-Mon.) 9AM-5PM | 3PM-7PM |

| **MISSISSIPPI** | | |
|---|---|---|
| **Gulfport** | **Gulfport** | **Pascagoula** |
| 1600 E. Beach Blvd. | 1806 25th Ave. | 4800 Amoco Rd. |
| Courtyard Marriott | Nicks Law Firm | Holiday Inn Express |
| Harbor & Bay Rooms | Monday-Saturday | Pascagoula-Moss Point |
| May 23, 24, 30, and 31 | 9AM-5PM | May 23, 24, 30 and 31 |
| 9AM-5PM | | 9AM-5PM |

| **ALABAMA** | | |
|---|---|---|
| **Mobile** | **Mobile** | **Gulf Shores** |
| 600 West I-65 Service Rd. South | 7220 First St. | 3947 Gulf Shores Pkwy. |
| Ashbury Hotel Conference Center | Nicks Law Firm | Gulf Shores Staybridge Suites |
| May 23, 24, 30 and 31 | Monday-Friday 10AM-9PM | Magnolia Meeting Room |
| 9AM-5PM | Saturday 10AM-2PM | May 23, 24, 30 and 31 |
| | | 9AM-5PM |

| **FLORIDA** | |
|---|---|
| **Pensacola** | **Pensacola** |
| 7813 N. Davis Hwy | 3298 Summit Blvd., Ste. 32 |
| Holiday Inn | Law Offices of Dan Sanders |
| Garden Room | Ameriprise Financial Bldg. |
| May 23, 24, 30 and 31 | Monday-Thursday 9AM-4PM |
| 9AM-5PM | Friday 9AM-12PM |

20.

Defendants' "Fishing Claim Centers/Meeting Locations" were successful in attracting clients, as Defendants executed thousands of attorney-client agreements with newly-engaged clients leading up to and even on the DHECC June 8, 2015 deadline.

21.

Plaintiffs herein were members of the BP class by virtue of their status as residents of Gulf Coast states at all relevant times and who sustained subsistence losses as a result of the coastal boundary and waterway closures necessitated by the BP Oil Spill. The BP Settlement Agreement expressly provided for a subsistence loss "Damage Category" and the BP Settlement Agreement provided for payment of settlement amounts to BP class members.

22.

On June 1, 2015, Plaintiff Deborah A. Gaudet attended Defendants' "Fishing Claim Centers/Meeting Locations" at Old Lil Caillou School in Chauvin, Louisiana where she executed the Defendants' contingency fee agreement, titled "Attorney-Client Contract," to engage Defendants to prepare and file her individual BP Claim in order to be compensated for her BP Oil Spill-related subsistence losses. The "Attorney-Client Contract" was signed by Gaudet and had also been signed by Howard L. Nations on behalf of the joint venture. The signed "Attorney-Client Contract" is provided below.

Likewise, Timothy Butler, Dian B. Campbell, Kristine Collins, Regina Falgoust, Abraham Gamberella, Adam J. Hebert, Fred Ledet, Stanwood Moore, Jr., and James Scales, III, signed "Attorney-Client Contracts" identical to the one signed by Gaudet.  All of the Attorney-Client Contracts were provided to Plaintiffs by Defendants' representatives or their agents at the facilities. Some of the contracts had been signed previously by one of the Defendants and others were awaiting signature by one of the Defendants. The contracts are provided below:

## ATTORNEY-CLIENT CONTRACT

This Contract is made by and between Client and Rueb & Motta, The Nations Law Firm, and the Nicks Law Firm, ("Attorneys"). In consideration of the mutual promises herein, Client and Attorneys agree as follows:

**I. Purpose of Representation.** Client retains Attorneys to prosecute all claims against all necessary defendants arising out of Event: BP Deepwater Horizon Oil Spill Class Action Settlement for *Subsistence Claims*.

**II. Attorneys' Fees & Expenses.** Attorneys will advance reasonable and necessary expenses incurred for prosecution of the case and obtain full reimbursement out of Client's share of any amount collected herein. In consideration of Attorneys' services, Client agrees to pay to Attorneys:

> **TOTAL ATTORNEYS' FEES OF 25% OF**
> **ANY AMOUNT COLLECTED HEREIN**

These Attorneys' Fees shall be distributed among the following firms and does NOT change the amount of Client's share:

NLF/Rueb & Motta, PLC 12.5% and The Nicks Law Firm 12.5%

**III. Assignment of Interest.** In consideration of Attorneys' services, Client hereby sells, conveys, and assigns to Attorneys an interest, as indicated in section II above, in Client's claims and causes of action, and in any action, compromise, settlement, judgment, payment of services or recovery by whatever means.

**IV. Approval Necessary for Settlement.** Attorneys are authorized to determine settlement strategy and negotiate on Client's behalf. No settlement of any nature shall be made for claims of Client without Client's final approval, and Client shall not obtain any settlement without Attorneys' written approval. Attorneys are hereby granted a limited power of attorney with full authority to prepare, fully execute, sign and file all legal instruments, pleadings, drafts, authorizations and papers reasonably necessary to conclude this representation as fully as Client could do in person. Attorneys are expressly authorized to communicate with me by phone, email or text messaging as they deem necessary.

**V. Deferred Attorney Fees.** The client agrees that counsel may have the option to structure or defer all, or a portion, of its contingency fees ("Deferred Amount") in exchange for a certain nonqualified tax-deferred compensation obligation issued by an independent third party (the "Issuer"). Such payment of Deferred Amount to the Issuer, whether by the defendant,

defendant's agent, shall fully discharge the client's obligation with respect to the portion of the settlement proceeds that represent fees the counsel has elected to defer.

**VI. Representations.** It is understood that Attorneys cannot warrant or guarantee the outcome of the case, and Attorneys have made no representations that Client will recover any or all of the funds sought. Client also understands that obtaining a judgment does not guarantee that the defendant will satisfy the judgment.

**VII. Withdrawal.** Attorneys have the option to withdraw and cease to represent Client for any reason.

**VIII.    Association of Other Attorneys.** Attorneys have the option to associate any attorney(s) to assist in the preparation and litigation of this case, in the sole discretion of Attorneys.

**VII.    Mississippi Law.** This Contract shall be construed under and in accordance with the laws of the State of Mississippi, and all obligations of the parties created hereunder are performable in Mississippi.

**IX. Parties Bound.** This Contract shall be binding upon and inure to the benefit of the parties hereto and their heirs, executors, administrators, legal representatives, successors and assigns where permitted by this Contract.

**X. Legal Construction.** In case any provision in this Contract shall be held to be invalid, illegal or unenforceable, such holding shall not affect any other provisions herein, and this Contract shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

**XI. Prior Contracts Superseded.** This Contract constitutes the sole agreement of the parties and supersedes any prior written or oral agreements between the parties regarding Event.

**XII.    Lien Resolution.** Client understands that federal law may require all parties to resolve Medicare's, Medicaid's, and other private and government health insurance plans' claims for reimbursement prior to distributing any verdict or settlement proceeds. Client agrees that Attorneys may take all steps relating to resolution of these federally mandated issues, and expenses incurred for such shall be treated as case expenses deducted from Client's net recovery.

**XIII.    Client Certification.** Client is voluntarily signing this Contract, fully aware of its terms and conditions. All questions regarding the contract have been answered by Attorneys.

---

Signed & Accepted this___ day of_____, 2015

Rueb & Motta, The Nations Law Firm, and the Nicks Law Firm.

*Howard L. Nations*

_____
Howard L Nations, Esq. on behalf of Attorneys

Signed & Accepted this _1_ day of *June* 2015

*Deborah Gaudet*
_____
Client's Signature

*Deborah A. Gaudet*
_____
Client's Printed Name

SSN: [Redacted] 2836  DOB: 2/12/48

*911416-PA-GAUDET* POA

BOX 115-NEW - GAUDET, DEBORAH A

## ATTORNEY-CLIENT CONTRACT

This Contract is made by and between Client and Rueb & Motta, The Nations Law Firm, and the Nicks Law Firm, ("Attorneys"). In consideration of the mutual promises herein, Client and Attorneys agree as follows:

**I. Purpose of Representation.** Client retains Attorneys to prosecute all claims against all necessary defendants arising out of Event: BP Deepwater Horizon Oil Spill Class Action Settlement for *Subsistence Claims*.

**II. Attorneys' Fees & Expenses.** Attorneys will advance reasonable and necessary expenses incurred for prosecution of the case and obtain full reimbursement out of Client's share of any amount collected herein. In consideration of Attorneys' services, Client agrees to pay to Attorneys:

> **TOTAL ATTORNEYS' FEES OF 25% OF**
> **ANY AMOUNT COLLECTED HEREIN**

These Attorneys' Fees shall be distributed among the following firms and does NOT change the amount of Client's share:

NLF/Rueb & Motta, PLC 12.5% and The Nicks Law Firm 12.5%

**III. Assignment of Interest.** In consideration of Attorneys' services, Client hereby sells, conveys, and assigns to Attorneys an interest, as indicated in section II above, in Client's claims and causes of action, and in any action, compromise, settlement, judgment, payment of services or recovery by whatever means.

**IV. Approval Necessary for Settlement.** Attorneys are authorized to determine settlement strategy and negotiate on Client's behalf. No settlement of any nature shall be made for claims of Client without Client's final approval, and Client shall not obtain any settlement without Attorneys' written approval. Attorneys are hereby granted a limited power of attorney with full authority to prepare, fully execute, sign and file all legal instruments, pleadings, drafts, authorizations and papers reasonably necessary to conclude this representation as fully as Client could do in person. Attorneys are expressly authorized to communicate with me by phone, email or text messaging as they deem necessary.

**V. Deferred Attorney Fees.** The client agrees that counsel may have the option to structure or defer all, or a portion, of its contingency fees ("Deferred Amount") in exchange for a certain nonqualified tax-deferred compensation obligation issued by an independent third party (the "Issuer"). Such payment of Deferred Amount to the Issuer, whether by the defendant,

defendant's agent, shall fully discharge the client's obligation with respect to the portion of the settlement proceeds that represent fees the counsel has elected to defer.

**VI. Representations.** It is understood that Attorneys cannot warrant or guarantee the outcome of the case, and Attorneys have made no representations that Client will recover any or all of the funds sought. Client also understands that obtaining a judgment does not guarantee that the defendant will satisfy the judgment.

**VII. Withdrawal.** Attorneys have the option to withdraw and cease to represent Client for any reason.

**VIII. Association of Other Attorneys.** Attorneys have the option to associate any attorney(s) to assist in the preparation and litigation of this case, in the sole discretion of Attorneys.

**VII. Mississippi Law.** This Contract shall be construed under and in accordance with the laws of the State of Mississippi, and all obligations of the parties created hereunder are performable in Mississippi.

**IX. Parties Bound.** This Contract shall be binding upon and inure to the benefit of the parties hereto and their heirs, executors, administrators, legal representatives, successors and assigns where permitted by this Contract.

**X. Legal Construction.** In case any provision in this Contract shall be held to be invalid, illegal or unenforceable, such holding shall not affect any other provisions herein, and this Contract shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

**XI. Prior Contracts Superseded.** This Contract constitutes the sole agreement of the parties and supersedes any prior written or oral agreements between the parties regarding Event.

**XII. Lien Resolution.** Client understands that federal law may require all parties to resolve Medicare's, Medicaid's, and other private and government health insurance plans' claims for reimbursement prior to distributing any verdict or settlement proceeds. Client agrees that Attorneys may take all steps relating to resolution of these federally mandated issues, and expenses incurred for such shall be treated as case expenses deducted from Client's net recovery.

**XIII. Client Certification.** Client is voluntarily signing this Contract, fully aware of its terms and conditions. All questions regarding the contract have been answered by Attorneys.

| | |
|---|---|
| Signed & Accepted this ___ day of _____, 2015 | Signed & Accepted this 26 day of MAY , 2015 |
| Rueb & Motta, The Nations Law Firm, and the Nicks Law Firm. | |
| *Howard L. Nations* | *[signature]* |
| | Client's Signature |
| | Timothy Butler |
| Howard L Nations, Esq. on behalf of Attorneys | Client's Printed Name |
| | SSN: Redacted -7457   DOB: 11/20/65 |

# ATTORNEY-CLIENT CONTRACT

This Contract is made by and between Client and Rueb & Motta, The Nations Law Firm, and the Nicks Law Firm, ("Attorneys"). In consideration of the mutual promises herein, Client and Attorneys agree as follows:

**I.   Purpose of Representation.** Client retains Attorneys to prosecute all claims against all necessary defendants arising out of Event: <u>BP Deepwater Horizon Oil Spill Class Action Settlement for **Subsistence Claims**</u>.

