### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**DEBORAH A. GAUDET, ET AL.**
Individually and on Behalf of a Class of All
Other Similarly Situated Persons

**VERSUS**

**HOWARD L. NATIONS, APC, ET AL.**
**DEFENDANTS**

**CIVIL ACTION**

**NO. 19-CV-10356**

**JUDGE WENDY B. VITTER**

**MAGISTRATE JANIS VAN MEERVELD**

### AFFIDAVIT OF BENJAMIN P. COOPER

Benjamin P. Cooper, being duly sworn on oath, states as follows:

My name is Benjamin P. Cooper. I am over the age of 21 years, of sound mind and body, and competent to testify to the statements set forth in this Affidavit.

1.      Since 2007, I have been a law professor at the University of Mississippi School of Law and taught the Legal Profession course (often twice a year), the focus of which is the Rules of Professional Conduct governing lawyer's ethical duties. I am currently Senior Associate Dean, Associate Professor of Law, and the Frank Montague, Jr. Professor of Legal Studies and Professionalism. I also teach Civil Procedure. I am being compensated $450/hour for my work on this case.

2.      I have been asked by Plaintiffs' Counsel to conduct a preliminary analysis of Plaintiffs' claims, including an explanation of applicable Mississippi law as it applies to the facts gathered to date. I reserve the right to supplement my opinion based on review of additional information that I expect will be forthcoming in the case.

<div style="border:1px solid black; display:inline-block; padding:10px">

**EXHIBIT**

**5**

</div>

3.    Before offering that opinion, I will briefly describe my background.[1]

   a.  I received my J.D. with honors in 1997 from the University of Chicago Law School and was a member of the editorial board of the University of Chicago Law Review.

   b.  Following graduation, I clerked for one year for the Honorable Anthony J. Scirica of the United States Court of Appeals for the Third Circuit.

   c.  Before I joined the faculty at the University of Mississippi School of Law, I practiced law for approximately 9 years. After my clerkship, I worked from 1998-2001 as a Trial Attorney in the Civil Division of the United States Department of Justice in Washington D.C. I then practiced commercial litigation for six years at two different law firms. From 2001-2004, I was in the Litigation Department at Kirkland & Ellis in New York, New York, and from 2004-2007, I was a member of the Commercial Litigation Department of Pepper Hamilton in Philadelphia, Pennsylvania before I decided to pursue an academic career. At Pepper Hamilton, I was on the firm's Professional Responsibility Committee. I was named a partner at both firms.

4.    My work in the field of professional responsibility includes the following:

   a.  I have served as an expert on legal ethics in a number of cases.

   b.  I have published many articles in the field of legal ethics and a casebook entitled *Professional Responsibility in Focus.*

   c.  I serve on the Mississippi Bar Ethics Committee.

   d.  I lectured for Kaplan Bar Review on Professional Responsibility.

   e.  I recently finished a one-year term as Chair of the Executive Committee of the Association of American Law Schools (AALS) Section on Professional Responsibility.

   f.  I am the United States Reporter for the Reports, Comments and Notes Section of the international journal *Legal Ethics.*

   g.  From 2016-2017, I served as Co-Reporter for the ABA Commission on the Future of Legal Services.

   h.  I speak frequently about legal ethics to lawyers and academics and have been quoted in the media concerning legal ethics issues.

---

[1] My CV is attached as Exhibit 1.

5.    In preparing this affidavit, I have reviewed the Mississippi Rules of Professional Conduct, Model Rules of Professional Conduct, and other relevant authorities.

6.    The facts on which I base this opinion are derived from the documents that Plaintiff's Counsel has provided me, which are listed in Exhibit 2.

## Summary of Opinions

7.    Based on my review of the documents provided to me and my knowledge, education and experience as a lawyer and law professor generally, it is my opinion and belief that:

   a.    Defendants breached their contractual duties to Plaintiffs by failing to prosecute their BP Economic Class Settlement Subsistence Claims;

   b.    Defendants breached their fiduciary duties of loyalty and fidelity to Plaintiffs by knowingly undertaking the representation of thousands of other clients, which materially limited their ability to faithfully and competently represent these Plaintiffs;

   c.    Defendants breached their fiduciary duties of candor and disclosure to Plaintiffs;

   d.    As a direct result of Defendants' breaches of their fiduciary duties, thousands of claims were never filed (including Plaintiffs Gaudet, Butler, Campbell, Hebert, and Scales), filed late (including Plaintiffs Collins and Ledet), and/or without sufficient documentation (including Plaintiffs Falgoust, Gamberella, and Moore) resulting in damages.

   e.    Defendants were negligent as a matter of law with respect to the claims of Plaintiffs Gaudet, Butler, Campbell, Collins, Hebert, Ledet, and Scales, by failing to timely submit their Subsistence Claims on or before the deadline;

      f.    Defendants were negligent as a matter of law with respect to the claims of

Plaintiffs Falgoust, Gamberella, and Moore by failing to timely submit the

necessary documentation.

**Applicable Law**

    8.    Mississippi law recognizes two kinds of legal malpractice claims: breach of

fiduciary duty (sometimes called breach of the standard of conduct) and negligence-based

malpractice (sometimes called breach of the standard of care).[2]

    9.    Under Mississippi law, attorneys owe their clients duties falling into three broad

categories. First, the attorney owes his or her client a duty of care. Second, the attorney owes

his or her client fiduciary duties of loyalty, confidentiality, candor, and communication. Third,

the attorney owes his or her client any duties established by contract.[3]

    10.    With respect to the duty of loyalty, the Mississippi Supreme Court has explained

that lawyers breach their fiduciary duty by failing to "avoid conflicting interests that might

impair their representation."[4]

    11.    This is consistent with the lawyer's obligation under Rule 1.7 of the Mississippi

Rules of Professional Conduct.[5] While, in Mississippi, the violation of a Rule of Professional

Conduct may not, in and of itself, establish a claim for malpractice, lawyers look to the Rules to

define, clarify and/or better understand their fiduciary duties and other standards of conduct and

care that are owed to their clients. Indeed, the Mississippi Supreme Court has looked to the

---

[2] *Crist v. Loyacono*, 65 So.3d 837, 842-43 (Miss. 2011).
[3] *See generally Estate of St. Martin v. Hixson*, 145 So.3d 1124, 1128-1129 (Miss. 2014); *Baker Donelson Bearman & Caldwell v. Muirhead*, 920 So.2d 440, 449 (Miss. 2006); *Wilbourn v. Stennett Wilkinson & Ward*, 687 So.2d 1205, 1215 (Miss. 1996); *Singleton v. Stegall*, 580 So.2d 1242, 1244 (Miss. 1991) ("When a lawyer undertakes to serve a client, he or she assumes duties sounding in a blend of contract, tort and much more").
[4] *Waggoner v. Williamson*, 8 So.3d 147, 155 (Miss. 2009)
[5] Mississippi Rule of Professional Conduct 1.7(b).

