# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DEBORAH A. GAUDET, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-10356-WBV-JVM** |
| **HOWARD L. NATIONS, APC, ET AL.** | **SECTION: D (1)** |

## ORDER AND REASONS

Before the Court is Plaintiffs' Motion For Class Certification.[1]  Howard L. Nations, APC, Howard L. Nations, Cindy L. Nations, The Nicks Law Firm, LLC, Shantrell Nicks, Rueb & Motta, APLC, Joseph A. Motta, The Rueb Law Firm, APLC, and Joseph A. Motta, Attorney at Law, APLC (collectively, "Defendants") oppose the Motion,[2] and Plaintiffs have filed a Reply.[3]  The Motion is before the Court on the briefs without oral argument.

After careful consideration of the parties' memoranda, exhibits, and the applicable law, the Motion for Class Certification is **DENIED.**

## I.    FACTUAL AND PROCEDURAL BACKGROUND[4]

This matter arises out of the April 20, 2010 Deepwater Horizon oil spill in the Gulf of Mexico (the "BP Oil Spill"), and the Deepwater Horizon Economic and Property Damage Settlement Agreement (the "BP Settlement Agreement") that was

---

[1] R. Doc. 241.
[2] R. Doc. 272.
[3] R. Doc. 288.
[4] In the interest of judicial economy, and because the factual background of this case was extensively detailed in the Court's October 16, 2020 Order and Reasons (R. Doc. 234) and again in the Court's June 6, 2021 Order and Reasons (R. Doc. 357), the Court will limit its recitation of the factual and procedural background to matters relevant to the instant Motion.

created to provide monetary compensation for the losses sustained as a result of the BP Oil Spill. The BP Settlement Agreement allowed individuals to file a claim for their losses caused by the BP Oil Spill, including claims for subsistence losses ("Subsistence Claims") caused by closing Gulf Coast fishing areas due to contamination from the BP Oil Spill. The claims were processed by the Deepwater Horizon Economic Claims Center (the "DHECC"). The named plaintiffs in this case, Deborah A. Gaudet, Timothy Butler, Dian B. Campbell, Kristine Collins, Regina Falgoust, Abraham Gamberella, Adam J. Hebert, Fred Ledet, Stanwood Moore, Jr. and James Scales, III (collectively, "Plaintiffs"), claim that they resided along the Gulf Coast and harvested fish and seafood for their regular dietary consumption, but were unable to do so as a result of the BP Oil Spill. Plaintiffs retained Howard L. Nations, APC, Rueb & Motta, APLC, the Nicks Law Firm, LLC and Shantrell Nicks to file their Subsistence Claims in the BP Settlement Program. Plaintiffs claim that these defendants formed a joint venture to prosecute BP Subsistence claims, and that the remaining defendants, Joseph A. Motta, Cindy L. Nations, Howard L. Nations, Gregory D. Rueb, Joseph A. Motta, Attorney at Law, APLC, and The Rueb Law Firm, APLC, personally participated in the joint venture.

Plaintiffs filed a Class Action Complaint in this Court on May 13, 2019, seeking to recover damages for breach of contract, legal malpractice, and fraud arising from the alleged actions and inactions of the Defendants in filing and failing to file their BP Subsistence Claims.[5] In their Third Amended Complaint, Plaintiffs seek class

---

[5] *See*, R. Docs. 1, 45, 99, 236.

certification of their breach of contract and legal malpractice claims.[6]  Plaintiffs define the proposed class as, "All BP Class members, represented by Defendants' joint-venture in the BP Deepwater Horizon Oil Spill Class Action Settlement Program, who lost the opportunity to participate in the BP Settlement Program for their subsistence losses because Defendants failed to timely file a complete BP Subsistence Claim on the client's behalf."[7]  Plaintiffs allege that Defendants breached their Attorney-Client contracts and committed legal malpractice by failing to timely file complete BP Subsistence Claims on behalf of the proposed class members, failing to properly handle and pursue claims on behalf of the proposed class members, and failing to adequately communicate or assist the proposed class members in connection with their BP Subsistence Claims.[8]  Plaintiffs assert that class certification is appropriate because the proposed class meets the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3).  Plaintiffs contend that the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy are met and that under Rule 23(b)(3), questions of law or fact common to the class members predominate over any questions affecting only individual members and a class action is the superior method for fairly and efficiently adjudicating the controversy.[9]

---

[6] R. Doc. 236 at ¶ 36-42.
[7] *Id.* at ¶ 36.
[8] *Id.* at ¶¶ 43-51.
[9] *Id.* at ¶¶ 37-42.

## II. CLASS CERTIFICATION

On November 23, 2020, Plaintiffs filed the instant Motion for Class Certification under Fed. R. Civ. P. 23(a) and (b)(3).[10] Plaintiffs assert that, "At its core, this case is about professional accountability," and that, "Defendants engaged in reckless risk-taking and a cavalier approach to legal representation that prioritized the attorneys' financial interests over their clients' interests, and ultimately caused the Plaintiffs to lose their opportunities to receive a BP Subsistence Claim compensation award from the BP Deepwater Horizon Economic Settlement."[11] As set forth in their Third Amended Complaint, Plaintiffs seek to bring this action on behalf of themselves and on behalf of a class of plaintiffs defined as follows:

> All BP Class members, represented by Defendants' joint venture in the BP Deepwater Horizon Oil Spill Class Action Settlement Program, who lost the opportunity to participate in the BP Settlement Program for their subsistence losses because Defendants failed to timely file a complete BP Subsistence Claim on the client's behalf.[12]

Plaintiffs assert that the class specifically excludes: (1) claimants who filed Subsistence Claims 180 days after executing a DHECC release for any other claim in the BP Settlement Program; (2) claimants who previously executed a Gulf Coast Claims Facility Release; and (3) all claimants who had their BP Subsistence Claims evaluated on the merits and denied by DHECC for any reason other than for failing

---

[10] R. Doc. 241.

[11] R. Doc. 241-3 at p. 3.

[12] *Id*. at pp. 13-14. Plaintiffs note that the third category includes the claims of Defendants' former clients raised in three lawsuits filed in state court and removed to this Court. *Id*. at p. 14 (*citing* R. Docs. 241-33, 241-35 & 241-37). *See*, Civ. A. No. 20-2995-WBV-JVM, *Henry, et al. v. Maxum Indemnity Company, et al.* (E.D. La.) *consolidated with* Civ. A. No. 20-cv-2997-WBV-JVM, *Billiot, et al. v. Maxum Indemnity Company, et al.* (E.D. La.) *consolidated with* Civ. A. No. 20-cv-2998-WBV-JVM, *Pierce v. Maxum Indemnity Company, et al.* (E.D. La.).

to provide required documentation.[13]  Plaintiffs argue that class certification is proper under Rule 23(a) and Rule 23(b)(3) for the same reasons set forth in their Third Amended Complaint.[14]