**II.   Attorneys' Fees & Expenses.** Attorneys will advance reasonable and necessary expenses incurred for prosecution of the case and obtain full reimbursement out of Client's share of any amount collected herein. In consideration of Attorneys' services, Client agrees to pay to Attorneys:

| TOTAL ATTORNEYS' FEES OF 25% OF ANY AMOUNT COLLECTED HEREIN |
|---|

These Attorneys' Fees shall be distributed among the following firms and does NOT change the amount of Client's share:

NLF/Rueb & Motta, PLC 12.5% and The Nicks Law Firm 12.5%

**III.   Assignment of Interest.** In consideration of Attorneys' services, Client hereby sells, conveys, and assigns to Attorneys an interest, as indicated in section II above, in Client's claims and causes of action, and in any action, compromise, settlement, judgment, payment of services or recovery by whatever means.

**IV.   Approval Necessary for Settlement.** Attorneys are authorized to determine settlement strategy and negotiate on Client's behalf. <u>No settlement of any nature shall be made for claims of Client without Client's final approval</u>, and Client shall not obtain any settlement without Attorneys' written approval. Attorneys are hereby granted a limited power of attorney with full authority to prepare, fully execute, sign and file all legal instruments, pleadings, drafts, authorizations and papers reasonably necessary to conclude this representation as fully as Client could do in person. Attorneys are expressly authorized to communicate with me by phone, email or text messaging as they deem necessary.

**V.   Deferred Attorney Fees.** The client agrees that counsel may have the option to structure or defer all, or a portion, of its contingency fees ("Deferred Amount") in exchange for a certain nonqualified tax-deferred compensation obligation issued by an independent third party (the "Issuer"). Such payment of Deferred Amount to the Issuer, whether by the defendant,

defendant's agent, shall fully discharge the client's obligation with respect to the portion of the settlement proceeds that represent fees the counsel has elected to defer.

**VI.   Representations.** It is understood that Attorneys cannot warrant or guarantee the outcome of the case, and Attorneys have made no representations that Client will recover any or all of the funds sought. Client also understands that obtaining a judgment does not guarantee that the defendant will satisfy the judgment.

**VII.   Withdrawal.** Attorneys have the option to withdraw and cease to represent Client for any reason.

**VIII.   Association of Other Attorneys.** Attorneys have the option to associate any attorney(s) to assist in the preparation and litigation of this case, in the sole discretion of Attorneys.

**VII.   Mississippi Law.** This Contract shall be construed under and in accordance with the laws of the State of Mississippi, and all obligations of the parties created hereunder are performable in Mississippi.

**IX.   Parties Bound.** This Contract shall be binding upon and inure to the benefit of the parties hereto and their heirs, executors, administrators, legal representatives, successors and assigns where permitted by this Contract.

**X.   Legal Construction.** In case any provision in this Contract shall be held to be invalid, illegal or unenforceable, such holding shall not affect any other provisions herein, and this Contract shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

**XI.   Prior Contracts Superseded.** This Contract constitutes the sole agreement of the parties and supersedes any prior written or oral agreements between the parties regarding Event.

**XII.   Lien Resolution.** Client understands that federal law may require all parties to resolve Medicare's, Medicaid's, and other private and government health insurance plans' claims for reimbursement prior to distributing any verdict or settlement proceeds. Client agrees that Attorneys may take all steps relating to resolution of these federally mandated issues, and expenses incurred for such shall be treated as case expenses deducted from Client's net recovery.

**XIII.   Client Certification.** Client is voluntarily signing this Contract, fully aware of its terms and conditions. All questions regarding the contract have been answered by Attorneys.

---

Signed & Accepted this 29 day of MAY , 2015

Rueb & Motta, The Nations Law Firm, and the Nicks Law Firm.

*Howard L. Nations*

Howard L Nations, Esq. on behalf of Attorneys

---

Signed & Accepted this 29 day of MAY , 2015

*Dian B Campbell*

Client's Signature

DIAN B CAMPBELL

Client's Printed Name

SSN: Redacted 5667   DOB: 3/01/1960

## ATTORNEY-CLIENT CONTRACT

This Contract is made by and between Client and Rueb & Motta, The Nations Law Firm, and the Nicks Law Firm, ("Attorneys"). In consideration of the mutual promises herein, Client and Attorneys agree as follows:

**I. Purpose of Representation.** Client retains Attorneys to prosecute all claims against all necessary defendants arising out of Event: BP Deepwater Horizon Oil Spill Class Action Settlement for *Subsistence Claims*.

**II. Attorneys' Fees & Expenses.** Attorneys will advance reasonable and necessary expenses incurred for prosecution of the case and obtain full reimbursement out of Client's share of any amount collected herein. In consideration of Attorneys' services, Client agrees to pay to Attorneys:

> **TOTAL ATTORNEYS' FEES OF 25% OF**
>
> **ANY AMOUNT COLLECTED HEREIN**

These Attorneys' Fees shall be distributed among the following firms and does NOT change the amount of Client's share:

NLF/Rueb & Motta, PLC 12.5% and The Nicks Law Firm 12.5%

**III. Assignment of Interest.** In consideration of Attorneys' services, Client hereby sells, conveys, and assigns to Attorneys an interest, as indicated in section II above, in Client's claims and causes of action, and in any action, compromise, settlement, judgment, payment of services or recovery by whatever means.

**IV. Approval Necessary for Settlement.** Attorneys are authorized to determine settlement strategy and negotiate on Client's behalf. No settlement of any nature shall be made for claims of Client without Client's final approval, and Client shall not obtain any settlement without Attorneys' written approval. Attorneys are hereby granted a limited power of attorney with full authority to prepare, fully execute, sign and file all legal instruments, pleadings, drafts, authorizations and papers reasonably necessary to conclude this representation as fully as Client could do in person. Attorneys are expressly authorized to communicate with me by phone, email or text messaging as they deem necessary.

**V. Deferred Attorney Fees.** The client agrees that counsel may have the option to structure or defer all, or a portion, of its contingency fees ("Deferred Amount") in exchange for a certain nonqualified tax-deferred compensation obligation issued by an independent third party (the "issuer"). Such payment of Deferred Amount to the issuer, whether by the defendant,

defendant's agent, shall fully discharge the client's obligation with respect to the portion of the settlement proceeds that represent fees the counsel have elected to defer.

**VI. Representations.** It is understood that Attorneys cannot warrant or guarantee the outcome of the case, and Attorneys have made no representations that Client will recover any or all of the funds sought. Client also understands that obtaining a judgment does not guarantee that the defendant will satisfy the judgment.

**VII. Withdrawal.** Attorneys have the option to withdraw and cease to represent Client for any reason.

**VIII. Association of Other Attorneys.** Attorneys have the option to associate any attorney(s) to assist in the preparation and litigation of this case, in the sole discretion of Attorneys.

**VII. Mississippi Law.** This Contract shall be construed under and in accordance with the laws of the State of Mississippi, and all obligations of the parties created hereunder are performable in Mississippi.

**IX. Parties Bound.** This Contract shall be binding upon and inure to the benefit of the parties hereto and their heirs, executors, administrators, legal representatives, successors and assigns where permitted by this Contract.

**X. Legal Construction.** In case any provision in this Contract shall be held to be invalid, illegal or unenforceable, such holding shall not affect any other provisions herein, and this Contract shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

**XI. Prior Contracts Superseded.** This Contract constitutes the sole agreement of the parties and supersedes any prior written or oral agreements between the parties regarding Event.

**XII. Lien Resolution.** Client understands that federal law may require all parties to resolve Medicare's, Medicaid's, and other private and government health insurance plans' claims for reimbursement prior to distributing any verdict or settlement proceeds. Client agrees that Attorneys may take all steps relating to resolution of these federally mandated issues, and expenses incurred for such shall be treated as case expenses deducted from Client's net recovery.

**XIII. Client Certification.** Client is voluntarily signing this Contract, fully aware of its terms and conditions. All questions regarding the contract have been answered by Attorneys.

---

Signed & Accepted this___day of_____, 2015

Rueb & Motta, The Nations Law Firm, and the Nicks Law Firm.

*Howard L. Nations*

Howard L Nations, Esq. on behalf of Attorneys

Signed & Accepted this 8 day of June, 2015

*Kristen E Collins*
Client's Signature

Kristine E Collins
Client's Printed Name

SSN: Redacted 8683   DOB: 2-5-71

# ATTORNEY-CLIENT CONTRACT

This Contract is made by and between Client and Rueb & Motta, The Nations Law Firm, and the Nicks Law Firm, ("Attorneys"). In consideration of the mutual promises herein, Client and Attorneys agree as follows:

**I. Purpose of Representation.** Client retains Attorneys to prosecute all claims against all necessary defendants arising out of Event: BP Deepwater Horizon Oil Spill Class Action Settlement for *Subsistence Claims*.

**II. Attorneys' Fees & Expenses.** Attorneys will advance reasonable and necessary expenses incurred for prosecution of the case and obtain full reimbursement out of Client's share of any amount collected herein. In consideration of Attorneys' services, Client agrees to pay to Attorneys:

> ### TOTAL ATTORNEYS' FEES OF 25% OF
> ### ANY AMOUNT COLLECTED HEREIN

These Attorneys' Fees shall be distributed among the following firms and does NOT change the amount of Client's share:

NLF/Rueb & Motta, PLC 12.5% and The Nicks Law Firm 12.5%

**III. Assignment of Interest.** In consideration of Attorneys' services, Client hereby sells, conveys, and assigns to Attorneys an interest, as indicated in section II above, in Client's claims and causes of action, and in any action, compromise, settlement, judgment, payment of services or recovery by whatever means.

**IV. Approval Necessary for Settlement.** Attorneys are authorized to determine settlement strategy and negotiate on Client's behalf. No settlement of any nature shall be made for claims of Client without Client's final approval, and Client shall not obtain any settlement without Attorneys' written approval. Attorneys are hereby granted a limited power of attorney with full authority to prepare, fully execute, sign and file all legal instruments, pleadings, drafts, authorizations and papers reasonably necessary to conclude this representation as fully as Client could do in person. Attorneys are expressly authorized to communicate with me by phone, email or text messaging as they deem necessary.

**V. Deferred Attorney Fees.** The client agrees that counsel may have the option to structure or defer all, or a portion, of its contingency fees ("Deferred Amount") in exchange for a certain nonqualified tax-deferred compensation obligation issued by an independent third party (the "Issuer"). Such payment of Deferred Amount to the Issuer, whether by the defendant,

defendant's agent, shall fully discharge the client's obligation with respect to the portion of the settlement proceeds that represent fees the counsel has elected to defer.

**VI. Representations.** It is understood that Attorneys cannot warrant or guarantee the outcome of the case, and Attorneys have made no representations that Client will recover any or all of the funds sought. Client also understands that obtaining a judgment does not guarantee that the defendant will satisfy the judgment.

**VII. Withdrawal.** Attorneys have the option to withdraw and cease to represent Client for any reason.

**VIII. Association of Other Attorneys.** Attorneys have the option to associate any attorney(s) to assist in the preparation and litigation of this case, in the sole discretion of Attorneys.

**VII. Mississippi Law.** This Contract shall be construed under and in accordance with the laws of the State of Mississippi, and all obligations of the parties created hereunder are performable in Mississippi.

**IX. Parties Bound.** This Contract shall be binding upon and inure to the benefit of the parties hereto and their heirs, executors, administrators, legal representatives, successors and assigns where permitted by this Contract.

**X. Legal Construction.** In case any provision in this Contract shall be held to be invalid, illegal or unenforceable, such holding shall not affect any other provisions herein, and this Contract shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

**XI. Prior Contracts Superseded.** This Contract constitutes the sole agreement of the parties and supersedes any prior written or oral agreements between the parties regarding Event.

**XII. Lien Resolution.** Client understands that federal law may require all parties to resolve Medicare's, Medicaid's, and other private and government health insurance plans' claims for reimbursement prior to distributing any verdict or settlement proceeds. Client agrees that Attorneys may take all steps relating to resolution of these federally mandated issues, and expenses incurred for such shall be treated as case expenses deducted from Client's net recovery.

**XIII. Client Certification.** Client is voluntarily signing this Contract, fully aware of its terms and conditions. All questions regarding the contract have been answered by Attorneys.