Professional Rules in determining whether a lawyer has breached his or her duties of conduct and/or care.[6]

12.     Mississippi Rule of Professional Conduct 1.7(b) and ABA Model Rule 1.7(a)(2), generally prohibit an attorney from representing a client where "the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests."   As the Comment to Rule 1.7 explains, "Loyalty to a client is also impaired when a lawyer cannot consider, recommend or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interests."[7] "Even where there is no ethical breach, an attorney must act with the greatest circumspection in the representation of multiple clients where there exists a possibility that their interest may conflict or be at cross purposes."[8]

13.     The duty of loyalty means that lawyers must, among other things, (1) put the interests of their clients ahead of their own and (2) avoid conflicts of interest between clients.[9]

14.     An attorney's failure to adequately communicate with the client also constitutes a breach of the lawyer's fiduciary duty.[10]

15.     This duty is codified in Mississippi Rule of Professional Conduct 1.4 and ABA Model Rule 1.4, which require a lawyer to "keep a client reasonably informed about the status" of the matter and explain the matter "to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

---

[6] *See, e.g., Waggoner v. Williamson*, 8 So.3d 147, 160 (Miss. 2009) (Pierce, J., concurring; and Kitchens, J., dissenting); *Williamson v. Edmonds*, 880 So.2d 310, 319-320 (Miss. 2004); *Hartford Acc. & Indem. Co. v. Foster*, 528 So.2d 255, 268-269 (Miss. 1988).
[7] Comment, Miss. Rule 1.7 (1987).
[8] *Lane v. Oustalet*, 873 So.2d 92, 96 (Miss. 2004)
[9] *See* Mississippi Rule of Professional Conduct 1.7.
[10] Ronald E. Mallen & Jeffrey M. Smith, Legal Malpractice Section 15:4.

16.     With respect to the duty of care, a lawyer is required to exercise the knowledge, skill, and ability ordinarily possessed and exercised by members of the legal profession similarly situated.[11]

17.     This is consistent with the lawyer's duties under Mississippi Rules of Professional Conduct 1.1 and 1.3 and ABA Model Rules 1.1 and 1.3 to provide competent representation, in a prompt and diligent manner.

18.     The failure to timely file a suit prior to the expiration of the statute of limitations has been deemed negligent as a matter of law.[12]

19.     I will explain the application of each of these doctrines below.

**Applicable Facts**

20.     The Plaintiffs in this case have had nearly identical experiences with their claims against BP for subsistence losses ("Subsistence Claims"). Each Plaintiff engaged in subsistence fishing. Each Plaintiff was unable to fish for a period of time as a result of the BP Oil Spill. Each Plaintiff learned of the possibility of recovering damages as a result of the BP Settlement Agreement and attended meetings organized by Defendants. Each Plaintiff agreed to have Defendants represent him or her in filing a Subsistence claim. Each Plaintiff submitted to Defendants all of the information and paperwork that Defendants told them to submit before the June 8, 2015 filing deadline. When their claims were denied by the Deepwater Horizon Economic Claims Center ("DHECC"), they were not contacted by their lawyers for almost 4

---

[11] *Lane v. Oustalet*, 873 So.2d 92, 96 (Miss. 2004); *Wilbourn v. Stennett Wilkinson & Ward*, 687 So.2d 1205, 1215 (Miss. 1996)

[12] *See, e.g., Hickox v. Holleman*, 502 So.2d 626, 635-636 (Miss. 1987) (cited with approval in *Byrd v. Bowie*, 933 So.2d 899, 904 (Miss. 2006)); *see also Singleton v. Stegall*, 580 So.2d 1242, 1244-1245 (Miss. 1991) ("One of the clearer cases where a lawyer may breach his duty of diligence occurs when, through neglect, he allows the statute of limitations to expire so that the client's claim is barred")

years, and, when they were, it was in a form letter that failed to explain to them the specific reason why their claim had been denied.[13]

21.     The Defendants were retained by each of the Plaintiffs under a standard-form contract "to prosecute all claims" in the "BP Deepwater Horizon Oil Spill Class Action Settlement for Subsistence Claims" and stipulating, among other things, that:

    a.   "This Contract is made by and between Client and Rueb & Motta, The Nations Law Firm, and the Nicks law Firm";

    b.   "This Contract shall be construed under and in accordance with the laws of the State of Mississippi"; and

    c.   "This Contract constitutes the sole agreement of the parties and supersedes any prior written or oral agreements between the parties."

22.     When the Defendants were retained by Plaintiffs, they knew and/or should have known that a Subsistence Claim Form would need to be timely submitted, for each and all of their subsistence clients, to the Deepwater Horizon Claims Center, on or before Midnight June 8, 2015.

23.     From the beginning of their work on the BP Subsistence Claims, Defendants designed a process that would "maximize client volume" and their profits.  To that end, Defendants engaged James Griggs as a litigation consultant.  Griggs helped Defendants identify the "best areas to gather claims"[14] and a process for optimizing "production" of completed claim forms[15] while minimizing client contact with any actual lawyers.[16]  What resulted was legal representation that bore no resemblance to the kind of individualized attorney-client relationship

---

[13] *See* Affidavit of Deborah A. Gaudet.
[14] Griggs Deposition at 17
[15] Griggs Deposition at 157.
[16] Griggs Deposition at 191.

required by the Rules of Professional Conduct and the lawyers' common law fiduciary duties. Plaintiffs went to intake facilities operated by "field agents" who were not lawyers. When they arrived, there were rarely lawyers on site. They received a standardized packet, filled out a claim form, and turned it in for review to a non-lawyer worker at the facility who then shipped the form to one of the Defendant's offices for filing.[17]

24.     Moreover, as this process unfolded, Defendants realized that the volume of claims exceeded their expectations, and they changed their process in an effort to continue to maximize client volume. Specifically, Defendants switched from electronic filing of claims to paper filing in an effort to "process as many claims to the best of the ability of everybody...."[18]

25.     Despite the problems with the electronic filing system, Defendants continued to take on more and more clients. Defendants must have known that they would have trouble filing claims for all of these clients because they added language to the intake forms that stated that they could not accept responsibility for the timely filing of claims.[19]

26.     Defendants' insistence on taking on more and more claims resulted in chaos. According to Griggs, on the night of the June 8, 2015 filing deadline, field agents "had personnel sitting in the back of the truck finishing [the paper work] up" on the way to the claims' facility.[20] He further described walking "into [Howard Nation's] office with all of these personnel up and down the aisles and in the offices and on the floors doing work...."[21]

27.     Shortly after the June 8, 2015 filing deadline, Defendants knew or should have known that they represented clients whose claims were a) not filed, b) filed untimely, or c)

---

[17] Griggs Deposition at 80-87.
[18] Nations Deposition at 134-35.
[19] Nations Deposition at 76-77.
[20] Griggs Deposition at 250.
[21] Griggs Deposition at 257.

incomplete and in jeopardy of being denied.  Yet in each case, Defendants did not communicate with Plaintiffs until February or March of 2019.  The letter that Defendants finally sent was an identical form letter that failed to inform Plaintiffs of the specific reason why their claims were denied.[22]

**Defendants breached their fiduciary duties to Plaintiffs**

28.     In a breach-of-fiduciary-duty case, plaintiffs must establish: "(1) the existence of an attorney-client relationship; (2) the acts constituting a violation of the attorney's fiduciary duty; (3) that the breach proximately caused the injury; and (4) the fact and extent of the injury."[23]  When a lawyer breaches his fiduciary duty, Mississippi law recognizes that a lawyer "may cause injury to his client entirely separate from the merits of the underlying case."[24]

29.     In this case, there is no apparent dispute that there was an attorney-client relationship between the Defendants and Plaintiffs.