Defendants oppose the Motion, asserting that class certification is not appropriate in this case because Plaintiffs cannot prove commonality of issues, the predominance of common issues over individual ones, or that a class action is the superior method of adjudication.[15]  Defendants argue that Plaintiffs are attempting to recast their negligence-based malpractice claims as breaches of fiduciary duty, but that Plaintiffs' allegations and their own expert establish that their claims are all negligence-based. [16]  As such, Defendants contend that individual factors predominate over purported "common" ones in this case.  In response, Plaintiffs maintain that class certification is appropriate, and further assert that any negligent act or omission by Defendants was a mere result of their widespread fiduciary breaches, rather than the root cause of their damages. [17]  Plaintiffs argue that Defendants' actions were calculated, intentional, and self-serving, and cannot simply be characterized as mere negligence.[18]

### A. Legal Standard

Under Fed. R. Civ. P. 23(a), the party seeking class certification bears the burden of establishing four threshold requirements: (1) the class is so numerous that

---

[13] R. Doc. 241-3 at p. 14.
[14] *Id*. at pp. 15-38.
[15] R. Doc. 272 at p. 1.
[16] *Id*. at p. 2.
[17] R. Doc. 288 at pp. 2-3, 5-6.
[18] *Id*. at pp. 5, 6.

joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the class representatives are typical of the claims or defenses of the class; and (4) the class representatives will fairly and adequately protect the interests of the class.[19]  In addition to satisfying the four prerequisites of Rule 23(a), a party seeking class certification must be able to show that one of the following requirements of Rule 23(b) is met: (1) inconsistent adjudications would result in incompatible standards of conduct for the party opposing the class or would be dispositive of the interests of nonparty class members or would substantially impair or impede the ability of nonparty class members to protect their interests; (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class; or (3) questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the case.[20]

### B. Analysis

As explained in greater detail below, the Court finds that while Plaintiffs have shown that the Rule 23(a) requirements are met, Plaintiffs cannot satisfy the predominance requirement of Rule 23(b)(3), upon which they rely.

---

[19] *Unger v. Amedisys Inc.*, 401 F.3d 316, 320 (5th Cir. 2005) (citing *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479-80 (5th Cir. 2001)).
[20] Fed. R. Civ. P. 23(b).

### 1. **The Rule 23(a) Requirements.**

#### a. *Numerosity*

To satisfy the numerosity requirement, "a plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members."[21] This Court has recognized that, "There is no magic number when this cut off is reached."[22] In considering a request to certify a class consisting of 33 members, the Fifth Circuit emphasized that, "The proper focus is not on numbers alone, but on whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors."[23] One of our sister courts has held that, "Although the number of members in a proposed class is not determinative of whether joinder is impracticable, it has been noted that any class consisting of more than 40 members 'should raise a presumption that joinder is impracticable.'"[24] The Fifth Circuit has also held that, "although the number of members in a proposed class is not determinative of whether joinder is impracticable, the size of the class in this case – 100 to 150 members – is within the range that generally satisfies the numerosity requirement."[25]

Plaintiffs assert that "numerosity is presumed" because Defendants' records show that the proposed class will consist of approximately 2,695 members. [26]

---

[21] *Pederson v. Louisiana State University*, 213 F.3d 858, 868 (5th Cir. 2000) (quoting *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. 1981)) (internal quotation marks omitted).
[22] *Kreger v. Gen. Steel Corp.*, Civ. A. No. 07-575, 2010 WL 2902773, at *4 (E.D. La. July 19, 2010).
[23] *Phillips v. Joint Legislative Comm. on Performance and Expenditure of the State of Mississippi*, 637 F.2d 1014, 1022 (5th Cir. 1981).
[24] *Everson v. Bunch*, Civ. A. No. 14-583-SDD-EWD, 2016 WL 3255023, at *2 (M.D. La. June 13, 2016) (citing *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999)).
[25] *Mullen*, 186 F.3d at 624 (citations omitted).
[26] R. Doc. 241-3 at p. 16.

Plaintiffs assert that in response to their records subpoena to the DHECC Claims Administrator, DHECC provided a report of BP claimants represented by Howard L. Nations, APC, all of whom were Defendants' joint venture clients.[27]  Plaintiffs claim that the numerosity requirement is satisfied based on the report because their experts have identified 2,695 prospective class members for whom Defendants failed to timely file a complete BP Subsistence Claim with the required documentation, which rendered the claim ineligible for consideration.[28]  While Defendants dispute the reliability of the DHECC report,[29] they do not dispute that the numerosity requirement is met in this case.  The Court further notes that Plaintiffs allege in the Third Amended Complaint that their counsel "presently represents approximately one hundred twenty-three (123) Plaintiffs, including approximately one hundred seventy-five (175) dependents of these Plaintiffs."[30]  Based upon the foregoing legal authority and Defendants' acceptance of Plaintiffs' representation regarding the size of the proposed class,[31] the Court finds that the proposed class satisfies the numerosity requirement of Rule 23(a).

### b.  *Commonality*

The commonality requirement of Rule 23(a)(2) requires that there are questions of law or fact common to the class.[32]  As explained by the Fifth Circuit:

---

[27] *Id*. (*citing* Exhibits M and I).  The Court notes that there is no "Exhibit M" or "Exhibit I" to the Motion for Class Certification.  Instead, the exhibits are labeled as "Exhibit I-1," "Exhibit I-2" and "Exhibit M-1 Part 1," "Exhibit M 1 Part 2," "Exhibit M-1 Part 3," and "Exhibit M-2."  *See,* R. Docs. 241-31, 241-32, 241-39, 241-40, 241-41, & 241-42.

[28] R. Doc. 241-3 at pp. 16-17 (*citing* Exhibit I).  Plaintiffs appear to be citing to R. Doc. 241-31 at p. 5.

[29] R. Doc. 272 at pp. 4, 14, 15, 24.

[30] R. Doc. 236 at ¶ 37.

[31] R. Doc. 272 at pp. 4, 14, 32.

[32] Fed. R. Civ. P. 23(a)(2).

> To satisfy Rule 23(a)(2)'s commonality requirement, plaintiffs must show that "[t]heir claims must depend upon a common contention," and the common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[33]

The Fifth Circuit has also explained that, "The test for commonality is not demanding and is met 'where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members.'"[34]

Plaintiffs assert that the commonality requirement is met because there is a common question as to the claims asserted by Plaintiffs. Regarding the breach of contract claim, Plaintiffs contend that there is a common issue of whether the Attorney-Client contract executed by Defendants with each of the proposed class members is a valid and binding contract.[35] As to their legal malpractice claim, Plaintiffs assert that there is a common question regarding whether Defendants put their own interests before their clients' interests.[36] Plaintiffs further assert that commonality is essentially subsumed within Rule 23(b)(3)'s predominance requirement, discussed elsewhere in their Motion, which Plaintiffs contend is also met.[37] Defendants contend that Plaintiffs cannot satisfy the commonality requirement based upon the following five "common" questions set forth in the Third Amended Complaint: (1) whether Defendants timely filed class members' claims; (2)

---

[33] *Ahmad v. Old Republic Nat. Title Ins. Co.*, 690 F.3d 698, 702 (5th Cir. 2012) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011)).

[34] *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999) (quoting *Lightbourn v. County of El Paso, Tex.*, 118 F.3d 421, 426 (5th Cir. 1997)).

[35] R. Doc. 241-3 at p. 17.