---

Signed & Accepted this____day of_____, 2015

RUEB & MOTTA

_____
Gregory D. Rueb, Esq. on behalf of Attorneys

Signed & Accepted this 5 day of 7 , 2015

*Regina M. Falgoust*
Client's Signature

*Regina M. Falgoust*
Client's Printed Name

SSN: [Redacted] 2229  DOB: 05-31-61

# ATTORNEY-CLIENT CONTRACT

This Contract is made by and between Client and Rueb & Motta, The Nations Law Firm, and the Nicks Law Firm, ("Attorneys"). In consideration of the mutual promises herein, Client and Attorneys agree as follows:

**I.   Purpose of Representation.** Client retains Attorneys to prosecute all claims against all necessary defendants arising out of Event: <u>BP Deepwater Horizon Oil Spill Class Action Settlement for **Subsistence Claims**.</u>

**II.  Attorneys' Fees & Expenses.** Attorneys will advance reasonable and necessary expenses incurred for prosecution of the case and obtain full reimbursement out of Client's share of any amount collected herein. In consideration of Attorneys' services, Client agrees to pay to Attorneys:

> **TOTAL ATTORNEYS' FEES OF 25% OF**
> **ANY AMOUNT COLLECTED HEREIN**

These Attorneys' Fees shall be distributed among the following firms and does NOT change the amount of Client's share:

NLF/Rueb & Motta, PLC 12.5% and The Nicks Law Firm 12.5%

**III. Assignment of Interest.** In consideration of Attorneys' services, Client hereby sells, conveys, and assigns to Attorneys an interest, as indicated in section II above, in Client's claims and causes of action, and in any action, compromise, settlement, judgment, payment of services or recovery by whatever means.

**IV. Approval Necessary for Settlement.** Attorneys are authorized to determine settlement strategy and negotiate on Client's behalf. <u>No settlement of any nature shall be made for claims of Client without Client's final approval,</u> and Client shall not obtain any settlement without Attorneys' written approval. Attorneys are hereby granted a limited power of attorney with full authority to prepare, fully execute, sign and file all legal instruments, pleadings, drafts, authorizations and papers reasonably necessary to conclude this representation as fully as Client could do in person. Attorneys are expressly authorized to communicate with me by phone, email or text messaging as they deem necessary.

**V.  Deferred Attorney Fees.**  The client agrees that counsel may have the option to structure or defer all, or a portion, of its contingency fees ("Deferred Amount") in exchange for a certain nonqualified tax-deferred compensation obligation issued by an independent third party (the "Issuer"). Such payment of Deferred Amount to the Issuer, whether by the defendant,

defendant's agent, shall fully discharge the client's obligation with respect to the portion of the settlement proceeds that represent fees the counsel has elected to defer.

**VI. Representations.** It is understood that Attorneys cannot warrant or guarantee the outcome of the case, and Attorneys have made no representations that Client will recover any or all of the funds sought. Client also understands that obtaining a judgment does not guarantee that the defendant will satisfy the judgment.

**VII. Withdrawal.** Attorneys have the option to withdraw and cease to represent Client for any reason.

**VIII.   Association of Other Attorneys.** Attorneys have the option to associate any attorney(s) to assist in the preparation and litigation of this case, in the sole discretion of Attorneys.

**VII. Mississippi Law.** This Contract shall be construed under and in accordance with the laws of the State of Mississippi, and all obligations of the parties created hereunder are performable in Mississippi.

**IX. Parties Bound.** This Contract shall be binding upon and inure to the benefit of the parties hereto and their heirs, executors, administrators, legal representatives, successors and assigns where permitted by this Contract.

**X.  Legal Construction.** In case any provision in this Contract shall be held to be invalid, illegal or unenforceable, such holding shall not affect any other provisions herein, and this Contract shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

**XI. Prior Contracts Superseded.** This Contract constitutes the sole agreement of the parties and supersedes any prior written or oral agreements between the parties regarding Event.

**XII.   Lien Resolution.** Client understands that federal law may require all parties to resolve Medicare's, Medicaid's, and other private and government health insurance plans' claims for reimbursement prior to distributing any verdict or settlement proceeds. Client agrees that Attorneys may take all steps relating to resolution of these federally mandated issues, and expenses incurred for such shall be treated as case expenses deducted from Client's net recovery.

**XIII.  Client Certification.** Client is voluntarily signing this Contract, fully aware of its terms and conditions. All questions regarding the contract have been answered by Attorneys.

---

Signed & Accepted this ___ day of _____, 2015

Rueb & Motta, The Nations Law Firm, and the Nicks Law Firm.

*Howard L. Nations*

Howard L. Nations, Esq. on behalf of Attorneys

*901871-PA-Gamberell* POA

BOX 07A - Gamberella , Abraham Xavier

Signed & Accepted this _12_ day of _may_, 2015

*Abraham X. Gamberella*
Client's Signature

Abraham X. Gamberella
Client's Printed Name

SSN: Redacted-8862   DOB: 11-17-1977

# ATTORNEY-CLIENT CONTRACT

This Contract is made by and between Client and Rueb & Motta, The Nations Law Firm, and the Nicks Law Firm, ("Attorneys"). In consideration of the mutual promises herein, Client and Attorneys agree as follows:

**I. Purpose of Representation.** Client retains Attorneys to prosecute all claims against all necessary defendants arising out of Event: BP Deepwater Horizon Oil Spill Class Action Settlement for *Subsistence Claims*.

**II. Attorneys' Fees & Expenses.** Attorneys will advance reasonable and necessary expenses incurred for prosecution of the case and obtain full reimbursement out of Client's share of any amount collected herein. In consideration of Attorneys' services, Client agrees to pay to Attorneys:

> **TOTAL ATTORNEYS' FEES OF 25% OF ANY AMOUNT COLLECTED HEREIN**

These Attorneys' Fees shall be distributed among the following firms and does NOT change the amount of Client's share:

NLF/Rueb & Motta, PLC 12.5% and The Nicks Law Firm 12.5%

**III. Assignment of Interest.** In consideration of Attorneys' services, Client hereby sells, conveys, and assigns to Attorneys an interest, as indicated in section II above, in Client's claims and causes of action, and in any action, compromise, settlement, judgment, payment of services or recovery by whatever means.

**IV. Approval Necessary for Settlement.** Attorneys are authorized to determine settlement strategy and negotiate on Client's behalf. No settlement of any nature shall be made for claims of Client without Client's final approval, and Client shall not obtain any settlement without Attorneys' written approval. Attorneys are hereby granted a limited power of attorney with full authority to prepare, fully execute, sign and file all legal instruments, pleadings, drafts, authorizations and papers reasonably necessary to conclude this representation as fully as Client could do in person. Attorneys are expressly authorized to communicate with me by phone, email or text messaging as they deem necessary.

**V. Deferred Attorney Fees.** The client agrees that counsel may have the option to structure or defer all, or a portion, of its contingency fees ("Deferred Amount") in exchange for a certain nonqualified tax-deferred compensation obligation issued by an independent third party (the "Issuer"). Such payment of Deferred Amount to the Issuer, whether by the defendant,

defendant's agent, shall fully discharge the client's obligation with respect to the portion of the settlement proceeds that represent fees the counsel has elected to defer.

**VI. Representations.** It is understood that Attorneys cannot warrant or guarantee the outcome of the case, and Attorneys have made no representations that Client will recover any or all of the funds sought. Client also understands that obtaining a judgment does not guarantee that the defendant will satisfy the judgment.

**VII. Withdrawal.** Attorneys have the option to withdraw and cease to represent Client for any reason.

**VIII. Association of Other Attorneys.** Attorneys have the option to associate any attorney(s) to assist in the preparation and litigation of this case, in the sole discretion of Attorneys.

**VII. Mississippi Law.** This Contract shall be construed under and in accordance with the laws of the State of Mississippi, and all obligations of the parties created hereunder are performable in Mississippi.

**IX. Parties Bound.** This Contract shall be binding upon and inure to the benefit of the parties hereto and their heirs, executors, administrators, legal representatives, successors and assigns where permitted by this Contract.

**X. Legal Construction.** In case any provision in this Contract shall be held to be invalid, illegal or unenforceable, such holding shall not affect any other provisions herein, and this Contract shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

**XI. Prior Contracts Superseded.** This Contract constitutes the sole agreement of the parties and supersedes any prior written or oral agreements between the parties regarding Event.

**XII. Lien Resolution.** Client understands that federal law may require all parties to resolve Medicare's, Medicaid's, and other private and government health insurance plans' claims for reimbursement prior to distributing any verdict or settlement proceeds. Client agrees that Attorneys may take all steps relating to resolution of these federally mandated issues, and expenses incurred for such shall be treated as case expenses deducted from Client's net recovery.

**XIII. Client Certification.** Client is voluntarily signing this Contract, fully aware of its terms and conditions. All questions regarding the contract have been answered by Attorneys.

---

Signed & Accepted this ___ day of _____, 2015

Rueb & Motta, The Nations Law Firm, and the Nicks Law Firm.

*Howard L. Nations*

_____
Howard L Nations, Esq. on behalf of Attorneys

Signed & Accepted this 29 day of May, 2015

*Adam J. Hebert*
Client's Signature

Adam J. Hebert
Client's Printed Name

SSN: [Redacted] -5516    DOB: 3-6-63

# ATTORNEY-CLIENT CONTRACT

This Contract is made by and between Client and Rueb & Motta, The Nations Law Firm, and the Nicks Law Firm, ("Attorneys"). In consideration of the mutual promises herein, Client and Attorneys agree as follows:

**I. Purpose of Representation.** Client retains Attorneys to prosecute all claims against all necessary defendants arising out of Event: <u>BP Deepwater Horizon Oil Spill Class Action Settlement for Subsistence Claims</u>.

**II. Attorneys' Fees & Expenses.** Attorneys will advance reasonable and necessary expenses incurred for prosecution of the case and obtain full reimbursement out of Client's share of any amount collected herein. In consideration of Attorneys' services, Client agrees to pay to Attorneys:

> **TOTAL ATTORNEYS' FEES OF 25% OF ANY AMOUNT COLLECTED HEREIN**

These Attorneys' Fees shall be distributed among the following firms and does NOT change the amount of Client's share:

NLF/Rueb & Motta, PLC 12.5% and The Nicks Law Firm 12.5%

**III. Assignment of Interest.** In consideration of Attorneys' services, Client hereby sells, conveys, and assigns to Attorneys an interest, as indicated in section II above, in Client's claims and causes of action, and in any action, compromise, settlement, judgment, payment of services or recovery by whatever means.

**IV. Approval Necessary for Settlement.** Attorneys are authorized to determine settlement strategy and negotiate on Client's behalf. <u>No settlement of any nature shall be made for claims of Client without Client's final approval</u>, and Client shall not obtain any settlement without Attorneys' written approval. Attorneys are hereby granted a limited power of attorney with full authority to prepare, fully execute, sign and file all legal instruments, pleadings, drafts, authorizations and papers reasonably necessary to conclude this representation as fully as Client could do in person. Attorneys are expressly authorized to communicate with me by phone, email or text messaging as they deem necessary.

**V. Deferred Attorney Fees.** The client agrees that counsel may have the option to structure or defer all, or a portion, of its contingency fees ("Deferred Amount") in exchange for a certain nonqualified tax-deferred compensation obligation issued by an independent third party (the "Issuer"). Such payment of Deferred Amount to the Issuer, whether by the defendant,

defendant's agent, shall fully discharge the client's obligation with respect to the portion of the settlement proceeds that represent fees the counsel has elected to defer.

**VI. Representations.** It is understood that Attorneys cannot warrant or guarantee the outcome of the case, and Attorneys have made no representations that Client will recover any or all of the funds sought. Client also understands that obtaining a judgment does not guarantee that the defendant will satisfy the judgment.

**VII. Withdrawal.** Attorneys have the option to withdraw and cease to represent Client for any reason.

**VIII. Association of Other Attorneys.** Attorneys have the option to associate any attorney(s) to assist in the preparation and litigation of this case, in the sole discretion of Attorneys.

**VII. Mississippi Law.** This Contract shall be construed under and in accordance with the laws of the State of Mississippi, and all obligations of the parties created hereunder are performable in Mississippi.

**IX. Parties Bound.** This Contract shall be binding upon and inure to the benefit of the parties hereto and their heirs, executors, administrators, legal representatives, successors and assigns where permitted by this Contract.