30.     The Defendants in this case breached their duties of loyalty and communication.

**Duty of Loyalty**

31.     Lawyers owe undivided loyalty to each individual client and must, among other things, (1) put the interests of their clients ahead of their own and (2) avoid conflicts of interest between clients.[25]

32.     The Rules of Professional Conduct, and the overarching duties of loyalty, do not generally restrict a lawyer from representing multiple plaintiffs in the same civil action against one or more common defendants, unless the plaintiffs may have an interest in asserting partially adverse or contradictory positions, (e.g., a driver and his or her guest passenger), or are

---

[22] *Id.*
[23] *Crist,* 65 So 3d at 843.
[24] *Id.*
[25] *See* Mississippi Rule of Professional Conduct 1.7.

competing between and among each other for a limited fund, (e.g., limited insurance coverage). Indeed, lawyers who are engaged in class actions, mass torts, and other complex litigation frequently represent the interests of multiple plaintiffs who have claims stemming from the same product, course of conduct, incident or event.

33.     In this particular case, however, the Defendants knew or should have known that they would not be able to submit timely and valid claims for the thousands of clients whom they undertook to represent concurrently, given the time constraints.  Therefore, in this unique case, despite the absence of any adverse or contradictory interests from a legal or strategic point of view, the Defendants knowingly and predictably accepted concurrent representation which, as a practical matter, was likely to and in fact did materially affect the ability of Defendants to represent the interests of their other clients, which, in my opinion, constituted a breach of loyalty and fidelity – in addition to a breach of general competence and care.

34.     Indeed, it could be reasonably inferred that Defendants – contrary to their fiduciary duties of loyalty and fidelity – placed their own interests before the interests of the Plaintiffs and other clients.  In one sense, of course, the interests of Plaintiffs and Defendants are aligned, in that the Defendants stood to earn a fee on the Plaintiffs' claims if and only if they were timely submitted and pursued.  At the same time, however, it could be inferred that Defendants were seeking to maximize their own collective fee interest by signing up as many clients as possible, all the while knowing that the interests of thousands of their clients, (including these Plaintiffs), would fall by the wayside.

35.     Defendants advanced their own interests over the interests of their clients when they put in place a process that was, in the words of one of their own field agents, "designed to

maximize client volume...."[26]  Each client's case deserved individual care and attention to ensure that it was timely and properly filed, but Defendants chose instead to take on as many clients as possible.

36.     That Defendants were opting to maximize client volume rather than give the required care and attention to each individual case is apparent from several facts already uncovered in this case:

   a.  Defendants were unable to file claims electronically and switched to filing paper claims.  Despite this very significant logistical issue, Defendants chose to press on and sign up additional clients rather than focusing on the ones they already represented.

   b.  Defendants' own field agents warned Defendants on multiple occasions in the days leading up to the June 8, 2015 deadline that if they kept the intake facilities operational, Defendants might not be able to finish processing and filing all the claims before the deadline.[27]  Yet Defendants chose to ignore those warnings, resulting in a chaotic scramble to beat the deadline.

   c.  Defendants obviously recognized that they would not be able to file all of their clients' claims on a timely basis and therefore tried to disclaim responsibility for these claims by adding language to their intake form that Defendants could not guarantee timely filing of all claims.  On June 8, they also posted a similar warning at the intake facilities.  This language was inconsistent with their fee agreement which stated that it is the "sole agreement" between the parties.

---

[26] Affidavit of Peggy Soudelier.
[27] Affidavits of Christie Boudreaux, Natalie Bergeron and Peggy Soudelier.

Further, a lawyer cannot disclaim his duties to his client, including the duty to provide loyal, competent, and diligent representation.

37.     Presumably, Defendants chose to "maximize client volume" in order to maximize their own profits since they stood to collect 25% for each successful claim, but even if Defendants took on additional clients solely in an altruistic effort to help those new clients, it was not proper for them to take on new clients at the expense of providing competent and diligent service to their existing clients.

**Duty of Communication**

38.     Defendants compounded the situation by breaching their fiduciary duty to communicate with their clients.

39.     Lawyers are required to "keep a client reasonably informed about the status" of the matter and explain the matter "to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."[28]

40.     There is no evidence that Defendants satisfied these responsibilities.  The only written communication that I am aware of, based on the Plaintiffs' Affidavits and the documents I was provided, is a form letter dated October 31, 2018 which was apparently not actually received until February or March of 2019.  I would have expected to see several more written updates to each of the Plaintiffs during that three-years-plus timeframe, as well as a specific communication to each Plaintiff regarding any particular action or determination with respect to his or her particular claim.

41.     With respect to Plaintiffs Falgoust, Gamberella, and Moore, in particular, I would have expected that Defendants would have notified them immediately upon issuance of an

---

[28] Mississippi Rule of Professional Conduct 1.4.

Incompleteness Denial by the Settlement Program, and consulted with each Plaintiff regarding reconsideration, supplementation, appeal, or other potential attempt to cure.  At that point, Plaintiffs' claims were in jeopardy, and Defendants had a duty to provide Plaintiffs with information so that they could make an informed decision about how to move forward.

42.     Defendants knew or should have known that they had committed a material error affecting their clients' substantive rights and had a duty to inform their clients of those errors, a topic that I have written about in multiple articles.[29]

43.     During this period of time when Defendants were aware that Plaintiffs' claims were in jeopardy, Defendants apparently only provided information to clients who called and asked.[30]  The duty is on the lawyer to keep the client informed about the status of the matter; the client should not have to ask.  And those that did call and ask were told that their claims were "still pending," which was false at worst and incomplete at best.

44.     Once Defendants finally did give Plaintiffs an update concerning their claims, that communication was woefully insufficient.  In that form letter (that was dated October 2018 but not received by Plaintiffs until February or March of 2019), Defendants stated that the Plaintiff's claim was denied for one of many reasons but failed to inform Plaintiffs of the specific reason that their individual claim was denied.