[36] *Id.*

[37] *Id.* at pp. 17-18.

whether Defendants timely provided all required documentation for class members'
claims; (3) whether Defendants caused class members' inability to obtain subsistence
awards; (4) whether Defendants breached a duty; and (5) whether class members are
entitled to monetary damages.[38]  Defendants claim that these questions are not the
type that can be resolved for all claimants in "one stroke" with generalized proof.[39]
In a footnote, Defendants assert that, "The only other 'common' question identified in
the Motion is whether the Attorney-Client contracts are 'valid and binding.'  The
validity of the contracts is not in dispute and is not, therefore, a 'central' issue the
resolution of which is likely to 'drive the resolution of the litigation.'"[40]

    While Defendants claim that there is no dispute regarding the validity of the
parties' Attorney-Client contracts, Defendants fail to address Plaintiffs' assertion
that their legal malpractice claim raises a common question regarding whether
Defendants put their own interests before their clients' interests.  The Court finds
that a determination regarding this issue will resolve a central issue in Plaintiffs'
legal malpractice claim against Defendants.  Defendants also fail to address the other
common questions of fact raised in Plaintiffs' Third Amended Complaint, including
whether Defendants concealed from their clients the fact that timely and complete
claims had not been filed with DHECC, and whether Defendants intentionally and
knowingly made false and misleading representations to the proposed class members
regarding the status of their BP Subsistence Claims by sending form denial letters

---

[38] R. Doc. 272 at pp. 23-24 (*citing* R. Doc. 236 at ¶ 38).
[39] R. Doc. 272 at p. 24 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S.Ct. 2541, 180
L.Ed.2d 374 (2011)) (internal quotation marks omitted).
[40] R. Doc. 272 at p. 24, n.17 (*quoting* R. Doc. 242-2 at p. 17) (internal quotation omitted).

indicating their claims had been denied.[41]  The Court agrees with Plaintiffs that these questions are common to the proposed class.  As such, the Court finds that Plaintiffs have satisfied the commonality requirement.

### c. *Typicality*

According to the Fifth Circuit, "Like commonality, the test for typicality is not demanding."[42]  Typicality focuses on the general similarity between the named plaintiffs' legal and remedial theories and the legal and remedial theories of those whom they purport to represent.[43]  "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims."[44]

Plaintiffs assert that the typicality requirement is met in this case because Plaintiffs and the proposed class members were victimized by the same course of conduct by Defendants and suffered the same type of injury.[45]  Plaintiffs contend that their claims arise from Defendants' common course of conduct, they share the same causes of action, and their claims are virtually identical.[46]  Defendants do not address the typicality requirement in their Opposition brief.[47]

---

[41] R. Doc. 236 at ¶ 38, pp. 60-61.

[42] *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999).

[43] *Lightbourn v. County of El Paso, Tex.*, 118 F.3d 421, 426 (5th Cir. 1997).

[44] *Baricuatro v. Indus. Pers. & Mgmt. Servs., Inc.*, Civ. A. No. 11-2777, 2013 WL 6072702, at *7 (E.D. La. Nov. 18, 2013) (quoting *In re Chinese–Manufactured Drywall Products Liability Litigation*, MDL No. 2047, 2013 WL 499474 *8 (E.D. La. Feb. 7, 2013)).

[45] R. Doc. 241-3 at p. 18 (citation omitted).

[46] *Id.*

[47] *See*, R. Doc. 272 at pp. 19-21.

The Court finds that the breach of contract and legal malpractice claims of the named plaintiffs are typical of those of the proposed class members because they are virtually identical. Plaintiffs have alleged that Defendants breached their Attorney-Client contracts with each of the proposed class members in the same way – by failing to timely complete a BP Subsistence Claim on behalf of the proposed class members. Plaintiffs have also alleged that Defendants committed legal malpractice by putting their own interests before the interests of each of the proposed class members. As such, the Court finds that the claims of the named plaintiffs are typical of those of the proposed class members, and that the typicality requirement of Rule 23(a)(3) is satisfied in this case.

### d. *Adequacy of Representation*

Under Rule 23(a)(4), the Court must consider whether the representative parties will "fairly and adequately protect the interests of the class."[48] "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent."[49] Class representatives "must be part of the class and 'possess the same interest and suffer the same injury' as the class members."[50] To meet the adequacy requirement, "the court must find that class representatives, their counsel, and the relationship between the two are adequate to protect the interests of absent class members."[51]

---

[48] Fed. R. Civ. P. 23(a)(4).
[49] *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625, 17 S.Ct. 2231, 2250, 138 L.Ed.2d 689 (1997).
[50] *Id.*, 521 U.S. at 625-26, 17 S.Ct. at 2250-51 (quotation omitted).
[51] *Unger v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005) (citing *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002)).

Through their affidavits, submitted in support of their Motion, Plaintiffs assert that they each have a sufficient stake in the outcome of the litigation and that their interests are aligned and consistent with the interests of the proposed class members.[52] Plaintiffs claim that the proposed class representatives (all 10 of the named plaintiffs) suffered the same harm as every other proposed class member because they each lost the opportunity to participate in the BP Settlement Program and to be compensated for their Subsistence Claim.[53] Plaintiffs further assert that they have retained competent class counsel, who have worked diligently from the case's inception.[54] Plaintiffs contend that their proposed class counsel have stated in an affidavit that while counsel have already committed ample resources to the development and prosecution of Plaintiffs' claims, counsel remain willing and able to continue committing resources to those efforts as necessary.[55] As such, Plaintiffs argue that the proposed class counsel satisfy the adequacy requirement of Rule 23(a)(4), and Plaintiffs ask the Court to appoint Jerald P. Block, Richard C. Breaux, Kendall J. Krielow, Sarah M. Lambert, and Matthew P. Hymel, all of the Block Law Firm, APLC, as class counsel. Defendants do not contest the adequacy of representation or the adequacy of proposed class counsel.[56]

According to the Affidavit of Jerald P. Block, the Block Law Firm has served as plaintiff's counsel in several significant legal malpractice cases and the firm and

---

[52] R. Doc. 241-3 at p. 19 (*citing* R. Docs. 241-16 through 241-25).
[53] R. Doc. 241-3 at p. 19; R. Doc. 236 at p. 62.
[54] R. Doc. 241-3 at p. 20 (*citing* R. Doc. 241-43).
[55] R. Doc. 241-3 at p. 20.
[56] R. Doc. 272 at pp. 19-36.

its lawyers are familiar with Louisiana and Mississippi law pertaining to legal malpractice cases.[57] Mr. Block further states in his Affidavit that in the years following the BP Oil Spill, the Block Law Firm has filed over 500 claims in the BP Settlement Program and, as such, has both generalized and specialized knowledge pertaining to the processes, procedures, and protocols that were required to file successful, payable claims in the BP Settlement Program.[58] Mr. Block also states that the Block Law Firm has the necessary resources to commit to representing the class representatives and the class members.[59] Finally, Mr. Block states that as of the date of his Affidavit (November 23, 2020), the Block Law Firm had spent 2,899 hours extensively researching the applicable law, drafting and filing pleadings, and making court appearances to diligently represent the class representatives and proposed class members, and that the Block Law Firm had expended approximately $119,933.23 in out-of-pocket costs in prosecuting this litigation.[60]

The Court finds that proposed class counsel have indicated their willingness to serve as class counsel in this matter by filing the Class Action Complaint,[61] as well as three amended complaints over the last two years.[62] Proposed class counsel also filed the instant Motion for Class Certification, and have filed several substantive pretrial motions in this case.[63] As such, the Court finds that Plaintiffs have shown

---

[57] R. Doc. 241-43 at ¶¶ 9 & 10.
[58] *Id*. at ¶¶ 11 & 12.
[59] *Id*. at ¶ 13.
[60] *Id*. at ¶ 18.
[61] R. Doc. 1.
[62] *See*, R. Docs. 45, 99, 236.
[63] R. Docs. 329, 330, 331, 332.

that proposed class counsel will fairly and adequately represent the interests of the class and are qualified to serve as class counsel under Rule 23(g).