**X. Legal Construction.** In case any provision in this Contract shall be held to be invalid, illegal or unenforceable, such holding shall not affect any other provisions herein, and this Contract shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

**XI. Prior Contracts Superseded.** This Contract constitutes the sole agreement of the parties and supersedes any prior written or oral agreements between the parties regarding Event.

**XII. Lien Resolution.** Client understands that federal law may require all parties to resolve Medicare's, Medicaid's, and other private and government health insurance plans' claims for reimbursement prior to distributing any verdict or settlement proceeds. Client agrees that Attorneys may take all steps relating to resolution of these federally mandated issues, and expenses incurred for such shall be treated as case expenses deducted from Client's net recovery.

**XIII. Client Certification.** Client is voluntarily signing this Contract, fully aware of its terms and conditions. All questions regarding the contract have been answered by Attorneys,

---

Signed & Accepted this ___ day of _____, 2015

Rueb & Motta, The Nations Law Firm, and the Nicks Law Firm.

*Howard L. Nations*

Howard L Nations, Esq. on behalf of Attorneys

Signed & Accepted this 8 day of June 2015

*Fred m Ledet*

Client's Signature

*Fred Ledet*

Client's Printed Name

SSN: [Redacted] -9115   DOB: 7-24-1965

## ATTORNEY-CLIENT CONTRACT

This Contract is made by and between Client and Rueb & Motta, The Nations Law Firm, and the Nicks Law Firm, ("Attorneys"). In consideration of the mutual promises herein, Client and Attorneys agree as follows:

**I. Purpose of Representation.** Client retains Attorneys to prosecute all claims against all necessary defendants arising out of Event: <u>BP Deepwater Horizon Oil Spill Class Action Settlement</u> <u>for **Subsistence Claims**</u>.

**II. Attorneys' Fees & Expenses.** Attorneys will advance reasonable and necessary expenses incurred for prosecution of the case and obtain full reimbursement out of Client's share of any amount collected herein. In consideration of Attorneys' services, Client agrees to pay to Attorneys:

> TOTAL ATTORNEYS' FEES OF 25% OF
>
> ANY AMOUNT COLLECTED HEREIN

These Attorneys' Fees shall be distributed among the following firms and does NOT change the amount of Client's share:

NLF/Rueb & Motta, PLC 12.5% and The Nicks Law Firm 12.5%

**III. Assignment of Interest.** In consideration of Attorneys' services, Client hereby sells, conveys, and assigns to Attorneys an interest, as indicated in section II above, in Client's claims and causes of action, and in any action, compromise, settlement, judgment, payment of services or recovery by whatever means.

**IV. Approval Necessary for Settlement.** Attorneys are authorized to determine settlement strategy and negotiate on Client's behalf. <u>No settlement of any nature shall be made for claims of Client without Client's final approval</u>, and Client shall not obtain any settlement without Attorneys' written approval. Attorneys are hereby granted a limited power of attorney with full authority to prepare, fully execute, sign and file all legal instruments, pleadings, drafts, authorizations and papers reasonably necessary to conclude this representation as fully as Client could do in person. Attorneys are expressly authorized to communicate with me by phone, email or text messaging as they deem necessary.

**V. Deferred Attorney Fees.** The client agrees that counsel may have the option to structure or defer all, or a portion, of its contingency fees ("Deferred Amount") in exchange for a certain nonqualified tax-deferred compensation obligation issued by an independent third party (the "Issuer"). Such payment of Deferred Amount to the Issuer, whether by the defendant,

defendant's agent, shall fully discharge the client's obligation with respect to the portion of the settlement proceeds that represent fees the counsel has elected to defer.

**VI. Representations.** It is understood that Attorneys cannot warrant or guarantee the outcome of the case, and Attorneys have made no representations that Client will recover any or all of the funds sought. Client also understands that obtaining a judgment does not guarantee that the defendant will satisfy the judgment.

**VII. Withdrawal.** Attorneys have the option to withdraw and cease to represent Client for any reason.

**VIII. Association of Other Attorneys.** Attorneys have the option to associate any attorney(s) to assist in the preparation and litigation of this case, in the sole discretion of Attorneys.

**VII. Mississippi Law.** This Contract shall be construed under and in accordance with the laws of the State of Mississippi, and all obligations of the parties created hereunder are performable in Mississippi.

**IX. Parties Bound.** This Contract shall be binding upon and inure to the benefit of the parties hereto and their heirs, executors, administrators, legal representatives, successors and assigns where permitted by this Contract.

**X. Legal Construction.** In case any provision in this Contract shall be held to be invalid, illegal or unenforceable, such holding shall not affect any other provisions herein, and this Contract shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

**XI. Prior Contracts Superseded.** This Contract constitutes the sole agreement of the parties and supersedes any prior written or oral agreements between the parties regarding Event.

**XII. Lien Resolution.** Client understands that federal law may require all parties to resolve Medicare's, Medicaid's, and other private and government health insurance plans' claims for reimbursement prior to distributing any verdict or settlement proceeds. Client agrees that Attorneys may take all steps relating to resolution of these federally mandated issues, and expenses incurred for such shall be treated as case expenses deducted from Client's net recovery.

**XIII. Client Certification.** Client is voluntarily signing this Contract, fully aware of its terms and conditions. All questions regarding the contract have been answered by Attorneys.

---

Signed & Accepted this___day of_____, 2015

Rueb & Motta, The Nations Law Firm, and the Nicks Law Firm.

*Howard L. Nations*

Howard L Nations, Esq. on behalf of Attorneys

---

Signed & Accepted this _11_ day of _MAY_, 2015

*Stanwood J Moore Jr.*

Client's Signature

STANWOOD J MOORE JR

Client's Printed Name

SSN: Redacted -1721 DOB: 4-29-46

## ATTORNEY-CLIENT CONTRACT

This Contract is made by and between Client and Rueb & Motta, The Nations Law Firm, and the Nicks Law Firm, ("Attorneys"). In consideration of the mutual promises herein, Client and Attorneys agree as follows:

**I. Purpose of Representation.** Client retains Attorneys to prosecute all claims against all necessary defendants arising out of Event: BP Deepwater Horizon Oil Spill Class Action Settlement for *Subsistence Claims*.

**II. Attorneys' Fees & Expenses.** Attorneys will advance reasonable and necessary expenses incurred for prosecution of the case and obtain full reimbursement out of Client's share of any amount collected herein. In consideration of Attorneys' services, Client agrees to pay to Attorneys:

> **TOTAL ATTORNEYS' FEES OF 25% OF**
> **ANY AMOUNT COLLECTED HEREIN**

These Attorneys' Fees shall be distributed among the following firms and does NOT change the amount of Client's share:

NLF/Rueb & Motta, PLC 12.5% and The Nicks Law Firm 12.5%

**III. Assignment of Interest.** In consideration of Attorneys' services, Client hereby sells, conveys, and assigns to Attorneys an interest, as indicated in section II above, in Client's claims and causes of action, and in any action, compromise, settlement, judgment, payment of services or recovery by whatever means.

**IV. Approval Necessary for Settlement.** Attorneys are authorized to determine settlement strategy and negotiate on Client's behalf. No settlement of any nature shall be made for claims of Client without Client's final approval, and Client shall not obtain any settlement without Attorneys' written approval. Attorneys are hereby granted a limited power of attorney with full authority to prepare, fully execute, sign and file all legal instruments, pleadings, drafts, authorizations and papers reasonably necessary to conclude this representation as fully as Client could do in person. Attorneys are expressly authorized to communicate with me by phone, email or text messaging as they deem necessary.

**V. Deferred Attorney Fees.** The client agrees that counsel may have the option to structure or defer all, or a portion, of its contingency fees ("Deferred Amount") in exchange for a certain nonqualified tax-deferred compensation obligation issued by an independent third party (the "Issuer"). Such payment of Deferred Amount to the Issuer, whether by the defendant,

defendant's agent, shall fully discharge the client's obligation with respect to the portion of the settlement proceeds that represent fees the counsel has elected to defer.

**VI. Representations.** It is understood that Attorneys cannot warrant or guarantee the outcome of the case, and Attorneys have made no representations that Client will recover any or all of the funds sought. Client also understands that obtaining a judgment does not guarantee that the defendant will satisfy the judgment.

**VII. Withdrawal.** Attorneys have the option to withdraw and cease to represent Client for any reason.

**VIII. Association of Other Attorneys.** Attorneys have the option to associate any attorney(s) to assist in the preparation and litigation of this case, in the sole discretion of Attorneys.

**VII. Mississippi Law.** This Contract shall be construed under and in accordance with the laws of the State of Mississippi, and all obligations of the parties created hereunder are performable in Mississippi.

**IX. Parties Bound.** This Contract shall be binding upon and inure to the benefit of the parties hereto and their heirs, executors, administrators, legal representatives, successors and assigns where permitted by this Contract.

**X. Legal Construction.** In case any provision in this Contract shall be held to be invalid, illegal or unenforceable, such holding shall not affect any other provisions herein, and this Contract shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

**XI. Prior Contracts Superseded.** This Contract constitutes the sole agreement of the parties and supersedes any prior written or oral agreements between the parties regarding Event.

**XII. Lien Resolution.** Client understands that federal law may require all parties to resolve Medicare's, Medicaid's, and other private and government health insurance plans' claims for reimbursement prior to distributing any verdict or settlement proceeds. Client agrees that Attorneys may take all steps relating to resolution of these federally mandated issues, and expenses incurred for such shall be treated as case expenses deducted from Client's net recovery.

**XIII. Client Certification.** Client is voluntarily signing this Contract, fully aware of its terms and conditions. All questions regarding the contract have been answered by Attorneys.

---

Signed & Accepted this ___ day of _____, 2015

Rueb & Motta, The Nations Law Firm, and the Nicks Law Firm.

*Howard L. Nations*

_____

Howard L Nations, Esq. on behalf of Attorneys

---

Signed & Accepted this **9** day of **JUNE**, 2015

*[signature]*

_____
Client's Signature

JAMES W SCALES III

_____
Client's Printed Name

SSN: Redacted-6722    DOB: 8-12-74

23.

Based on the express terms of the "Attorney-Client Contract," Defendants obligated themselves to "prosecute all claims against all necessary defendants arising out of Event: BP Deepwater Horizon Oil Spill Class Action Settlement," including preparing and filing Plaintiffs' BP Subsistence Claim with the DHECC as outlined in the BP Settlement Agreement. Thus, Defendants were obligated contractually to competently and diligently represent Plaintiffs' legal rights in the BP Claims process.

24.

Once Plaintiffs retained Defendants as their lawyers, the clients had no access to the DHECC online portal, which maintained all documents and notices for each claimant. The portal was exclusively for the law firms and restricted solely to lawyers for the joint venture.

25.

Thus, Plaintiffs were required to rely on Defendants' representations, specifically, that Defendants would prosecute their respective BP Claim competently and zealously to maximize Plaintiffs' recovery for their BP Oil Spill-related subsistence loss.

26.

Plaintiffs who visited Defendants' intake facilities were required to place their signature on a "sign-in" sheet at the entrance of the facility at which time they received a Defendant-provided intake packet. Often with assistance from Defendants' field representatives, Plaintiffs completed the intake packet documents, including an "Attorney-Client Contract," an Authorization Form providing Defendants the authority to obtain the claimant's hunting and fishing license, an IRS W-9 form, and initial intake forms to provide personal information and loss of species information. Plaintiffs were told the intake packets included all of the required documentation for Defendants

to prepare and file Plaintiffs' BP Subsistence Claims in order to receive compensation for their losses.

27.

Upon completion of the intake packets at the meeting facilities, numerous Plaintiff Class members were concerned their claims would not be filed timely due to the large number of people in attendance at the meeting facilities. Throughout this period of time, but particularly in the last several days before the deadline, numerous claimants questioned Defendants' field representatives about their concerns regarding sufficient time to file. Numerous Class members specifically asked the field representatives – who were the only joint venture workers available to question - about the ability of the Defendants to process all of the claims. Pursuant to Defendants' direction, the field agents – all non-lawyers and contract workers hired by the joint venture – explicitly promised and assured the claimants that their packets were complete and their claims would be timely filed. These were the very same field agents who knew, and who advised the Defendant lawyers, that the magnitude of claims was overwhelming and they were incapable of completing and filing all of them. Unfortunately, the claimants relied upon these knowingly false, fraudulent promises and assurances which was ultimately to their detriment.

28.