45.     To this day, Defendants seem unable to provide Plaintiffs with adequate information about why their claims were denied.[31]  Instead, they suggest that forms disappeared,

---

[29] *The Lawyer's Duty to Inform His Client of His Own Malpractice*, 61 Baylor Law Review 174 (2009) (http://www.baylor.edu/content/services/document.php/116819.pdf); *When Clients Sue Their Lawyers for Failing to Disclose Their Own Malpractice*, 44 Hofstra Law Review 441 (Winter 2015) (invited article for symposium on "Lawyers as Targets") (http://www.hofstralawreview.org/wp-content/uploads/2016/03/DD.7.Cooper.final1_.pdf).
[30] Affolder Deposition at 134-137.
[31] Affolder Deposition at 187-88.

the claims' facilities' clocks were wrong, and/or that the required documentation was not relevant.

**Causation and Damages**

46.      As a direct result of Defendants' breaches of their fiduciary duties, Plaintiffs lost their claims.  Defendants' focus on maximizing client volume resulted in chaos around the filing deadline, and, as a result, thousands of claims were never filed, filed late, and/or filed without sufficient documentation.  Without sufficient resources, Defendants had a blatant conflict of interest: each new client that they took on impaired their ability to competently and diligently represent the clients that they already were representing.  Yet they continued to take on more clients.  This is an issue that equally and commonly impacted all of the Plaintiffs in this case.

47.      Moreover, once they realized that Plaintiffs' claims were in jeopardy, Defendants failed to communicate with Plaintiffs rendering them unable to engage in any effort to cure any defects in their claims.

48.      Of the named Plaintiffs, the subsistence claims of Plaintiffs Gaudet, Butler, Campbell, Hebert, and Scales were never filed and thus never considered.  The claims of Collins and Ledet were rejected as untimely because a Subsistence Claim Form had not been timely submitted by Defendants on their behalf.  In addition, the subsistence claims of Falgoust, Gamberella, and Moore were denied as "Incomplete" despite the fact that they each apparently held valid fishing and/or hunting licenses during the relevant time period and provided such documentation (and/or authorization to obtain such documentation) to Defendants.

**Defendants Breached Their Duty of Care.**

49.      In a negligence-based malpractice claim, clients must prove duty, breach, causation, and damages.  To establish causation, plaintiffs must satisfy the so-called "case-

within-a-case" standard; in other words, plaintiffs must show that but for the attorney's negligence the client would have been successful in the prosecution of the underlying action.[32]

50.     There is no dispute that Defendants had an attorney-client relationship with Plaintiffs and therefore owed duties to them.

51.     Defendants breached their duty of care when they failed to file timely and/or complete subsistence claims on behalf of Plaintiffs.

52.     Defendants had a duty to ensure that Plaintiffs' claims were filed timely and included all the information necessary for them to recover.  Defendants appeared to have inappropriately delegated this duty to non-lawyer field agents without adequately training and supervising them.[33]  Field agents Christie Boudreaux, Peggy Soudelier, and Natalie Bergeron all state that Defendants did not provide instructions or training related to the BP Settlement Program or state and federal fishing regulations, yet they were hired to assist clients in completing their subsistence claim forms.

53.     Defendants' failure to act with due care resulted in Plaintiffs losing their Subsistence claims.  The named Plaintiffs have established their entitlement to recover in the materials that they have submitted, and the amount to which they are entitled appears to be easily calculable using the Subsistence Loss Formula described in the BP Settlement Agreement.

54.     Therefore, and for all of the reasons stated above, it is my opinion that the Defendants' various and overlapping breaches of contract, conduct, and/or care, were a proximate cause of damages to each and all of the Plaintiffs.

55.     Signed, under penalty of perjury, this 24th day of February, 2020.

---

[32] Gulfport OB-GYN, P.A. v. Dukes, Dukes, Keating & Faneca, P.A., 2019 WL 4071721 *2 (Miss. 2019).
[33] *See* Mississippi Rule of Professional Conduct 5.3.

FURTHER AFFIANT SAYETH NOT

_____
Benjamin P. Cooper

Sworn to and subscribed before me this 24th day of February, 2020

_____
Notary Public

My Commission expires: 6/5/2023


_____
(Affix Seal)

<u>Exhibit 1</u>

**BENJAMIN P. COOPER**
University of Mississippi School of Law, University, MS 38677
(662) 915-6809 · bcooper@olemiss.edu
(Updated February 2020)

## ACADEMIC EXPERIENCE

**UNIVERSITY OF MISSISSIPPI SCHOOL OF LAW,** University, MS

**Senior Associate Dean** (July 2017-Present)

**Associate Dean for Academic Affairs** (January 2016-June 2017)

**Professor of Law (with tenure)** (effective July 2020)
**Frank Montague, Jr. Professor of Legal Studies and Professionalism** (2015-present)
**Jessie D. Puckett, Jr., Lecturer** (2013-2015)

**Associate Professor of Law (with tenure)** (2013-present)

**Assistant Professor of Law** (2007-2013)

- <u>Courses</u>: Legal Profession, Civil Procedure II.  Previous Courses: Civil Procedure I, Property, Higher Education Law, Contract Drafting and Negotiation, Advanced Legal Ethics Seminar.

- <u>Law School Service</u>: Member (*ex officio*), Curriculum Committee (2015-present); Member (*ex officio*), Assessment Committee (2017-present); Assistant Chair, Strategic Planning Committee (2015-2016); Member, Admissions Committee (2014-2015); Faculty Appointments Committee (Chair 2013-2014, Member 2008-2013); Member, Honor Board Review Committee (2007-2012); Chair, Placement and Judicial Clerkships Committee (2010-2012); Coach, National Professional Responsibility Moot Court Competition (2013-2015) (2014 Champion); Coach, Mercer University School of Law Legal Ethics and Professionalism Moot Court Competition (2010-2013).

- <u>University Service</u>: University Faculty Achievement Award (2019-Present); SEC Faculty Achievement Award Selection Committee (2018-Present); Academic Grade Appeal Committee (2016-present); Law Dean Search Committee (2016-2017); Academic Discipline Committee (2012-2014); Faculty Senate (2008-09); Academic Suspension Appeals Committee (2008-09).

## PROFESSIONAL ACTIVITIES

Member, Mississippi Bar Ethics Committee (2018-present; 2014-2017)

Fellow, American Bar Foundation (2020-Ppresent)

Member, Mississippi Supreme Court Advisory Committee on Rules (2015-2017)

United States Reporter, Reports, Comments and Notes Section, *Legal Ethics* (2012-present)

Southeastern Association of Law Schools (SEALS)

- Program Format Committee (Chair 2014-present; Member 2009-2013);
- Resource Team for Legal Ethics & Legal Profession (2016-present)
- New Scholars Committee (2012-2015)

Reporter, American Bar Association Commission on the Future of Legal Services (2015-2016) (Final Report Available at: http://abafuturesreport.com/#1)

Association of American Law Schools (AALS) Section on Professional Responsibility

- Chair (2019-2020)
- Chair-Elect (2018-2019)
- Executive Committee (2009-2012; 2015-present);
- Chair, Website Committee (2013-2016).