The Court further finds that Plaintiffs' interests appear to be in alignment with the interests of the potential class members. Although not addressed in the Motion for Class Certification, Plaintiffs allege in the Third Amended Complaint that they are all domiciled in parishes that comprise the Eastern District of Louisiana.[64] As Louisiana residents, Plaintiffs can adequately represent the interests of the potential class, which consists of individuals who reside in Texas, Louisiana, Mississippi, Alabama, and Florida who harvested fish and seafood in the coastal area of the Gulf of Mexico for their regular dietary consumption. As such, the Court finds that the adequacy requirement of Rule 23(a)(4) is met.

### 2. The Rule 23(b)(3) Requirements.

Plaintiffs assert that class certification is appropriate under Rule 23(b)(3),[65] which provides that class certification is proper when "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[66] Rule 23(b)(3) contains two requirements – predominance and superiority.[67] "In order to 'predominate,' common issues must constitute a significant part of the individual cases."[68] The purpose of this

---

[64] R. Doc. 236 at pp. 11-13.
[65] R. Doc. 241-3 at pp. 20-35.
[66] Fed. R. Civ. P. 23(b)(3).
[67] *In re OCA, Inc. Securities and Derivative Litigation*, Civ. A. No. 05-2165, 2008 WL 4681369, at *9 (E.D. La. Oct. 17, 2008).
[68] *Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 472 (5th Cir. 1986).

requirement is to ensure that the proposed class is "sufficiently cohesive to warrant adjudication by representation."[69]   To determine whether common issues predominate, "the Court must identify the substantive issues that will control the outcome, assess which issues will predominate, and then determine whether the issues are common to the class."[70]   The predominance requirement under Rule 23(b)(3) is more demanding than the commonality requirement.[71]

### a. Predominance

### i. Plaintiffs' Legal Malpractice Claims.

### 1. The parties' arguments.

In their Third Amended Complaint, Plaintiffs assert a cause of action for "Breach of Contract and Legal Malpractice," collectively.[72]   Plaintiffs allege that each of the proposed class members executed an Attorney-Client contract with Defendants, which created an attorney-client relationship whereby Defendants agreed to properly prepare and timely file BP Subsistence Claims with DHECC on behalf of the proposed class members.[73]   Plaintiffs further allege that Defendants were obligated to communicate honestly and promptly with the proposed class members, and to advise them whether additional information or documentation was required to properly

---

[69] *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623, 17 S.Ct. 2231, 2249, 138 L.Ed.2d 689 (1997).

[70] *Everson v. Bunch*, Civ. A. No. 14-583-SDD-EWD, 2016 WL 3255023, at *3 (M.D. La. June 13, 2016) (quoting *Haley v. Merial, Ltd.*, 292 F.R.D. 339, 353 (N.D. Miss. 2013)) (internal quotation marks omitted).

[71] *Reyes v. Julia Place Condominiums Homeowners Ass'n, Inc.*, Civ. A. No. 12-2043, 2014 WL 7330602, at *11 (E.D. La. Dec. 18, 2014) (citing *Bell Atlantic Corp. v. AT&T Corp.*, 339 F.3d 294, 301 (5th Cir. 2003)).

[72] R. Doc. 236 at ¶¶ 43-51.

[73] *Id.* at ¶¶ 44-45.

prepare and timely file their BP Subsistence Claims.[74] Plaintiffs assert that the

losses sustained by the proposed class members were the direct and proximate result

of Defendants' breaches of obligations created by the Attorney-Client contracts, and

that Defendants breached the contracts by: (1) failing to timely file complete claims

with the DHECC on behalf of the proposed class members; (2) failing to properly

handle and pursue claims with the DHECC on behalf of the proposed class members;

(3) failing to adequately communicate or assist the proposed class members in

connection with their BP Subsistence Claims; and (4) other acts of fault and breaches

of obligations that will be shown more fully at trial.[75]

Plaintiffs further allege in the Third Amended Complaint that the proposed

class members have suffered economic losses as a direct and proximate result of

Defendants' acts and/or omissions, and that Defendants are jointly and solidarily

liable to the proposed class members for "damages resulting from Defendants'

contractual breaches and malpractice."[76] Plaintiffs assert that because the Attorney-

Client contracts provide that the contract will be construed under Mississippi law,

the proposed class members are entitled to punitive damages based on Defendants'

"flagrant and gross negligence."[77] Plaintiffs then assert that, "As a result of

Defendants' breaches of contract and failure to conform to the applicable professional

standards of care and conduct, Plaintiff Class members are entitled to compensatory

---

[74] *Id.* at ¶ 46.
[75] *Id.* at ¶ 48.
[76] *Id.* at ¶ 49.
[77] *Id.* at ¶ 50.

damages in an amount to be determined at trial but at least in an amount in excess of $5,000,000.00, plus punitive damages, and attorney fees."[78]

Based on the allegations in the Third Amended Complaint, it is unclear to the Court what the substance of Plaintiffs' legal malpractice claim is or how it differs from Plaintiffs' breach of contract claim. The Court notes that the Third Amended Complaint references Defendants' fiduciary duty to the Plaintiffs only twice. Plaintiffs first allege that Deborah A. Gaudet received a form denial letter from Defendants in March 2019, stating that her claim had been denied when, in fact, Defendants had never filed a claim on her behalf.[79] Plaintiffs assert that, "this disclosure, fundamental to the fiduciary relationship between attorneys and their clients, had never been made known to her."[80] Then, in discussing the typicality requirement for class certification, Plaintiffs allege that, "All Plaintiff Class members were injured and damaged through Defendants' consistent misconduct and breach of their fiduciary duty to all Plaintiff class members. Defendants failed to timely file complete and colorable Subsistence Claims with DHECC."[81] The Court notes that elsewhere in the Third Amended Complaint, Plaintiffs allege that, "Defendants allowed their self-interest to take precedence and to become the primary motivating factor by handling as many Subsistence Claims as they possibly could. By doing so,

---

[78] *Id.* at ¶ 51.
[79] *Id.* at Introduction Paragraph, p. 4.
[80] *Id.*
[81] *Id.* at ¶ 39.

their avaricious self-interest exceeded and overrode their individual client's interests."[82]