Tragically for the Plaintiff Class, Defendants failed to timely file appropriately documented BP Claim forms prior to the June 8, 2015 deadline. Consequently, the Plaintiff Class lost the opportunity to receive an award for their BP Subsistence Claim because Defendants failed to comply with the claim filing deadline with the required documentation.

29.

At all material times after June 8, 2015, Defendants misrepresented this outcome

determinative fact, namely that Defendants had never filed a timely and complete claim on behalf of Plaintiff Class members.

30.

Since the Plaintiff Class was prohibited from communicating with DHECC or otherwise authorized to receive status updates on their BP Claim through the DHECC portal, the Plaintiff Class contacted Defendants' call center to inquire about the status of their BP Claim. On each and every one of those client contacts, Defendants falsely advised Plaintiff Class members that their BP Claim was "still pending" when Defendants knew to a certainty that the "still pending" status information was false, misleading, and a blatant concealment of the truth.

31.

But for Defendants' failure to timely file a complete BP claim on behalf of each Plaintiff Class member, the Plaintiff Class would have received awards from DHECC compensating them for their BP Oil Spill related-subsistence loss.

32.

At all material times, the Plaintiff Class members satisfied the required prongs of the BP Settlement Agreement in order to receive compensation awards from DHECC for their subsistence losses.  First, a) Plaintiff Class members satisfied the "Subsistence Claimant" definition in that they fished and hunted to harvest, catch, and consume Gulf of Mexico natural resources, such as fish, seafood, and game, in a traditional and customary manner to sustain their basic personal and family dietary and economic security needs, and b) Plaintiff Class members relied upon the subsistence resources that had been diminished or restricted in the geographic regions resulting from the BP Oil Spill.  Second, Plaintiff Class members provided Defendants with sufficient documentation to establish the quantity of Gulf of Mexico natural resources they lost during the

specified time period. Third, the Plaintiff Class members provided Defendants with copies of their state-issued hunting and fishing licenses for the fiscal year 2009-2010 and/or provided Defendants authorization forms to obtain the required hunting and fishing licenses.

Thus, each Plaintiff Class member furnished Defendants with all documentation necessary for Defendants to file a valid and eligible Subsistence Claim on Plaintiff's behalf. The Plaintiff Class members most certainly would have received a compensation award from DHECC for their subsistence losses if Defendants had properly filed and completed their respective BP Subsistence Claim.

33.

Several months after submitting her documents to Defendants, Deborah A. Gaudet called Defendants' call center for an update on the status of her claim. She was told there was nothing more that she needed to do and her claim was "still pending." Gaudet called again on several occasions between 2016 and March 14, 2019. Each response was equally and sadly misleading – "Your claim is still pending." Gaudet relied upon Defendants' misrepresentations concerning the status and disposition of her BP Subsistence Claim. She believed her claim had been properly submitted by Defendants and no other action was required.

On March 14, 2019, Gaudet received a form letter from the Defendants. Curiously, the letter was dated October 31, 2018, but not postmarked until March 12, 2019.  For the first time, this letter communication from the Defendants informed Mrs. Gaudet her "claim was one of many which were **denied** by BP."  However, no Subsistence Claim had ever been filed on behalf of Gaudet. The Defendants' "denial" letter further specified that Gaudet and the Defendants were "left with no possibility of an effective appeal."  The letter listed nine (9) examples of reasons that properly filed claims had been denied. However, the Defendants' failure to timely file a complete

claim on the claimant's behalf was noticeably absent from the list.  If the Defendants had not intentionally misrepresented and fraudulently concealed the truth from Mrs. Gaudet that her claim was never filed, she may have had an opportunity to amend such egregious failures by the Defendants. Unfortunately, the Defendants intentional misrepresentation and harmful concealment of the truth prevented such rehabilitation and caused Deborah Gaudet to suffer economic loss.

Similar to Gaudet, Timothy Butler called the Defendants' call center for an update on the status of his claim, and was told his claim was "still pending." Timothy Butler made several phone calls to the Defendants' call center between June 8, 2015 and March 14, 2019, each response was nearly identical-your claim is "still pending." Timothy Butler relied upon Defendants' misrepresentations concerning the status and disposition of his BP Subsistence Claim; and thus, he believed that no other action was required.

In February or March of 2019, Plaintiff Butler also received an identical form letter from the Defendants stating that his Subsistence Claim had been denied.  In truth and in fact, the Defendants never filed a Subsistence Claim on his behalf. If the Defendants had not intentionally misrepresented and fraudulently concealed the truth from Mr. Butler that his claim was never filed, he may have had an opportunity to amend such egregious failures by the Defendants. Unfortunately, the Defendants intentional misrepresentation and harmful concealment of the truth prevented such rehabilitation and caused Timothy Butler to suffer economic loss.

Dian Campbell called the Defendants' call center numerous times for updates on the status of her claim, and was told each time that her claim was "still pending." Dian Campbell relied upon Defendants' misrepresentations concerning the status and disposition of her BP Subsistence Claim; and thus, she believed her claim was properly submitted by the Defendants and no other action was required.

In February or March of 2019, Plaintiff Campbell also received an identical form letter from the Defendants stating that her Subsistence Claim had been denied.  In truth and in fact, the Defendants never filed a Subsistence Claim on her behalf. If the Defendants had not intentionally misrepresented and fraudulently concealed the truth from Mrs. Campbell that her claim was never filed, she may have had an opportunity to amend such egregious failures by the Defendants. Unfortunately, the Defendants intentional misrepresentation and harmful concealment of the truth prevented such rehabilitation and caused Dian Campbell to suffer economic loss.

In February or March of 2019, Plaintiff Collins also received an identical form letter from the Defendants stating that her Subsistence Claim had been denied.  Unfortunately, the Defendants failed to file a Subsistence Claim with DHECC on her behalf by the June 8, 2015 deadline. If the Defendants had not intentionally misrepresented and fraudulently concealed the truth from Mrs. Collins that her claim was never filed, she may have had an opportunity to amend such egregious failures by the Defendants. Unfortunately, the Defendants intentional misrepresentation and harmful concealment of the truth prevented such rehabilitation and caused Kristine Collins to suffer economic loss.

Regina Falgoust called the Defendants' call center multiple times for updates on the status of her claim, and was told each time that her claim was "still pending." Mrs. Falgoust relied upon Defendants' misrepresentations concerning the status and disposition of her BP Subsistence Claim; and thus, she believed her claim was properly submitted by the Defendants and no other action was required.

In February or March of 2019, Plaintiff Falgoust received an identical form letter from the Defendants stating that her Subsistence Claim had been denied.  In truth and in fact, Falgoust's Subsistence Claim had been denied because the Defendants knowingly failed to include and submit

all of the required documentation to DHECC. Simply put, Defendants failed to timely and properly file a colorable Subsistence Claim for Falgoust. If the Defendants had not intentionally misrepresented and fraudulently concealed the truth from Mrs. Falgoust that her claim was filed incomplete, she would have had an opportunity to amend such errors caused by the Defendants. Unfortunately, the Defendants intentional misrepresentation and harmful concealment of the truth prevented such rehabilitation and caused Regina Falgoust to suffer economic loss.

Abraham Gamberella called the Defendants' call center for an update on the status of his claim, and was told his claim was "still pending." Mr. Gamberella relied upon the Defendants' misrepresentations concerning the status and disposition of his BP Subsistence Claim; and thus, he believed his claim was properly submitted by the Defendants and no other action was required.

In February or March of 2019, Plaintiff Gamberella also received an identical form letter from the Defendants stating that his Subsistence Claim had been denied.  In truth and in fact, Gamberella's Subsistence Claim had been denied because the Defendants knowingly failed to include and submit all of the required documentation to DHECC. Simply put, Defendants failed to timely and properly file a colorable Subsistence Claim for Gamberella. If the Defendants had not intentionally misrepresented and fraudulently concealed the truth from Mr. Gamberella that his claim was filed incomplete, he would have had an opportunity to amend such egregious failures by the Defendants. Unfortunately, the Defendants intentional misrepresentation and harmful concealment of the truth prevented such rehabilitation and caused Abraham Gamberella to suffer economic loss.

Adam Hebert called the Defendants' call center for an update on the status of his claim, and was told his claim was "still pending." Adam Hebert made several phone calls to the Defendants' call center between June 2015 and March 2019, each response was nearly identical-

your claim is "still pending." Adam Hebert relied upon the Defendants' misrepresentations concerning the status and disposition of his BP Subsistence Claim; and thus, he believed his claim was properly submitted by the Defendants and no other action was required.

In February or March of 2019, Plaintiff Hebert also received an identical form letter from the Defendants stating that his Subsistence Claim had been denied.  In truth and in fact, the Defendants never filed a Subsistence Claim on his behalf. If the Defendants had not intentionally misrepresented and fraudulently concealed the truth from Mr. Hebert that his claim was never filed, he may have had an opportunity to amend such egregious failures by the Defendants. Unfortunately, the Defendants intentional misrepresentation and harmful concealment of the truth prevented such rehabilitation and caused Adam Hebert to suffer economic loss.

Fred Ledet called the Defendants' call center for an update on the status of his claim, and was told his claim was "still pending." Mr. Ledet relied upon the Defendants' misrepresentations concerning the status and disposition of his BP Subsistence Claim; and thus, he believed his claim was properly submitted by the Defendants and no other action was required.

In February or March of 2019, Plaintiff Ledet also received an identical form letter from the Defendants stating that his Subsistence Claim had been denied.  Unfortunately, the Defendants failed to file a Subsistence Claim with DHECC on his behalf by the June 8, 2015 deadline. If the Defendants had not intentionally misrepresented and fraudulently concealed the truth from Mr. Ledet that his claim was never filed, he may have had an opportunity to amend such egregious failures by the Defendants. Unfortunately, the Defendants intentional misrepresentation and harmful concealment of the truth prevented such rehabilitation and caused Fred Ledet to suffer economic loss.

Stanwood Moore, Jr. called the Defendants' call center for an update on the status of his

claim, and was told his claim was "still pending." Mr. Moore relied upon the Defendants' misrepresentations concerning the status and disposition of his BP Subsistence Claim; and thus, he believed his claim was properly submitted by the Defendants and no other action was required.

In February or March of 2019, Plaintiff Moore also received an identical form letter from the Defendants stating that his Subsistence Claim had been denied. In truth and in fact, Moore's Subsistence Claim had been denied because the Defendants knowingly failed to include and submit all of the required documentation to DHECC. Simply put, Defendants failed to timely and properly file a colorable Subsistence Claim for Moore. If the Defendants had not intentionally misrepresented and fraudulently concealed the truth from Mr. Moore that his claim was filed incomplete, he would have had an opportunity to amend such egregious failures by the Defendants. Unfortunately, the Defendants intentional misrepresentation and harmful concealment of the truth prevented such rehabilitation and caused Stanwood Moore, Jr. to suffer economic loss.

James Scales, III called the Defendants' call center for an update on the status of his claim, and was told his claim was "still pending." Scales made several phone calls to the Defendants' call center between June 2015 and March 2019, each response was nearly identical-your claim is "still pending." Scales relied upon the Defendants' misrepresentations concerning the status and disposition of his BP Subsistence Claim; and thus, he believed his claim was properly submitted by the Defendants and no other action was required.

In February or March of 2019, Plaintiff Scales also received an identical form letter from the Defendants stating that his Subsistence Claim had been denied. In truth and in fact, the Defendants never filed a Subsistence Claim on his behalf. If the Defendants had not intentionally misrepresented and fraudulently concealed the truth from Mr. Scales that his claim was never filed, he may have had an opportunity to amend such egregious failures by the Defendants.

Unfortunately, the Defendants intentional misrepresentation and harmful concealment of the truth prevented such rehabilitation and caused James Scales, III to suffer economic loss. A copy of the denial letter is provided below.[3]

<br>

**THE NATIONS LAW FIRM**
A NATIONAL LITIGATION FIRM

**Rueb & Motta**                                                          **The Nicks Law Firm**

HOWARD L. NATIONS                                                          HOUSTON OFFICE
BOARD CERTIFIED - PERSONAL INJURY TRIAL LAW                               3131 Interpark Drive, Suite 308
BOARD CERTIFIED - CIVIL TRIAL LAW                                         Houston, Texas 77042
TEXAS BOARD OF LEGAL SPECIALIZATION                                      Phone 800-589-2450
DIPLOMATE - CIVIL TRIAL ADVOCACY                                         Fax 866-352-1953
NATIONAL BOARD OF TRIAL ADVOCACY                                         nations@howardnations.com
DIPLOMATE - NATIONAL COLLEGE OF ADVOCACY
ADMITTED TO TEXAS AND NEW YORK

                                           100352346              October 31, 2018

Deborah Gaudet
4138 Highway 665
Montegut LA 70377

Dear Deborah Gaudet,

       The Deepwater Claims Administrator has advised us that the review of all BP Subsistence claims has been concluded and all claims have now either been awarded or denied. As you recall, we entered this litigation shortly before the filing deadline on June 8, 2015, because we learned that thousands of potentially qualified fishermen had not filed for their potential benefits. We realized at the time that BP would deny as many of these claims as possible, by every means possible, because more than 15,000 new claims were filed immediately before the filing deadline. We also advised all claimants that we would do our best but that we had to rely on very complete and accurate information from every claimant since there was no time to verify it before filing.