Lecturer, Kaplan Bar Review (2014-2018) (Professional Responsibility and Civil Procedure)

Pro Se Committee, Mississippi Access to Justice Commission (2011-2014)

## PUBLICATIONS

*Technological Competence and the Duty to Safeguard Confidential Information in the USA: Correspondent's Report from the United States,* Legal Ethics, Vol. 20, No. 2 (2017)

*Professional Responsibility In Focus* (Wolters Kluwer—Aspen Casebook Series 2017) (with R. Michael Cassidy, John P. Sahl & Margaret C. Tarkington)

*The Curious Case of Advance Conflicts Waivers: Correspondent's Report from the United States,* Legal Ethics, Vol. 18, No. 2 (2015) (http://papers.ssrn.com/sol3/papers.cfm?abTHERE ISstract_id=2698897)

*When Clients Sue Their Lawyers for Failing to Disclose Their Own Malpractice*, 44 Hofstra Law Review 441 (Winter 2015) (invited article for symposium on "Lawyers as Targets") (http://www.hofstralawreview.org/wp-content/uploads/2016/03/DD.7.Cooper.final1_.pdf)

*Judges and Social Media: Disclosure as Disinfectant*, 17 SMU Science & Technology Law Review 521 (2015) (invited article for SMU Social Media Law Symposium) (http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2570613)

*Social Media and the Lawyer's Evolving Duty of Technological Competence: Correspondent's Report from the United States*, Legal Ethics, Vol. 17, No. 3 (2014) (http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2523603)

*Judges and Social Media: 'Friends' with Costs and Benefits,* The Professional Lawyer (ABA Center for Professional Responsibility), Vol. 22, Number 3, 2014 (http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2451094)

*Saving Face – Ethical Considerations for American Judges Using Facebook: Correspondent's Report from the United States,* Legal Ethics Vol. 17, No. 1 (2014) (http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2438068)

*Predictive Coding and the Changing Legal Marketplace: Correspondent's Report from the United States*, Legal Ethics, Vol. 16, No. 2, 380-383 (2014) (http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2401695)

*Access to Justice Without Lawyers*, 47 Akron Law Review 205 (2014) (invited article for Miller-Becker Center Symposium at University of Akron School of Law) (http://www.uakron.edu/dotAsset/a30dee88-519c-4547-bbe8-c0b77cc9a777.pdf)

*Taking Rules Seriously: The Rise of Lawyer Rules as Substantive Law and the Public Policy Exception in Contract Law*, 35 Cardozo Law Review 267 (2013) (http://cardozolawreview.com/wp-content/uploads/2018/08/COOPER.35.1.pdf)

*Regulatory Barriers to Justice in Mississippi,* 82 Miss. L.J. Supra 61 (2013) (invited article for Mississippi Law Journal Symposium on Access to Justice) (http://mississippilawjournal.org/wp-content/uploads/2013/02/2_Cooper_Final.pdf)

*The ABA's Modest Changes to the Rules of Professional Conduct: Correspondent's Report from the United States,* Legal Ethics, Vol. 15, No. 2, 386-391 (2012) (http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2162190)

*Mandatory Pro Bono for New York Bar Applicants: Why Not?* The Professional Lawyer (Vol. 21, No. 3, 2012) (http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2126792)

*Mandatory Pro Bono Redux: Correspondent's Report from the United States,* Legal Ethics, Vol. 15, No. 1, 2012: 135-139 (http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2063187)

Iqbal's *Retro Revolution*, 46 Wake Forest Law Review 937 (2011) (http://wakeforestlawreview.com/iqbal%E2%80%99s-retro-revolution)

*Attorney Self-Disclosure*, 79 University of Cincinnati Law Review 697 (Winter 2010) (http://scholarship.law.uc.edu/cgi/viewcontent.cgi?article=1037&context=uclr)

*The Lawyer's Duty to Inform His Client of His Own Malpractice*, 61 Baylor Law Review 174 (2009) (http://www.baylor.edu/content/services/document.php/116819.pdf)

*Truth in Sentencing: The Prospective and Retroactive Application of* Simmons v. South Carolina, 63 University of Chicago Law Review 1573 (1996) (student comment), cited in *O'Dell v. Netherland,* 521 U.S. 151, 173 n.7 (1997) (Stevens, J. dissenting) (http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1344097).

## EDUCATION

**UNIVERSITY OF CHICAGO LAW SCHOOL**, Chicago, Illinois
Juris Doctor with honors, June 1997
- UNIVERSITY OF CHICAGO LAW REVIEW, Topic Access Editor
  - Served as editor to 2nd- and 3rd-year students seeking to "write on" to the Law Review by assisting them in selecting article topics, overseeing their research, and editing their drafts.
- MacArthur Justice Center
  - Worked on impact litigation involving prisoner rights, death penalty, and other criminal justice issues.

**AMHERST COLLEGE**, Amherst, Massachusetts
Bachelor of Arts in History and Russian with honors, May 1994.

## WORKSHOPS, SPEECHES AND MEDIA APPEARANCES

- Presenter: "Summary of Recent Mississippi Law" (CLE), Biloxi, MS (February 7, 2020), Oxford, MS (February 14, 2020), Jackson, MS (February 21, 2020) (lectured on Professional Responsibility)
- Moderator, "Confronting the Big Questions About the Regulation of the Legal Profession," Association of American Law Schools Annual Conference, Washington D.C. (January 4, 2020)
- Moderator, "Professional Responsibility Junior Scholars Works-in-Progress," Association of American Law Schools Annual Conference, Washington D.C. (January 3, 2020)
- Presenter: "Zealous Advocacy, the Duty to Report, and Other Thorny Ethics Issues," Mississippi Bankruptcy Conference, Oxford, MS (November 15, 2019)
- Presenter: "Discussion Group: Teaching Professional Responsibility/Legal Ethics," Southeastern Association of Law Schools Annual Meeting, Boca Raton, FL (August 1, 2019)