In the Motion for Class Certification, Plaintiffs provide more clarity regarding their legal malpractice claims, asserting that Defendants breached their fiduciary duty of loyalty by putting their own interests before the interests of their clients.[83] Plaintiffs assert that the duty of loyalty refers to an attorney's fiduciary duties of confidentiality, candor, and disclosure, which are breached when the attorney or other clients have interests adverse to the client in question.[84] Plaintiffs note that Mississippi law recognizes a clear distinction between legal malpractice claims based on negligence and those based on breach of fiduciary duty, and that to prevail on a malpractice claim based on breach of fiduciary duty, a plaintiff must establish: (1) the existence of an attorney-client relationship; (2) the acts constituting a violation of the attorney's fiduciary duty; (3) that the breach proximately caused the injury; and (4) the fact and extent of the injury.[85] Plaintiffs contend that the following five questions will predominate over any individual questions regarding their legal malpractice claims: (1) whether an attorney-client relationship existed between the proposed class members and Defendants; (2) whether Defendants breached their fiduciary duty of loyalty by placing their interests before their clients' interests; (3) whether Defendants breached their fiduciary duty of loyalty by failing to avoid conflicts of

---

[82] *Id.* at Introduction Paragraph, p. 9.
[83] R. Doc. 241-3 at pp. 4, 17.
[84] *Id.* at pp. 25-26 (quoting *Waggoner v. Williamson*, 8 So.3d 147, 154-55 (Miss. 2009)) (internal quotation marks omitted).
[85] R. Doc. 241-3 at p. 26 (quoting *Crist v. Loyacono*, 65 So.3d 837, 842-43 (Miss. 2011)) (internal quotation marks omitted).

interest between clients; (4) whether Defendants' breach of their fiduciary duty caused injury to their clients; and (5) whether Plaintiffs were damaged or injured by Defendants' conduct.[86] Essentially, Plaintiffs assert that the elements of their legal malpractice claim will predominate over any individual issues.

Plaintiffs contend that there is no dispute that an attorney-client relationship existed between Defendants and the proposed class members based on the Attorney-Client contracts executed by each proposed class member. Plaintiffs claim that Defendants placed their own interests before the interests of their clients "when they engineered and implemented an assembly-line method of legal representation that resulted in the Defendants engaging more clients than they could adequately represent."[87] Plaintiffs allege that instead of timely filing claims for the clients they already had, Defendants' self-interest influenced them to dedicate their limited resources to engage additional clients, which was to the detriment of the 2,695 proposed class members.[88] Plaintiffs point out that Defendants kept their intake facilities open through the night of the June 8, 2015 deadline for filing Subsistence Claims, and that they expected to sign up an additional 3,000 claimants during the final three days before the deadline.[89] Relying upon opinions from their experts, Plaintiffs argue that Defendants breached their duty of loyalty by putting their own financial interests ahead of the interests of the proposed class members.[90] Plaintiffs

---

[86] R. Doc. 241-3 at pp. 26-35.
[87] R. Doc. 241-3 at pp. 26-27.
[88] Id. at p. 28.
[89] Id. (citing R. Doc. 241-26).
[90] R. Doc. 241-3 at pp. 29-30 (quoting R. Docs. 241-48 & 241-47) (internal quotation marks omitted).

also assert that Defendants breached their fiduciary duty of loyalty by creating internal conflicts between their existing clients and their new clients based on Defendants' limited resources. [91]    Plaintiffs claim that Defendants' continued acceptance of new clients created a nonwaivable and incurable conflict of interest wherein Defendants chose to file one client's claim to the detriment of another.

Plaintiffs argue that the question of a fiduciary breach will determine the outcome of the litigation, and that each proposed class member will use the same evidence to show that the Defendants' decision to continue accepting new clients impaired their representation of existing clients.[92]  Plaintiffs claim that, "Defendants' self-centered decisions to put their own interests ahead of their clients caused the proposed Class members to lose their opportunity to receive an award for their subsistence losses."[93]  As such, Plaintiffs assert that causation will be proven at trial with generalized, class-wide proof.[94]  Plaintiffs further assert that the proposed class members share a common injury, although in different amounts, and that individualized damage calculations do not defeat the predominance requirement because their damages are capable of being determined with the BP Subsistence Loss Formula.[95]  Plaintiffs claim that their experts have already conducted a class-wide calculation of damages, and that the BP Subsistence Loss Formula can be used to determine both aggregate and individual damages.[96]

---

[91] R. Doc. 241-3 at p. 30.
[92] *Id*. at p. 31.
[93] *Id*. at p. 34.
[94] *Id*.
[95] *Id*. at pp. 34-35.
[96] *Id*. at p. 35 (*citing Byrd v. Bowie*, 933 So.2d 899, 904 (Miss. 2006); *Luvene v. Waldrup*, 903 So.2d 745, 746-48 (Miss. 2005); R. Doc. 241-31; R. Doc. 236 at ¶ 4).

After strenuously arguing that Plaintiffs' breach of contract claims and legal malpractice claims are negligence-based claims,[97] Defendants assert that regardless of whether couched in terms of breach of a duty of care, negligent malpractice, or breach of contract, establishing proximate cause and damages will defeat any argument that common issues predominate over individual issues in this case.[98] Defendants claim that Plaintiffs' allegations that Defendants failed to timely file and prosecute their BP Subsistence Claims are treated as negligence-based legal malpractice claims under Mississippi law. Defendants point out that Plaintiffs' own legal expert agreed that a claim against a lawyer for failure to timely file and prosecute the client's case is a negligence claim.[99] Despite whether their legal malpractice claims are based upon a breach of a duty of care or negligence, Defendants argue that Plaintiffs will have to prove proximate cause and show that "but for" Defendants' alleged breach of fiduciary duty, each proposed class member would have received a BP Subsistence Claim award.[100] Defendants assert that the "trial within a trial" standard will apply, which is incompatible with a class action format because it will require individualized proof that each proposed class member can satisfy every requirement for obtaining a BP Subsistence Claim award, of which there are at least a dozen.[101] Defendants assert that it is not enough, as Plaintiffs

---

[97] R. Doc. 272 at pp. 1-8.
[98] *Id.* at p. 24.
[99] R. Doc. 272 at p. 3 (*citing* R. Doc. 241-47 at ¶¶ 7(e), (f) & 18).
[100] R. Doc. 272 at p. 24.
[101] R. Doc. 272 at pp. 26-27 (*citing* R. Doc. 272-1; R. Doc. 272-2).

argue, to merely demonstrate that Defendants undertook representation and then allegedly failed to timely file a complete claim for each proposed class member.

Defendants further assert that although there is a BP Subsistence Loss Formula to calculate damages, the proposed class members' damages will have to be calculated individually with facts specific to the individuals, rather than the class as a whole.[102] According to Defendants, such facts include the proposed class member's age, gender, percentage of diet attributable to subsistence harvests, the reasonable daily caloric consumption particular to each claimant and the members of her family, as well as the specific species lost by each claimant, the gross harvest lost in pounds, and the percentages consumed and/or bartered by each claimant.[103] Defendants argue that performing such a calculation for each individual putative class member in a class exceeding 2,600 members will require multiple mini-trials, contrary to Rule 23(b)(3)'s purpose. Defendants further assert that while experts may perform the individual calculations, damages cannot be established solely through expert testimony, as experts cannot testify to the veracity of the underlying factual data.[104] Defendants claim that each class member will have to testify to establish their entitlement to a subsistence award and the amount of the award.