       You are receiving this letter because your BP Subsistence (Fishing) Claim was one of many which were denied by BP, mostly based on very severe and narrow technicalities, some of which are listed below. Unfortunately, the settlement agreement allowed broad discretion in denying claims and we were left with no possibility of an effective appeal. While we exhausted appeals when they were available, most of the denials were based on administrative discretion which permitted no appeal. The following are several samples of the reasons for denial of numerous claims:

       1)    Prior GCCF or other economic claim payment.
       2)    Not having a valid fishing license during the relevant time period.
       3)    Failed field visit - completely discretionary.
       4)    Alleged fraud - completely discretionary.
       5)    Fishing in an area BP claims was not affected by the oil spill.
       6)    Listed species required a special gear license.
       7)    Not listing all gear used.
       8)    Not listing gear in a particular, specific manner.
       9)    Not having a proper species license.

       We continue to prosecute any appeals that we feel may be subject to reconsideration and will advise you if the status of your claim changes.

                                           Your BP Subsistence Claims Team

                  HOUSTON  ·  WASHINGTON DC  ·  NEW YORK

---

[3] The remaining proposed Class Representatives also reported receiving the same letter, around the same time, but they no longer possess copies of the correspondence.

# THE NATIONS LAW FIRM

A NATIONAL LITIGATION FIRM

**Rueb & Motta**

**The Nicks Law Firm**

HOWARD L. NATIONS

AV/AV-CERTIFIED PERSONAL INJURY TRIAL LAW
BOARD-CERTIFIED CIVIL TRIAL LAW
TEXAS BOARD OF LEGAL SPECIALIZATION
DIPLOMATE CIVIL TRIAL ADVOCACY
NATIONAL BOARD OF TRIAL ADVOCACY
DIPLOMATE NATIONAL COLLEGE OF ADVOCACY
ADMITTED IN TEXAS AND NEW YORK

HOUSTON OFFICE
3131 Briarpark Drive, Suite 208
Houston, Texas 77042
Phone 800-588-2600
Fax 866-357-1153
hpfiah@howardnations.com

100353528

October 31, 2018

Timothy Butler
205 Lake Penchant Ct
Houma LA 70360

Dear Timothy Butler,

The Deepwater Claims Administrator has advised us that the review of all BP Subsistence claims has been concluded and all claims have now either been awarded or denied. As you recall, we entered this litigation shortly before the filing deadline on June 8, 2015, because we learned that thousands of potentially qualified fishermen had not filed for their potential benefits. We realized at the time that BP would deny as many of these claims as possible, by every means possible, because more than 15,000 new claims were filed immediately before the filing deadline. We also advised all claimants that we would do our best but that we had to rely on very complete and accurate information from every claimant since there was no time to verify it before filing.

You are receiving this letter because your BP Subsistence (Fishing) Claim was one of many which were denied by BP, mostly based on very severe and narrow technicalities, some of which are listed below. Unfortunately, the settlement agreement allowed broad discretion in denying claims and we were left with no possibility of an effective appeal. While we exhausted appeals when they were available, most of the denials were based on administrative discretion which permitted no appeal. The following are several samples of the reasons for denial of numerous claims:

1) Prior GCCF or other economic claim payment.
2) Not having a valid fishing license during the relevant time period.
3) Failed field visit - completely discretionary.
4) Alleged fraud - completely discretionary.
5) Fishing in an area BP claims was not affected by the oil spill.
6) Listed species required a special gear license.
7) Not listing all gear used.
8) Not listing gear in a particular, specific manner.
9) Not having a proper species license.

We continue to prosecute any appeals that we feel may be subject to reconsideration and will advise you if the status of your claim changes.

Your BP Subsistence Claims Team

# THE NATIONS LAW FIRM

A NATIONAL LITIGATION FIRM

**Rueb & Motta**                                                              **The Nicks Law Firm**

HOWARD L. NATIONS                                                             HOUSTON OFFICE
BOARD CERTIFIED - PERSONAL INJURY TRIAL LAW                                   3131 Briarpark Drive, Suite 208
BOARD CERTIFIED - CIVIL TRIAL LAW                                            Houston, Texas 77042
TEXAS BOARD OF LEGAL SPECIALIZATION                                          Phone 800-588-2600
DIPLOMATE - CIVIL TRIAL ADVOCACY                                             Fax 866-357-1153
NATIONAL BOARD OF TRIAL ADVOCACY                                            hpfish@howardnations.com
DIPLOMATE - NATIONAL COLLEGE OF ADVOCACY
ADMITTED IN TEXAS AND NEW YORK

                              100351972                                       October 31, 2018

Regina Falgoust
1211 Lacroix Dr
Houma LA 70364

Dear Regina Falgoust,

      The Deepwater Claims Administrator has advised us that the review of all BP Subsistence claims has been concluded and all claims have now either been awarded or denied. As you recall, we entered this litigation shortly before the filing deadline on June 8, 2015, because we learned that thousands of potentially qualified fishermen had not filed for their potential benefits. We realized at the time that BP would deny as many of these claims as possible, by every means possible, because more than 15,000 new claims were filed immediately before the filing deadline. We also advised all claimants that we would do our best but that we had to rely on very complete and accurate information from every claimant since there was no time to verify it before filing.

      You are receiving this letter because your BP Subsistence (Fishing) Claim was one of many which were denied by BP, mostly based on very severe and narrow technicalities, some of which are listed below. Unfortunately, the settlement agreement allowed broad discretion in denying claims and we were left with no possibility of an effective appeal. While we exhausted appeals when they were available, most of the denials were based on administrative discretion which permitted no appeal. The following are several samples of the reasons for denial of numerous claims:

      1)    Prior GCCF or other economic claim payment.
      2)    Not having a valid fishing license during the relevant time period.
      3)    Failed field visit - completely discretionary.
      4)    Alleged fraud - completely discretionary.
      5)    Fishing in an area BP claims was not affected by the oil spill.
      6)    Listed species required a special gear license.
      7)    Not listing all gear used.
      8)    Not listing gear in a particular, specific manner.
      9)    Not having a proper species license.

      We continue to prosecute any appeals that we feel may be subject to reconsideration and will advise you if the status of your claim changes.

                                  Your BP Subsistence Claims Team

HOUSTON  ·  WASHINGTON DC  ·  NEW YORK

# THE NATIONS LAW FIRM

A NATIONAL LITIGATION FIRM

**Rueb & Motta**                                                      **The Nicks Law Firm**

| | |
|---|---|
| HOWARD L. NATIONS | HOUSTON OFFICE |
| BOARD CERTIFIED - PERSONAL INJURY TRIAL LAW | 3131 Briarpark Drive, Suite 208 |
| BOARD CERTIFIED - CIVIL TRIAL LAW | Houston, Texas 77042 |
| TEXAS BOARD OF LEGAL SPECIALIZATION | Phone 800-888-2600 |
| DIPLOMATE - CIVIL TRIAL ADVOCACY | Fax 866-337-1153 |
| NATIONAL BOARD OF TRIAL ADVOCACY | hpfish@howardnations.com |
| DIPLOMATE - NATIONAL COLLEGE OF ADVOCACY | |
| ADMITTED IN TEXAS AND NEW YORK | |

100341369                                                      October 31, 2018

Adam Hebert
1904 Coteau Rd
Houma LA 70364

Dear Adam Hebert,

The Deepwater Claims Administrator has advised us that the review of all BP Subsistence claims has been concluded and all claims have now either been awarded or denied. As you recall, we entered this litigation shortly before the filing deadline on June 8, 2015, because we learned that thousands of potentially qualified fishermen had not filed for their potential benefits. We realized at the time that BP would deny as many of these claims as possible, by every means possible, because more than 15,000 new claims were filed immediately before the filing deadline. We also advised all claimants that we would do our best but that we had to rely on very complete and accurate information from every claimant since there was no time to verify it before filing.

You are receiving this letter because your BP Subsistence (Fishing) Claim was one of many which were denied by BP, mostly based on very severe and narrow technicalities, some of which are listed below. Unfortunately, the settlement agreement allowed broad discretion in denying claims and we were left with no possibility of an effective appeal. While we exhausted appeals when they were available, most of the denials were based on administrative discretion which permitted no appeal. The following are several samples of the reasons for denial of numerous claims:

1) Prior GCCF or other economic claim payment.
2) Not having a valid fishing license during the relevant time period.
3) Failed field visit - completely discretionary.
4) Alleged fraud - completely discretionary.
5) Fishing in an area BP claims was not affected by the oil spill.
6) Listed species required a special gear license.
7) Not listing all gear used.
8) Not listing gear in a particular, specific manner.
9) Not having a proper species license.

We continue to prosecute any appeals that we feel may be subject to reconsideration and will advise you if the status of your claim changes.

Your BP Subsistence Claims Team

HOUSTON    WASHINGTON DC    NEW YORK

## THE NATIONS LAW FIRM

A NATIONAL LITIGATION FIRM

**Rueb & Motta**                                                                 **The Nicks Law Firm**

HOWARD L. NATIONS
BOARD-CERTIFIED - PERSONAL INJURY TRIAL LAW
BOARD-CERTIFIED - CIVIL TRIAL LAW
TEXAS BOARD OF LEGAL SPECIALIZATION
DIPLOMATE - CIVIL TRIAL ADVOCACY
NATIONAL BOARD OF TRIAL ADVOCACY
DIPLOMATE - NATIONAL COLLEGE OF ADVOCACY
ADMITTED IN TEXAS AND NEW YORK

*(985) 688 3272*
*216 BARATARIA AVE*
*HOUMA, LA 70360  APT 222*

HOUSTON OFFICE
3131 Briarpark Drive, Suite 208
Houston, Texas 77042
Phone 800-988-2600
Fax 866-367-1153
hpfab@howardnations.com

100342051
*BONNE TERRE II*

October 31, 2018

Stanwood Moore
204 St Francis St
Houma LA 70364

Dear Stanwood Moore,

The Deepwater Claims Administrator has advised us that the review of all BP Subsistence claims has been concluded and all claims have now either been awarded or denied. As you recall, we entered this litigation shortly before the filing deadline on June 8, 2015, because we learned that thousands of potentially qualified fishermen had not filed for their potential benefits. We realized at the time that BP would deny as many of these claims as possible, by every means possible, because more than 15,000 new claims were filed immediately before the filing deadline. We also advised all claimants that we would do our best but that we had to rely on very complete and accurate information from every claimant since there was no time to verify it before filing.

You are receiving this letter because your BP Subsistence (Fishing) Claim was one of many which were denied by BP, mostly based on very severe and narrow technicalities, some of which are listed below. Unfortunately, the settlement agreement allowed broad discretion in denying claims and we were left with no possibility of an effective appeal. While we exhausted appeals when they were available, most of the denials were based on administrative discretion which permitted no appeal. The following are several samples of the reasons for denial of numerous claims:

1) Prior GCCF or other economic claim payment.
2) Not having a valid fishing license during the relevant time period.
3) Failed field visit - completely discretionary.
4) Alleged fraud - completely discretionary.
5) Fishing in an area BP claims was not affected by the oil spill.
6) Listed species required a special gear license.
7) Not listing all gear used.
8) Not listing gear in a particular, specific manner.
9) Not having a proper species license.

We continue to prosecute any appeals that we feel may be subject to reconsideration and will advise you if the status of your claim changes.