- Commentator/Mentor: "New Scholars Workshop,: Evidence, Civil Procedure, and Federal Courts," Southeastern Association of Law Schools Annual Meeting, Boca Raton, FL (July 29, 2019)
- Presenter: "Aspiring Law Teachers Workshop Discussion Group: Beating the Odds," Southeastern Association of Law Schools Annual Meeting, Boca Raton, FL (July 28, 2019)
- Presenter, "Hot Topics in Legal Ethics," Family Law CLE, Jackson, MS (July 12, 2019) (by video), Oxford, MS (July 19, 2019), Biloxi, MS (July 26, 2019 (by video))
- Co-Presenter, "Delivering Bad News Well," (CLE for Law Alumni Weekend), University, MS (March 29, 2019)
- Presenter: "Summary of Recent Mississippi Law" (CLE), Oxford, MS (February 15, 2019), Biloxi, MS (February 22, 2019), Jackson, MS (March 1, 2019) (lectured on Professional Responsibility)
- Presenter: "Ethical Use of Social Media" (CLE), Bar Association of the Fifth Federal Circuit Annual Appellate Advocacy Seminar, New Orleans, LA (October 2, 2018)
- Presenter: "The Ethics of Legal Education," Southeastern Association of Law Schools Annual Meeting, Fort Lauderdale, FL (August 9, 2018)
- Presenter: "Hot Topics in Legal Ethics," Family Law CLE, Biloxi, MS (July 27, 2018), Oxford, MS (August 3, 2018), Jackson, MS (August 10, 2018) (by video)
- Presenter: "Can Judges Friend Lawyers on Facebook and Other Social Media Quandaries" (CLE for Law Alumni Weekend), University, MS (March 23, 2018)
- Presenter: "Summary of Recent Mississippi Law" (CLE), Oxford, MS (February 16, 2018), Jackson, MS (February 23, 2018), Biloxi, MS (March 2, 2018) (lectured on Professional Responsibility)
- Presenter, "Reflections on the 2016 ABA Report on the Future of Legal Services in the United States," Southeastern Association of Law Schools Annual Meeting, Boca Raton, FL (August 3, 2017)
- Presenter, "Hot Topics in Legal Ethics," Family Law CLE, Jackson, MS (July 21, 2017), Oxford, MS (July 28, 2017), Biloxi, MS (August 4, 2017 (by video))
- Presenter: "Ethical Use of Social Media," Coahoma County Bar Association, Clarksdale, MS (June 13, 2017)
- Presenter: "Ethical Use of Social Media" (CLE for Law Alumni Weekend), University, MS (March 24, 2017)
- Presenter: "Summary of Recent Mississippi Law" (CLE), Jackson, MS (February 10, 2017), Oxford, MS (February 24, 2017), Biloxi, MS (March 3, 2017) (lectured on Professional Responsibility and Evidence)
- Presenter: Commission on the Future of Legal Services Final Report, ABA Annual Meeting, San Francisco, CA (August 6, 2016)
- Presenter: "Ethical Withdrawal" (Family Law CLE), Oxford, MS (July 8, 2016), Biloxi, MS (July 22, 2016), Jackson, MS (August 5, 2016 (by video))
- Presenter: "Hot Topics in Legal Ethics" (CLE for law firms sponsored by Plancorp) St. Louis, MO (June 27-29, 2016)

- Presenter: "Knowing When to Say When & What to Do: The Ethical Withdrawal," 42nd ABA National Conference on Professional Responsibility, Philadelphia, PA (June 3, 2016)
- Presenter: "Ethical Use of Social Media" (CLE for New Lawyers), Jackson, MS (May 19, 2016)
- Guest: "In Legal Terms" radio show on Mississippi Public Broadcasting (May 10, 2016)
- Presenter: "Summary of Recent Mississippi Law" (CLE), Oxford, MS (February 19, 2016), Biloxi, MS (March 4, 2016), Jackson, MS (March 11, 2016) (lectured on Professional Responsibility and Evidence)
- Presenter: "The Curious Case of Advance Conflict Waivers" at Business Ethics Discussion Group, Southeastern Association of Law Schools Annual Meeting, Boca Raton, FL (August 2, 2015)
- Presenter, "Reconsidering Small Claims Courts," Access to Justice Discussion Group, Southeastern Association of Law Schools Annual Meeting, Boca Raton, FL (July 31, 2015)
- Presenter (by video), Family Law CLE, Jackson, MS (July 17, 2015), Oxford, MS (July 24, 2015), Biloxi, MS (July 31, 2015)
- Presenter: "Hot Topics in Legal Ethics" (CLE for law firms sponsored by Plancorp) St. Louis, MO (June 22-25, 2015)
- Presenter: "Reconsidering Access to Justice," Texas A&M University School of Law, Ft. Worth, TX (May 1, 2015)
- Presenter: "Lawyers as Targets: Suing, Prosecuting, and Defending Lawyers," Maurice Deane School of Law at Hofstra University, Hempstead, NY (April 1, 2015)
- Presenter: "Summary of Recent Mississippi Law" (CLE), Oxford, MS (February 13, 2015), Jackson, MS (February 20, 2015), Biloxi, MS (February 27, 2015) (lectured on Professional Responsibility and Evidence)
- Presenter: "Judges and Social Media: Disclosure as Disinfectant," SMU Science and Technology Law Review Social Media Law Symposium, Dallas, TX (October 17, 2014)
- Panelist: "Discussion Group: Crossing the Bar: Current Character and Fitness Issues in Admission to the Profession," Southeastern Association of Law Schools Annual Meeting, Amelia Island, FL (August 2, 2014)
- Presenter: "Technological Competence" (Family Law CLE), Jackson, MS (July 18, 2014), Oxford, MS (July 25, 2014), Biloxi, MS (August 1, 2014)
- Presenter: "Hot Topics in Legal Ethics" (CLE for law firms sponsored by Plancorp) St. Louis, MO (June 24-26, 2014)
- Panelist: "Navigating Troubled Waters: Pitfalls & Perils in Handling Potential Claims of Current Clients," 40th ABA National Conference on Professional Responsibility, Long Beach, CA (May 29, 2014)
- Guest: "In Legal Terms" radio show on Mississippi Public Broadcasting (May 13, 2014)
- Presenter: "Computers Do Not Practice Law (Yet)," University of Mississippi Law Faculty Workshop (April 21, 2014)

- Presenter: "Summary of Recent Mississippi Law" (CLE), Oxford, MS (February 14, 2014), Biloxi, MS (February 21, 2014), Jackson, MS (February 28, 2014) (lectured on Professional Responsibility and Evidence)
- Quoted in: *The Columbus Dispatch*: "Judge's Facebook Posts May Violate Judicial Code," (November 7, 2013)
- Presenter: "Ethical Considerations for Judges Using Social Media," Mississippi Trial and Appellate Judges Fall Conference, Olive Branch, MS (October 24, 2013)
- Moderator and Organizer: "Professional Responsibility Pecha Kucha: The Sequel," Southeastern Association of Law Schools Annual Meeting, Palm Beach, FL (August 3, 2013)
- Quoted in: Jody R. Westby, "Cybersecurity & Law Firms: A Business Risk," 39 No. 4 Law Prac. 46 (July/August 2013)
- Presenter: "Unbundling and Virtual Practice," (Family Law CLE), Jackson, MS (April 26, 2013), Oxford, MS (May 3, 2013), Biloxi, MS (May 10, 2013)
- Presenter: "Ethical Considerations for Lawyers Using Social Media" (CLE), Panola County Bar Association Meeting, Batesville, MS (May 9, 2013)
- Presenter: "Ethical Considerations for Lawyers Using Social Media" (CLE for Law Alumni Weekend), Oxford, MS (April 19, 2013)
- Presenter: "Access to Justice Without Lawyers," Miller-Becker Center Symposium on "Navigating the Practice of Law in the Wake of Ethics 20/20 – Globalization, New Technologies and What it Means to be a Lawyer In These Uncertain Times," Akron, OH (April 5, 2013)
- Presenter: "Summary of Recent Mississippi Law" (CLE), Oxford, MS (February 8, 2013), Biloxi, MS (February 22, 2013), Jackson, MS (March 1, 2013) (lectured on Professional Responsibility and Evidence)
- Presenter: "Regulatory Barriers to Justice in Mississippi," Poverty & Access to Justice Symposium sponsored by the Mississippi Law Journal, Oxford, MS (February 8, 2013)
- Quoted in: Bloomberg/BNA, "New York Adopts Court Rule Detailing Pro Bono Requirement for Bar Admission" (September 26, 2012)
- Presenter: "Mandatory Pro Bono for New York Bar Applicants: Why Not?" Southeastern Association of Law Schools Annual Meeting, Amelia Island, FL (July 29, 2012)
- Presenter: "Lawyer Rules as Substantive Law," University of Mississippi Law Faculty Workshop (April 18, 2012)
- Panelist: "A Question of Integrity: Politics, Ethics and the Supreme Court" (discussing film produced by Alliance for Justice), University of Mississippi School of Law (March 26, 2012)
- Presenter: "Summary of Recent Mississippi Law" (CLE), Oxford, MS (February 10, 2012), Biloxi, MS (February 24, 2012), Jackson, MS (March 2, 2012) (lectured on Professional Responsibility and Evidence)
- Quoted in Stateline.Org, "Mississippi Republicans Challenge Powers of Attorney General" (February 3, 2012)