Additionally, Defendants contend that because Plaintiffs allege that the Subsistence Claim of each proposed class member exceeds $10,000, the proposed class members will have to submit evidence showing that their claims would have survived

---

[102] R. Doc. 272 at pp. 31-32.
[103] *Id*. at p. 32 (*citing* R. Doc. 272-4).
[104] R. Doc. 272 at p. 33.

a field visit, which consisted of a "rigorous, individualized examination of claimant's personal knowledge regarding claimed lost catch, including but not limited to, individual methods, skill, consumption, equipment, bait, and harvesting locations."[105] Defendants further assert they are entitled to challenge the veracity of the factual information upon which each proposed class member's claim is based, which will require individual mini-trials for each proposed class member.[106]

In response, Plaintiffs maintain that their legal malpractice claims are not negligence-based, and that isolated acts of negligence arose as a byproduct of Defendants' systemic fiduciary breaches.[107]  Plaintiffs assert that, "The BP litigation itself is indisputable proof that these types of claims can be computed and properly handled through class procedure."[108]  Plaintiffs also maintain that their damages can be calculated on a class-wide basis with the BP Subsistence Loss Formula.[109] Plaintiffs argue that the proposed class members' aggregate damages and individual damages are capable of formulaic calculation with the BP Subsistence Loss Formula, as demonstrated by Plaintiffs' experts, which is a single and common method that can be used to measure and quantify the damages of each proposed class member.[110] Alternatively, Plaintiffs note that class actions are commonly certified on liability alone, with individualized damage determinations left to subsequent proceedings.[111]

---

[105] R. Doc. 272 at p. 28 (*citing* R. Doc. 242-2; R. Doc. 272-5 at ¶ 7; R. Doc. 272-15 at ¶ 9); R. Doc. 272 at p. 35.
[106] R. Doc. 272 at p. 28.
[107] R. Doc. 288 at pp. 2-6.
[108] *Id*. at p. 11.
[109] *Id*. at pp. 11-12.
[110] *Id*. at p. 12 (quotation and internal quotation marks omitted).
[111] R. Doc. 288 at pp. 12-13 (citations omitted).

Plaintiffs assert that an appointed claims administrator can determine an individual's damage award in this case based upon Plaintiffs' submitted intake forms, or with another formula, like the BP Subsistence Loss Formula.[112]

### 2. *The Court's analysis.*

Under Mississippi law,[113] a lawyer owes his client duties that fall into three broad categories: (1) the duty of care; (2) a duty of loyalty; and (3) duties provided by contract.[114] According to the Mississippi Supreme Court, "That an action may lie for the lawyer's breach of these duties is settled. Recovery, however, requires proof of proximate cause, a point we perceive problematical, to be tailored to the injury the client claims and the remedy he elects."[115] Thus, each proposed class member will have to prove that Defendants' decision to put their own interests before the interests of their clients and their decision to accept new clients until the eve of the June 8, 2015 deadline for filing Subsistence Claims was the proximate cause of their loss of a subsistence award. In other words, each proposed class member will have to show

---

[112] *Id.*

[113] The Court will assume, as have the parties in their briefs, that Mississippi law applies to Plaintiffs' legal malpractice claims. Defendants have not argued that Mississippi law does not apply to these claims, and even assert in a footnote that, "[S]olely for the purposes of this Motion, Defendants will assume that Mississippi substantive law applies to Plaintiffs' malpractice and breach of contract claims." R. Doc. 272 at p. 25, n.18. *See, Hall v. Habul*, Civ. A. No. 13-406-SDD-RLB, 2014 WL 2441177, at *2 n.22 (M.D. La. May 30, 2014) (applying Louisiana law to a breach of fiduciary duty claim and explaining that, "The Court will assume, as have the parties in their briefs, that Louisiana law applies to this action. The Defendant has not argued that Louisiana law does not apply to these claims."); *Annie Sloan Interiors, Ltd. v. Kappel*, Civ. A. No. 19-807, 2019 WL 2492303, at *2 n.2 (E.D. La. June 14, 2019) (applying Louisiana law to a breach of fiduciary duty claim because "The parties do not dispute that Louisiana law applies to this claim.").

[114] *Singleton v. Stegall*, 580 So.2d 1242, 1244-45 (Miss. 1991).

[115] *Id.* at 1245 (citing *Stewart v. Walls*, 534 So.2d 1033, 1035 (Miss. 1988); *Hickox By and Through Hickox v. Holleman*, 502 So.2d 626, 633-34 (Miss. 1987); *Nause v. Goldman*, 321 So.2d 304, 307-08 (Miss. 1975)) (internal citations omitted). *See, Whitlock v. Necaise*, 200 So.3d 1096, 1099 (Miss. Ct. App. 2016) (quoting *Singleton*, 580 So.2d at 1245).

that but for Defendants' decisions to prioritize their own interests and continue accepting new clients through the June 8, 2015 deadline, they each would have received a BP Subsistence Claim award. The Court finds that Plaintiffs will not be able to make that showing with class-wide proof. While Plaintiffs contend that they can establish proximate cause with proof that these decisions "were not individually based" and instead "impacted the methodology of the process which ultimately impacted every proposed Class member in the same manner,"[116] Plaintiffs will still need to submit individualized proof regarding how those decisions impacted the filing of each proposed class member's Subsistence Claim.

Plaintiffs will also have to submit evidence showing that but for the Defendants' actions, each proposed class member would have been entitled to recover a BP Subsistence Claim award. According to the BP Subsistence Claim forms,[117] each proposed class member will have to submit proof of the following:

1. That s/he fished in a traditional manner to sustain basic personal or family dietary, economic, security, shelter, tool, or clothing needs in areas impacted by the oil spill;
2. That s/he was not a recreational fisherman;
3. A listing of each and every species s/he fished for subsistence use in the year prior to the oil spill, including the time periods or seasons throughout the year that s/he fished each species;
4. The quantity of each species s/he fished in each time period or season during the year before the oil spill, including the amount s/he consumed and the amount s/he gave to his family for their personal consumption or for the purposes of barter;
5. The species that s/he used or provided for subsistence purposes after the oil spill, the total lost weight of the species s/he could not harvest after the spill in pounds, the percent of the total species harvested that s/he would have provided to each family member for consumption purposes, and the percent

[116] R. Doc. 241-3 at p. 32.
[117] R. Doc. 272-2.

of the total species harvested that s/he would have bartered or used for
other non-consumption purposes;

6.  The claimant's name or the name of the family member who relied on the
    claimant's subsistence activities before the oil spill, as well as their age at
    the time that the losses began, their gender, their social security number,
    the family member's relationship to the claimant, and the percent of the
    claimant's or the family member's total diet provided by the claimant's
    subsistence activities;

7.  A specific description of where s/he fished each species in the Gulf of Mexico
    before the oil spill, including a map that identifies where s/he fished each
    species before the spill;

8.  Out of the total quantity of fish s/he and his/her family relied on before the
    oil spill, the approximate percentage by species and location that came from
    areas that were later closed, impaired, or harmed because of the spill;