Your BP Subsistence Claims Team

HOUSTON  ·  WASHINGTON DC  ·  NEW YORK

# THE NATIONS LAW FIRM

### A NATIONAL LITIGATION FIRM

**Rueb & Motta**                                                        **The Nicks Law Firm**

HOWARD L. NATIONS
BOARD CERTIFIED - PERSONAL INJURY TRIAL LAW
BOARD CERTIFIED - CIVIL TRIAL LAW
TEXAS BOARD OF LEGAL SPECIALIZATION
DIPLOMATE - CIVIL TRIAL ADVOCACY
NATIONAL BOARD OF TRIAL ADVOCACY
DIPLOMATE - NATIONAL COLLEGE OF ADVOCACY
ADMITTED IN TEXAS AND NEW YORK ;

HOUSTON OFFICE
3131 Briarpark Drive, Suite 208
Houston, Texas 77042
Phone 800-385-3600
Fax 866-352-1152
hgdns@howardnations.com

100349964                                          October 31, 2018

James Scales Iii
715 Natalie Dr
Houma LA 70364

Dear James Scales Iii,

The Deepwater Claims Administrator has advised us that the review of all BP Subsistence claims has been concluded and all claims have now either been awarded or denied. As you recall, we entered this litigation shortly before the filing deadline on June 8, 2015, because we learned that thousands of potentially qualified fishermen had not filed for their potential benefits. We realized at the time that BP would deny as many of these claims as possible, by every means possible, because more than 15,000 new claims were filed immediately before the filing deadline. We also advised all claimants that we would do our best but that we had to rely on very complete and accurate information from every claimant since there was no time to verify it before filing.

You are receiving this letter because your BP Subsistence (Fishing) Claim was one of many which were denied by BP, mostly based on very severe and narrow technicalities, some of which are listed below. Unfortunately, the settlement agreement allowed broad discretion in denying claims and we were left with no possibility of an effective appeal. While we exhausted appeals when they were available, most of the denials were based on administrative discretion which permitted no appeal. The following are several samples of the reasons for denial of numerous claims:

1) Prior GCCF or other economic claim payment.
2) Not having a valid fishing license during the relevant time period.
3) Failed field visit - completely discretionary.
4) Alleged fraud - completely discretionary.
5) Fishing in an area BP claims was not affected by the oil spill.
6) Listed species required a special gear license.
7) Not listing all gear used.
8) Not listing gear in a particular, specific manner.
9) Not having a proper species license.

We continue to prosecute any appeals that we feel may be subject to reconsideration and will advise you if the status of your claim changes.

Your BP Subsistence Claims Team

NEW YORK

34.

After receiving denial letters from Defendants, numerous Plaintiff Class members executed "Request for Change in Representation Status," which, for the first time, allowed them to gain access to their claim-related information with DHECC.

35.

After gaining access to their information, Plaintiff Class members learned that Defendants had failed to timely and properly file complete and colorable BP Subsistence Claims based on documentation the BP Settlement Agreement required to be included for a valid, compensable claim. Plaintiff Class Members also learned that Defendants had concealed the truth from them.

## CLASS REPRESENTATION ALLEGATIONS

36.

This action is appropriate for determination pursuant to federal class action procedure because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable. Accordingly, Plaintiffs bring this action on their own behalf and on behalf of a class of Plaintiffs ("Plaintiff Class") that constitutes the following proposed Class:

> All BP Class members, represented by Defendants' joint-venture in the BP Deepwater Horizon Oil Spill Class Action Settlement Program, who lost the opportunity to participate in the BP Settlement Program for their subsistence losses because Defendants failed to timely file a complete BP Subsistence Claim on the client's behalf.

Plaintiffs seek to certify causes of action pursuant to legal theories of breach of contract and legal malpractice. Plaintiffs reserve the right to propose subclasses or to modify the above class definition, based on evidence adduced in discovery, or as necessary and appropriate. Specifically, this class is appropriate for certification because the prerequisites of Rule 23(a) and 23(b)(3) have been satisfied.

37.

Numerosity:   Preliminary discovery in this litigation has revealed that Defendants failed to properly and timely file approximately 2,695 of their clients' Subsistence Claims, thus these individuals make up the proposed Plaintiff Class. Defendants' former field representatives have confirmed that Defendants signed fee agreements to file Subsistence Claims on behalf of at least 14,500 claimants across the Gulf Coast. Defendants' representatives further indicated that an unknown number of these claims were incomplete (*i.e.* lack all required documentation) when filed or were filed untimely. Undersigned counsel presently represents approximately one hundred twenty-three (123) Plaintiffs, including approximately one hundred seventy-five (175) dependents of these Plaintiffs.  Plaintiffs, along with the other 2,572 putative Class members, claim a loss of opportunity to recover subsistence losses as a result of Defendants' breaches in the standard of conduct as well as Defendants' negligent conduct. Since members of the putative Class are residents of Louisiana, Mississippi, Alabama, and Florida, they are geographically dispersed throughout the Gulf Coast, and joinder of all such persons is impractical. Because of the large number of putative Class members and their being dispersed across four Gulf Coast states, this action is the most efficient means of handling these claims and the best way to ensure that the interests of all Plaintiff Class members are preserved.

38.

Commonality: Common questions of fact and law exist as to all members of the Plaintiff Class. The Plaintiffs suffered the same injury (i.e. lost the opportunity to be compensated for their subsistence losses through the BP Settlement Program) because of Defendants' common course of conduct – failing to file timely and complete Subsistence Claims that included all documents and

information required by the BP Settlement Agreement. In order for a Subsistence Claim to be valid and eligible for recovery, the BP Settlement Agreement required a BP Class member or his counsel (in this case Defendants) to submit only the following two documents: (1) a complete Subsistence Claim form or sworn written statement;[4] and, (2) a copy of claimant's fishing license (valid before and at the start of the loss period).[5] Defendants' failure to submit any one of the required documents in connection with a Plaintiff's Subsistence Claim, regardless of whether it was timely filed, rendered it categorically ineligible. Similarly, Defendants' failure to file a Plaintiff's Subsistence Claim by the June 8, 2015 deadline rendered it categorically ineligible.

Defendants' failure to timely provide required documentation in connection with a particular Plaintiff's Subsistence Claim represented a course of conduct common to all members of the proposed Class.  As a result, all members of the proposed Class suffered a common injury – the lost opportunity to be compensated for their Subsistence Claim because their Subsistence Claims were categorically ineligible for consideration.

These questions predominate over any questions affecting individual Plaintiff Class members.  These common factual and legal questions include, but are not limited to:

   a)  Whether Defendants failed to timely file and provide to DHECC, in connection with the Plaintiff Class members' Subsistence Claims, all documentation the BP Settlement Agreement required to be submitted in connection with a valid and eligible Subsistence Claim;

   b)  Whether Defendants failed to properly pursue BP Claims with the DHECC on behalf of Plaintiff Class members;

   c)  Whether Defendants concealed from their clients the fact that timely and complete

---

[4] The Complete Subsistence Claim Form or Sworn Written Statement was required to be signed by the claimant verifying the location of their fishing and/or hunting grounds (map and narrative identification); the equipment they used to fish and/or hunt; the number of people in their family unit who relied on natural resources they caught; the specific species and amounts of natural resources they relied upon; and the percentage of subsistence resources they relied on pre-Spill that came from areas that were closed or impaired due to or resulting from the Spill.

[5] See Exhibit 9(C) of the BP Settlement Agreement.

BP claims had not been filed with DHECC on behalf of the Plaintiff Class members;

d) Whether Defendants intentionally and knowingly made false and misleading representations to the Plaintiff Class members regarding the status of BP Subsistence Claims by sending Class members form "denial" letters indicating their Subsistence Claims had been "denied";

e) Whether Defendants collectively and/or individually owed a duty to the Plaintiff Class members;

f) Whether Defendants breached their respective duties owed to the Plaintiff Class members;

g) Whether Defendants' actions were the cause of Plaintiff Class members' inability to participate in the BP Settlement Program regarding their Subsistence Claims; and

h) Whether Plaintiff Class members are entitled to monetary damages, attorney's fees, punitive damages, and/or other legal or equitable remedies and, if so, the nature of any such relief.

39.

Typicality:   Plaintiffs' claims are typical and representative of the claims of the entire Class. All Plaintiff Class members were injured and damaged through Defendants' consistent misconduct and breach of their fiduciary duty to all Plaintiff Class members. Defendants failed to timely file complete and colorable Subsistence Claims with DHECC. Defendants engaged in a common course of conduct that did not vary from Plaintiff to Plaintiff, ensuring that common questions of law and fact will predominate over any individualized issues, as proof as to one constitutes proof as to all. All Plaintiff Class members have suffered the same ascertainable monetary and economic harm, namely the lost opportunity to participate in the BP Settlement and to receive compensation for their Subsistence Claims.

40.

Adequacy: The named Plaintiffs will fairly and adequately protect and the interests of the Class. The named Plaintiffs are prepared to undertake the representation of the entire proposed

Class. No named Plaintiff has any interest conflicting with an interest of any putative Class member. No named Plaintiff has any claim that is antagonistic to, incompatible with, or conflicts with, any claim of a putative absent Class member. Each named Plaintiff is a putative Class member.  Each named Plaintiff suffered the same harm as every other putative Class member in that each of them lost his or her opportunity to participate in the BP settlement and to be compensated for his or her Subsistence Claim. All Class members assert the same causes of action.

Additionally, the Plaintiffs have retained undersigned counsel who are experienced in complex class action litigation and who intend to pursue this class action vigorously and competently. Class counsel has adequate financial resources to assure the interests of the Plaintiff Class will be adequately protected.

41.

Superiority:    Class action adjudication of Plaintiffs' disputes is superior to other available methods for the fair and efficient adjudication of the controversy. Considering that the putative Class is composed of thousands of members, adjudication of each individual Plaintiff Class member's claims would cause increased expenses and delays to all parties and to the judicial system in determining the legal and factual issues common to all claims related to all parties herein. In the identification of claims for each putative Class member, the claims of the putative Class will be established by class-wide proof. Damages for each Plaintiff will be determined by formulaic calculation based on the previously recognized and widely accepted BP Settlement Agreement and Subsistence Formula. In other words, the common questions of law and fact identified in ¶ 38 will be established through generalized proof. The questions of law and fact related to the Class are far more substantial than any individualized issue. The named Plaintiffs seeking to be Class Representatives have little to no interest in individually controlling their separate actions because

they allege class adjudication will be more effective and efficient.

There is no pending litigation outside of this suit for any of the 2,695 proposed Class members regarding Defendants' mishandling of BP Subsistence Claims. Certification would act to centralize these proceedings against the Defendants. Attempting to adjudicate each Class member's claim individually would mean adjudication of thousands of nearly identical cases which could potentially yield inconsistent, varying, or contradictory results. Handling the litigation as a class action presents far fewer management difficulties and provides the benefit of a single adjudication on common issues of fact and law, economies of scale, and comprehensive supervision by a single court.

There are common issues related to the identical Attorney-Client contract executed by all Plaintiff Class members (duty), the same failure to file timely and complete Subsistence Claims on the claimants' behalf (breach), the same reason for the claimants' lost opportunities to participate in the BP settlement for their Subsistence Claims (causation), the same loss of compensation based on a formulaic calculation (damages). The actions by the Defendants herein constitute a common course of conduct and adjudicating these matters separately could easily subject the Defendants to varying standards of care and the Plaintiff Class members to drastically different recoveries. To the contrary, class adjudication provides consistency, efficiency, and finality for all parties. This Court is the ideal adjudicator of this matter utilizing class action procedure – particularly because it is the venue where the original BP Class Action litigation was adjudicated.

There are no issues, problems, or concerns with the management of the litigation. Claims will be easily adjudicated on a class-wide basis due to the striking similarities among the claims of all members of the proposed Class. Any issues that may arise can be easily overcome by a

proper and effective trial plan.  In sum, class action procedure will streamline this litigation and lead to a quick and consistent resolution for all parties herein. It will be more efficient and economical and will enable this Court to manage the litigation more effectively.

42.

Predominance: The common conduct by Defendants presents predominant issues of law and fact. Defendants' responsibility and their liability is predominant over any potential individualized issue. Though Defendants' misconduct stretched across the states of Louisiana, Mississippi, Alabama, and Florida, all of the Plaintiff Class members' claims arise out of a common course of conduct by Defendants through their joint venture. Defendants engaged in a common course of conduct and victimized the entire Plaintiff Class. The duties all arose from the Defendants' contractual agreements with the Plaintiffs – all of the contracts are identical. The breaches all arose from Defendants' failure to timely file complete and colorable Subsistence Claims on behalf of the putative Class members – the question of breach is the same for all putative Class members. The question of whether Defendants' failure to file a complete and colorable claim caused damage is identical for each and every member of the putative Class. Likewise, Defendants' tortious conduct caused the same injury to each putative class member – the lost opportunity be compensated for his or her subsistence losses through the BP settlement.  Individual damages do not predominate because a formulaic calculation has been provided by the DHECC Subsistence Loss Formula.  Moreover, proof of each putative Class member's claim will require duplicating the production of evidence, persons, discovery, documents, witnesses, and experts. No individual disputes predominate over these common questions.