- Quoted in *NE Mississippi Daily Journal*, "Integrity, Service Crucial for Would-be Lawyers" (August 19, 2011)
- Presenter: "Iqbal's Retro Revolution," Southeastern Association of Law Schools Annual Meeting, Hilton Head, SC (July 29, 2011)
- Presenter: Ethics Update, Lafayette County Bar Association Luncheon (CLE), Oxford, MS (June 15, 2011)
- Quoted in *NE Mississippi Daily Journal*, "Necessary Evil? Money becomes potential problem in judges' races" (November 7, 2010)
- Presenter: "Iqbal's Retro Revolution," University of Mississippi Law Faculty Workshop (October 20, 2010)
- Quoted in *NE Mississippi Daily Journal*, "Mills' death case order sets off legal reactions" (September 16, 2010)
- Presenter and Organizer: "*Caperton* in the Lower Courts," Southeastern Association of Law Schools Annual Meeting, Palm Beach, FL (August 2010).
- Quoted in *NE Mississippi Daily Journal*, "Judicial scandals affect law students" (November 29, 2009).
- Quoted in *NE Mississippi Daily Journal*, "Two years after indictments, state's legal community tries to fix Scruggs case damage" (November 29, 2009).
- 2009 Fellow, National Institute for Teaching Ethics and Professionalism (a consortium of The Louis Stein Center for Law & Ethics at Fordham University, The Mercer University School of Law Center for Legal Ethics and Professionalism, The Nelson Mullins Riley & Scarborough Center on Professionalism at the University of South Carolina, The Stanford Center on Ethics, and The W. Lee Burge Endowment for Law & Ethics at Georgia State University), Red Top Mountain State Park, Cartersville, GA (November 2009).
- Quoted in *Commercial Dispatch,* "Experts: Leaders' move in change of venue petition 'creative,' but not unethical" (October 13, 2009).
- Presenter: "Attorney Self-Disclosure," Southeastern Association of Law Schools Annual Meeting, Palm Beach, FL (August 2009).
- Presenter: "Ethics for Administrative Law Judges," National Association of Unemployment Insurance Appellate Boards Annual Conference, Oxford, MS (June 2009).
- Presenter: "Ethics and Employment Law," Mississippi Employment Law Seminar (CLE), Ridgeland, MS (May 2009).
- Panelist, "The Billable Hour," Phi Delta Phi Ethics Panel, University of Mississippi School of Law (April 2009).
- Presenter: "Update on Richard Scruggs judicial bribery case," American Constitution Society, University of Mississippi School of Law (April 2009).
- Presenter: "The Lawyer's Duty to Inform His Client of His Own Malpractice," 2008 Jurisgenesis Conference (conference for junior scholars co-sponsored by Washington University School of Law and St. Louis University School of Law) (June 2008).
- Quoted in *Oxford Eagle*, "Judicial panel discusses ethics in law at UM" (April 23, 2008).

24

- Panelist, "Earwigging" (panel at the University of Mississippi School of Law concerning the Richard Scruggs judicial bribery case) (April 2008).
- Quoted in *NE Mississippi Daily Journal*, "Legal eagles feel pain from bribery cases." (January 23, 2008).
- Television interview with Fox 27 (Tupelo) re: Richard Scruggs judicial bribery case (January 2008)

## **CONSULTING**

- Advised lawyer concerning ethics of proposed settlement provisions
- Served as expert on behalf of plaintiff opposing disqualification based on alleged former client conflict;
- Served as expert on behalf of defendant seeking disqualification based on alleged joint client conflict.
- Served as expert and testified in arbitration concerning dispute over lawyer's employment contract.
- Served as expert and testified in court on behalf of criminal defendant claiming ineffective assistance of counsel on basis of conflict of interest.
- Served as expert on behalf of defendant seeking disqualification based on joint client conflict.
- Served as expert on behalf of plaintiff seeking disqualification based on former client conflict of interest.
- Served as expert on behalf of plaintiff in legal malpractice case alleging incompetent representation.
- Advised law firm on elements of shareholders' agreement.
- Advised organizational client concerning conflict of interest and provided affidavits in support of bar complaints.
- Served as expert on behalf of plaintiff in legal malpractice suit alleging that attorney failed to act competently and diligently to protect the interests of infirm client.
- Served as expert on behalf of plaintiff in legal malpractice suit alleging incompetent representation.
- Served as expert on behalf of plaintiffs in lawsuit challenging lawyer's fee-splitting with non-lawyer.
- Served as expert on behalf of party moving for disqualification on the basis of conflict of interest.
- Served as expert on behalf of plaintiff in legal malpractice suit alleging that former lawyers failed to disclose their malpractice to their clients.
- Advised law firm on ethics of settlement proposal.
- Advised law firm on client confidentiality issues in connection with discovery requests.
- Served as expert on behalf of plaintiff in legal malpractice suit concerning violation of duty to communicate.

- Provided affidavit in support of motion for sanctions for lawyer's improper contact with represented witness.
- Advised law firm concerning duty to report opposing counsel who had directed expert witness to alter his reports.

## PREVIOUS WORK EXPERIENCE

**PEPPER HAMILTON LLP,** Philadelphia, Pennsylvania
**Commercial Litigation Department,** Partner (January 2007-June 2007); Associate (September 2004-December 2006).  Represented clients in a variety of commercial litigation, higher education, and pro bono matters.  Member of firm's Professional Responsibility Committee.

**KIRKLAND & ELLIS LLP,** New York, New York
**Litigation Department,** Partner (October 2003-August 2004), Associate (October 2001-September 2003).  Represented clients in a variety of commercial litigation and pro bono matters.