9.  A description of the equipment and methods s/he used to fish for subsistence
    use;

10. Whether s/he continues to fish for subsistence purposes after the oil spill;
    and

11. Whether s/he stopped fishing for subsistence purposes in areas that were
    closed, impaired, or harmed because of the oil spill and, if so, the area, an
    estimate of when those areas were closed, and the dates s/he resumed
    fishing in those areas, as well as a description of the impairment or harm.[118]

It is clear to the Court that, with a proposed class that exceeds 2,600 members,

proving each proposed class member's entitlement to a BP Subsistence Claim award

will require numerous mini-trials, wherein each proposed class member will submit

individualized evidence regarding the foregoing factors. Defendants will then be

entitled to challenge the veracity of such evidence to rebut each class member's

assertion that, but for Defendants' actions, that class member would have received a

Subsistence Claim award. The Court finds that these individual issues will

predominate over any class-wide issues pertaining to Plaintiffs' legal malpractice

claims. The Court likewise finds that determining whether Defendants breached

their fiduciary duty of loyalty by creating internal conflicts between their new and

---

[118] *Id.*

existing clients will require individualized proof regarding: (1) when Defendants obtained all of the information and documentation they needed to file a Subsistence Claim on behalf of each proposed class member; and (2) when Defendants attempted to file a Subsistence Claim on behalf of each proposed class member. Plaintiffs have failed to show that these issues can be determined by class-wide proof.

Additionally, while the parties agree that there is a BP Subsistence Loss Formula that can calculate the aggregate and individual damages of the proposed class members,[119] the parties dispute whether that damage calculation satisfies the predominance requirement. The Court concludes that it does not. The Court is cognizant of the fact that, "the necessity of calculating damages on an individual basis will not necessarily preclude class certification," especially where damages may "be determined by reference to a mathematical or formulaic calculation."[120] The Court is also aware that another Section of this Court has recognized that, "Courts have repeatedly rejected the argument that different damages calculations for each class member defeats class certification."[121] This Court reasoned that, "Were the law otherwise, 'the point of the Rule 23(b)(3) provision for class treatment would be blunted beyond utility, as every plaintiff must show specific entitlement to recovery, and still Rule 23 has to be read to authorize class actions in some set of cases where

---

[119] R. Doc. 241-3 at p. 35; R. Doc. 272 at p. 31. *See*, R. Doc. 272-4 & R. Doc. 236 at ¶ 4, p. 16 for a copy of the BP Subsistence Loss Formula.

[120] *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598 (5th Cir. 2006); *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on April 20, 2010*, 910 F. Supp. 2d 891, 925 (E.D. La. 2012) (citing authority).

[121] *In re Oil Spill*, 910 F. Supp. 2d at 925 (citing authority).

*seriatim* litigation would promise such modest recoveries as to be economically impracticable."[122]

Nonetheless, the Fifth Circuit has held that, "Where the plaintiffs' damage claims 'focus almost entirely on facts and issues specific to individuals rather than the class as a whole,' the potential exists that the class action may 'degenerate in practice into multiple lawsuits separately tried."[123] Such is the case here. According to the BP Subsistence Loss Formula, calculating each proposed class member's lost Subsistence Claim award will be based almost entirely on facts specific to the individual class members. Those facts include some of the same information required by the BP Subsistence Claim forms,[124] namely the age, gender, percentage of diet attributable to subsistence harvest, and the reasonable daily caloric consumption particular to each class member and the members of his/her family, as well as the specific species lost by each class member, the gross harvest lost in pounds, and the percentages consumed and/or bartered by each class member.[125] As with the proximate cause determination, this calculation will require each proposed class member to submit individualized evidence regarding these facts, which will invariably differ amongst the class members. As Defendants point out, while experts can perform the individual calculations, they cannot testify as to the veracity of the underlying facts, which are unique to each proposed class member.[126]

---

[122] *Id*. at 926 (quoting *Gintis v. Bouchard Transp. Co.*, 596 F.3d 64, 66-67 (1st Cir. 2010)).
[123] *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 744-45 (internal quotations omitted).
[124] R. Doc. 272-2.
[125] R. Doc. 272-4.
[126] R. Doc. 272 at p. 33.

Moreover, according to Plaintiffs' experts, each proposed class member's alleged damages are likely to exceed $10,000.[127]  According to evidence submitted by both parties, the BP Settlement Program has certain safeguards in place to prevent fraudulent claims, including mandatory "Field Visits . . . for Subsistence claims with payable base amounts above $10,000."[128]  Defendants contend, and Plaintiffs do not dispute, that field visits were a rigorous undertaking that required claimants to demonstrate their knowledge as to their individual skill and ability to catch, clean and consume their claimed species in the claimed amounts, as well as an examination of the claimant's harvesting equipment.[129]  Based upon Plaintiffs' own expert report, each proposed class member will need to submit individualized proof to establish that their Subsistence Claim would have survived a field visit and corresponding investigation.  Plaintiffs have failed to demonstrate that this showing can be made

---

[127] Plaintiffs have submitted a report from their economic damage model experts, Charles C. Theriot and Edward J. Comeaux, III, in which they opine that:

> Based on a statistical analysis of the 10,744 subsistence claimants processed by the Defendants for which payment determinations were made, we can state with a 95% confidence level that the dollar amount of the average payment that would have been made to the members of the Plaintiff Class, had their claims been processed in the same manner the Defendants processed other subsistence claims, would have been within the range of $14,238.05 to $14,500.03 resulting in total payments to the Plaintiff Class of $36,964,187 to $40,484,936.  This estimate accounts for subsistence claimants in the Plaintiff Class that would have received no payment at all.

R. Doc. 241-31 at p. 5.

[128] R. Doc. 241-5 at p. 5; R. Doc. 272-5 at p. 1.

[129] R. Doc. 272 at p. 13 (*quoting* R. Doc. 272-15 at ¶¶ 3, 9) (internal quotation marks omitted).  The Court notes that the expert opinion relied upon by Defendants is the subject of Plaintiffs' Motion to Exclude Expert Testimony of Evan J. Weems (R. Doc. 330), which is pending before the Court.  In that motion, however, Plaintiffs do not contest Weems' opinion regarding the mandatory nature of field visits for any Subsistence Claims exceeding $10,000 or the scope of such investigations.  *See*, R. Doc. 330-1.

with class-wide proof.  As such, the Court finds that individual issues surrounding Plaintiffs' damages calculation predominate over any class-wide issues in this case.

To the extent that Plaintiffs argue in their Reply brief that, "The BP litigation itself is indisputable proof that these types of claims can be computed and properly handled through class procedure,"[130] Plaintiffs fail to acknowledge that in the BP litigation, another Section of this Court granted a *joint* request for class certification of the BP Economic and Property Damages Class *for purposes of settlement only*.[131] In contrast, the instant Motion for Class Certification is vehemently opposed and is sought for *trial* purposes.  Thus, Plaintiffs' reliance upon that case is misplaced.  The Court likewise finds Defendants' reliance upon the Fifth Circuit's decision in *Steering Committee v. Exxon Mobil Corp.* is misplaced,[132] as that case involved damage claims for "emotional and other intangible injuries."[133]  Nonetheless, the Court agrees with Defendants that Plaintiffs' damage claims will focus on facts and issues specific to each proposed class member rather than the class as a whole.

Based on the foregoing analysis, the Court finds that Plaintiffs' legal malpractice claims do not meet the requirements of Rule 23(b)(3), and are therefore not appropriate for class certification.