## CAUSES OF ACTION

### *BREACH OF CONTRACT AND LEGAL MALPRACTICE*

43.

Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Third Amended Class Action Complaint as though set forth fully herein.

44.

The "Attorney-Client Contract" executed by members of the Plaintiff Class and Defendants created an attorney-client relationship between the Plaintiff Class member(s) with Defendants whereby Defendants agreed to represent the interests of the Plaintiff Class member(s) in the BP Settlement Agreement claims process.

Because Defendants established a joint venture to jointly prosecute the BP Subsistence claims, its members are bound by the acts of the other members. Furthermore, each individual who rendered professional services is personally liable for their own actions as well as the actions of all employees under their direct supervision and control. Because all named Defendants personally participated in the joint venture's Subsistence claim processing and filing, each Defendant is personally liable for their own conduct, the conduct of all members of the joint venture, and the conduct of all individuals under the joint venture's control.

45.

Defendants agreed to protect and advance the interests of the Plaintiff Class members. Particularly, without limitation, Defendants agreed to properly prepare and timely file BP Subsistence Claims with DHECC on behalf of the Plaintiff Class members in order to recover losses sustained by the Plaintiff Class members as a result of the BP Oil Spill. Accordingly, Defendants also agreed, and were obligated, to inform the Plaintiff Class members of information

and documentation necessary to properly prepare and file the respective BP Claims. Moreover, Defendants were obligated to receive and process the claimant provided information and documentation in furtherance of the Plaintiff Class members' BP Subsistence Claims.

46.

Defendants agreed, and were obligated, to communicate honestly and promptly with Plaintiff Class members and to advise whether additional information or documentation was required to properly prepare and timely file their BP Subsistence Claim.

47.

Defendants were aware of the BP Settlement Program's deadlines to file BP Claims, as DHECC promulgated and explicitly referenced the June 8, 2015 deadline in numerous advertisements and public announcements during May and June of 2015. Defendants publicly shared these deadlines on their various social media accounts.

48.

Losses sustained by Plaintiff Class members were the direct and proximate result of Defendants' breaches of obligations created by the attorney-client contract that existed between Defendants and Plaintiff Class members. Defendants' specific contractual breaches include, but are not limited to:

    a)    Failing to timely file complete claims with the DHECC on behalf of the Plaintiff Class members;

    b)    Failing to properly handle and pursue claims with the DHECC on behalf of Plaintiff Class members;

    c)    Failing to adequately communicate or assist Plaintiff Class members in connection with their BP Subsistence Claims; and

    d)    Other acts of fault and breaches of obligation which will be shown more fully at trial.

49.

As a direct and proximate result of Defendants' acts and/or omissions set forth above, Plaintiff Class members have suffered economic losses. Defendants are jointly and solidarily liable to the Plaintiff Class members for damages resulting from Defendants' contractual breaches and malpractice.

50.

The express terms of the "Attorney-Client Contract" executed by Plaintiff Class members and Defendants provide that the "Contract shall be construed under and in accordance with the laws of the State of Mississippi, and all obligations of the parties created hereunder are performable in Mississippi." Accordingly, Mississippi substantive law may apply, and the Plaintiff Class would be entitled to punitive damages because Defendants' failed to properly and timely file complete BP Subsistence Claims on behalf of the Plaintiff Class members. Defendants' failures constitute flagrant and gross negligence. Further, Defendants were well-aware of the BP Claim filing deadline, and their inactions constituted a wanton and reckless disregard of the economic well-being of the Plaintiff Class members. Soliciting and engaging new clients up until just hours before the filing deadline, when even their own field workers advised against it, and then failing to file timely and complete claims on behalf of Plaintiff Class members was and is the essence of callous and reckless disregard for their own clients.

51.

As a result of Defendants' breaches of contract and failure to conform to the applicable professional standards of care and conduct, Plaintiff Class members are entitled to compensatory damages in an amount to be determined at trial but at least in an amount in excess of $5,000,000.00, plus punitive damages, and attorney fees.

*FRAUD*

52.

Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Third Amended Class Action Complaint as though set forth fully herein.

53.

During the claims intake process, Defendants were advised by their own on-site field representatives that the intake facilities should close and stop accepting new clients to allow Defendants' personnel an opportunity to process, complete, and file all Subsistence Claims by the June 8, 2015 deadline. Nevertheless, despite these warnings, Defendants kept their facilities open until late in the evening on June 8, 2015 continuing to solicit and accept representation for new Subsistence Claimants. In fact, Gregory Rueb – on behalf of the joint venture – instructed the field agents to keep the facilities open and to expect an additional 3,000 claimants to sign-up during the final three (3) days prior to the deadline. Further, Defendants directed the joint venture's field agents to inform clients that their claims would be submitted on a timely basis even though the Defendants knew this was not reasonable.

54.

Defendants understood their opportunity to generate revenue was directly aligned with the total number of claimants they could sign up prior to the June 8, 2015 filing deadline. Their assembly-line process, to solicit and engage as many clients as possible by misrepresenting to the claimants that their claims would be properly and timely filed by the deadline, was clearly intended to provide an economic benefit to the Defendants and a concomitant detriment to their clients.

55.

Upon completion of the intake packets at the meeting facilities, numerous Plaintiff Class

members were concerned their claims would not be filed timely due to the large number of people in attendance at the meeting facilities. Throughout this period of time, but particularly in the last several days before the deadline, numerous claimants questioned Defendants' field representatives about their concerns regarding sufficient time to file. Numerous Class members specifically asked the field representatives – who were the only joint venture workers available to question - about the ability of the Defendants to process all of the claims. Pursuant to Defendants' direction, the field agents – all non-lawyers and contract workers hired by the joint venture – explicitly promised and assured the claimants that their packets were complete and their claims would be timely filed. These were the very same field agents who knew, and who advised the Defendant lawyers, that the magnitude of claims was overwhelming and they were incapable of completing and filing all of them. Unfortunately, the claimants relied upon these knowingly false, fraudulent promises and assurances which was ultimately to their detriment. If the claimants had been properly advised, they could have consulted with other lawyers who were properly handling Subsistence Claims.

56.

Defendants' verbal misrepresentations were made with knowledge of their falsity, and with the intention that Plaintiff Class members would rely on these false and misleading promises.

57.

Defendants set up a call center for soliciting new clients prior to the June 8, 2015 deadline. Additionally, this call center was used by Defendants to assist the joint venture's clients throughout the BP claims process. Defendants provided one phone number for the joint venture call center. Defendants publicly shared the call center information on their websites, social media accounts, and the number was provided at each joint venture meeting location in Louisiana, Mississippi, Alabama and Florida.  A copy of the publicized call center information is provided below.

In fact, Nations Law Firm's website continues to provide the following information regarding the joint venture's call center: "If you are a BP Subsistence client (fishing/hunting), please call 800-588-2600".

58.

Rueb & Motta initially managed the call center for the joint venture at their offices in California. Motta was personally assigned the responsibility for managing the call center to solicit clients and to respond to clients' inquiries. As client demand increased, all Defendants, including Howard Nations, Cindy Nations, and Shantrell Nicks, eventually participated in managing the activities of the call center.

59.

Defendants were in constant communication with each other during the start-up and processing period of the joint venture. Their communications included discussions of the number of joint venture clients, claims submitted, and claims status. Each Defendant had full knowledge, in July 2015, that thousands of joint venture claims had not been properly and/or timely filed. With that knowledge, it is obvious the joint venture partners directed their call center representatives to intentionally misinform clients that their subsistence claims were "still pending." These daily, weekly, monthly, and yearly deceitful misrepresentations continued culminating in one final act of misrepresentation and fraudulent conduct - the 2019 "denial" letters placing blame on BP rather

than acknowledging their own breach in the standard of conduct.

60.

Regarding specific fraudulent conduct related to the proposed Class representatives, Plaintiffs also identify ¶ 33 of this Third Amended Complaint.

61.

In addition to other fraudulent conduct, Defendants intentionally misrepresented and fraudulently concealed from their clients that their respective Subsistence Claims had either not been filed by the deadline or lacked documentation required by the BP Settlement Agreement in order to be compensated for their losses (despite such documentation being readily available to Defendants through the DHECC portal).

62.

Howard Nations and Cindy Nations personally participated in the drafting of the Defendants' "denial" letters. Defendants mailed Plaintiff Class members form letters that falsely stated that BP had denied their claims.[6] For those claimants for whom a claim was never filed, DHECC did not deny their claim. Because Defendants failed to file their Subsistence Claim, despite having accepted the clients' legal representation, the claims were never considered by DHECC. These letters were mailed to Plaintiff Class members after final approval of all members of the joint venture.

63.

For Claimants in other categories, either those that were untimely filed or those for whom timely follow-up was neglected, the written misrepresentations made by Defendants were made with knowledge of their falsity, and with the intent that Plaintiff Class members would rely on

---

[6] DHECC accepted, reviewed, approved and denied claims made in the BP Settlement Program.  British Petroleum had no part in the analysis of claims.

these false and misleading statements.

64.

Through their letters, Defendants implied that the fault for denial was due to BP's procedures rather than an admission that the fault for denial was the result of the Defendants' inactions and neglect. Defendants knew the representations in the "denial" letters were false and misleading.

65.

At the time Defendants made these intentional misrepresentations and material concealments, the Plaintiff Class members were unaware of the falsity of the Defendants' misrepresentations and reasonably believed them to be true.  For years, the Plaintiff Class members relied upon Defendants' misrepresentations concerning the status and disposition of their BP Subsistence Claims.

66.

Defendants intentionally and harmfully concealed their flagrant and gross breaches in the standard of conduct for nearly four (4) years.  Similar to the named Plaintiffs, any time a Plaintiff Class member called to check on the status of their claim prior to receiving their form "denial" letter, they were told the same misrepresentation with little to no variation – "Your claim is still pending."

67.

As a direct and proximate result of Defendants' deceptive tactics, actual fraud, intentional misrepresentations, and concealment of material information, the Plaintiff Class members lost the opportunity to be compensated for their economic losses. Thus, Defendants are solidarily liable to the Plaintiff Class members for damages resulting from their intentional misrepresentation of

material facts and for actual fraud.

68.

As a result of Defendants' fraudulent acts and omissions, intentional misrepresentations of material fact, and their failure to conform to the applicable professional standards of conduct, the Plaintiff Class members are entitled to compensatory damages in an amount to be determined at trial but at least in an amount in excess of $5,000,000.00, plus punitive damages, and attorneys' fees.

69.

Plaintiffs, on behalf of themselves and all other similarly situated persons, demand judgment against Defendants for monetary damages and/or other remedies.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment as follows:

a) An order certifying the proposed Class, designating Plaintiffs as the named representatives of the Class, and designating the undersigned class counsel;

b) Awarding actual, compensatory, consequential, and punitive damages;

c) Awarding restitution;

d) Awarding damages for fraudulent conduct;

e) Awarding reasonable attorneys' fees, and costs of this case;

f) Awarding prejudgment and post-judgment interest;

g) Granting such further relief that this Court deems appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiffs request and are entitled to a trial by jury on all issues so triable.

**Dated**: October 30, 2020

RESPECTFULLY SUBMITTED:

/s/ Jerald P. Block

**BLOCK LAW FIRM, APLC**
JERALD P. BLOCK, Bar Roll No. 3151
RICHARD C. BREAUX, Bar Roll No. 33740
KENDALL J. KRIELOW, Bar Roll No. 34625
SARAH M. LAMBERT, Bar Roll No. 38312
MATTHEW P. HYMEL, Bar Roll No. 38283
422 East First Street
Post Office Box 108
Thibodaux, Louisiana 70302
(985) 446-0418 Telephone
(985) 446-0422 Facsimile

Counsel for Plaintiffs and Plaintiff Class Members

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2020 a copy of the foregoing has been electronically filed by using the CM/ECF system, which will send a copy of the foregoing pleading to all counsel of record by notice of electronic filing.

/s/ Jerald P. Block

JERALD P. BLOCK