**UNITED STATES DEPARTMENT OF JUSTICE,** Washington, D.C.
**Civil Division, Federal Programs Branch**, Trial Attorney (October 1998-August 2001).  Selected for Honor Program.  Defense of federal statutes, regulations and programs against constitutional and statutory challenges.  Representative matters:
- Briefed and argued *United States v. Kalb*, 234 F.3d 827 (3d Cir. 2000), in which court upheld constitutionality of U.S. Forest Service's restrictions on group use of public lands against First Amendment challenge.
- Examined witnesses in court as member of trial team in *Griffin & Taylor v. United States* (C.A. No. 80-3227 D.D.C.), in which estate of former President Nixon sought compensation for seizure of his Presidential materials.
- Briefed and argued *Kong v. Min De Parle,* 2001 WL 1464549 (N.D. Cal. Nov. 13, 2001), upholding Medicare and Medicaid funding of Religious Nonmedical Healthcare Institutions against Establishment Clause challenge.

**HONORABLE ANTHONY J. SCIRICA**, Philadelphia, Pennsylvania
**United States Court of Appeals for the Third Circuit**, Law Clerk (September 1997-September 1998).

## TRIAL AND DEPOSITION TESTIMONY DURING THE PREVIOUS 4 YEARS

- Grete v. Baptist Memorial Health Care Corporation (deposition (April 17, 2018) and arbitration testimony (May 16, 2018))

- State of Mississippi v. Leslie Galloway, III, Cause No. 2015-00,093(3) (Circuit Court of Jackson County, Mississippi), March 22, 2018 (testimony at hearing)

## Exhibit 2

- First Amended Class Action Complaint [Rec Doc 45]

- Plaintiffs' Memorandum in Support of Motion for Class Certification

[Rec Doc 130-2]

- Attorney-Client Contract [Gaudet] [Rec Doc 130-12 at 6]

- Attorney-Client Contract [Butler] [Rec Doc 130-13 at 9]

- Attorney-Client Contract [Campbell] [Rec Doc 130-14 at 6]

- Attorney-Client Contract [Collins] [Rec Doc 130-15 at 6]

- Attorney-Client Contract [Falgoust] [Rec Doc 130-16 at 10]

- Attorney-Client Contract [Gamberella] [Rec Doc 130-17 at 8]

- Attorney-Client Contract [Hebert] [Rec Doc 130-18 at 7]

- Attorney-Client Contract [Ledet] [Rec Doc 130-19 at 10]

- Attorney-Client Contract [Moore] [Rec Doc 130-20 at 6]

- Attorney-Client Contract [Scales] [Rec Doc 130-21 at 7]

- Agreement – B P Subsistence Claims [Rec Doc 130-3]

- Second Amended Agreement – BP Subsistence Claims [Rec Doc 130-3 at 3]

- Affidavit of Christine Boudreaux [Rec Doc 130-7]

- Affidavit of Peggy Soudelier [Rec Doc 130-8]

- Affidavit of Natalie Bergeron [Rec Doc 130-9]

- Affidavit of Deborah H. Gaudet [Rec Doc 130-12]

- Affidavit of Timothy Butler [Rec Doc 130-13]

- Affidavit of Dian B. Campbell [Rec Doc 130-14]

- Affidavit of Kristine Collins [Rec Doc 130-15]

- Affidavit of Regina Falgoust [Rec Doc 130-16]

- Affidavit of Abraham Gamberella [Rec Doc 130-17]

- Affidavit of Adam Hebert [Rec Doc 130-18]

- Affidavit of Fred Ledet [Rec Doc 130-19]

- Affidavit of Stanwood Moore, Jr. [Rec Doc 130-20]

- Affidavit of James Scales, III [Rec Doc 130-21]

- Letter from Nations to Gaudet (dated Oct. 31, 2018) [Rec Doc 130-12 at 11]

- Letter from Nations to Butler (dated Oct. 31, 2018) [Rec Doc 130-13 at 11]

- Letter from Nations to Campbell (dated Oct. 31, 2018) [Rec Doc 130-14 at 9]

- Letter from Nations to Falgoust (dated Oct. 31, 2018) [Rec Doc 130-16 at 12]

- Letter from Nations to Hebert (dated Oct. 31, 2018) [Rec Doc 130-18 at 9]

- Letter from Nations to Moore (dated Oct. 31, 2018) [Rec Doc 130-20 at 8]

- Letter from Nations to Scales (dated Oct. 31, 2018) [Rec Doc 130-21 at 9]

- DHCC Claimant Details [Gaudet] [Rec Doc 130-12 at 12]

- DHCC Claimant Details [Butler] [Rec Doc 130-13 at 12]

- DHCC Claimant Details [Campbell] [Rec Doc 130-14 at 10]

- DHCC Claimant Details [Collins] [Rec Doc 130-15 at 9]

- DHCC Claimant Details [Falgoust] [Rec Doc 130-16 at 13]

- DHCC Claimant Details [Gamberella] [Rec Doc 130-17 at 11]

- DHCC Claimant Details [Hebert] [Rec Doc 130-18 at 10]

- DHCC Claimant Details [Ledet] [Rec Doc 130-19 at 13]

- DHCC Claimant Details [Moore] [Rec Doc 130-20 at 9]

- DHCC Claimant Details [Scales] [Rec Doc 130-21 at 10]

- Initial Intake Form [Gaudet] [GAUDET-02-00140]

- Initial Intake Form [Gamberella] [GAUDET-72-00158]

- Subsistence Claim Form [Gamberella] [GAUDET-72-00142]

- First Amended Subsistence Claim Form [Gamberella] [GAUDET-72-00108]

- Incompleteness Denial Notice (March 15, 2016) [Gamberella]

- Certified License Records [Falgoust] [Rec Doc 130-16, at 4-9]

- Certified License Records [Gamberella] [Rec Doc 130-17, at 4-7]

- Certified License Record [Moore] [Rec Doc 130-20, at 4]

- Analysis of Submissions from Law Firm (As of 12/19/19)

- List of Claimants and Claims Represented by Howard L. Nations PC (As of 12/19/19), pp.1 and 11

- Response to Subpoena to Produce Documents and Information related to the Subsistence Program (December 19, 2019)

- Policy 492: Subsistence Claims: Fishing and Hunting Licenses and License Exemptions

- Policy 316 v.4: Subsistence Claims: Fishing or Hunting Area Impairment

- Frequently Asked Questions, re Claims Filing Deadline

(May 22, 2015, 10:52 PM)

- Relief from Claims Processing Deadlines (Policy ID 251)

(announced Sept. 5, 2012, amended May 22, 2013)

- Public Statistics for Deepwater Horizon Economic and Property Damages Settlement (January 30, 2020)

- BP Settlement Agreement Exhibit 9 (Subsistence)

- Instructions for Completing Subsistence Claim Form

- Subsistence Claim Form

- Deposition of Amber Affolder (February 12, 2020)

- Deposition of James Griggs (February 17, 2020)