---

[130] R. Doc. 288 at p. 11.
[131] *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico on April 20, 2010*, 910 F. Sup. 2d 891 (E.D. La. 2012).
[132] R. Doc. 272 at pp. 31-32 (citing *Exxon Mobil Corp.*, 461 F.3d 598, 602 (5th Cir. 2006)).
[133] *Exxon*, 461 F.3d at 602.

## ii. Plaintiffs' Breach of Contract Claims.

The Court reaches the same conclusion regarding Plaintiffs' breach of contract claims. Plaintiffs assert that under Mississippi law, their breach of contract claims have two elements: (1) whether there is a valid and binding contract; and (2) whether Defendants breached that contract.[134] Plaintiffs argue that these two common questions will predominate over the proposed class members' breach of contract claims.[135] Plaintiffs point out that the Attorney-Client contracts between Defendants and the proposed class members state that Defendants agreed to "prosecute all claims against all necessary defendants arising out of Event: <u>BP Deepwater Horizon Oil Spill Class Action Settlement for Subsistence Claims</u>."[136] Plaintiffs contend that because the Attorney-Client contracts required Defendants to "prosecute" their client's BP Subsistence Claim, whether Defendants failed to timely file a complete BP Subsistence Claim on behalf of the proposed class members and, thus, breached their contractual obligation, is the principal predominant question regarding their breach of contract claims.[137] Plaintiffs assert that the analysis of this issue does not differ from client to client, and that each proposed class member will use the same evidence to make a *prima facie* showing of the Defendants' breach.[138] According to Plaintiffs, deposition testimony, DHECC reports, and Defendants' own records

---

[134] R. Doc. 241-3 at pp. 21-22 (*citing MultiPlan, Incorporated v. Holland*, 937 F.3d 487, 497 (5th Cir. 2019)).

[135] R. Doc. 241-3 at p. 22.

[136] *Id*. at p. 21.

[137] *Id*. at pp. 24-25.

[138] *Id*. at pp. 24, 25.

provide indisputable evidence that Defendants failed to timely file complete BP Subsistence Claims for the proposed class members.[139]

As with Plaintiffs' legal malpractice claims, Defendants assert that individual issues surrounding proximate cause and damages will defeat any argument of predominance concerning Plaintiffs' breach of contract claims.[140]  Defendants contend that Plaintiffs allege the same injury and the same remedy for both claims – the loss of a BP Subsistence Claim award measured in damages in the amount of each proposed class member's "lost award."  As such, Defendants assert that the same individualized showing of proximate cause will be required for each proposed class member, and that individual issues of fact will greatly predominate over any common ones.  Defendants assert that under Mississippi law, proximate cause is a necessary element of Plaintiffs' breach of contract claim, which will require individualized proof and individual mini-trials for each proposed class member, which is contrary to Rule 23(b)(3).[141]

In response, Plaintiffs assert that their breach of contract claims are not negligence-based, but are based on the obligations created by their Attorney-Client contracts with Defendants.[142]  Plaintiffs assert that Defendants obligated themselves to "prosecute" all Subsistence Claims, or to pursue the claims until finished, which Defendants clearly failed to do.[143]

---

[139] *Id*. at p. 25.
[140] *Id*. at p. 24.
[141] R. Doc. 272 at p. 29 (citing *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 602 (5th Cir. 2006); *Madison v. Chalmette Ref., LLC*, 637 F.3d 551, 555 (5th Cir. 2011)).
[142] R. Doc. 288 at pp. 8-9.
[143] *Id*. at p. 9.

Setting aside the parties' disagreement regarding whether Plaintiffs' breach of contract claims are negligence-based, the parties agree that under Mississippi law,[144] a breach of contract claim has two elements: (1) the existence of a valid and binding contract; and (2) a showing that the defendant has broken, or breached it.[145] Defendants do not dispute the existence or validity of the Attorney-Client contracts that they entered into with each of the proposed class members.[146] As such, the Court agrees with Plaintiffs that whether Defendants failed to timely file a complete BP Subsistence Claim on behalf of each of the proposed class members is the predominant issue *as to their breach of contract claims*.[147] Plaintiffs, however, have failed to show that this issue will predominate over questions affecting only individual class members in this matter.

Although not stated directed in either their Motion or their Third Amended Complaint, Plaintiffs are asserting that Defendants breached their Attorney-Client contracts with the proposed class members by either: (1) failing to file a Subsistence Claim on the class member's behalf; (2) failing to file a Subsistence Claim on the class member's behalf before the June 8, 2015 deadline; or (3) filing an incomplete Subsistence Claim on the class member's behalf that lacked the required documentation.[148] Plaintiffs, however, have failed to show that liability for their

---

[144] In the Court's October 16, 2020 Order and Reasons, the Court found that Mississippi law governs Plaintiffs' breach of contract claims. R. Doc. 234 at pp. 24-25.

[145] *MultiPlan, Incorporated v. Holland*, 937 F.3d 487, 497 (5th Cir. 2019) (quotation and internal quotation marks omitted).

[146] R. Doc. 272 at p. 24, n.17.

[147] R. Doc. 241-3 at p. 25.

[148] R. Doc. 241-3 at pp. 6, 9-11, 13-14.

breach of contract claims can be established with class-wide proof.[149]  To prove that Defendants breached their Attorney-Client contracts with the proposed class members by not "prosecuting" their Subsistence Claims, Plaintiffs will have to present evidence regarding when each proposed class member provided all of the requisite information for Defendants to file their Subsistence Claims, what (if any) actions Defendants took once they received that information from each class member, and when Defendants took those actions.  Such evidence, which will differ amongst the proposed class members, could result in different conclusions regarding whether Defendants breached their Attorney-Client contract with each proposed class member.  Additionally, Defendants must be afforded the opportunity to present evidence regarding why each of the proposed class member's Subsistence Claims were either not processed or were denied, which will require individualized proof specific to each proposed class member's claim.  Thus, the majority of the evidence on the breach of contract claim is not capable of consideration on a class-wide basis, and will instead require consideration of individual issues.

Based on the foregoing analysis, the Court finds that Plaintiffs' breach of contract claims do not satisfy the predominance requirement of Rule 23(b)(3) and are unsuitable for class certification.

---

[149] R. Doc. 241-3 at p. 25.

### b. Superiority

Because the Court has determined that Plaintiffs' breach of contract and legal malpractice claims do not satisfy the predominance requirement, the Court need not determine whether the claims satisfy the superiority requirement of Rule 23(b)(3).

## III. CONCLUSION

Although the Court is deeply troubled by the allegations in the Third Amended Complaint and the instant Motion, namely, that Defendants worked together to operate a "client mill" by soliciting and engaging as many clients as possible and then took a "cavalier and careless attitude toward their clients" that resulted in their BP Subsistence Claims getting denied, the Court finds that Plaintiffs have failed to show that their breach of contract and legal malpractice claims are appropriate for class certification under Fed. R. Civ. P. 23(a) and 23b)(3).

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion For Class Certification[150] is **DENIED.**

New Orleans, Louisiana, July 1, 2021.

**WENDY B. VITTER**
**United States District Judge**

---

[150] R. Doc. 241.